Jeffrey S. Love (State Bar No. 195068)
jeffrey.love@klarquist.com
Kelly I. Dunham (*Pro Hac Vice*)
kelly.dunham@klarquist.com
Robert F. Scotti (*Pro Hac Vice*)
robert.scotti@klarquist.com
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204-2988
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301

Eric L. Wesenberg (State Bar No. 139696)
ewesenberg@orrick.com
Gabriel M. Ramsey (State Bar No. 209218)
gramsey@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Attorneys for Defendant and TGP,
Technical Glass Products

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| O'KEEFFE'S, INC.,<br><br>        Plaintiff,<br><br>         v.<br><br>TECHNICAL GLASS PRODUCTS, ANEMOSTAT AND PILKINGTON PLC,<br><br>        Defendants. | Case No.:  07-3535 JF<br><br>**ANSWER, DEFENSES AND COUNTERCLAIMS OF DEFENDANT TECHNICAL GLASS PRODUCTS**<br><br>**JURY TRIAL DEMANDED** |

J.R. Four Ltd., a Washington corporation, does business as "Technical Glass Products" ("TGP" or "Defendant").  It pleads the following Answer, Defenses and Counterclaims in response to the Complaint filed in this action by Plaintiff O'Keeffe's, Inc. ("O'Keeffe's"):

## THE PARTIES

1. TGP admits that O'Keeffe's is a California corporation with its principal place of business in San Francisco, California, that manufactures and distributes glazing products, some of which are safety-rated and fire-rated architectural glazing products.  TGP admits that O'Keeffe's includes a division it refers to as "SAFTI" and "SAFTI *FIRST*."  TGP denies the remaining allegations in paragraph 1.

2. TGP admits that J.R. Four Ltd. is a Washington corporation, headquartered in Kirkland, Washington, that does business as Technical Glass Products in this judicial district, and that fabricates and sells fire-rated and safety-rated glazing products.  TGP denies the remaining allegations in paragraph 2.

3. TGP is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint.

4. TGP admits that "Pilkington" is one of the largest glazing manufacturers in the world, and sells a product under the trademark "Pyroshield."  TGP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Complaint paragraph 4.

## JURISDICTION AND VENUE

5. TGP admits that the Complaint purports to allege a cause of action for patent infringement, over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  TGP denies that the Court has jurisdiction pursuant to 28 U.S.C. § 1338(b).

6. TGP is without knowledge or information sufficient to form a belief as to the truth of the allegations in Complaint paragraph 6.

**INTRADISTRICT ASSIGNMENT**

7. TGP is without knowledge or information sufficient to form a belief as to the truth of the allegations in Complaint paragraph 7.

**GENERAL ALLEGATIONS**

8. TGP denies Complaint paragraph 8.

9. TGP is without information or knowledge sufficient to form a belief as to the truth of the allegations in the first and last two sentences of paragraph 9, and denies the remaining allegations in paragraph 9.

10. TGP admits that for many years, until sometime in the 1980's, wired glass was considered by many in the industry to be the only glazing material that could meet fire endurance standards for fire doors and windows, and as a result some model building codes contain or used to contain more lenient impact resistance (safety-rating) standards for wired glass than for other glazing materials where the application is in a location requiring both fire-rating and safety-rating. TGP denies the remaining allegations in Complaint paragraph 10.

11. In answer to Complaint paragraph 11, TGP admits that in general: conventional wired glass, while passing the generally accepted safety test for resisting an impact of 100 foot lbs., does not pass that test at 150 or 400 foot lbs., and so does not meet those higher "safety glazing" standards; adding wire mesh during the manufacture of wired glass may weaken the glass; exposed to fire under generally accepted fire testing procedures, conventional wired glass cracks within minutes, but the wired mesh holds the glass in place and prevents large cracks or openings; and wire mesh limits the transfer of radiant heat by holding the glass in place.

12. TGP denies the allegations in Complaint paragraph 12.

13. TGP admits that Complaint Exhibit C appears to be a true copy of a UL listing for "Pyroshield NT," among other products, and denies the remaining allegations of Complaint paragraph 13.

14. TGP admits that Pilkington provides to TGP wired glass used by TGP in the fabrication and manufacture of PyroShield products. TGP denies that it currently makes a product called "PyroShield NT," and denies the remaining allegations in Complaint paragraph 14.

