Mark I. Schickman  (CSB #62653)
Daniel T. Bernhard  (CSB #104229)
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Telephone:  (415) 541-0200
Facsimile:  (415) 495-4332

Attorneys for Plaintiff, Counterdefendant
and Counterclaimant O'KEEFFE'S, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| O'KEEFFE'S, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>TECHNICAL GLASS PRODUCTS, et al.,<br><br>        Defendants.<br><br>And Related Actions. | CASE NO.:  C 07-cv-03535 JF<br><br>**PLAINTIFF O'KEEFFE'S, INC.'S ANSWER TO DEFENDANT TECHNICAL GLASS PRODUCTS' COUNTERCLAIMS; AND COUNTERCLAIMS AGAINST DEFENDANT TECHNICAL GLASS PRODUCTS AND THIRD PARTY CLAIMS AGAINST UNDERWRITERS LABORATORIES, INC.** |

Plaintiff and counterdefendant O'KEEFFE'S, INC. ("O'Keeffe's" or "Plaintiff") hereby admits, denies, avers and alleges  as follows in response to the claims alleged in the Counterclaim of defendant Technical Glass Products ("TGP").

## ANSWER TO COUNTERCLAIM

### Parties

1.     Plaintiff admits the allegations contained in paragraph 1 of the Counterclaim.

2.     Plaintiff admits the allegations contained in paragraph 2 of the Counterclaim.

///

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**Jurisdiction**

3.      Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Counterclaim, and on that basis denies them.

4.      Plaintiff denies the allegations contained in paragraph 4 of the Counterclaim, and allege that it is owner of the '906 patent.

5.      Plaintiff admits the allegations contained in paragraph 5 of the Counterclaim, except as to the extent that the pleadings at issue speak for themselves.

**First Counterclaim – Declaration of Noninfringement**

6.      Plaintiff realleges the admissions, denials and assertions contained in its responses to ¶¶ 1-5, inclusive.

7.      Plaintiff denies the allegations contained in paragraph 7 of the Counterclaim.

8.      Plaintiff denies the allegations contained in paragraph 8 of the Counterclaim.

9.      Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Counterclaim, and on that basis denies them.

**Second Counterclaim – Declaration of Patent Invalidity**

10.     Plaintiff realleges the admissions, denials and assertions contained in its responses to ¶¶ 1-9, inclusive.

11.     Plaintiff denies the allegations contained in paragraph 11 of the Counterclaim.

12.     Plaintiff denies the allegations contained in paragraph 12 of the Counterclaim.

13.     Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Counterclaim, and on that basis denies them.

**Third Counterclaim – Declaration of Patent Unenforceability**

14.     Plaintiff realleges the admissions, denials and assertions contained in its responses to ¶¶ 1-13, inclusive.

15.     Plaintiff denies the allegations contained in paragraph 15 of the Counterclaim.

16.     Plaintiff denies the allegations contained in paragraph 16 of the Counterclaim.

17.     Plaintiff denies the allegations contained in paragraph 17 of the Counterclaim.

PLAINTIFF'S ANSWER TO DEF. TGP'S COUNTERCLAIM; COUNTERCLAIM AGAINST TGP; THIRD PARTY CLAIM AGAINST DEF. UL
Case No. 07 cv-03535 JF
{00111748-3}

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

18.     Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Counterclaim, and on that basis denies them.

19.     Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Counterclaim, and on that basis denies them.

20.     Plaintiff admits that attorneys at Fliesler Meyer LLP prosecuted the '906 patent. Except as so expressly admitted, Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Counterclaim, and on that basis denies them.

21.     Plaintiff denies the allegations contained in paragraph 21 of the Counterclaim.

22.     Plaintiff denies the allegations contained in paragraph 22 of the Counterclaim.

23.     Plaintiff denies the allegations contained in paragraph 23 of the Counterclaim.

24.     Plaintiff denies the allegations contained in paragraph 24 of the Counterclaim.

25.     Plaintiff admits the allegations contained in paragraph 25 of the Counterclaim.

26.     Plaintiff denies the allegations contained in paragraph 26 of the Counterclaim.

27.     Plaintiff alleges that the '620 patent speaks for itself and objects to its characterization.

28.     Plaintiff denies the allegations contained in paragraph 28 of the Counterclaim.

29.     Plaintiff admits that claim 1 of the '906 patent states "[a] fire resistant safety glass, consisting essentially of: a piece of wire glass; and a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs. and further wherein the fire resistant film contains PET", that claims 2 of the '906 patent states "[t]he fire resistant safety glass of claim 1, further comprising a coloring agent", that claim 3 of the '906 patent states "[t]he fire resistant safety wire glass of claim 1, wherein said fire resistant film is a reflective film", that claim 4 of the '906 patent states "[t]he fire resistant safety wire glass of claim 1, wherein said fire resistant film comprises a metal", that Claim 5 of the '906 patent states "[t]he fire resistant safety wire glass of claim 4, wherein said metal comprises stainless steel or read[sic]", that claim 6 of the '906 patent states "[a] method of manufacturing a fire resistant safety glass, consisting essentially of the steps of: providing one sheet of wire glass; and adhering a fire resistant film of PET to said sheet of wire glass sufficient to impart to said fire resistant safety glass an impact resistance of about 100 foot lbs to about 4000 foot lbs" and denies the allegations in paragraph 29 in all other respects.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

3

1    30.    Plaintiff denies the allegations contained in paragraph 30 of the Counterclaim.

2    31.    Plaintiff admits that claim 4 of the '906 patent states "[t]he fire resistant safety wire

3    glass of claim 1, wherein said fire resistant film comprises a metal", that Claim 5 of the '906 patent

4    states "[t]he fire resistant safety wire glass of claim 4, wherein said metal comprises stainless steel or

5    read[sic]" and denies the allegations contained in paragraph 31 in all other respects.

6    32.    Plaintiff denies the allegations contained in paragraph 32 of the Counterclaim.

7    33.    Plaintiff does not understand the allegations contained in paragraph 33 of the

8    Counterclaim, and on that basis denies them.

9    34.    Plaintiff denies the allegations contained in paragraph 34 of the Counterclaim.

10    35.    Plaintiff denies the allegations contained in paragraph 35 of the Counterclaim.

11    36.    Plaintiff denies the allegations contained in paragraph 36 of the Counterclaim.

12    37.    Plaintiff denies the allegations contained in paragraph 37 of the Counterclaim.

13    38.    Plaintiff denies the allegations contained in paragraph 38 of the Counterclaim, and on

14    that basis denies them.  Plaintiff further alleges that the document identified as Exhibit A speaks for

15    itself, and objects to its characterization.

16    39.    Plaintiff denies the allegations contained in paragraph 39 of the Counterclaim.

17    40.    Plaintiff denies the allegations contained in paragraph 40 of the Counterclaim.

18    41.    Plaintiff denies the allegations contained in paragraph 41 of the Counterclaim.

19    42.    Plaintiff admits that it was "aware of features of TGP's FireLite NT product" at various

20    times. Except as expressly admitted, Plaintiff denies the allegations contained in paragraph 42 of the

21    Counterclaim.

22    43.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the

23    allegations contained in paragraph 43 of the Counterclaim, and on that basis denies them.

24    44.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the

25    allegations contained in paragraph 44 of the Counterclaim, and on that basis denies them.

26    / / /

27    / / /

28

PLAINTIFF'S ANSWER TO DEF. TGP'S COUNTERCLAIM; COUNTERCLAIM AGAINST TGP; THIRD PARTY CLAIM
AGAINST DEF. UL
Case No. 07 cv-03535 JF
{00111748-3}

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    45.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the

2    allegations contained in paragraph 45 of the Counterclaim, and on that basis denies them. Plaintiff

3    further alleges that the document attached as Exhibit B speaks for itself, and Plaintiff objects to

4    characterizations of it.

5    46.    Plaintiff denies that Scotchshield was prior art to the '906 patent. Except as expressly

6    denied, Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the

7    allegations contained in paragraph 46 of the Counterclaim, and on that basis denies them.

8    47.    Plaintiff lacks information or knowledge sufficient to forma a belief as to the truth of

9    the allegations contained in paragraph 47 of the Counterclaim, and on that basis denies them.

10    48.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the

11    allegations contained in paragraph 48 of the Counterclaim, and on that basis denies them

12    49.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the

13    allegations contained in paragraph 49 of the Counterclaim, and on that basis denies them.

14    50.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the

15    allegations contained in paragraph 50 of the Counterclaim, and on that basis denies them.

16    51.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the

17    allegations contained in paragraph 51 of the Counterclaim, and on that basis denies them.

18    52.    Plaintiff denies the allegations contained in paragraph 52 of the Counterclaim.

19    53.    Plaintiff denies the allegations contained in paragraph 53 of the Counterclaim.

20    54.    Plaintiff admits that it did not disclose any references directly to USPTO. Except as

21    expressly admitted, Plaintiff denies the allegations contained in paragraph 54 of the Counterclaim.

22    55.    Plaintiff denies the allegations contained in paragraph 55 of the Counterclaim.

23    56.    Plaintiff denies the allegations contained in paragraph 56 of the Counterclaim.

24    57.    Plaintiff denies the allegations contained in paragraph 57 of the Counterclaim.

25    58.    Plaintiff denies the allegations contained in paragraph 58 of the Counterclaim.

26    59.    Plaintiff denies the allegations contained in paragraph 59 of the Counterclaim.

27    60.    Plaintiff denies the allegations contained in paragraph 60 of the Counterclaim.

28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

5

### Fourth Counterclaim – Trademark Infringement

61.    Plaintiff realleges the admissions, denials, averments and assertions contained in its responses to ¶¶ 1-60, inclusive.

62.    Plaintiff denies the allegations contained in paragraph 62 of the Counterclaim, and on that basis denies them.

63.    Plaintiff denies the allegations contained in paragraph 63 of the Counterclaim. Plaintiff further alleges that the documents attached as Exhibits C and D speak for themselves, and Plaintiff objects to the characterizations of those documents.

