Michael S. Elkind (State Bar No. 61038)
*melkind@fulpat.com*
David Pitman (State Bar No. 172944)
*dpitman@fulpat.com*
FULWIDER PATTON LLP
Howard Hughes Center
6060 Center Drive, Tenth Floor
Los Angeles, California 90045
Telephone: 310-824-5555
Facsimile: 310-824-9696

McCORMICK, PAULDING & HUBER LLP
J. Kevin Grogan
W. Tucker Griffith
Kevin H. Vanderleeden
CityPlace II, 185 Asylum Street
Hartford, Connecticut 06103
Telephone: 860-549-5290
Facsimile: 860-527-0464

Attorneys for ANEMOSTAT

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

O'KEEFFE'S, INC.,

Plaintiff,

v.

TECHNICAL GLASS PRODUCTS, ANEMOSTAT and PILKINGTON, PLC,

Defendants.

Case No. 07-cv-03535-JF-PVT

**DEFENDANT ANEMOSTAT'S MOTION TO STAY LITIGATION PENDING REEXAMINATION OF THE PATENT AT ISSUE**

Judge Fogel

Hearing Date: November 16, 2007 at 9:00 am

## TABLE OF CONTENTS


I. INTRODUCTION. . . . 3

II. FACTS AND PRODECURAL HISTORY. . . . 4

III. ARGUMENT. . . . 7

A. The Court Has Clear Discretion to Grant Anemostat's Motion to Stay Litigation Pending Reexamination of the '906 Patent. . . . 7

B. Anemostat's Motion to Stay Should be Granted as It May Reduce or Eliminate the Need for Litigation. . . . 8

C. Anemostat's Motion to Stay Should be Granted as Litigation in This Matter Is In Its Infancy. . . . 11

D. In the Alternative, Anemostat Requests That the Court Stay All Claims and Counterclaims Related to the '906 Patent. . . . 12

IV. CONCLUSION. . . . 12

## TABLE OF AUTHORITIES

1. 35 U.S.C. § 304. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2. 35 U.S.C. § 301-307. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
3. *Brown v. Shimano Am. Corp.*, 1991 U.S. Dist. LEXIS 9431, at *1, 18 USPQ2d 1496, 1496 (C.D. Cal. 1991). . . . . . . . . . . . . . . . . . . . . . . . . 7
4. *Wayne Automation Corp. v. R.A. Pearson Co.,* 782 F. Supp. 516,517 (E.D. Wash. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
5. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988) (citing H.R. Rep. No. 96-1307(I) (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6463). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
6. *ASCII v. STD Entm't USA Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). . 7
7. *Chisum on Patents*, § 11.07[4][b][iv] at 404. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
8. *ASCII*, 844 F. Supp. at 1381. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
9. *Gladish v. Tyco Toys Inc.*, 1993 U.S. Dist. LEXIS 20211, at *3, *6-7, 29 U.S.P.Q.2d 1718, 1719-20 (E.D. Cal. 1993). . . . . . . . . . . . . . . . 8
10. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). . . . . . . . 8
11. 35 U.S.C. §§ 252, 307. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
12. *Brown*, 1991 U.S. Dist. LEXIS 9431, at *1-2, 18 U.S.P.Q.2d at 1496. . . . . . . . 9
13. *GPAC Inc. v. D.W.W. Enters. Inc.*, 144 F.R.D. 60, 65 (D.N.J. 1992). . . . . . . . 9
14. *Emhart Industries, Inc. v. Sankyo Keiki Manufacturing*, 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2d 1889 (N.D. Ill. 1987). . . . . . . . . 9
15. *Id.* at *3-4, 3 U.S.P.Q.2d at 1890. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
16. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). 10
17. *GPAC*, 144 F.R.D. at 64. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
18. *Gould*, 705 F.2d at 1341-42. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
17. *Emhart Indus.*, 1987 U.S. Dist. LEXIS 15033, at *10, 3 U.S.P.Q.2d at 1892. . 11
18. *Emhart Indus.*, 1987 U.S. Dist. LEXIS 15033, at *3-4, 3 U.S.P.Q.2d at 1890. . 12
19. *Manual of Patent Examining Procedures* § 2286 (8th ed., rev. 5, Aug. 2006). . 12

## I. INTRODUCTION

Defendant Anemostat now petitions the Court to stay the present litigation pending reexamination of U.S. Patent No. 7,090,906 ("the '906 patent") by the United States Patent and Trademark Office ("USPTO"). A hearing date of November 16, 2007 at 9:00 am in Courtroom 5 has been scheduled for the present Motion.