15. TGP is without knowledge or information sufficient to form a belief as to the truth of the allegations in Complaint paragraph 15.

### ANSWER TO FIRST CAUSE OF ACTION

16. TGP realleges and incorporates by reference paragraphs 1-15 of its Answer, as though fully set forth herein. TGP admits that a copy of U.S. Patent No. 7,090,906 B2, issued on August 15, 2006 and titled "Fire Resistant Safety Glass," is attached to the Complaint. TGP is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Complaint paragraph 16.

17. TGP denies Complaint paragraph 17.

18. TGP is without knowledge or information sufficient to form a belief as to the truth of the allegations in Complaint paragraph 18.

19. TGP denies Complaint paragraph 19.

20. TGP denies Complaint paragraph 20.

21. TGP denies Complaint paragraph 21.

### GENERAL DENIAL

22. TGP denies all allegations not expressly admitted above.

### AFFIRMATIVE AND OTHER DEFENSES

#### First Defense: Invalidity of the '906 Patent

23. The '906 patent is invalid, among other reasons, for failing to comply with the provisions of the Patent Laws, Title 35 U.S.C., including without limitation one or more of §§ 101, 102, 103, and 112.

#### Second Defense: Unenforceability of the '906 Patent

24. The '906 Patent is unenforceable, among other reasons, due to the inequitable conduct of Plaintiff, its President, CEO and purported "inventor" on the '906 patent William

O'Keeffe, and/or its patent counsel at Fliesler Meyer LLP who prosecuted the '906 patent, in failing to submit to the U.S. Patent and Trademark Office ("PTO") during prosecution of the '906 patent material prior art of which they were aware. The allegations in TGP's third counterclaim below are incorporated herein.

### Third Defense:  Prosecution Estoppel

25. O'Keeffe's claim for patent infringement is barred under the doctrine of prosecution history estoppel.

### COUNTERCLAIMS

### Parties

1. J.R. Four Ltd. is a Washington corporation with its principal place of business at 600 Sixth St. South, Kirkland, WA 98033, that does business as Technical Glass Products ("TGP").

2. O'Keeffe's, Inc. is a California corporation with a principal place of business at 325 Newhall Street, San Francisco, CA 94124-1432.

### Jurisdiction

3. These counterclaims arise under the patent laws of the United States, Title 35 U.S.C., the Trademark Act of 1946, 15 U.S.C. §§ 1051-1127, the laws of the States of California, and the common law. This Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. §§ 1331, 1338, 1367, 2201, 2202 and 15 U.S.C. § 1121.

4. O'Keeffe's purports to be the owner of the U.S. Patent No. 7,090,906 (hereinafter "the '906 patent").

5. O'Keeffe's has sued TGP, alleging infringement of the '906 patent. TGP denies that that it infringes the '906 patent, and alleges that the '906 patent is invalid and unenforceable.

### FIRST COUNTERCLAIM – DECLARATION OF NONINFRINGEMENT

6. TGP realleges and incorporates by reference the allegations above.

7. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between O'Keeffe's and TGP as to the non-infringement of the '906 patent.

8. TGP has not directly or indirectly infringed any valid and/or enforceable claim of the '906 patent.

9. TGP seeks a declaration that it does not infringe the '906 Patent.

**SECOND COUNTERCLAIM – DECLARATION OF PATENT INVALIDITY**

10. TGP realleges and incorporates by reference the above allegations.

11. An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists between O'Keeffe's and TGP as to the invalidity of the '906 patent.

12. The '906 patent is invalid for failure to satisfy the conditions for patentability specified under 35 U.S.C., including but not limited to §§101, 102, 103, and 112.

13. TGP seeks a declaration that the '906 patent is invalid.

**THIRD COUNTERCLAIM – DECLARATION OF PATENT UNENFORCEABILITY**

14. TGP realleges and incorporates by reference the above allegations.

15. An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists between O'Keeffe's and TGP as to the unenforceability of the '906 patent.

16. The '906 patent is unenforceable, among other reasons, due to the inequitable conduct of O'Keeffe's, its President, CEO and the purported "inventor" on the '906 patent William O'Keeffe, and/or its patent counsel who prosecuted the '906 patent, in failing to submit to the U.S. Patent and Trademark Office ("PTO") during prosecution of the '906 patent material prior art of which they were aware.