64.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 64 of the Counterclaim, and on that basis denies them. Plaintiff further alleges that the documents attached as Exhibits E-H speak for themselves, and Plaintiff objects to the characterizations of those documents.

65.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 65 of the Counterclaim, and on that basis denies them.

66.    Plaintiff denies the allegations contained in paragraph 66 of the Counterclaim.

67.    Plaintiff denies the allegations and characterizations contained in paragraph 67 of the Counterclaim, and further alleges that Exhibit I referenced in the allegations speaks for itself.

68.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegation that "a Google database search for "FIREFRAMES" returns a page that features a link to http://www.safti.com/..."  and on that basis denies it.  Plaintiff denies the remaining allegations contained in paragraph 68 of the Counterclaim, and further alleges that Exhibit J referenced in the paragraph speaks for itself.

69.    Plaintiff denies the allegations contained in paragraph 69 of the Counterclaim.

70.    Plaintiff denies the allegations contained in paragraph 70 of the Counterclaim.

71.    Plaintiff denies the allegations contained in paragraph 71 of the Counterclaim.

72.    Plaintiff denies the allegations contained in paragraph 72 of the Counterclaim.

73.    Plaintiff denies the allegations contained in paragraph 73 of the Counterclaim.

74.    Plaintiff denies the allegations contained in paragraph 74 of the Counterclaim.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

PLAINTIFF'S ANSWER TO DEF. TGP'S COUNTERCLAIM; COUNTERCLAIM AGAINST TGP; THIRD PARTY CLAIM AGAINST DEF. UL
Case No. 07 cv-03535 JF
{00111748-3}

75.    Plaintiff denies the allegations contained in paragraph 75 of the Counterclaim.

76.    Plaintiff denies the allegations contained in paragraph 76 of the Counterclaim.

77.    Plaintiff denies the allegations contained in paragraph 77 of the Counterclaim.

### Fifth Counterclaim – Section 43(A) Lanham Act Violations

78.    Plaintiff realleges the admissions, denials, averments and assertions contained in its responses to ¶¶ 1-77, inclusive.

79.    Plaintiff denies the allegations contained in paragraph 79 of the Counterclaim.

80.    Plaintiff denies the allegations contained in paragraph 80 of the Counterclaim.

81.    Plaintiff denies the allegations contained in paragraph 81 of the Counterclaim.

### Sixth Counterclaim – False Advertising And Unlawful Trade Practices

82.    Plaintiff realleges the admissions, denials, averments and assertions contained in its responses to ¶¶ 1-81, inclusive.

83.    Plaintiff admits the allegations contained in paragraph 83 of the Counterclaim.

84.    Plaintiff admits that its SuperLite I-XL product has not passed the "hose stream" test. Except as expressly admitted, Plaintiff denies the remaining allegations contained in paragraph 84 of the Counterclaim.

85.    Plaintiff denies the allegations contained in paragraph 85 of the Counterclaim.

86.    Plaintiff admits the allegations contained in paragraph 86 of the Counterclaim.

87.    Plaintiff admits the allegations contained in paragraph 87 of the Counterclaim.

88.    Plaintiff denies the allegations contained in paragraph 88 of the Counterclaim.

89.    Plaintiff lacks information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 89 of the Counterclaim, and on that basis denies them.

90.    Plaintiff denies the allegations contained in paragraph 90 of the Counterclaim.

91.    Plaintiff denies the allegations contained in paragraph 91 of the Counterclaim.

92.    Plaintiff denies the allegations contained in paragraph 92 of the Counterclaim.

93.    Plaintiff denies the allegations contained in paragraph 93 of the Counterclaim.

94.    Plaintiff denies the allegations contained in paragraph 94 of the Counterclaim.

95.    Plaintiff denies the allegations contained in paragraph 95 of the Counterclaim.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

7

96.    Plaintiff denies the allegations contained in paragraph 96 of the Counterclaim.

97.    Plaintiff denies the allegations contained in paragraph 97 of the Counterclaim.

98.    Plaintiff denies the allegations contained in paragraph 98 of the Counterclaim.

99.    Plaintiff denies the allegations contained in paragraph 99 of the Counterclaim.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1.    The Counterclaims alleged by Defendant TGP fail to state any claim upon which relief can be granted against O'Keeffe's.

### SECOND AFFIRMATIVE DEFENSE

2.    TGP lacks standing to assert the Counterclaims it purports to allege against O'Keeffe's.

### THIRD AFFIRMATIVE DEFENSE

3.    The Court lacks subject matter jurisdiction over TGP's purported Counterclaims.

### FOURTH AFFIRMATIVE DEFENSE

4.    TGP's purported Counterclaims are barred by the equitable doctrine of unclean hands in that TGP misrepresented material facts to the PTO in its trademark registrations, as alleged in Plaintiff's Affirmative Defenses Six through Ten.

### FIFTH AFFIRMATIVE DEFENSE

5.    Trademark Registration Nos. 2,162,531 and 2,529,865 alleged in TGP's Fourth and Fifth Counterclaims were improperly issued by the U.S. Patent and Trademark Office in that said alleged trademark is merely descriptive of the goods of TGP and the mark has not become distinctive of TGP's goods in interstate commerce.

### SIXTH AFFIRMATIVE DEFENSE

6.    Trademark Registration Nos. 2,162,531 alleged in the Fourth and Fifth Claims Counterclaims was applied for and granted to Ferche Millwork, Inc. for fire-resistant wooden door jambs. The Trademark was purportedly assigned by Ferche Millwork, Inc. to TGP by an assignment executed March 6, 2000. However, on information and belief, Ferche Millwork, Inc. continued to manufacture and sell fire-resistant wooden door jambs after the purported assignment. On information and belief, Ferche Millwork, Inc. continues to use the term "Fireframes" in connection with its fire-

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

8

resistant wooden door jambs to this day. Thus, the purported assignment was an improper assignment in gross of the trademark. For these reasons the purported assignment is null and void and to no effect. For these reasons, the registration is similarly null and void and of no effect.

### SEVENTH AFFIRMATIVE DEFENSE

7.    Trademark Registration Nos. 2,162,531 alleged in TGP's Fourth and Fifth Counterclaims was renewed by the U.S. Patent and Trademark Office in reliance upon the truth of TGP's President's statement under oath on February 20, 2004 that the mark FIREFRAMES had been in continuous use for five years from the date of registration or publication. Upon information and belief, TGP's President made that representation knowing it was false at the time made in that the FIREFRAMES mark was not in continuous use for five years from the date of registration or publication. Upon further information and belief, the mark FIREFRAMES was not in continuous use by Assignor Ferche Millwork, Inc. in the period prior to the purported March, 2000 assignment to TGP. Upon further information and belief, the mark FIREFRAMES was not put into use by TGP with respect to fire-resistant wooden door jambs until TGP launched their fire-rated hardwood frame product in about September 2002, and TGP's President made his false representation with the intent to induce the U.S. Patent and Trademark Office to renew the trademark registration. Reasonably relying upon the truth of said representation, the U.S. Patent and Trademark Office renewed U.S. Trademark Registration No. 2,162,531. For these reasons, the registration is null and void and of no effect.

### EIGHTH AFFIRMATIVE DEFENSE

8.    Upon information and belief, any trademark rights that TGP may have obtained in Trademark Registration Nos. 2,162,531 had been abandoned prior to the filing by O'Keeffe's of U.S. Trademark Application Serial No. 78/886,746, and as of the date that O'Keeffe's commenced use of the designations "SAFTIFIRE" and "SAFTIFIRE Frames." Hence, the rights of O'Keeffe's to use those designations are superior to those of TGP.

### NINTH AFFIRMATIVE DEFENSE

9.    Trademark Registration No. 2,529,865 alleged in the Fourth and Fifth Counterclaims was granted by the U.S. Patent and Trademark Office in reliance upon the truth of TGP's President's statement under oath on February 20, 2004 that TGP owned U.S. Trademark registration 2,162,531. Upon information and belief, TGP's President made his statement knowing it was false at the time, in that the procurement of the FIREFRAMES mark from Ferche Millwork, Inc. by TGP was invalid.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    Upon further information and belief, TGP's President made the false representation with the intent to

2    induce the U.S. Patent and Trademark Office to grant the trademark registration. TGP's President also

3    omitted to disclose to the U.S. Patent and Trademark Office the continued use of the FIREFRAMES

4    mark by the purported assignor Ferche Millwork, Inc. Reasonably relying upon the truth of the

5    representations of TGP's President, the U.S. Patent and Trademark Office granted U.S. Trademark

     Registration No. 2,529,865. For these reasons, said registration is null and void and of no effect.

6

                              **TENTH AFFIRMATIVE DEFENSE**

7        10.    Trademark Registration Nos. 2,162,531 and 2,529,865 alleged in TGP's Fourth and

8    Fifth Counterclaims are a composite of two descriptive terms "fire" and "frame." As such TGP's

9    rights in the marks (if any) cannot be asserted against O'Keeffe's' use of the descriptive terms "fire"

10   and "frame" other than in the form of the mark FIREFRAMES which is not used by O'Keeffe's. The

11   U.S. Patent and Trademark Office would not have registered the trademark "FIRE FRAMES" as it

12   consists entirely of descriptive terms. TGP cannot therefore assert the mark FIREFRAMES against

13   O'Keeffe's for use of the mark SAFTIFIRE in connection with frames. To do so is beyond the scope

     of the trademark as "frames" standing alone should be treated as if specifically disclaimed.

14

15       WHERFORE, Plaintiff O'Keeffe's, Inc. prays for the following relief:

16       1.    That Counterclaimant TGP take nothing by its Counterclaims herein;

17       2.    That the Counterclaims, and each of them, be dismissed on the merits and judgment be

     entered on the Counterclaims in favor of O'Keeffe's and against TGP;

18

19       3.    That O'Keeffe's be awarded its costs incurred in defending the Counterclaims; and

20       4.    That the Court award additional relief to O'Keeffe's as the Court deems just and proper.