Anemostat filed an *ex parte* Request for Reexamination with the USPTO on August 29, 2007 seeking review of the claims of the '906 patent in view of, *inter alia*, prior art that has not been previously considered by the USPTO during prosecution of the '906 patent. A copy of the materials filed with the USPTO asserting that a substantial new question of patentability exists for the claims of the '906 patent, *see* 35 U.S.C. § 304, are attached hereto as Exhibit I under an authenticating declaration of Kevin H. Vanderleeden also attached hereto.

Additionally, Anemostat has filed an *inter partes* Request for Reexamination with the USPTO on October 9, 2007 requesting review of the claims of the '906 patent in view of a very recently uncovered article from the November 1998 issue of the GLASS AGE AND WINDOW CONSTRUCTION magazine that also raises a substantial new question of patentability regarding the '906 patent. A copy of the materials filed with the USPTO is attached as Exhibit II under the authenticating declaration of Kevin H. Vanderleeden.

In light of the pending Requests for Reexamination of the '906 patent, and for the reasons discussed below, Anemostat respectfully requests that the Court grant the present Motion and stay the litigation until the USPTO has either denied Anemostat's Requests or, if granted, until the USPTO has completed its reexamination of the claims of the '906 patent. Alternatively, Anemostat requests that all claims and counterclaims regarding the '906 patent be stayed until reexamination is complete.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff, O'Keeffe's , Inc. ("O'Keeffe's") initially alleged infringement by Anemostat of an unidentified patent in a September 22, 2006 letter. In response, by letter dated October 17, 2006, Anemostat requested identification of the missing patent number upon which O'Keeffe's allegation was based so that Anemostat could assess O'Keeffe's allegations. O'Keeffe's never responded to Anemostat's October 17, 2006 letter, and never informed Anemostat of the particular patent at issue until the Complaint underlying the present litigation was filed on July 6, 2007.

O'Keeffe's Complaint alleges infringement of the '906 patent by three defendants: Defendant Anemostat, as well as Technical Glass Products ("TGP") and Pilkington PLC ("Pilkington"). Indeed, O'Keeffe's allegation of patent infringement of the '906 patent is the only claim for relief raised by O'Keeffe's in the initial Complaint. At this time, O'Keeffe's has not formally indicated which of claims 1-6 of the '906 patent are being asserted against any of the Defendants.

Anemostat filed its Answer to the Complaint on September 3, 2007, denying O'Keeffe's allegations of patent infringement and asserting affirmative defenses and counterclaims related to O'Keeffe's allegations. Anemostat's affirmative defenses and counterclaims solely relate to the '906 patent – i.e., asserting non-infringement of the '906 patent and further asserting that the '906 patent is invalid and/or unenforceable.

Defendant TGP answered the Complaint on September 7, 2007. TGP asserts similar affirmative defenses and counterclaims as Anemostat relating to the '906 patent. TGP's counterclaim adds additional counts relating to trademark infringement and unfair competition. TGP has been alerted to Anemostat's intent to file the present Motion, however, and has not objected to the requested stay being implemented for at least the patent counts in view of Anemostat's pending Reexamination Requests.

O'Keeffe's answered TGP's counterclaims on October 3, 2007. As a part O'Keeffe's answer, they have asserted several additional claims against TGP and have lodged third party claims against Underwriters Laboratories, Inc. ("UL") for, *inter alia*, unfair competition, violations unrelated to the '906 patent.

It is Anemostat's understanding that Defendants Pilkington and UL have not been served, appeared, answered or otherwise responded to O'Keeffe's Complaint or Third Party Claims as of the date of the present Motion.

Subsequent to learning that O'Keefe's Complaint was filed, Anemostat commenced a search of relevant prior art with respect to the subject matter and claims of the '906 patent, and has determined that claims 1-6 of the '906 patent are invalid in light of newly discovered prior art, as well as prosecution estoppel issues. At the very least, Anemostat maintains that the prior art raises a substantial new question of patentability with respect to the issued claims of the '906 patent and thus a renewed review of the claims by the USPTO is merited. *See* 35 U.S.C. §§ 301-307.