17. The withheld prior art includes: U.S. Pat. No. 5,910,620 ("the '620 patent"); references cited in the '620 patent, such as the reference "Brochure--Firelite™ and Firelite Plus™, Nippon Electric Glass Co., Ltd., Kirkland, WA, Sep. 1993, 8 pages"; TGP's prior art product FireLite NT® and prior art brochures and other information on FireLite NT®.

18. William O'Keeffe owed a duty of candor to the PTO during prosecution of the '906 patent. This included a duty to disclose to the PTO material prior art of which he was aware.

19. O'Keeffe's owed a duty of candor to the PTO during prosecution of the '906 patent. This included a duty to disclose to the PTO material prior art of which it was aware.

20.     Attorneys at Fliesler Meyer LLP prosecuted the '906 patent. They owed a duty of candor to the PTO during prosecution of the '906 patent. This included a duty to disclose to the PTO material prior art of which any of them was aware.

21.     William O'Keeffe is a named "inventor" on the '620 patent. He was aware of the '620 patent during the time the '906 patent was being prosecuted. He did not disclose the '620 patent to the PTO during prosecution of the '906 patent.

22.     O'Keeffe's has owned the '620 Patent since it issued. It was aware of the '620 patent during the time the '906 patent was being prosecuted. It did not disclose the '620 patent to the PTO during prosecution of the '906 patent.

23.     Sheldon Meyer is a named partner of the law firm Fliesler Meyer LLP. He prosecuted the '620 patent. He was aware of the '620 patent during the time the '906 patent was being prosecuted. He did not disclose the '620 patent to the PTO during prosecution of the '906 patent.

24.     The '620 patent is prior art to the '906 patent.

25.     The '620 patent issued on June 8, 1999, more than one year before the filing of the application for the '906 patent, and more than one year before the filing date of the earliest application to which the '906 patent claims priority.

26.     The '620 patent discloses information material to the claims initially filed with the '906 patent application, and to amended claims filed during the prosecution of the '906 patent, and to the claims that ultimately issued in the '906 patent.

27.     The '620 patent discloses using a PET film (polyethylene terephthalate) on glass panes to obtain fire-rated glass (see Col. 3, lines 42—50). It further discloses using steel in film on fire-rated glass (Col. 2, lines 60-65).

28.     Use of PET film on glass to obtain impact and/or fire-rated glass is material to all claims of the '906 patent.

29.     Claims 1-5 of the '906 patent each includes as a limitation a "fire resistant film [that] contains PET." Claim 6 of the '906 patent includes as a limitation, "adhering a fire resistant film of

PET." In the prosecution history of the '906 patent, the examiner stated that the claims which issued as claims 1 and 5 were allowed because the prior art of record did not disclose use of PET film on glass.

30. Use of steel in a glass film is material to claims 4 and 5 of the '906 patent.

31. Claim 4 of the '906 patent claims "the fire resistant safety wire glass of claim 1, wherein said fire resistant film comprises a metal." Claim 5 claims "the fire resistant safety wire glass of claim 4, wherein said metal comprises stainless steel or read [sic.]."

32. No prior art of record considered by the PTO during prosecution of the '906 patent disclosed a PET film in conjunction with fire-rated glass and using steel in a film coating.

33. The '620 patent discloses laminated glass material to claims for laminated glass sought (and ultimately rejected by the PTO) during prosecution of the '906 patent prosecution.

34. For the reasons alleged above, U.S. Patent Number 5,910,620 was highly material to the patentability of the claims sought during prosecution of the '906 patent prosecution.

35. The failure of William O'Keeffe, O'Keeffe's, Sheldon Meyer or other attorneys at Fliesler Meyer LLP to disclose the '620 patent to the PTO during prosecution of the '906 patent was, on information and belief, made with intent to deceive the PTO. It was inequitable conduct.

36. William O'Keeffe was aware, during the time the '906 patent was being prosecuted, of: the reference cited on the face of the '620 patent titled "Brochure--Firelite™ and Firelite Plus™, Nippon Electric Glass Co., Ltd., Kirkland, WA, Sep. 1993, 8 pages"; TGP's FireLite NT® product; and brochures and other information on TGP's FireLite NT® product. He did not disclose any of that to the PTO during prosecution of the '906 patent.