21

22                                    **COUNTERCLAIM**

23       Plaintiff,  Counterdefendant  and  Counterclaimant  O'Keeffe's,  Inc.  ("Plaintiff"  or

24   "O'Keeffe's") hereby alleges for its compulsory Counterclaim against Defendant and Counterclaimant

25   Technical Glass Products, and for its third-party claim against defendant Underwriters Laboratories,

     Inc., as follows:

26

27   / / /

28   / / /

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1

**PARTIES**

2    1.    Plaintiff, Counterdefendant and Counterclaimant O'Keeffe's is a California

3    corporation with its principal place of business in San Francisco, California. O'Keeffe's is a leading

4    manufacturer and distributor of safety-rated and fire-rated architectural glazing products.

5    2.    Defendant, Counterclaimant and Counterdefendant Technical Glass Products is

6    headquartered in Kirkland, Washington as J.R. Four, Ltd., ("TGP") and does business in this judicial

7    district and elsewhere. It fabricates and sells fire-rated and safety-rated glazing products.

8    3.    Third Party Defendant Underwriters Laboratories, Inc. ("UL") is a nationally known

9    and established independent testing and rating service focused on safety and consumer matters. It

10    transacts a variety of business nationwide, including in this judicial district.

11

12

**JURISDICTION AND VENUE**

13    4.    This Court has jurisdiction over these Counterclaims, which are compulsory as to

14    TGP, pursuant to Rule 13 of the Federal Rules of Civil Procedure, and which are third party claims as

15    to UL, pursuant to Rules 19 and 20 of the Federal Rules of Civil Procedure. These Counterclaims

16    arise under 35 U.S.C., 15 U.S.C. §§ 1051-1127, the laws of the state of California, and the common

17    law. This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C.

18    §§ 1331, 1338, 1367, 2201, 2202 and 15 U.S.C. § 1121.

19

**BACKGROUND FACTS**

20    5.    These Counterclaims concern certain safety glazing and fire rated glazing materials

21    and their uses and widespread applications. For many years O'Keeffe's has been an industry leader in

22    developing new and innovative glazing products. In that activity, O'Keeffe's developed a product

23    known as SuperLite I-XL, which has been approved by Warnock-Hersey ("WH") an independent and

24    nationally known safety testing and rating enterprise, as a monolithic (i.e. directional) and insulated

25    (i.e., non-directional) glazing up to 60 minutes. SuperLite I-XL was created, in part, to address the

26    critical dangers of radiant heat. Plaintiff has fabricated, marketed and sold SuperLite I-XL since 1996.

27    SuperLite I-XL is a fire rated glazing material with a 20, 45 and 60-minute rating without hose stream.

28    It bears a Warnock Hersey fire rating listing and label that specifies this rating. A true and correct

11

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   exemplar of the WH rating as applied to SuperLite I-XL is attached hereto as Exhibit A.  A true and

2   correct exemplar of the WH listing for SuperLite I-XL published by WH in its certification directory

3   is attached hereto as Exhibit B.

4       6.      Radiant heat is invisible, and can spontaneously ignite combustible materials on the

5   non-fire side of walls, windows and doors. Limiting the temperature on the non-fire side of such

6   structures and installations can be critical to saving lives and property. Existing U.S. codes do not

7   require certain types of fire-rated glazing, such as 45 minute glazing, to also provide radiant heat

8   protection. Consequently, various so-called "approved" glazing materials provide little or no

9   protection against one of the greatest dangers in any fire: radiant heat.

10      7.      SuperLite I-XL has a reflective coating that causes radiant heat waves to bounce-

11  back to the fire.  Like all fire rated glazing products it has specific attributes and limits which make it

12  the best choice for certain applications, rather than another product. For use in specified architectural

13  structures any fire-rated glazing materials must comply with the applicable code provisions enforced

14  by the local authority having jurisdiction, and must meet the testing and performance criteria required

15  by the authority having jurisdiction for its classification.

16      8.      Building codes require glazing in doors and other areas subject to human impact

17  ("hazardous locations") to meet CPSC impact standards. Generally, for a glazing material to be

18  accepted for fire-rated uses, the material must be tested for and meet the performance criteria and

19  conditions of acceptance as follows: for fire-rated door assemblies, the applicable fire test

20  requirements  are set forth in NFPA, Standard Methods of Fire Tests of Door Assemblies, ASTM

21  E2010, and Uniform Building Code ("UBC") 7-2; for window assemblies, the applicable code

22  requirements are set forth in NFPA 257, ASTM E2072 and UBC 7-4; and for wall assemblies, the

23  applicable code requirements are set forth in NFPA 251, Standard Methods of Tests of Fire Resistance

24  of Building Construction and Material, ASTME 119, and UBC 7-1.  Each set of standards has

25  specified testing protocols and conditions of acceptance, which the authority having jurisdiction may

26  specify in whole or in part, as deemed necessary for the specific application.

27      9.      Most of these standards, and their applications for various products, specify hourly

28  or minute ratings, i.e., 20-minutes, 45-minutes, 60-minutes, 90-minutes, 120-minutes or 180-minutes.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  These designations mean that the material has passed the fire endurance portion of the fire test for the
2  specified time period.

3      10.     The CPSC established a safety glazing impact performance standard in 1977, CPSC
4  16 CFR 1201, which requires glazing materials less than 9 sq. ft. to meet an impact load of 150 ft. lbs
5  for category I, and 400 ft. lbs to meet Category II. The CPSC rejected the lower 100 ft. lb test allowed
6  by ANSI Z97.1, which is a voluntary consensus safety glazing standard published by the American
7  National Standards Institute, because the CPSC determined that the lower impact standard was
8  inadequate to protect anyone except children under 5, and rejected it as an unacceptable safety
9  standard for any application.

10     11.     In addition to SuperLite I-XL, O'Keeffe's manufactures, fabricates, markets and sells
11  other fire and/or safety rated products that provide objectively equivalent or superior fire and safety
12  protection, compared to TGPs products. O'Keeffe's fabricates and sells a product called SuperLite II-
13  XL that has insulation properties and achieves full fire-resistance, pursuant to ASTM E119 fire test
14  acceptance criterion. It is created from two sheets of glass with the space between filled with a gel
15  composed of a polymer, inorganic salt and water. The thickness of the gel is varied to achieve
16  different periods of fire resistance.  SuperLite II-XL is available with UL labels for 45 minutes
17  through 120 minute ratings.

18     12.     Since its development and introduction into the market, SuperLite I-XL has been
19  consistently attacked publicly and indirectly by TGP, among others. TGP has published and
20  disseminated, or caused to be published and disseminated, materially false and misleading information
21  about SuperLite I-XL, in addition to other O'Keeffe's products. In particular, TGP has misrepresented
22  the following, *inter alia*:

23     (a)     SuperLite I-XL is hazardous or somehow otherwise deficient for its standard and
24  accepted uses because it is "directional," meaning that the reflective coating is applied to only one side
25  of the two exposed glass surfaces, and thus "if a fire breaks out on the non-coated side of the glass
26  there is a high probability that the glass will collapse, providing no protection at all...";

27     (b)     SuperLite I-XL is hazardous or somehow otherwise deficient for general use because it
28  has not passed the "hose-stream" test which is "critical" to a glazing product's fire-safety

13

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  characteristics and features.

3      (c)    SuperLite I-XL fails to comply with, and cannot meet various standards for fire-rated
4  materials, including ASTM E-119 and UL 263. True and correct materials containing these
5  representative misrepresentations and falsities are attached hereto as Exhibit C. TGP has further
6  represented that SuperLite I-XL will fail when water is thrown on it.

7      13.    These assertions are untrue, as are the other contentions and assertions directed at
8  SuperLite I-XL. The "hose-stream" test was first devised in the late 1880's to test the integrity of iron
9  structures when rapidly cooled by water.  The hose stream test was never intended to measure the
10  thermal shock resistance of glazing materials exposed to fire suppression sprinklers.  Not only was the
11  test not designed for non-structural elements, but it is not a required test for fire-rated wall assemblies
12  under 60 minutes.  NFPA 251 and ASTM E119 specifically exclude fire rated construction of less
13  than one hour from the hose stream test requirements.  45 minute glazing is most often used in egress
14  corridors, which usually measure six to eight feet in width.  The hose stream test requires the hose to
15  be positioned 20 feet from the glazing. No fire-rated glass manufacturer has demonstrated that any
16  product can withstand the hose-stream test methods from such a close distance.  Moreover, the United
17  States and Canada are the only countries requiring the hose-stream test for fire protective glazing; no
18  other developed country requires it today.  Today, the hose-stream test is largely a relic of outdated
19  testing procedures that fail to account for modern materials, designs and application, and it is
20  promoted by competitive industry interests that seek to retain market share of higher-priced materials,
21  to the detriment of the consumer.

22      14.    TGP's misrepresentations and assertions are designed and intended by TGP to
23  undermine and destroy SuperLite I-XL's reputation and acceptance in the marketplace. TGP has
24  wrongfully asserted that the hose stream test is a test for thermal shock resistance to fire sprinklers,
25  implying or alleging that products not tested to hose stream will fail when fire sprinklers are activated.
26  TGP's chief motivation for its false statements and representations is simple competition. TGP has
27  developed and offers similar products, FireLite, FireLite Plus and FireLite NT (collectively
28  "FireLite") which competes with SuperLite I-XL in the 20 minute rated market, and with other

14

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  products in other markets. Although offered by TGP as an alternative to SuperLite I-XL, FireLite is

2  neither comparable nor equivalent.