More specifically, on August 29, 2007, Defendant Anemostat filed a request for an *ex parte* reexamination of the claims of the '906 patent. The reexamination request is based on several pieces of prior art including a 1999 publication from the International Window Film Association titled *Safety/Security Window Film* and several U.S. patents. None of the prior art in the request was before the Examiner during the initial prosecution of the '906 patent. As of the date of this Motion, Anemostat's *ex parte* request has been assigned to an Examiner for determination and a decision granting the request should issue in the near term.

After filing the *ex parte* request, Anemostat uncovered a compelling prior art publication titled *Thin glazing can be made safe* from a November 1998 issue of GLASS AGE AND WINDOW CONSTRUCTION, (the "Glass Age article"), which discloses and/or obviates

each and every limitation of the claims of the '906 patent. More specifically, the Glass Age article discusses test results performed by the British Standards Institution in which single sheet of "Protekt" brand, fire-resistant PET film was placed on a sheet of wired glass and found to have an impact resistance of 150 ft-lbs. The Glass Age article was not before the Examiner during the initial prosecution of the '906 patent. In view of the above, Anemostat filed a request for an *inter partes* reexamination on October 9, 2007 based the teachings of the Glass Age article and has requested that the USPTO merge the two reexaminations into a single *inter partes* pleading for the convenience of the parties.

Given the comprehensive teachings of the Glass Age article which anticipate numerous claims of the '906 patent, there is no doubt that Anemostat's *inter partes* reexamination will be granted and the issued claims will not survive as currently constituted. Moreover, the fact that there are multiple compelling prior art references in both requests that present substantial new questions of patentability increases the odds that reexamination will be granted and the claims will be deemed unpatentable.

Further, at this stage of the pending Action before the Court, virtually no discovery has occurred. Indeed, Pilkington and UL, have yet to be served much less appear, answer or otherwise respond to the Complaint. The other defendants – namely, Anemostat and TGP – have only just filed their respective Answers just last month. Moreover, the parties have only recently met and conferred regarding a case management plan for this Action and have agreed to move the case management conference to November 16, 2007. Accordingly, the Action is in its infancy and relatively low expenditures have been incurred by any of the parties, in comparison with the resources typically expended in a patent infringement matter.

In view of these facts, as well as the arguments set forth in greater detail below, Anemostat submits that the Court should stay this Action in view of the pending Request for Reexamination before the USPTO.

## III. ARGUMENT

### A. The Court Has Clear Discretion to Grant Anemostat's Motion to Stay Litigation Pending Reexamination of the '906 Patent

Anemostat has moved this Court to stay the ongoing litigation between the parties, pending reexamination of the '906 patent by the USPTO pursuant to Anemostat's *ex parte* Request for Reexamination filed on August 29, 2007 and its *inter partes* Request filed on October 9, 2007.

It is well settled law that "[i]t is completely within the discretion of the Court to stay the proceedings pending reexamination." *Brown v. Shimano Am. Corp.*, 1991 U.S. Dist. LEXIS 9431, at *1, 18 USPQ2d 1496, 1496 (C.D. Cal. 1991); *see also Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F. Supp. 516, 517 (E.D. Wash. 1991) ("[c]learly, it is within the court's discretion whether to stay litigation pending reexamination."). The courts have the inherent power to control and manage their own dockets. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988) (citing H.R. Rep. No. 96-1307(I) (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6463). Most courts agree that "a stay pending the outcome of USPTO reexamination and/or reissuance proceedings is a sound means by which the court may facilitate resolution of [an] action …[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination of reissuance proceedings." *ASCII v. STD Entm't USA Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

Anemostat thus submits that the Court has proper authority to stay this litigation pending reexamination of the patent underlying the claim of infringement by the USPTO.

**B. Anemostat's Motion to Stay Should be Granted as It May Reduce or Eliminate the Need for Litigation**

Courts that have granted a stay of litigation have reasoned that the stay furthered the interests of expediency and efficiency (based on the facts of each specific case). For example, courts have routinely granted stays of litigation pending a reexamination "if the Court perceives that the PTO reexamination will resolve or substantially simplify issues in the litigation." 4, *Chisum on Patents*, § 11.07[4][b][iv] at 404; *see also ASCII*, 844 F. Supp. at 1381.