37. O'Keeffe's was aware, during the time the '906 patent was being prosecuted, of: the reference cited on the face of the '620 patent titled "Brochure--Firelite™ and Firelite Plus™, Nippon Electric Glass Co., Ltd., Kirkland, WA, Sep. 1993, 8 pages"; TGP's FireLite NT® product; and brochures and other information on TGP's FireLite NT® product.

38. One or more of O'Keeffe's' websites included, both during and prior to the time the '906 patent was being prosecuted, information on TGP's FireLite NT® product. For example,

1  Exhibit A hereto is a true copy of pages archived at www.archive.org that were available, in
2  materially identical form, on O'Keeffe's "safti.com" website in 2003.  Ex. A page one includes a
3  link to a "product comparison chart."  Ex. A page two discloses a chart comparing FireLite NT with
4  other products, and disclosing that FireLite NT is a ceramic glass with a "film applied" that is fire
5  resistant and has a "safety rating" sufficient to impart an impact resistance of "400 ft. lbs."
6  O'Keeffe's did not disclose any information on FireLite NT® to the PTO during prosecution of the
7  '906 patent.

8       39.     Sheldon Meyer and the law firm Fliesler Meyer LLP were aware of the reference
9  cited on the face of the '620 patent titled "Brochure--Firelite™ and Firelite Plus™, Nippon Electric
10 Glass Co., Ltd., Kirkland, WA, Sep. 1993, 8 pages."  They did not disclose that reference to the PTO
11 during prosecution of the '906 patent.

12      40.     The reference "Brochure--Firelite™ and Firelite Plus™, Nippon Electric Glass Co.,
13 Ltd., Kirkland, WA, Sep. 1993, 8 pages" is prior art to the '906 patent.  It was published in 1993.

14      41.     TGP's FireLite NT® product is prior art to the '906 patent.  It was in public use and
15 on sale in the United States in the 1990's.

16      42.     On information and belief, William O'Keeffe and O'Keeffe's were aware of the
17 features of TGP's FireLite NT® product both prior to and during the prosecution of the '906 patent,
18 including that it was a ceramic glass pane with a film of 3M's Scotchshield® product, from their
19 review of the product itself, and of brochures and other written information on that product.  Some
20 of that information was published prior to the earliest date to which the '906 patent claims priority,
21 and some was published more than one year prior to that date, and that information is prior art to the
22 '906 patent.

23      43.     FireLite NT® has been a registered trademark with the U.S. PTO for goods that
24 include "fire-rated and impact safety-rated … wire glass" since May 8, 2001.  That mark for those
25 goods was published by the PTO on February 13, 2001.  The PTO's website describes that
26 registration in part as follows:

27 **Word Mark**     **FIRELITE NT**

28

-8-

ANSWER AND COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

| | |
|---|---|
| **Goods and Services** | IC 019. US 001 012 033 050. G & S: fire-rated and impact safety-rated glazing material for building windows, doors and partitions; namely sheet glass, wire glass, laminated glass, and multiple glass. FIRST USE: 19970500. FIRST USE IN COMMERCE: 19970500 |
| **Filing Date** | April 27, 2000 |
| **Published for Opposition** | February 13, 2001 |
| **Registration Number** | 2449172 |
| **Registration Date** | May 8, 2001 |
| **Owner** | (REGISTRANT) Nippon Electric Glass Co., Ltd. COMPANY JAPAN 7-1, Seiran 2-chome, Otsu-shi Shiga, 520-8639 JAPAN |

44. Scotchshield® has been a registered trademark with the U.S. PTO for "plastic film for attachment to windows" since 1987. That mark for those goods was published by the PTO in 1987. The PTO's website describes that registration in part as follows:

| | |
|---|---|
| **Word Mark** | **SCOTCHSHIELD** |
| **Goods and Services** | IC 017. US 001. G & S: PLASTIC FILM FOR ATTACHMENT TO WINDOWS. FIRST USE: 19870225. FIRST USE IN COMMERCE: 19870225 |
| **Published for Opposition** | August 18, 1987 |
| **Registration Number** | 1464570 |
| **Registration Date** | November 10, 1987 |
| **Owner** | (REGISTRANT) MINNESOTA MINING AND MANUFACTURING COMPANY AKA 3M CORPORATION DELAWARE 3M CENTER SAINT PAUL MINNESOTA 55144 |

45. 3M publicly disclosed during and prior to the prosecution of the '906 patent that its Scotchshield® window film product contains PET. For example, Exhibit B hereto is a true copy of 3M's Material Safety Data Sheet for its Scotchshield® window film product, as published on 3M's website prior to and during the prosecution of the patent. Exhibit B bears a 2001 copyright date and issue date of April 18, 2001. It discloses that the "ingredient" in the product is "2-7 mil polyethylene terephthalate polyester film with acrylic PSA and backside coating," "100" "Percent." PET is an abbreviation for polyethylene terephthalate.