3       15.    FireLite is a ceramic glazing product that is marketed and sold by TGP, and

4  subsequently used and employed by buyers, in applications and for purposes that are fundamentally

5  unsafe and that pose immediate health and safety risks to both users and the public. Ceramic products

6  such as FireLite were originally used in fireplace stove panels, and Ceramic's physical composition

7  allows radiant heat to pass through. TGP typically omits critical and essential performance limitations

8  and shortcomings of its ceramic products from the marketing and sales of FireLite. As a ceramic

9  product, FireLite offers very little if any protection against dangerous radiant heat and the unique

10  hazards it poses. FireLite carries a 60-90 minute rating from UL, even though the product is not

11  permitted by standard codes for the typical uses and applications made of it. Attached hereto as

12  Exhibit D is a true and correct copy of the UL FireLite listing. The UL listing does not identify limits

13  on use, or that such use requires approval of the authority having jurisdiction.

14       16.    TGP has consistently and affirmatively misrepresented the code applicability and

15  standards for FireLite. Because of its inability to resist radiant heat, FireLite is not appropriate for

16  many uses in common areas or other public or emergency areas. For example, building codes do not

17  permit fire-protection-rated glazing in 60-90 minute door sidelights and transoms; nevertheless, it is

18  commonly sold by TGP and used for such purposes, with TGP's approval and endorsement, in

19  disregard of the fire safety threat it poses because of excessive radiant heat transfer. Similarly,

20  FireLite is not permitted in fire-rated 60-90 minute doors in panels of more than 100 square inches.

21  Nevertheless, it is commonly sold by TGP and used for such purposes, and such is known to TGP,

22  again with its approval. In this manner FireLite is commonly used for purposes and applications for

23  which it is not approved, and most important, for which it is not safe. Using FireLite for vision panels

24  of more than 100 square inches in stairwell and exit enclosure doors intended to protect the life of

25  safety of occupants attempting to exit the building is not approved, and is especially hazardous in that

26  it poses a serious risk of injury to occupants from radiant heat in a fire.

27       17.    The purpose behind TGP's misrepresentations about FireLite has been, and continues

28  to be, to increase the use and sales of FireLite throughout the market, and thereby deprive O'Keeffe's

15

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    of sales of O'Keeffe's SuperLite I-XL and SuperLite II-XL. Upon information and belief, TGP's

2    FireLite represents approximately 75% of the fire-rate glazing in this segment of the market, and TGP

3    has used this market dominance, and has sought to use its dominance, to limit O'Keeffe's sales and

4    market acceptance, and has succeeded in doing so.

5         18.    Upon information and belief, TGP has positioned FireLite to compete directly with

6    O'Keeffe's SuperLite II-XL product, although FireLite is not an equivalent product, and is widely used

7    in applications for which it is not intended, permitted or safe. By contrast, SuperLite II-XL is a fire-

8    rated and hose-stream rated product approved and suitable for a wide range of applications, including

9    all applications for which FireLite is approved.

10        19.    Plaintiff is informed and believes, and thereon alleges, that various municipal and other

11   authorities having jurisdiction over building code enforcement rely on the testing evaluations and

12   reports of certified independent testing agencies, including Defendant UL, to determine whether a

13   product meets applicable performance standards. UL has historically been the listing agency for

14   certain types of fire-rated glazing materials, including ceramic products such as FireLite. UL holds

15   itself out to the public as "independent, not-for-profit product safety testing and certification

16   organization." UL Has represented to the public that it has "developed more than 800 Standards for

17   Safety. Our Standards of Safety are essential to helping ensure public safety and confidence ...."

18   True and correct copies of representative UL public statements about its role and mission, as obtained

19   and available from the UL website, are attached hereto as Exhibit E.

20        20.    Plaintiff is further informed and believes, and thereon alleges, that to obtain

21   acceptance from the various building code and enforcement authorities identified above, UL has

22   represented to those entities that it will test products and report test results in conformance with the

23   codes and standards recognized by the particular entity, such UBC Standard Nos. 7-1, 7-2, 7-3, 7-4

24   and 7-7, ASTM E119, ASTM 2010 and 2072, NFPA 251, 252, 257, and NFPA 80.

25        21.    UL has issued and publishes certain listings and markings for FireLite products

26   indicating that the products meet temperature rise limits for doors, when in fact such products do not

27   limit temperature rise.

28        22.    TGP has obtained from UL certain ratings, certifications and listings for Fire-Lite,

16

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   which ratings, either expressly or impliedly, represent that it not only meets the specific standards

2   referenced in the listing, but that it also is acceptable for listed uses, including, without limitation,

3   applications in, and adjacent to, doors. UL states no limitations on accepted uses as part of the listing,

4   or that special approval is required by the authority having jurisdiction, to alert the code enforcer and

5   end-user that the product does not meet code requirements, and may pose an unreasonable risk to life

6   safety due to the dangerous transmissions of radiant heat. Absent the UL listing and related

7   certifications, TGP's FireLite would not enjoy the acceptance it now has in the marketplace. In fact,

8   without such listing and certifications, FireLite would be not useable in many of the applications that

9   it is now used in, despite its clear unsuitability for those applications.

10          23.     UL also engages in other conduct which ignores public safety, ignores prevailing codes

11  and testing, and which directly and indirectly disrupts and damages O'Keeffe's business and reputation

12  in the market. The intent and effect of the following acts and conduct, and others, is to create a

13  preferred status for certain entities in the fire and safety glazing market, thereby resulting in

14  advantages for certain of O'Keeffe's competitors, including TGP, and disadvantages for O'Keeffe's.

15          (a)     UL lists other products for uses not approved by applicable codes. For example, UL

16  lists wired glass for use in fire doors and sidelights, even though those uses are no longer permitted by

17  code because traditional wired glass does not meet the CPSC human impact safety standards.

18  Traditional wired glass is a major competitor of products manufactured, fabricated, marketed and sold

19  by O'Keeffe's. Despite the inferior qualities of wired glass compared to modern products and

20  applications, UL has done nothing to warn code enforcers and consumer end-users that wired glass

21  used in areas subject to human impact is dangerous, and poses a serious risk of injury, and even death.

22  Upon information and belief, UL has knowledge of the thousands of injuries that have resulted from

23  impact with wired glass in fire doors and other hazardous locations.

24          (b)     UL refuses to list SuperLite I-XL for more than 20-minute applications, ostensibly

25  because the codes don't permit such uses because of hose stream requirements for 45-and 60-minute

26  applications. This rationale is not supported by the facts or UL's own policies: UL lists wired glass

27  and FireLite for uses that are not permitted by code.

28          (c)     UL has permitted its employees to appear on TGP promotional marketing videos

17

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    promoting TGP products, and addressing the hose stream test, implying that the hose stream test is

2    necessary to fire safety for glazing, and impliedly, and improperly, endorsing TGP products;

3         (d)    UL has listed TGP and other products that infringe on O'Keeffe's patented SuperLite I-

4    W, including but not limited to: Pyroshield, NT, WireLite and Safe-Wire.

5         (e)    UL omits from its listings of FireLite in 45, 60, and 90-minutes the fact that FireLite

6    allows dangerous transmission of radiant heat, which UL knows, or has reason to know, would affect

7    the final selection of product by the end-user.  Again, this is an inconsistent application of UL's

8    policies that disadvantages plaintiff. UL refuses to list SuperLite I-XL for 45/60/90 minute

9    applications because of it does not have a hose stream test, but UL lists FireLite with no temperature

10   rise limits, which poses a more substantial risk to consumers than the absence of the hose stream test.

11        (f)    UL has refused to attend and witness certain fire testing of O'Keeffe's products for

12   purposes other than UL certification of its products, even though UL holds itself out as providing

13   services to clients for purposes other than certification and listing; and

14        (g)    UL lists TGP's 20-minute rated FireGlass product, which has no hose stream test, as

15   having an OH-20 rating, although this is a building code designation for windows tested with the hose

16   stream. UL does not list plaintiff's SuperLite I or SuperLite I-XL products with an OH-20 marking.

17   Like FireGlass, these products do not have a hose stream test.

18        24.    UL has also refused to recognize those O'Keeffe's products that are tested and listed by

19   WH for installation in doors listed and labeled by UL.  That refusal requires O'Keeffe's to separately

20   test and list its glazing products with UL, so that door manufacturers can buy O'Keeffe's products for

21   sale to customers.  WH, on the other hand, does not require glazing manufacturers with UL listed

22   glazing products to be tested again, and listed and labeled by WH in order to be installed by door

23   manufacturers in WH-listed and labeled doors. The result is that UL forces manufacturers like

24   O'Keeffe's to bear the expense of re-testing and listing with it, although the Codes only require listed

25   and labeled products.

26        25.    Upon information and belief, UL has been advised that its listings of FireLite in 60 and

27   90 minute applications is confusing to authorities having jurisdiction and to the public, and has

28   resulted in the misapplication of these products in location where radiant heat is a danger.  UL has

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  failed and refused to take action to correct such misleading listing or otherwise to alert the public

2  about the potential dangers of these products.

3                          **FIRST CLAIM**
                          (Trademark Cancellation)
4                            (Against TGP)

5          26.    O'Keeffe's hereby realleges, as if fully set forth, the allegations of its Fifth, Sixth,

6  Seventh, Eighth and Ninth Affirmative Defenses, herein.

7          27.    O'Keeffe's is likely to be damaged by continued registration of TGP's U.S. Trademark

8  Registration Nos. 2,162,531 and 2,529,865 in that O'Keeffe's, since 2006 has been involved in the

9  manufacture and sale of SAFTIFIRE Frames, which are of a related nature to TGP's goods described

10  in said Registration, and which O'Keeffe's has a valid and legal right to describe by use of the term

11  FIREFRAMES registered as a trademark by TGP and to use its own registered trademark SAFTIFIRE

12  in connection with the descriptive term "frames." O'Keeffe's is likely to be damaged by continued

13  registration of said term in that the prima facie evidentiary effect of such registration tends to impair

14  O'Keeffe's right to descriptive use of said term.

15                          **SECOND CLAIM**
                          (Improper Trademark Registration)
16                            (Against TGP)

17          28.    O'Keeffe's hereby realleges, as if fully set forth, the allegations of its Fifth, Sixth,

18  Seventh and Eighth Affirmative Defenses, herein.

19          29.    O'Keeffe's has been damaged by said false and fraudulent statements and the

20  registration issued in reliance thereon in that O'Keeffe's, since 2006 continuously used the term

21  SAFTIFIRE Frames  and O'Keeffe's continued and legal use of that term will be impaired by the

22  continued registration of said mark of TGP. Moreover the term SAFTIFIRE Frames has been denied

23  registration by the U.S. Patent and Trademark Office on the Basis of TGP's fraudulently procured

24  U.S. Trademark Registration Nos. 2,162,531 and 2,529,865.

25          30.    O'Keeffe's has been further damaged by said false and fraudulent statements, and the

26  registration issued in reliance thereon, in that O'Keeffe's has lost sales to dealers who have been

27  threatened by TGP with infringement litigation and in that O'Keeffe's is forced to incur substantial

28  expenses and attorney fees in the defense of the fourth counterclaim, in a sum to be proved at trial of

                                                                                    19

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  this matter.