Congress's intent, when approving the ability of courts to issue a stay pending reexamination, was to simplify the issues of a dispute, conserve judicial resources, and reduce the complexity of, and perhaps eliminate altogether, the trial. *See Gladish v. Tyco Toys Inc.*, 1993 U.S. Dist. LEXIS 20211, at *3, *6-7, 29 U.S.P.Q.2d 1718, 1719-20 (E.D. Cal. 1993). Much of this is accomplished, Congress believed, by subjecting the conflict to the expert view of the USPTO. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). For example, if the patent claim at issue is canceled during reexamination, then the need for trial usually is eliminated. *See id.* If an asserted claim survives the reexamination proceeding, then the court may defer to the USPTO's expertise in interpreting and analyzing the claim scope, thereby facilitating discovery, *Markman* proceedings, and trial. *See id.* Further, if the claim is substantively amended during a reexamination, the resulting calculation of damages, if any, will be affecting depending on whether the alleged infringing activity preceded the issuance of a reexamination

certificate. *See, e.g.*, 35 U.S.C. §§ 252, 307 (establishing intervening rights in view of amendments during a reexamination proceeding).

As "the benefits of granting defendant's motion to stay outweighs the burdens of delay caused by the reexamination … reexamination by the PTO *when issues relevant to prior art are involved* is especially helpful given the PTO's expertise." *Brown*, 1991 U.S. Dist. LEXIS 9431, at *1-2, 18 U.S.P.Q.2d at 1496 (emphasis added). Similar views are held by a majority of courts, in recognition of the fact that "a stay would surely conserve the time and resources of the court as well as the parties … [and that] *re-examination would reduce the complexity and length of this litigation, more easily define issues, defenses and evidence before trial, reduce litigation costs and discovery problems, and may further encourage settlement without further court intervention*." *GPAC Inc. v. D.W.W. Enters. Inc.*, 144 F.R.D. 60, 65 (D.N.J. 1992) (emphasis added). In *Emhart Industries, Inc. v. Sankyo Keiki Manufacturing*, 1987 U.S. Dist. LEXIS 15033, 3 U.S.P.Q.2d 1889 (N.D. Ill. 1987), the court enumerated several advantages in granting a stay of court proceedings pending a USPTO reexamination of an asserted patent, including the following:

1. Prior art presented to the court will have been first considered by the USPTO, with it particular expertise;
2. Many discovery problems relating to prior art can be alleviated by USPTO examination;
3. In a case where reexamination results in effectively invalidating the asserted claims of a patent, the litigation will likely be dismissed;
4. The outcome of the reexamination may encourage a settlement without further use of the court;
5. The record of the reexamination will likely be entered at trial, thereby reducing the complexity and length of the litigation;
6. Issues, defenses and evidence will be more easily limited in pre-trial conferences after a reexamination is completed; and
7. The costs will likely be reduced for the parties and the court.

*Id.* at *3-4, 3 U.S.P.Q.2d at 1890.

In the present case, Anemostat's alleged infringing SAFE-Wire product must be evaluated in light of the claims of the '906 patent, as properly construed. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). Further, any consideration of the validity of any asserted patent claims in view of prior art raised by the Defendants must involve a comparison of the claims, as properly construed, and the prior art. Searching of the U.S. patent database and other non-patent resources by Anemostat has resulted in the discovery of several prior art patent references that were not considered by the Examiner during the prosecution of the '906 patent. Anemostat contends that the discovered prior art, either alone or in combination with other prior art references, invalidate all claims of the '906 patent. At the very least, the prior art raises a substantial new question of patentability that requires a fresh review of the claims of the '906 patent.

Anemostat certainly has the right not to be confronted with invalid claims at trial, thus the reexamination of the '906 patent may very well reduce or even eliminate many of the issues outstanding and in contention between the parties. That is, the resources of the parties and this Court would be wasted in construing the asserted claims and determining infringement and invalidity in view of such constructions only to later find out that the scope of the claims has become altered upon reexamination by the USPTO.

As discussed herein, the reexamination of the '906 patent may very well substantially reduce or eliminate many of the issues under contention between the parties. Thus, Anemostat's Motion to Stay Litigation Pending Reexamination of the '906 patent should be granted.

Moreover, the requested reexaminations will not require any discovery by the parties. The prior art documents presented to the Patent Office in Anemostat's requests speak for themselves and there is no need to consider testimony from witnesses or assess

witness credibility. The reexaminations are self-contained and discovery is superfluous to the reexamination process.