46. Scotchshield® was a product in public use and on sale in the United States prior to September 25, 2001, and prior to September 25, 2000. It is prior art to the '906 patent.

47. Scotchshield® is a fire resistant film.

48. Scotchshield® contains PET.

49. Scotchshield® was adhered to sheets of Fire Lite glass to manufacture FireLite NT®.

50. Scotchshield® was recommended in written materials published by 3M for use on windows to impart a greater impact resistance.

51. Scotchshield® adhered to a piece of wire glass would be sufficient to impart an impact resistance of at least about 100 foot lbs.

52. On information and belief, William O'Keeffe and O'Keeffe's were aware of Scotchshield®, and of each of the facts alleged in the preceding six paragraphs, both prior to and during the prosecution of the '906 patent. (If some but not all of those allegations are denied, please admit and deny them separately.)

53. On information and belief, William O'Keeffe and O'Keeffe's were aware of other prior art fire resistant window films containing PET and imparting impact resistance that were in public use and on sale in the United States prior to September 25, 2001, and prior to September 25, 2000.

54. William O'Keeffe and O'Keeffe's failed to disclose to the PTO during prosecution of the '906 patent any information about FireLite NT®, Scotchshield® or any other prior art fire resistant window films containing PET and imparting impact resistance.

55. On information and belief, William O'Keeffe and O'Keeffe's withheld information about FireLite NT®, Scotchshield® and other prior art fire resistant window films containing PET and imparting impact resistance to deceive the PTO.

56. Use of PET film on glass panes to impart impact resistance is material to all claims of the '906 patent.

57. The PTO examiner's only "statement of reasons for the indication of allowable subject matter" during prosecution of the '906 patent was that: "The prior art of record fails to disclose or suggest fire resistant safety glass laminates consisting essentially of a wire glass sheet and a fire resistant PET film, with said laminate having the recited impact resistance." In that same office action, the examiner rejected all claims that did not expressly require "PET" film, stating in

1 part: "SAKAMOTO ET AL '954 or '761 discloses an impact resistant, fire resistant laminates comprising a fire resistant polymeric film adhered to a first wire glass sheet," that "Applicant admits that current minimum safety glazing standards require an impact resistance of at least 100 ft-lbs (Applicant's Specification, page 1, paragraph 0008). It would have been obvious to a person of ordinary skill in the art at the time the invention was made to select the thickness and mechanical properties of the various layers in SAKAMOTO ET AL '954 or '761 in order to obtain sufficient impact resistance to meet or exceed established safety standards…."

58. Prior art on the sale and use in the United States of fire resistant film that contains "PET" was highly material to the claims that issued in the '906 patent.

59. Failure to disclose material prior art, including O'Keeffe's own prior art patent that discloses PET for use with fire resistant glass, failure to disclose TGP's well-known prior art product FireLite NT that used Scotchshield® PET film on glass, and failure to disclose prior art Scotchshield® and other PET films designed for use on fire resistant and safety rated glass, was inequitable conduct.

60. TGP is entitled to a declaration that the '906 Patent is unenforceable.

### FOURTH COUNTERCLAIM – TRADEMARK INFRINGEMENT

61. TGP realleges and incorporates by reference the allegations in counterclaim paragraphs 1-5 above.

62. TGP owns rights in the mark FIREFRAMES arising out of use of the mark by a predecessor-in-interest in connection with fire-resistant wooden door jambs that began at least as early as 1996. TGP also owns rights in the mark FIREFRAMES based upon its use of the mark with metal door and window framing products since at least as early as 2000.

63. TGP owns two incontestable U.S. trademark registrations for the FIREFRAMES mark: Registration No. 2,162,531 for use of the mark FIREFRAMES in connection with "wooden door jambs"; and Registration No. 2,529,865 for use of the mark FIREFRAMES in connection with "door casings of metal, door frames of metal, door jambs of metal, door panels of metal, metal door frames, metal door panels, metal door units, metal window frames, metal window sills, window

1   casements of metal." True copies of U.S. Trademark Office ("PTO") records of these registrations,
2   as shown on the PTO website, are attached hereto as Exhibits C and D.