2       31.    TGP's procurement of registration of a trademark in the U.S. Patent Office by its false

3  and fraudulent declarations and representations makes it liable to O'Keeffe's for its damages sustained

4  in consequence thereof under 15 U.S.C. § 1120.

5                            **THIRD CLAIM**
                    (Violation of the Lanham Act, 15 U.S.C. §  1125(a))
6                          (Against TGP )

7       32.    Plaintiff repeats and re-alleges the allegations against TGP contained in Paragraphs 1

8  through 25, as if fully set forth herein.

9       33.    Through its actions as described above, TGP has violated the Lanham Act, 15 U.S.C. §

10  1125(a), by using false and misleading descriptions, omissions and representations of fact in

11  commercial advertising or promotion in connection with products and services in interstate commerce,

12  which descriptions, omissions and representations misrepresent the nature and qualities of O'Keeffe's

13  goods, services, or commercial activities, all to the damage of plaintiff.

14       34.    Among other things, TGP:

15       a.      falsely represented that their competing products, including FireLite, have a fire rating

16  that permits the use of FireLite in doors, windows and other applications; such applications are not, in

17  fact, permitted, and are, in fact, unsafe and dangerous;

18       b.      falsely represented that O'Keeffe's SuperLite I-XL was an unsafe, unreliable and

19  unpermitted fire and safety glazing product.

20       35.    At all relevant times, TGP knew that its advertising and promotional activities as

21  described above, were literally false, misleading and deceptive.  TGP has acted willfully, deliberately,

22  and in bad faith.

23       36.    TGP's conduct, including its false, misleading and deceptive advertising and

24  promotional activities, are likely to cause, and have caused, confusion, mistake, or deception among

25  the public, which has harmed and continues to harm the public.

26       37.    By reason of TGP's acts, O'Keeffe's has suffered and will continue to suffer damage to

27  its business and goodwill, and the loss of sales and profits it would have made but for TGP's  acts, in

28  an amount to be proven at trial.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

20

38.    TGP's acts, including their false, misleading, and deceptive advertising and promotional activities, have caused injury to O'Keeffe's and the general public and, unless enjoined, will continue to cause injury to O'Keeffe's and the general public. Accordingly, O'Keeffe's is entitled to temporary, preliminary, and/or permanent injunctive relief as set forth below.

39.    Moreover, because this is an exceptional case, involving calculated and willful misconduct by TGP, O'Keeffe's is entitled to recover attorney's fees against them.

**FOURTH CLAIM**
(Trade Libel)
(Against TGP )

40.    Plaintiff repeats and re-alleges the allegations against TGP contained in Paragraphs 1 through 25 and 33 through 38, as if fully set forth herein.

41.    As set forth hereinabove, TGP has published, made and disseminated statements and misrepresentations about O'Keeffe's SuperLite I-XL which are materially false and misleading. These statements were made to the market for SuperLite I-XL, and disparaged that product, and were understood as such by those who heard, read or otherwise received those statements.

42.    These statements were false and misleading at the time made in that they falsely assert that SuperLite I-XL is an unsafe, unreliable and unpermitted glazing product. These assertions were made with the purpose and for the effect of destroying the reputation and acceptance of SuperLite I-XL in the existing marketplace.

43.    As a direct and proximate result of TGP's false and misleading statements, existing and prospective customers for SuperLite I-XL have been deterred and dissuaded from purchasing SuperLite I-XL, and from otherwise dealing with O'Keeffe's for fire and safety rated glazing products. O'Keeffe's has suffered losses and damages as a direct and consequential result in an amount to be proved at trial.

**FIFTH CLAIM**
(Violation of Business & Professions Code § 17200)
(Against TGP and UL)

44.    Plaintiff repeats and re-alleges the allegations against TGP and UL contained in Paragraphs 1 through 25 and 33 through 43, as if fully set forth herein.

45.    In doing the acts alleged herein, TGP has sought to create, and did in fact create, a

21

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  environment of misinformation, falsity, and confusion about the qualities and uses of Plaintiff's

2  SuperLite I-XL. TGP's false representations and statements have sought to destroy and have in fact

3  destroyed sales and market opportunities for SuperLite I-XL, and have caused O'Keeffe's to lose

4  customers and sales and profits, especially 20-minute rated applications.

5      46.    TGP has also created an environment of misrepresentations, falsity and confusion

6  about the permitted and safe uses of TGP's FireLite.  The intent, purpose and effect of TGP's actions

7  have been to create market uses and applications for its FireLite product which are improper,

8  unpermitted and dangerous.  The result has been that TGP has obtained sales and revenues to which it

9  is not entitled.

10     47.    TGP has also worked, in concert and collaboration with UL and with its assistance,  to

11  create markets and sales opportunities for other TPG products, by misusing the UL label, and falsely

12  representing the qualities and limitations of those products.  Among other things, TPG sold a filmed

13  wired glass product, Pyroshield NT without a listing from UL, although a listing was required for the

14  applications for which Pyroshield NT was commonly sold and purchased; TPG also sold another

15  product, WireLite, without a listing from UL, although, again, such a listing was required for the

16  applications and uses for which WireLite was commonly sold and purchased.

17     48.    Defendant UL has participated in and aided TGP's actions by, *inter alia,* permitting

18  FireLite for uses and applications that are not approved by applicable building codes, and by

19  permitting the misuse of its labels and listing by TGP to promote and market other TPG products.  UL

20  has persisted in listing FireLite for certain uses for which it is unsafe given the known limitations of

21  the FireLite product.  UL has not applied its testing and reporting policies fairly and even-handedly

22  throughout the glazing industry.  Instead, UL has manipulated its practices, policies and procedures,

23  or has permitted such to be manipulated, to create biases in favor of TGP and other entities, and

24  against O'Keeffe's.  O'Keeffe's has been damaged as a result of UL's actions, and has lost customers

25  and sales as a direct result thereof.

26     49.    Defendants' conduct constitutes multiple violations of the unfair competition law under

27  California Business and Professions Code § 17200 et seq., including but not limited to the following:

28     a.    Unlawful business practices: Defendants' conduct and actions constitute unlawful

22

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    practices in violation of federal and state laws and regulations prohibiting unfair competition,

2    deceptive and misleading trade practices, and false advertising, among others, as alleged hereinabove;

3        b.    Unfair business practices: Defendants' conduct and actions constitute unfair business

4    practices in that they falsely and misleadingly portray and describe O'Keeffe's products as deficient or

5    unsafe, and falsely and misleadingly advertise TGP's products as safe and permitted, as alleged

6    hereinabove, and such practices result in a restraint on trade that denies O'Keeffe's a chance to

7    compete fairly in the market;

8        c.    Fraudulent business practices: Defendants' conduct and actions constitute fraudulent

9    business practices in that they mischaracterize the qualities and utility of O'Keeffe's products in the

10    market place, while also misrepresenting the qualities of TPG's products in misleading advertising and

11    related representations.

12        50.    Defendants' conduct has harmed and continues to harm O'Keeffe's.

13        51.    Pursuant to California Business and Professions Code § 17203, O'Keeffe's is entitled

14    to relief enjoining TGP and UL from continued violations of California Business and Professions

15    Code § 17200 et seq.

16        52.    O'Keeffe's is informed and believes and thereon alleges that TGP has been unjustly

17    enriched and has obtained gains, profits and advantages from its acts in violation of California

18    Business and Professions Code § 17200 et seq.  Such gains, profits and advantages are subject to

19    disgorgement pursuant to California Business and Professions Code § 17203, in an amount which is

20    presently unknown, but which will be proved at trial.

21        53.    As a direct and intentional consequence and design of defendants' actions, as alleged

22    hereinabove, defendants prevented competition or restricted the manufacture, sale and purchase of

23    products in the fire and safety glazing industry and market, including SuperLite I-XL and SuperLite

24    II-XL.

25        54.    As a direct consequence of defendants' actions, plaintiff has been excluded from

26    valuable opportunities with the fire and safety glazing industry, and has lost a share of that market that

27    it would otherwise have held, but for defendants' illicit and improper actions and conduct.

28        55.    As a direct and consequential result of the actions and conduct of defendants, and each

23

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  of them, Plaintiff has suffered damages in an amount to be determined at trial. Plaintiff is further

2  entitled to trebling of such actual damages as determined, and interest thereon. Plaintiff is further

3  entitled to injunctive relief, enjoining these Defendants from engaging further in illicit and unlawful

4  combinations in restraint of trade within the glazing industry.