**C. Anemostat's Motion to Stay Should Be Granted as Litigation in This Matter Is in its Infancy**

Compelling evidence that weighs against granting a stay typically depends on the status of the proceeding, and whether the stay would unfairly prejudice one of the parties. That is, courts commonly deny stays due to the late stage of the litigation, based on the fact that discovery was or would be almost completed, or based on the fact that the matter had been marked for trial. *See GPAC*, 144 F.R.D. at 64. Courts have, however, granted stays pending reexamination by the USPTO despite the well-developed posture of the case. *See, e.g., Gould*, 705 F.2d at 1341-42 (stay granted 5 years after commencement of litigation and 20 days before scheduled trial date); *Emhart Indus.*, 1987 U.S. Dist. LEXIS 15033, at *10, 3 U.S.P.Q.2d at 1892 (stay granted 18 months after significant discovery).

Here, as of the time the present Motion was filed, discovery has not yet commenced. Indeed, the current controversy in its infancy, with no trial date being set and no protracted, expensive discovery having taken place. O'Keeffe's filed suit on July 6, 2007. Anemostat's Requests for Reexamination were filed with the USPTO on August 29, 2007 and on October 9, 2007. Anemostat's Answer was not filed until September 3, 2007, by which time, O'Keeffe's had been alerted to the *ex parte* Request for Reexamination. TGP's Answer was filed on September 7, 2007. O'Keeffe's answer to TGP's counterclaims was filed on October 3, 2007. Pilkington and UL have yet to be served, much less appear, answer or otherwise respond to the Complaint.

Moreover, the parties have only recently met and conferred regarding a case management plan as required by Federal and Local Rules and only Anemostat has submitted initial Rule 26(a) disclosures. Accordingly, relatively minimal resources have

been expended in this Action when compared with what resources are likely to be expended as this Action progresses towards trial. Moreover, any stay in view of reexamination by the USPTO will not unfairly prejudice any party. As noted above, there are many benefits of staying of court proceedings pending a USPTO reexamination of an asserted patent. *See Emhart Indus.*, 1987 U.S. Dist. LEXIS 15033, at *3-4, 3 U.S.P.Q.2d at 1890. Further, where litigation has been stayed pending reexamination proceedings, the USPTO will attempt to expedite reexamination, to the extent possible. *See Manual of Patent Examining Procedures* § 2286 (8th ed., rev. 5, Aug. 2006). Clearly, the present case is in the initial stages of litigation, and thus a stay of the action in view of reexamination proceedings is merited.

Given the absence of protracted discovery or trial preparation, and that the present case has only been pending for approximately three months, Anemostat's Motion to Stay should be granted.

### D. In the Alternative, Anemostat Requests That the Court Stay All Claims and Counterclaims Related to the '906 patent.

Should the Court not wish to stay the entire case, Anemostat respectfully requests that the Court stay all claims and counterclaims related to the '906 patent in view of the pending reexamination requests. Anemostat requests, in the alternative, a partial stay for the reasons cited above.

## IV. CONCLUSION

For the foregoing reasons, Anemostat's Motion to Stay Litigation Pending Reexamination of the '906 patent should be granted. Accordingly, Anemostat requests the Court to stay the present litigation until the USPTO has either denied Anemostat's

Requests or, if granted, until the USPTO has completed its reexamination of the claims of the '906 patent. In the alternative, Anemostat requests that the Court stay all claims and counterclaims related to the '906 patent until the USPTO has either denied the Requests or, if granted, until the USPTO has completed its reexamination.

Dated: October 10, 2007 Respectfully submitted,

ANEMOSTAT
Defendant

By /s/Kevin H. Vanderleeden

J. Kevin Grogan
Wm. Tucker Griffith
Kevin H. Vanderleeden
McCORMICK, PAULDING & HUBER LLP
CityPlace II, 185 Asylum Street
Hartford, Connecticut 06103
Telephone: 860-549-5290
Facsimile: 860-527-0464
E-Mail: grogan@ip-lawyers.com

Michael S. Elkind (State Bar No. 61038)
David J. Pitman (State Bar No. 172944)
FULWIDER PATTON LLP
Howard Hughes Center
6060 Center Drive, Tenth Floor
Los Angeles, California 90045
Telephone: 310-824-5555
Facsimile: 310-824-9696
E-Mail: dpitman@fulpat.com