3   64. TGP features the FIREFRAMES mark in marketing materials, including on its
4   website at www.fireglass.com, in advertising and promoting fire-resistant TGP glass and framing
5   products. Exhibits E-H hereto are examples of the use of the mark on its website for the following
6   series of TGP products: FIREFRAMES® Heat Barrier Series (Exhibit E hereto); FIREFRAMES®
7   Curtainwall Series (Exhibit F hereto); FIREFRAMES® Hardwood Series (Exhibit G), and
8   FIREFRAMES® Designer Series (Exhibit H).

9   65. TGP has spent, and continues to spend, thousands of dollars annually to promote
10  products featuring the FIREFRAMES mark. TGP enjoys valuable goodwill in that mark.

11  66. Knowing of TGP's prior registration of the FIREFRAMES mark, on or about May
12  18, 2006, O'Keeffe's filed an application number 78/886,746 (Exhibit I hereto) with the U.S.
13  Trademark Office to register the mark SAFTIFIRE FRAMES for use in connection with "Fire and
14  safety rated panel systems comprised primarily of metal goods and consisting of wall panels,
15  windows, and doors, all sold as a unit." On or about June 15, 2007, the U.S. Trademark Office
16  issued a final refusal to register that mark to O'Keeffe's.

17  67. The PTO refused to register the mark SAFTIFIRE FRAMES to O'Keeffe's because
18  the PTO found it confusingly similar to TGP's registered FIREFRAMES mark (*see* Exhibit I).

19  68. Knowing of TGP's prior registration of its FIREFRAMES mark, O'Keeffe's paid
20  Google to link to one of O'Keeffe's websites, http://www.safti.com/, in search results for the term
21  "FIREFRAMES." As a result, a Google database search for "FIREFRAMES" returns a page that
22  features a link to http://www.safti.com/, a website of O'Keeffe's "Safti" division, as shown in
23  Exhibit J attached hereto.

24  69. The SAFTIFIRE FRAMES mark is confusingly similar to TGP's FIREFRAMES
25  mark.

26  70. O'Keeffe's uses the SAFTIFIRE FRAMES mark to market products similar to TGP's
27  FIREFRAMES® products to potential customers of TGP's FIREFRAMES® products.

28

-12-  ANSWER AND COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

71. O'Keeffe's use of the SAFTIFIRE FRAMES mark has and is likely to continue to deceive or cause confusion or mistake among members of the public.

72. O'Keeffe's use of the SAFTIFIRE FRAMES is without the consent of TGP, and over TGP's objections. It has caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to TGP and the goodwill associated with TGP's FIREFRAMES mark.

73. The acts of O'Keeffe's constitutes trademark infringement under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), and California common law.

74. O'Keeffe's use of the SAFTIFIRE FRAMES mark was made with actual knowledge of TGP's rights in the FIREFRAMES mark.

75. O'Keeffe's use of the SAFTIFIRE FRAMES mark as alleged herein is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of the products of O'Keeffe's. Members of the public, including potential customers, are likely to believe that O'Keeffe's products are in some way connected with, sponsored by, licensed by, or otherwise related to TGP.

76. O'Keeffe's acts of trademark infringement are willful, and have caused TGP to suffer monetary damages and, if not enjoined, will cause TGP to sustain additional monetary damages, loss, and injury, and resulted in wrongful profits to O'Keeffe's, in amounts to be determined in this action.

77. TGP is without an adequate remedy at law.

**FIFTH COUNTERCLAIM –SECTION 43(A) LANHAM ACT VIOLATIONS**

78. TGP realleges and incorporates by reference the allegations in its Fourth Counterclaim above.

79. O'Keeffe's activities described herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

80. O'Keeffe's has sold or offered goods for sale in interstate commerce in a manner likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of those products without authorization from TGP.

81. On information and belief, O'Keeffe's conduct alleged herein has been willful and designed to cause confusion or mistake.