**SIXTH CLAIM**
(California Common Law Unfair Competition)
(Against TGP and UL)

7      56.    Plaintiff repeats and re-alleges the allegations against each TGP contained in

8  Paragraphs 1 through 25 and 33 through 55, as if fully set forth herein.

9      57.    The conduct of Defendants TGP and UL constitutes unfair competition under the

10  common law of California. Such improper conduct includes, but is not limited to, the following:

11      (a)    falsely asserting that FireLite glazing is a rated and listed fire and safety product,

12  permitted in applications for which it is not permitted, and is unsafe and unsuited;

13      (b)    falsely representing that O'Keeffe's SuperLite I-XL is unsafe or unpermitted for uses

14  and applications;

15      (c)    improperly permitting UL's marks to be used and misused to promote and market

16  TGP's products that do not, in fact, meet applicable code requirements of the authority having

17  jurisdiction, resulting in lost market opportunities for O'Keeffe's;

18      (d)    UL has permitted its employees to appear in TGP promotional marketing videos

19  promoting TGP products, and addressing the hose stream test, improperly implying (i) that the hose

20  stream test is necessary to fire safety for glazing, and (ii) that UL endorses or otherwise approves TGP

21  products.

22      58.    O'Keeffe's has suffered and continues to suffer irreparable harm and injury as a result

23  of Defendants' unfair competition, and O'Keefe's lacks an adequate remedy at law, in that damages

24  are extremely difficult to ascertain, and unless injunctive relief is granted as prayed for herein,

25  Defendants will continue to incalculably injure O'Keeffe's' business, good will, and reputation.

26      59.    O'Keeffe's has been and will continue to be damaged as a result of Defendants' acts of

27  unfair competition, in an amount which is extremely difficult to calculate and which is presently

28  unknown, but will to the extent possible be proved at trial.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

24

60. O'Keeffe's is informed and believes and thereon alleges that TGP has obtained profits, revenues and advantages as a result of Defendants' acts of unfair competition. The full extent of the gains, profits and advantages to TGP is presently unknown, and will be established according to proof at trial.

61. TGP's conduct as set forth and incorporated herein has been willful, fraudulent, oppressive and malicious. O'Keeffe's is therefore entitled to punitive and exemplary damages sufficient to serve as an example and to punish TGP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff O'Keeffe's requests entry of judgment in its favor and against Defendants TGP and UL as follows:

1. In the exercise of its power under 15 U.S.C. § 1119, for the Commissioner of Patents and Trademarks to cancel the registration of TGP's U.S. Trademark Registrations Nos. 2,162,531 and 2,529,865.

2. For monetary damages according to proof at trial;

3. For temporary, preliminary and permanent injunctive relief enjoining TGP and UL, their officers, agents, servants, employees, attorneys, and affiliates, and all persons in active concert or participation with them, from engaging in further acts of improper or unlawful acts of false advertising, unfair competition and unfair trade practices;

4. For increased damages to three times the amount found or assessed by virtue of the deliberate and willful nature of Defendants' unfair competition;

5. For an award to O'Keeffe's of its costs incurred in this action, together with reasonable attorneys' fees, in accordance with 35 U.S.C. § 285 and 1125(a) and Cal. Civil Code § 3426.4;

6. For an award of prejudgment interest;

7. For an award of exemplary and punitive damages against TGP as permitted by law;

8. For an award of multiple damages, as permitted by Cal. Civil Code § 3426.3;

9. For an award of monetary and injunctive relief, return of unjust enrichment and a disgorgement of profits, under Cal. Business and Professions Code §§ 17200, et seq.; and

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

PLAINTIFF'S ANSWER TO DEF. TGP'S COUNTERCLAIM; COUNTERCLAIM AGAINST TGP; THIRD PARTY CLAIM AGAINST DEF. UL
Case No. 07 cv-03535 JF
{00111748-3}

1    10.    For such other and further relief as the Court deems just and proper.

2    11.

3

4

5    Dated: October 3, 2007                    FREELAND COOPER & FOREMAN LLP

6

7                                             By: _____

8                                                 DANIEL T. BERNHARD
                                                  Attorneys for Plaintiff and Counterclaimant
9                                                 O'Keeffes, Inc.

10

11

                              **JURY TRIAL DEMAND**
12

13

14         Plaintiff and Counterclaimant O'Keeffe's, Inc. hereby demands a jury for all claims and issues

15   so triable to a jury.

16

17   Dated: October 3, 2007                    FREELAND COOPER & FOREMAN LLP

18

19                                            By: _____

20                                                DANIEL T. BERNHARD
                                                  Attorneys for Plaintiff and Counterclaimant
21                                                O'Keeffes, Inc.

22

23

24

25

26

27

28

                                                                                            26

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

# **<u>EXHIBIT A</u>**

**SuperLite I XL** ™ by **SAFTIFIRST** ™

Fire-protection-rated glazing material fire tested under positive pressure condition. 45 / 60 minute rating tested without hose stream. CPSC Cat. II safety rating.

# EXHIBIT B

# GLAZING/GLASS

## SAFTI/O'KEEFFE'S INC. - San Francisco, CA USA

▶ **SuperLite I**
▼ **Superlite I-XL**

Superlite I-XL 1/4" thick, Tempered Glass Panel with a proprietary coating for use in Fire Doors and Fire Windows, Door Side Lights & Transoms in 45/60 minute locations without hose stream, in labeled steel frames.

**Limitations:** Specific exemption from code requirements by the Authority Having Jurisdiction required. All other Jurisdiction 20 minute without hose stream. This product does not meet the hose stream requirements of the test standards. This product protects from fire from one direction only. The identified face MUST be installed facing the direction of expected fire attack. See installation instructions.

**Allowances:** Insulated units and pattern cuts may be used.

| Superlite I-XL 1/4" - 1/2" | Rating | Max. Area CV (sq.in.) | Max. Width CV (Inches) | Max. Height CV (Inches) | Glazing Stop CV (Inches) |
|---|---|---|---|---|---|
| Steel Doors | 60 | 1485" | 23-1/4" | 67" | 5/8" |
| Side Lights | 60 | 1318-1/2" | 19" | 73-1/2" | 5/8" |
| Transom Lights | 60 | 747" | 35-1/2" | 22-1/4" | 5/8" |
| Borrowed Lights | 60 | 1296" | 36" | 36" | 5/8" |
| Borrowed Lights | 45 | 3522" | 48" | 96" | 5/8" |

*Component bearing Warnock Hersey Certification Mark.

# EXHIBIT C

# SuperLite I-XL™: Informational Bulletin

When something as important as life safety is at stake, it is critical to know as much as possible about the products you choose to install. If you're considering using SuperLite I-XL in a fire-rated opening, you need to be aware of the following information.

Below is an excerpt of the Warnock Hersey Listing for SAFTI's SuperLite I-XL. You may access this from the Warnock Hersey web site: **www.intertek-etlsemko.com**

## Superlite I-XL

Superlite I-XL 1/4" thick, Tempered Glass Panel with a proprietary coating for use in Fire Doors and Fire Windows, Door Side Lights & Transoms in 45/60 minute locations without hose stream, in labeled steel frames.

**Limitations**: Specific exemption from code requirements by the Authority Having Jurisdiction required. All other Jurisdiction 20 minute without hose stream. This product does not meet the hose stream requirements of the test standards. This product protects from fire from one direction only. The identified face MUST be installed facing the direction of expected fire attack. See installation instructions.

### NOTE THE SEVERE LIMITATIONS IN THE LISTING:

- **SuperLite I-XL does NOT meet the hose stream REQUIREMENT of the test standards.**
  In the U.S., the hose stream test is required for any fire-rated glazing to receive a rating higher than 20 minutes. This applies to every state in the country and can be found in standards such as UL 9, UL10B, UBC Standards 7-2 and 7-4, etc. A product that has not successfully passed the hose stream test has NOT met test standard requirements.

- **SuperLite I-XL provides fire protection from ONE DIRECTION ONLY. The identified face MUST be installed facing the direction of the expected fire.**
  SuperLite I-XL has a nearly invisible coating on one side. If a fire breaks out on the non-coated side of the glass, there is a high probability that glass will collapse, providing no protection at all.

**Ask yourself:**

Would you install a shower door that had not passed impact safety requirements, even if a local official approved it?

**Ask yourself:**

Can I accurately predict where a fire will start? Who will be liable if the fire starts on the "wrong" side of the glass?

---

**The office of the California State Fire Marshall issued this statement regarding SuperLite I-XL:**

*The WHI label shows a 45/60 minute rating <u>without a hose stream test</u>. This rating is not approved as part of this listing.*

---

**Ask your Technical Glass Representative about product solutions that meet U.S. building code requirements.**



**TGP**  **FIRE RATED**
one source. many solutions.®

fireglass.com | 1-800-426-0279

CA Department of Forestry and Fire Protection Office of the State Fire Marshall. 11 Hose Fax. WHI#40171 11P. ccba
Superlite I-XL is a registered trademark of SAFTI FIRST Fire Rated Glazing Solutions. Technical Glass Products is a registered trademark of Technical Glass Products, a division of SAFTI America's Glass Products.

# SuperLite I-XL Alert

When it comes to fire protection and life safety in buildings, it's critical to specify and install proper products. The makers of a glass called Superlite I-XL promote the material for fire-rated applications of 45 minutes and more. However, this claim can be challenged due to the number of "limitations" attached to the product listing.

The documents on this site are intended to provide you with essential information on this critical topic. Before considering the use of SuperLite I-XL or other products that don't meet testing standards, please review this material thoroughly. For further questions, please call 1-888-397-FIRE, or contact info@fireglass.com.

## The Issue

The fire-rated glass product, SuperLite I-XL, is advertised as carrying 45 and 60 minute fire ratings. However, closer inspection reveals that the listing has significant limitations:

> *SuperLite I-XL does not pass the mandatory hose stream test* - a *requirement* for any rating in the U.S. over 20 minutes. There are dozens of alternative choices with ratings of 45 minutes or more, from multiple manufacturers. SuperLite I-XL is the only product that does NOT comply with the standards - yet still claims to have a 45-60 minute fire-rating.
> *SuperLite I-XL is directional*. In other words, it provides fire protection from one side only. That means someone is responsible for determining where the fire will start; a nearly impossible task. Who makes and is willing to accept the liability of that decision? The architect? General Contractor? Glazing Contractor? Building Official? Choose incorrectly and you have little if any fire protection at all.
> *SuperLite I-XL does not meet fire wall test standards*. Verbiage in the manufacturer's promotional materials might lead one to believe the product meets the very stringent test requirements of ASTM E-119 and UL 263. The product does not meet these test standards and should not be used where barrier to heat transfer wall products are required.