## SIXTH COUNTERCLAIM –FALSE ADVERTISING
## AND UNLAWFUL TRADE PRACTICES

82. TGP realleges and incorporates by reference the allegations in counterclaim paragraphs 1-5 above.

83. O'Keeffe's and its "SAFTI" division, also known as its "SAFTI*FIRST*" division, market and sell in California and across the United States a glass product known as "SuperLite I-XL," which they market as a "fire-rated glazing material."

84. O'Keeffe's SuperLite I-XL product has not successfully passed the "hose stream" test. In the U.S., the hose stream test is required for any fire-rated glazing to receive a rating higher than 20 minutes. This applies to every state in the country and can be found in standards such as UL9, UL10B, UBC Standards 7-2 and 7-4, and International Building Code ("IBC") §715.

85. In addition, O'Keeffe's SuperLite I-XL product does not provide, or sometimes does not provide, substantial fire protection from one side. If a significant fire breaks out on the non-coated side of the glass, there is a high probability that glass will collapse, providing no protection at all.

86. O'Keeffe's sells its SuperLite I-XL product with a WHI label showing a 45/60 minute rating without a hose stream test. WHI refers to Warnock Hersey International, Inc., a testing company located in Wisconsin that tests glass for compliance with fire and safety standards.

87. O'Keeffe's markets its SuperLite I-XL product with advertisements that state, among other things, that the product is:

- "Choose the Clear Fire Protective Solution that Provides the Best Value"
- "Fully approved for 20 minute applications"
- "Approved by the GSA and AHJs as an alternate material for 45 and 60 minute applications without hose stream in accordance with IBC 104.11"
- "More cost-effective than safety-rated ceramics"

88. O'Keeffe's advertising statements alleged in the above paragraph are materially false and misleading.

89. IBC 104.11 (2006) provides in part:

> 104.11 Alternative materials …. The provisions of this code are not intended to prevent the installation of any material … provided that any such alternative has been approved. An alternative material … shall be approved where the building official finds … that the material … is, for the purpose intended, at least the equivalent of that prescribed in this code in … fire resistance … and safety.

90. O'Keeffe's SuperLite I-XL product is not "at least the equivalent" in "fire resistance" and "safety" of glass products fire rated for 45 and 60 minute applications, because, for example, they do not pass the hose stream test, and they do not provide substantial fire protection from one side.

91. O'Keeffe's is misleading its customers and building officials by its efforts to induce and assist them to approve and use its SuperLite I-XL product as an "alternative material" under IBC 104.11 for situations where 45 and 60 minute fire rating is required.

92. It is materially misleading for O'Keeffe's to market and sell its SuperLite I-XL product with that WHI label and the advertising statements alleged above.

93. O'Keeffe's use of that WHI label, the advertising statements alleged above and similar statements has a tendency to mislead customers, building officials and the public into believing that the product passes the fire safety tests for the 45/60 minute rating, when in fact the product does not, or that the product is "at least the equivalent" in "fire resistance" and "safety" of products that do pass the fire safety tests for the 45/60 minute rating, when in fact it is not.

94. It is potentially dangerous to use O'Keeffe's SuperLite I-XL product in locations requiring a product that has passed the fire safety tests for the 45/60 minute rating.

95. Customers have been misled by O'Keeffe's marketing of its SuperLite I-XL product into buying the product for use in locations where it is not suitable and is a potential danger. At least one such customer in California used the product in a building, but the product then failed a building

1  inspection due to its failure to meet the fire safety tests for the 45/60 minute rating. That customer
2  had to remove it, and replaced it with a TGP product that does meet code.

3      96.     O'Keeffe's marketing and sale of its SuperLite I-XL product as alleged above
4  constitutes false advertising pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(2)
5  and unlawful trade practices in violation of California Business & Professions Code § 17200 et. seq.
6  and §17500 et seq.

7      97.     O'Keeffe's sells its SuperLite I-XL product for less money than competing products
8  offered by TGP and others that do pass the fire safety tests for the 45/60 minute rating. O'Keeffe's
9  advertises that cost advantage by, for example (as alleged above), stating in advertisements that its
10 SuperLite I-XL product is "More cost-effective than safety-rated ceramics" and a "Fire Protective
11 Solution that Provides the Best Value." As a result, TGP and others have lost sales of competing
12 products that do meet the fire safety tests for the 45/60 minute rating.

13     98.     O'Keeffe's false advertising and unlawful trade practices alleged above are causing
14 and will continue to cause irreparable harm to TGP, including loss of customers for TGP's
15 competing products and loss of TGP's goodwill in those products and their trademarks, for which
16 TGP has no adequate remedy at law.