## Q & A

### If SuperLite I-XL doesn't pass the required testing, how can it have a listing?

Originally, Warnock Hersey International issued a "conditional" listing for the product to be used in one specific government application. However, the manufacturer has marketed SuperLite I-XL for general use. Warnock Hersey is the only independent lab that has given this type of listing for a non-compliant fire-rated glass product. The most well-respected laboratory for fire testing in North America, Underwriters Laboratories (UL), will not provide a 45 or 60-minute listing for products that do not pass both fire and hose stream test requirements.

### Is the hose stream test all that important? It seems like fire resistance is the main issue.

The hose stream test is critical. Building codes require that fire-rated glass materials comply with the test standards and guidelines developed by the National Fire Protection Association (NFPA). The 2007 edition of the NFPA "Fire Test of Window Assemblies" gives the following explanation regarding the hose stream's importance and validity:

B.11.4 "The hose stream test provides a method for evaluating the integrity of constructions and assemblies and for **eliminating inadequate materials or constructions**. The cooling, impact, and erosion effects of the hose stream provide **tests of the integrity of the specimen being evaluated**."

Despite repeated attempts by the manufacturer of SuperLite I-XL to have the hose stream test eliminated,

code officials and fire protection experts have continued to uphold the validity and value of the hose stream test.

## Why would Warnock Hersey issue this listing?

We've been asking the same thing, with no clear answer. To draw an analogy, no one would expect to get a driver's license if they passed the written but not the driving portion of the test. Both components are required. No one has a license with a disclaimer.

Issuing a fire rating that arbitrarily leaves out a mandatory portion of the testing sets a disturbing precedent. We believe it undermines the integrity of the entire testing and listing process. We urge you to contact Warnock Hersey directly with any concerns you may have. Email us with your questions and concerns at tgp@brandner.com.

## What is a "directional" product?

SuperLite I-XL has a coating on one side of the glass that reflects heat away from that surface of the glass. Since this monolithic glass is not symmetrical, it only offers fire protection from one side. This raises two key issues:

> **Code Compliance** - The International Building Code section 715.5.2 requires that nonsymmetrical glazing be tested with both faces exposed to the furnace, and the assigned fire protection rating shall be the shortest duration obtained from the two tests conducted in compliance with NFPA 257. **SuperLite I-XL does not comply with this building code requirement.**
> **Installation** – As a directional product, SuperLite I-XL requires that the identified face MUST be installed facing the direction of the expected fire attack. Unless you are 100% certain you can predict where a fire will originate, you risk offering no protection where it will be needed.

## Isn't it good that SuperLite I-XL offers some heat protection?

It sounds good, but the simple truth is that the codes are very clear: Where a barrier to heat is needed, the product has to meet the standards of a barrier wall complying with test standards ASTM E-119 and UL 263. Ordinary window glass can't live up to the requirements – no matter how much heat it reduces. There ARE specialty glazing materials that do function as a wall and block heat transfer from multiple manufacturers.

A "degree" of heat reduction isn't helpful in meeting the required building code and test standards.

Ask your TGP sales rep about product solutions that meet U.S. building code requirements.

| Product Advisory Bulletin (PDF) | SuperLite I-XL Listing |

| California State Fire Marshal Data Sheet |

Privacy     Legal Notice     en Español

Copyright © 2007 Technical Glass Products. All rights reserved.

# EXHIBIT D



**ONLINE CERTIFICATIONS DIRECTORY**

## KCMZ.R13377
## Fire-protection-rated Glazing Materials

Page Bottom

# Fire-protection-rated Glazing Materials

See General Information for Fire-protection-rated Glazing Materials

**TECHNICAL GLASS PRODUCTS**                                                    R13377
600 6TH ST S
KIRKLAND, WA 98033 USA

**Fire-protection-rated glazing materials**

**Product designation:** non-wired FireLite and FireLite NT / FireLite Plus and Fire Lite IGU

**Thickness:** 4.76 mm (3/16 in.) / 7.94 mm (5/16 in.)

**Glazing compound:** Pure silicone caulk, closed cell PVC or DAP 33

**Furnace pressure:** Positive

| Rating | Location | Max Exposed Area of Glazing (Sq In.) | Max Width of Exposed Glazing In. | Max Height of Exposed Glazing In. | Min Depth of Groove In. | Building Code Marking |
|---|---|---|---|---|---|---|
| 20 min NH | Windows, | 3325 | 95 | 95 | 5/8 | OH-20, D-NH-NT-20 |
| | Transom, | | | | | |
| | and/or | | | | | |
| | Sidelites - | | | | | |
| | FireLite | | | | | |
| 20 min NH | Doors - | 3204 | 36 | 89 | 5/8 | D-NH-NT-20 |
| 45 min | FireLite | 3325 | 95 | 95 | 5/8 | OH-45, D-H-NT-45 |
| | Windows, | | | | | |
| | Transom, | | | | | |
| | and/or | | | | | |
| | Sidelites - | | | | | |
| | FireLite | | | | | |
| 45 min | Doors - | 3204 | 36 | 89 | 5/8 | D-H-NT-45 |
| | FireLite | | | | | |
| 60 min | Windows, | 3325 | 95 | 95 | 5/8 | OH-60, D-H-NT-60 |
| | Transom, | | | | | |
| | and/or | | | | | |
| | Sidelites - | | | | | |
| | FireLite | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 60 min | Doors- | 100 | 12 | 33 | 1/2 | D-H-T-60 |
| | Temp Rise- | | | | | |
| | FireLite | | | | | |
| 60 min | Doors-Non | 3204 | 36 | 89 | 5/8 | D-H-NT-60 |
| | Temp Rise- | | | | | |
| | FireLite | | | | | |
| 90 min | Doors-Temp Rise-FireLite | 100 | 12 | 33 | 1/2 | D-H-T-90, D-H-NT-90 |
| | Doors-Non Temp Rise-FireLite | 2034 | 36 | 56-1/2 | 3/4 | |
| 90 min | Windows, | 2627 | 46-1/2 | 56-1/2 | 5/8 | OH-90, D-H-NT-90 |
| | Transom, | | | | | |
| | Sidelight- | | | | | |
| | FireLite | | | | | |
| 3 Hr | Doors- | 100 | 12 | 33 | 1/2 | D-H-NT-180 |
| | FireLite | | | | | |

**Fire-protection -rated glazing material**

**Product designation:** non-wired Fireglass 20

**Thickness:** 1/3, 3/8, ½ or ¼ in.

**Glazing compound:** closed cell PVC tape, Fiberfrax tape or DAP 33

| Rating | Location | Max Exposed Area of Glazing (Sq In.) | Max Width of Exposed Glazing In. | Max Height of Exposed Glazing In. | Min Depth of Groove In. | Building Code Marking |
|---|---|---|---|---|---|---|
| 20 min NH | Doors- | 3024 | 36 | 89 | 5/8 | D-NH-NT-20 |
| | Fireglass 20 | | | | | |
| 20 min NH | Window- | 6272 | 106-1/2 | 106-1/2 | 5/8 | OH-20 |
| | Fireglass 20 | | | | | |
| 20 min NH | Transom/ | 6272 | 106-1/2 | 106-1/2 | 5/8 | D-NH-NT-20 |
| | Sidelight- | | | | | |
| | Fireglass 20 | | | | | |

**Fire-protection-rated glazing material:**

**Product designation:** laminated - Pilkington Pyroshield Plus

**Thickness:** 10.5 mm (1/4 in.)

**Glazing compound:** Designation with * - Pemko FGL3000 Tape or FG3000 Caulk., Designation with + - Pemko FGL3000 glazing tape

**Furnace pressure:** Positive

| Rating | Location | Max Exposed Area of Glazing (Sq In.) | Max Width of Exposed Glazing In. | Max Height of Exposed Glazing In. | Min Depth of Groove In. | Building Code Marking |
|---|---|---|---|---|---|---|
| | | | | | | |

| 20 min NH | Windows, | 1296 | 36 | 36 | 5/8 | OH-45. D-H-NT-45 |
|---|---|---|---|---|---|---|
| | Transoms, | | | | | |
| | Sidelights- | | | | | |
| | Pyroshield | | | | | |
| | Plus- | | | | | |
| | Diamond | | | | | |
| | Pattern* | | | | | |
| 45 min | Hollow | 1296 | 24 | 54 | 5/8 | D-H-NT-45 |
| | Metal or | | | | | |
| | Wood Fire | | | | | |
| | Doors- | | | | | |
| | Pyroshield | | | | | |
| | Plus-Diamond | | | | | |
| | or Georgian- | | | | | |
| | Pattern* | | | | | |
| 1 or 1-1/2 -h+ | Wood or | 100 | 20 | 20 | 5/8 | D-H-NNT-90 |
| | Hollow | | | | | |
| | Metal Fire | | | | | |
| | Doors - | | | | | |
| | Pyroshield | | | | | |
| | Plus-Diamond | | | | | |
| | Or Georgian | | | | | |
| | Pattern* | | | | | |