17     99.     On information and belief, the acts of O'Keeffe's alleged herein were undertaken
18 willfully and with the intention of causing confusion, mistake or deception.

### **PRAYER FOR RELIEF**

WHEREFORE, TGP prays for entry of Judgment for TGP and against Plaintiff O'Keeffe's:

    A.     Dismissing Plaintiff's claims against TGP with prejudice;

    B.     On TGP's First, Second and Third Counterclaims, declaring that the '906 Patent is not infringed by TGP, is invalid and is unenforceable in light of 35 U.S.C. §§101, 102, 103, and 112;

    C.     On TGP's Fourth and Fifth Counterclaims, for O'Keeffe's willful infringement of TGP's registered FIREFRAMES mark and Lanham Act violations, awarding TGP treble damages it has suffered and will suffer

1  therefore, all profits wrongfully derived thereby, and prejudgment interest
2  pursuant to 15 U.S.C. §§ 1114 and 1117, and permanently enjoining
3  O'Keeffe's, its agents, servants, employees, and attorneys, and all other
4  persons in active concert or participation with them, from using the
5  SAFTIFIRE FRAMES mark and any variant thereof that is confusingly
6  similar to TGP's registered FIREFRAMES mark pursuant to 15 U.S.C.
7  § 1116;

8  D.  On TGP's Sixth Counterclaim, for O'Keeffe's false advertising and unlawful
9  trade practices, awarding TGP treble damages it has suffered and will suffer
10  therefore, all profits wrongfully derived thereby, exemplary damages, and
11  prejudgment interest pursuant to 15 U.S.C. §§ 1114 and 1117 and California
12  Business & Professions Code §§ 17202, 17205 and 17534, and permanently
13  enjoining O'Keeffe's, its agents, servants, employees, and attorneys, and all
14  other persons in active concert or participation with them, from mislabeling
15  products to give the impression they satisfy fire and safety requirements when
16  they do not pursuant to 15 U.S.C. § 1116 and California Business &
17  Professions Code §§ 17203 and 17535;

18  E.  Awarding TGP its costs and reasonable attorneys' fees incurred herein under
19  15 U.S.C. § 1117 and California Business & Professions Code §§ 17202 and
20  17534;

21  F.  Awarding TGP its costs and reasonable attorneys' fees incurred herein under
22  35 U.S.C. § 285 because this is an exceptional case, and under 15 U.S.C.
23  § 1117 and California Business & Professions Code §§ 17202 and 17534; and

24  G.  For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Technical Glass Products requests a jury trial on all issues triable by right to a jury.

Dated this 7th day of August, 2007

By: s/Jeffrey S. Love
Jeffrey S. Love
jeffrey.love@klarquist.com
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204-2988
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301

Eric L. Wesenberg
ewesenberg@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Attorneys for Defendant Technical Glass Products

**PROOF OF SERVICE**

I am one of the attorneys for Defendant Technical Glass Products ("TGP") in this action. On September 7, 2007, I caused to be served on the following persons:

**ANSWER, DEFENSES AND COUNTERCLAIMS**
**OF DEFENDANT TECHNICAL GLASS PRODUCTS**

| | |
|---|---|
| Mark I. Schickman | David John Massey Pitman |
| mis@freelandlaw.com | dpitman@fulpat.com |
| Daniel T. Bernhard | FULWIDER PATTON LLP |
| bernhard@freelandlaw.com | 6060 Center Drive, 10th Floor |
| FREELAND COOPER & FOREMAN LLP | Los Angeles, CA 90045 |
| 150 Spear Street, Suite 1800 | Telephone: 310-242-2662 |
| San Francisco, CA 94105 | Facsimile: 310-824-9696 |
| Telephone: 415-541-0200 | |
| Facsimile: 415-495-4332 | Attorneys for Defendant Anemostat |
| Attorneys for Plaintiff O'Keeffe's, Inc. | |

[x] **(BY ELECTRONIC MEANS)** I caused such document to be transmitted by electronic mail to the offices of the addressees.

Executed on September 7, 2007, at Portland, Oregon.

I declare that I am a member of the bar of this court at whose direction this service was made.

                                                 s/Jeffrey S. Love_____
                                                 Jeffrey S. Love