**Fire-protection-rated glazing material**

**Product designation:** Pilkington Pyroshield, Pyroshield NT and Pyroshield IGU

**Thickness:** 1/4 in.

**Glazing Compound:** pure silicone caulk, DAP33, FG3000 tape

**Furnace Pressure:** Positive

| Type of Assembly | Max Exposed Area of Glass Sq In. | Max Width of Exposed Glass In. | Max Height of Exposed Glass In. | Min Depth of Groove In. | Building Code Marking |
|---|---|---|---|---|---|
| Doorframe, Window, Sidelite/ | 1296 | 54 | 54 | 5/8 | D-H-NT-20, OH-20 D-H-NT-30, OH-30, D-H-NT-45, OH-45 |
| Transom with or | | | | | |
| without second | | | | | |
| piece of 1/4 in. | | | | | |
| thick tempered | | | | | |
| glass rated 1/3, | | | | | |
| 1/2 or 3/4 h | | | | | |

| Hollow metal door | 3289 | 35-3/4 | 92 | 3/4 | D-NH-NT-20 |
|---|---|---|---|---|---|
| 20 min NH | | | | | |

**Fire-protection-rated glazing material**

**Product designation:** Pilkington Pyroshield, Pyroshield NT and Pyroshield IGU

**Thickness:** ¼ in.

**Glazing compound:** Pemko FG3000 "Fire Glaze"

**Furnace Pressure:** Positive

| Type of Assembly | Max Exposed Area of Glass Sq In. | Max Width of Exposed Glass In. | Max Height of Exposed Glass In. | Min Depth of Groove In. | Building Code Marking |
|---|---|---|---|---|---|
| Transom light | 3456 | 96 | 36 | 5/8 | D-H-NT-45 |
| Sidelight or Window | 4608 | 100 | 100 | 5/8 | D-H-NT-45, OH-45 |
| Hollow metal door | 2856 | 34 | 84 | 5/8 | D-H-NT-45 |
| rated up to | | | | | |
| 3/4 h | | | | | |
| Hollow metal door | 552 | 12 | 46 | 5/8 | D-H-NT-90 |
| rated up to | | | | | |
| 1-1/2 h | | | | | |
| Wood door rated 1 h | 960 | 12 | 80 | 5/8 | D-H-NT-60 |

Last Updated on 2007-05-21

Questions?                    Notice of Disclaimer                    Page Top

Copyright © 2007 Underwriters Laboratories Inc.®

The appearance of a company's name or product in this database does not in itself assure that products so identified have been manufactured under UL's Follow-Up Service. Only those products bearing the UL Mark should be considered to be Listed and covered under UL's Follow-Up Service. Always look for the Mark on the product.

UL permits the reproduction of the material contained in the Online Certification Directory subject to the following conditions: 1. The Guide Information, Designs and/or Listings (files) must be presented in their entirety and in a non-misleading manner, without any manipulation of the data (or drawings). 2. The statement "Reprinted from the Online Certifications Directory with permission from Underwriters Laboratories Inc." must appear adjacent to the extracted material. In addition, the reprinted material must include a copyright notice in the following format: "Copyright © 2007 Underwriters Laboratories Inc.®"

An independent organization working for a safer world with integrity, precision and knowledge.



# **EXHIBIT E**



**Underwriters Laboratories Inc.**

| Go directly to a UL Service: | 🔲 Global Locations 🔲 | Search UL.com | Search |

# The UL Mark

## As a consumer, what does the UL Mark mean to me?

The UL Mark is one of the most recognized, accepted and trusted symbols in the world. It means that a not-for-profit, independent laboratory has tested samples of products to safety requirements and conducts periodic checks of manufacturers' facilities. It says something about the products you may purchase; it's your one assurance that steps have been taken in the interest of safety.

## Who is behind the Mark?

The UL Mark stands for Underwriters Laboratories Inc. (UL), a not-for-profit, non-governmental organization that was formed in 1894 to help reduce injury, loss of life and property damage. To that end, UL scientifically investigates and tests thousands of types of products, materials, constructions and systems to evaluate electric, fire and casualty hazards; burglar resistance; or ability to detect, control or limit fires. Behind the UL Mark is a staff of more than 5,000 engineers, scientists, chemists, technicians, field representatives and support staff -- a team dedicated to working for a safer world.

## Why is the UL Mark so important?

Third-party product safety certification is important. An independent, technically expert organization that doesn't have a financial interest in the product's ultimate profitability is needed to determine whether reasonably foreseeable risks associated with the product's use have been eliminated or minimized. UL's not-for-profit, independent status allow it to be unbiased in determining whether or not a product meets recognized safety standards.

## What happens after a product gets the UL Mark?

Once the product earns the UL Mark, UL doesn't forget about it. UL field representatives located worldwide make periodic, unannounced visits to each manufacturer's production facility to help countercheck that products continue to meet UL requirements. Even after the initial product evaluation, UL checks samples of the product again and again. A product must continue to meet safety requirements in order to bear the UL Mark. If a field representative determines that a product no longer complies, the UL Mark is removed. This Follow-Up Services program helps protect the integrity of the UL Mark. In fact, this rigorous follow-up program is part of what makes UL so unique.

## Who uses UL's services?



Manufacturers submit products to UL for testing and safety certification on a voluntary basis. Use of UL is not required by law. But most manufacturers are concerned with the safety of their products and they know safety-conscious and concerned consumers look for the UL Mark on products they buy.

## Is the UL Mark all there is to product safety?

No. You must do your part, too. UL helps reduce the potential risks of accidents by investigating products for safety and making factory follow-up visits before those products reach you, the consumer. But any product can become unsafe if it's abused or used contrary

Case 5:07-cv-03535-JF    Document 28    Filed 10/03/2007    Page 42 of 44

to a manufacturer's instructions. Many product-related injuries are caused by carelessness or improper usage. So, be sure to read care and maintenance instructions and warnings and follow them carefully. Be alert when using any product, and always use common sense to help keep you and your family safe.



   



Working for a safer world    with integrity, precision and knowledge

# UL at a glance

Underwriters Laboratories Inc. (UL) is an independent, not-for-profit product safety testing and certification organization. Founded in 1894, UL has earned a reputation as a global leader in product safety standards development, testing and certification.

**UL is *not* a:**
- Government agency
- Trade association
- Professional society
- Publicly held company
- For-profit company.

UL evaluates thousands of products, components, materials and systems for compliance to specific requirements. UL's time-tested system supports governmental product safety regulations, and it complements federal, state and local government public safety initiatives. Today, UL helps companies bring safer products to the global marketplace, whether they are electrical devices, programmable systems or building products while supporting the management and quality system processes of these same companies.

UL is in the midst of fundamental business transformation. Becoming more business savvy, improving business processes and putting greater emphasis on meeting the needs of customers and other stakeholders strengthens UL's ability to deliver its core objective of helping to get safer products in the hands of consumers and users globally.

## Product certification

 UL's safety certification services include testing, evaluation and factory surveillance of products to UL's Standards for Safety and other safety standards. These certifications enhance the safety of products as well as the public's confidence in their compliance. Consumers, retailers, insurers, distributors and regulators recognize the familiar UL Mark as a trusted symbol of safety.

**UL and its affiliates can be found in:**
- Argentina
- Brazil
- Canada
- Chile
- China
- Czech Republic
- Denmark
- France
- Germany
- Hong Kong
- India
- Italy
- Japan
- Korea
- Malaysia
- Mexico
- Netherlands
- Norway
- Poland
- Singapore
- Spain
- Sweden
- Switzerland
- Taiwan
- United Kingdom
- United States

## Standards for Safety

UL has developed more than 900 Standards for Safety. These Standards play an important part in improving public safety. UL employs an open consensus building process of developing effective product safety standards, using input from consumers, manufacturers, government agencies, users, regulatory authorities and other interested parties.

## Management system registration

 UL is committed to providing expert management system registration, assessment and audit services to internationally recognized standards such as those of the International Organization for Standardization (ISO).

## Other inspection services

UL provides worldwide supply chain services, including commercial inspection, testing and auditing services to customer-defined requirements for many types of products and services. These range from manufactured household appliances and electrical goods to tools and toys. UL's global presence allows it to offer reliable, cost-effective, localized service.

*(Continued)*

To get started today, please call UL Customer Service at 1 877 854 3577.

Copyright © 2005
Rev. 2/05

   



**Consumer outreach and education: key to fulfilling UL's public safety mission**
One aspect of the UL charter lies at the core of UL's mission – to keep the public informed of safety issues. Additionally, UL tailors safety messages designed to target segments of the population where the information is needed most, often using the media as a key channel to reach consumers with seasonal safety information.

In February 2003, the **Test the Limits Lab** was opened by UL at *Epcot®* at the *Walt Disney World*® Resort in Lake Buena Vista, Fla. The 3,000 square-foot exhibit features six hands-on activities where children and adults can "test" products the same way UL engineers do.

UL's *SafetySmart* program equips teachers with educational materials to teach children basic safety lessons. Most recently, the *SafetySmart* program teamed up with the National Fire Protection Association to help educate children and their families on potentially life-saving fire safety awareness. Finally, UL's safety campaigns target seasonal safety hazards to educate consumers about risks and safer behavior to avoid accidents and injury.

**Global reach**
UL has played a significant role in the international arena for nearly a century. Contributing to the development of international safety standards, helping manufacturers understand the requirements of new markets, evaluating products to international safety standards are just some of the ways UL helps manufacturers meet the challenge of accessing global markets while bringing safer products to consumers.

**Making products safer for people**
UL's overall program of evaluating products for safety, developing Standards for Safety, harmonizing international standards, participating in U.S. national code development and educating consumers about product safety significantly enhances the public's well-being. In your home, you will find a UL Mark on a product within an "arm's length" of you. Below is a partial list of product areas where UL helps support consumer safety:

- Drinking water
- Plumbing
- Commercial cooking
- Home appliances

- Consumer electronics
- Gas appliances
- Safety devices
- Security equipment

- Medical devices
- Fire alarms
- Robotics
- Lasers

UL's greatest accomplishment is the prevention of accidents: Whether it's a home appliance that does not electrocute the operator, a fire extinguisher that operates properly when needed or an underground storage tank that does not leak its contents into the groundwater, the unseen contributions to public safety, health and protection of the environment are UL's legacy.

To get started today, please call UL Customer Service at 1 877 854 3577.

Copyright © 2005
Rev. 2/05