### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| Inventors: | WILLIAM O'KEEFFE | ) | Patent No. | 7,090,906 |
| | | ) | | |
| Assignee: | Not Assigned | ) | Granted: | August 15, 2006 |
| | | ) | | |
| Serial No.: | 10/238,115 | ) | Examiner: | Vivian Chen |
| | | ) | | |
| Filed: | September 10, 2002 | ) | | |
| | | ) | Our File No. | 0389-0189R |
| For: | FIRE RESISTANT SAFETY GLASS | ) | | |

Mail Stop *Ex Parte* Reexam
COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, VA 22313-1450

### REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 7,090,906

Dear Sir:

## <u>TABLE OF CONTENTS</u>

I.      FOUNDATION OF REEXAMINATION ............................................................ 3

II.     REEXAMINATION OF CLAIM 1 BASED ON ANTICIPATION
        or, in the alternative, PRIOR ART OBVIOUSNESS............................................ 4

III.    REEXAMINATION OF CLAIM 1 BASED ON ANTICIPATION ..................... 8

IV.     REEXAMINATION OF CLAIMS 1 and 6 BASED ON PRIOR ART
        OBVIOUSNESS ...................................................................................................10

V.      DEPENDANT CLAIMS OF THE '906 PATENT ...............................................16

VI.     REASONS FOR ALLOWANCE OF THE '906 PATENT....................................18

VII.    STANDARD OF REVIEW ..................................................................................19

Requester, Anemostat Products, by its undersigned Attorney, respectfully requests Reexamination of U.S. Patent No. 7,090,906 ('the '906 patent') issued August 15, 2006.  The '906 patent is submitted herewith in double column format, in accordance with 37 C.F.R. § 1.510(b)(4), and is attached hereto as Exhibit A.  Reexamination is specifically requested for all claims, claims 1-6, of the '906 patent.

## I.    FOUNDATION OF REEXAMINATION

Requester seeks reexamination of claims 1-6 of the '906 patent pursuant to 37 C.F.R. § 1.510.  Moreover, Requester asserts that the present Request for Reexamination is based upon substantial new questions of patentability with respect to claims 1-6 of the '906 patent.

The substantial new questions of patentability are themselves based upon prior art that was cited during the original prosecution of the '906 patent, as well as upon prior art references that were not cited during prosecution of the '906 patent.  In doing so, Requester relies in part upon the recent changes to ex parte reexamination procedure under In re Robert T. Bass, reported at 314 F. 3d, 575 (Fed. Cir. 2002).  Thus, Requester submits that a "new question of patentability" may be posed by the combination of newly cited prior art and that prior art considered in the original prosecution of the '906 patent, and/or by the independent consideration of prior art that was considered in the original prosecution.

As similarly expressed in MPEP § 2242:

*"In a decision to order reexamination made on or after November 2, 2002, reliance on old art does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. >See Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002), which expanded the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based.< Determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. **For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request.**"* (Emphasis added).

Requester therefore respectfully submits that reliance upon previously cited prior art references, either by themselves or in combination with previously uncited references, provides the required basis sufficient to warrant the grant of reexamination.

## II.    REEXAMINATION OF CLAIM 1 BASED ON ANTICIPATION or, in the alternative, PRIOR ART OBVIOUSNESS

All aspects of claim 1 of the '906 patent are anticipated under 35 U.S.C. § 102(b) by <u>Safety/Security Window Film</u>, International Window Association (1999) (hereinafter, "the IWFA document"; attached hereto as Exhibit B); or, in the alternative, rendered obvious, under 35 U.S.C. § 103(a), over the IWFA document, in view of U.S. Patent No. 6,841,106 issued to Fujimaki et al. on January 11, 2005 ("the '106 patent"; attached hereto as Exhibit C).

Neither the IWFA document, nor the '106 patent, were before the Examiner during prosecution of the '906 patent.

As will be described in more detail hereinafter, the expressed rationale for the allowance of claim 1 of the '906 patent is hereby refuted as being anticipated by the IWFA document, or in the alternative, rendered obvious through a combination of the IWFA document with the teachings contained in the '106 patent.

The IWFA document discloses all aspects of claim 1 of the '906 patent, with the exception of specifically stating that the disclosed "polyester film" (*inter alia*, page 13 of the IWFA document) is a film which "contains PET" (claim 1 of the '906 patent).

Although not specifically stated as such, the IWFA document is anticipatory in nature as PET containing films (e.g., Mylar®) are well known species of polyester films. Thus, the recitation of 'polyester safety films' in the IWFA document inherently encompasses films containing PET, as now recited in claim 1 of the '906 patent.

The IWFA document was not before the Examiner during prosecution of the '906 patent, however, and its teachings were never acknowledged or utilized by the

Examiner during prosecution of the '906 patent.  Claim 1 is therefore fully anticipated by the IWFA document.

In the alternative, and to the extent that any doubt exists that PET is a well-known polyester variant, the '106 patent provides ample support for the same (*see*, column 1, lines 23-32).  Thus, the IWFA document in view of the teachings contained within the '106 patent clearly renders obvious each and every aspect of claim 1 of the '906 patent.

Requester further notes that ample evidence exists in the art and in technical literature to support the inherency that PET is indeed a polyester, further support for this position being readily available to the Patent Office merely by searching for 'PET' and 'polyester', if such secondary reference is deemed necessary.

Given that the IWFA document discloses each and every aspect of claim 1 of the '906 patent, or in the alternative, discloses all aspects with the exception of specifying that PET is indeed a polyester, for which the '106 patent capably attests, Requester respectfully submits that the IWFA document and the '106 patent are analogous art, pursuant to MPEP § 2141.01, and therefore are available for use in combination to reject the claims of the '906 patent.

Moreover, given the similarities in structural configuration, operation and intended use, Requester respectfully asserts that the teachings of the IWFA document and the '106 patent would have been considered important and pertinent to the Examiner, had the IWFA document and/or the '106 patent been of record during prosecution of the '906 patent.

As every aspect of claim 1 of the '906 patent is anticipated by the IWFA document alone, or in the alternative, rendered obvious over the IWFA document in view of the '106 patent, and given that the Examiner never acknowledged the existence of the IWFA document or the '106 patent during prosecution of the '906 patent, Requester respectfully submits that these circumstances alone raise a substantial new

question of patentability, at least with respect to the additional teachings of the IWFA document and the '106 patent, now presented for consideration for the very first time.

Reference will now be made to the table below, comparing all the elements of claim 1 to the combined teachings of the IWFA document and the '106 patent.

| Claim 1 of the '906 Patent | The Proposed Combined References |
|---|---|
| A fire resistant safety glass, consisting essentially of: | The IWFA document discusses the use of polyester safety films applied to various glass products in order to provide for increased safety of the coated glass products. |
| a piece of wire glass; | Page 32 of the IWFA document explicitly encompasses use of a single piece of wired glass. |
| and a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs. | Page 32 of the IWFA document clearly instructs the application of polyester safety film onto a single piece of wired glass.<br><br>Page 18 of the IWFA document explicitly notes the very same 100 ft-lb standard (as also referenced in column 1, lines 51-56 of the '906 patent, as noted by the Examiner during prosecution). |
| and further wherein the fire resistant film contains PET. | Page 13 of the IWFA explicitly indicates that the safety film is a "polyester film". PET is a well-known polyester, thus the recitation of a polyester film in the IWFA inherently encompasses a film containing PET, as would have been appreciated by one of ordinary skill at the time the '906 patent was filed.<br><br>Column 1, lines 23-32 of the '106 patent confirms that PET is a well-known polyester, and was well known to be used in forming films. |

As is apparent by a review of the table above, each and every structural limitation of claim 1, in its recited orientation, is taught and/or suggested by the teachings of the IWFA document alone, or in the alternative, by combining the teachings of the IWFA document with those of the '106 patent.

The IWFA document discusses the history of polyester safety films as applied to glass structures and, specifically on page 32, indicates that such a polyester film could be applied to *a single piece* of *wired* glass.  PET is a well known polyester film material, and to the extent necessary and not inherent in the teachings of the IWFA document and knowledge of those of skill in the art, the '106 patent explicitly provides support for the same, in column 1, lines 23-32.

Still further, the IWFA document also explicitly recites the 100 ft-lbs standard recited in claim 1 of the '906 patent (indeed, page 18 of the IWFA document cites the very same CPSC standard in C.F.R 1201, as does column 1, lines 51-58 of the '906 patent).

Lastly, Requester notes that the use of PET containing films was so well known and widely understood by those of ordinary skill in the art, that Patentee's own admissions in column 3, lines 50-54 of the '906 patent verifies the same, stating:

> "One or more fire resistant films suitable for the safety wire glass of this invention *are known in the art*.  In particular, it can be desirable to use a film having fire resistance, such as fluorinated polymers.  In certain embodiments, PET can be used." (emphasis added).

Requester has shown through the remarks and analysis above that the broad claim language currently present in claim 1 of the '906 patent is unsupportable in view of the IWFA document alone, or, in the alternative, in view of the combined teachings of the IWFA document and the '106 patent.

Requester has further noted that neither the IWFA document nor the '106 patent had ever been considered by the Examiner during the prosecution of the '906 patent.

Finally, Requester has shown that each and every limitation of claim 1 of the '906 patent can now be met by the sole or combined teachings of the IWFA document and the '106 patent.

Requester therefore seeks reexamination of claim 1, at least on the basis that claim 1 is anticipated or, in the alternative, rendered obvious over the IWFA document alone, or alternatively, in combination with the '106 patent.

## III.    REEXAMINATION OF CLAIM 1 BASED ON ANTICIPATION

All aspects of claim 1 of the '906 patent are anticipated under 35 U.S.C. § 102(e) by the Bekaert Speciality Films, LLC letter (hereinafter, "the Bekaert letter"; attached hereto as Exhibit D).

The Berkaert letter discloses all aspects of claim 1 of the '906 patent, however the Berkaert letter was not before the Examiner during prosecution of the '906 patent, nor were its teachings ever acknowledged or utilized by the Examiner during prosecution of the '906 patent.  Claim 1 is therefore fully anticipated by the Berkaert letter.

The Berkaert letter is a summary of testing done on behalf of Bekaert Speciality Films, LLC on September 22, 2001, prior to the priority date of the '906 patent.  The Berkaert letter explicitly teaches the coating of a piece of wired glass with a PET-containing film, as well as the ability of the resultant assembly to withstand the 100 ft-lbs (as well as a 400 ft-lbs) impact standard recited in claim 1 of the '906 patent.

Given that the Berkaert letter discloses each and every aspect of claim 1 of the '906 patent, Requester respectfully submits that the Berkaert letter is an anticipatory reference with respect to, at least, claim 1 of the '906 patent.

Moreover, given the similarities in structural configuration, operation and intended use, Requester respectfully asserts that the teachings of the Berkaert letter would have been considered important and pertinent to the Examiner, had the Berkaert letter been of record during prosecution of the '906 patent.

As every aspect of claim 1 of the '906 patent is anticipated by the Berkaert letter, and given that the Examiner never acknowledged the existence of the Berkaert letter during prosecution of the '906 patent, Requester respectfully submits that these circumstances alone raise a substantial new question of patentability, at least with respect to the additional teachings of the Berkaert letter, now presented for consideration for the very first time.

Reference will now be made to the table below, comparing all the elements of claim 1 to the combined teachings of the Berkaert letter.

| Claim 1 of the '906 Patent | The Proposed Combined References |
| --- | --- |
| A fire resistant safety glass, consisting essentially of: | The Berkaert letter discusses a summary of testing results for a safety glass lanimate. |
| a piece of wire glass; | The Berkaert letter explicitly instructs use of a single piece of wired glass. |
| and a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs. | The Berkaert letter explicitly notes that the resultant safety glass assembly meets the very same 100 ft-lb standard (as also referenced in column 1, lines 51-56 of the '906 patent, as noted by the Examiner during prosecution). |
| and further wherein the fire resistant film contains PET. | The Berkaert letter explicitly instructs the use of PET-containing films. |

As is apparent by a review of the table above, each and every structural limitation of claim 1, in its recited orientation, is taught by the teachings of the Berkaert letter.

Requester has shown through the remarks and analysis above that the broad claim language currently present in claim 1 of the '906 patent is unsupportable in view of the Berkaert letter.

Requester has further noted that the Berkaert letter had never been considered by the Examiner during the prosecution of the '906 patent.

Finally, Requester has shown that each and every limitation of claim 1 of the '906 patent can now be met by the sole teachings of the Berkaert letter.

Requester therefore seeks reexamination of claim 1, at least on the basis that claim 1 is anticipated the Berkaert letter.

## IV. REEXAMINATION OF CLAIMS 1 and 6 BASED ON PRIOR ART OBVIOUSNESS

All aspects of claims 1 and 6 of the '906 patent are obvious, under 35 U.S.C. § 103(a), over U.S. Patent No. 5,049,433 issued to Leotta on September 17, 1991 ("the '433 patent"; attached hereto as Exhibit E) in view of the IWFA document.

Neither the '433 patent nor the IWFA document were of record during prosecution of the '906 patent, nor were these references acknowledged or utilized in any rejection asserted by the Examiner during prosecution of the '906 patent.

The '433 patent is directed to a safety glass laminate, and method for manufacturing the same, in which a *"[g]lass sheet 1 is the sole glass sheet of the laminate, i.e. a single glass laminate article."* (*see*, column 2, lines 59-60). Indeed, the '433 patent explicitly discloses the application of a PET-containing film to a single sheet of glass. The '433 patent fails, however, to specifically disclose that the PET-containing film may be applied to a piece of *wired* glass, and that the resultant assembly can be manufactured to withstand an impact resistance of 100 ft-lbs.

The IWFA document, however, does teach both that a polyester film can be applied to a single piece of wired glass, as well as disclosing the recited impact resistance of the resultant assembly.

Given that the IWFA document discusses the history of polyester safety films as applied to glass structures and, specifically on page 32, explicitly instructs the application of such a polyester film onto *a single piece* of *wired* glass, Requester respectfully submits that the IWFA document is analogous art, pursuant to MPEP § 2141.01, and therefore is available for use, in combination with the '433 patent, to reject the claims of the '906 patent.

Moreover, given the similarities in structural configuration, operation and intended use, Requester respectfully asserts that the teachings of the '433 patent and the IWFA document would have been considered important and pertinent to the Examiner had the '433 patent and/or the IWFA document been of record during prosecution of the '906 patent.

Thus, it would have been obvious for one of ordinary skill in the art at the time the '906 patent was made to have utilized the application of polyester films to *wired* glass, to produce a given impact resistance, as disclosed in the IWFA document, with the teachings of the '433 patent, for the purposes of providing known impact and fire resistance to wired glass, as was already known in the art at the time the '906 patent was filed.

Additionally, the '433 patent explicitly instructs a method for applying a single PET-containing film to a single sheet of glass via an adhesive (*see*, e.g., Figures 1-2).

As every aspect of claims 1 and 6 of the '906 patent is rendered obvious over the '433 patent, in view of the IWFA document, and given that the Examiner never acknowledged the existence of the '433 patent or the IWFA document during prosecution of the '906 patent, Requester respectfully submits that these circumstances alone constitute a substantial new question of patentability, at least with respect to the additional teachings of the '433 patent and the IWFA document, now presented for consideration for the very first time.

Reference will now be made to the table below, comparing all the elements of claims 1 and 6 to the combined teachings of the '433 patent and the IWFA document.

| Claim 1 of the '906 Patent | The Proposed Combined References |
|---|---|
| A fire resistant safety glass, consisting essentially of: | The '433 patent is directed to a safety glass laminate, and method for manufacturing the same. |
| a piece of wire glass; | The '433 patent teaches the coating of "a glass sheet", without limitation as to the type of glass sheet utilized. Page 32 of the IWFA document, however, explicitly teaches the coating of a single piece of *wired* glass. |
| and a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs. | The '433 patent teaches coating a glass sheet with a fire resistant film (e.g., PET). Page 32 of the IWFA document clearly instructs the application of polyester safety film onto a single piece of *wired* glass. Page 18 of the IWFA document explicitly notes the very same 100 ft-lb standard (as also referenced in column 1, lines 51-56 of the '906 patent, as noted by the Examiner during prosecution). |
| and further wherein the fire resistant film contains PET. | The '433 patent explicitly teaches the application of a PET-containing film to a single glass sheet (see, inter alia, column 2, lines 31-60 and Figure 1). |

| Claim 6 of the '906 Patent | The Proposed Combined References |
|---|---|
| A method of manufacturing a fire resistant safety glass, consisting essentially of the steps of: | The '433 patent is directed to a method of manufacturing a safety glass laminate. |
| providing one sheet of wire glass; | The '433 patent discloses utilizing a single sheet of glass in its manufacturing process, *without reservation* as to the type of glass sheet utilized. Page 32 of the IWFA document, however, explicitly teaches the coating of a single piece of *wired* glass. |

| | |
|---|---|
| and adhering a fire resistant film of PET to said sheet of wire glass sufficient to impart to said fire resistant safety glass an impact resistance of about 100 foot lbs to about 4000 foot lbs. | The '433 patent discloses applying a PET film to a single sheet of glass, via an adhesive, in its manufacturing process.<br><br>Page 18 of the IWFA document explicitly notes the known 100 ft-lb standard (as also referenced in column 1, lines 51-56 of the '906 patent, as noted by the Examiner during prosecution).<br><br>Moreover, as repeatedly asserted by the Examiner during prosecution of the '906 patent, it is well within the ordinary skill in the art to, *inter alia*, select the thickness of the film to meet or exceed any safety standard. |

As is apparent by a review of the table above, each and every structural and method step limitation of claims 1 and 6, in their recited orientations, is taught and/or suggested by the teachings of the '433 patent in view of the IWFA document.

The '433 patent teaches that a PET-containing film may be applied to "**a** glass sheet" (emphasis added;  *see, inter alia*, column 1, lines 3-5 and claim 1).  Thus, "a single glass laminate article" can be achieved (see, column 2, lines 59-50 of the '433 patent).  Moreover, there is <u>no restriction</u> on the type of glass sheet to which the PET-containing film of the '433 patent may be applied.

For its part, the IWFA document specifically instructs (on page 32) that such a polyester film could be applied to *a single piece* of **wired** glass.

Still further, the IWFA document also explicitly recites the 100 ft-lbs standard recited in claim 1 of the '906 patent (indeed, page 18 of the IWFA document cites the very same CPSC standard in C.F.R 1201, as does column 1, lines 51-58 of the '906 patent).

With respect to the recited impact resistance of claim 6 of the '906 patent ("to about 4000 ft-lbs"), Requester notes column 3, lines 35-38 of the '906 patent, and Patentee's admission that:

> "However, *any desired degree of impact resistance* can be obtained by providing additional layers of wire glass, fire resistant films and other fire resistant glazing materials."  (emphasis added).

Thus, in agreement therewith, and as repeatedly asserted by the Examiner during prosecution of the '906 patent itself, the '4000 ft-lb' limitation present in claim 6 of the '906 patent is an obvious design choice well within the ability of one or ordinary skill in the art, merely be selecting, *inter alia*, an appropriate thickness of the applied film (*see*, page 2 of the Office Action dated April 19, 2005; as well as page 2 of the Office Action dated November 1, 2005; attached hereto as Exhibits F and G, respectively).

Requester notes that the '906 patent does not itself disclose any particular or specific method of manufacturing the filmed wired glass product, as described therein and recited in claim 6, aside from merely stating that the film is "adhered" or "applied" to the wired glass.  Thus, the manufacturing process disclosed and taught in the '433 patent is believed to be fully anticipatory in this respect.

Lastly, Requester notes that the fire resistant qualities of PET containing films was well known and widely understood by those of ordinary skill in the art, as evidenced by, *inter alia*, column 3, lines 12-20 of U.S. Patent No. 5,462,805 issued to Sakamoto et al. on October 31, 1995  ("the '805 patent"; attached hereto as Exhibit H).  Requester therefore asserts the fire-resistance of PET-containing films to be an inherent and well-known quality thereof, although use of the '805 patent or other reference on this point is well within the expertise and discretion of the U. S. Patent Office.

Anecdotally, Requester notes that until recent years, wired glass was never – by state or federal regulation – required to be coated with any of the known (i.e., PET-containing) polyester films in order to meet applicable impact standards.  Indeed, 'wired glass' was specifically exempted from state and federal impact safety standards.  Thus, although the knowledge to do so was well understood by, and within the

capability of, those of ordinary skill in the art (as evidenced by at least the '433 patent and the IWFA document), there was little economic incentive for these skilled artisans to produce such a product, or obtain patent protection thereon.

Owing, however, to known safety concerns regarding the lack of impact resistance of wired glass, new state and federal regulations have recently evolved so as to remove the historical exemption from impact standards previously enjoyed by wired glass.

The '906 patent therefore reflects an attempt to capture a previously known and understood wired glass/film assembly, subsequent to federal and state standards changing to require the same.

The '433 patent clearly shows prior known use of PET-containing safety films on 'a glass sheet', without restriction, while the IWFA document explicitly instructs the use of such polyester films on either the interior or exterior of wired glass. Requester therefore notes that any claim to secondary considerations (e.g., economic success of the '906 patent) must take into account the effect of newly enacted regulations, which now require impact resistance on many wired glass installations. Thus, Requester notes that any economic success enjoyed by the Patentee of the '906 patent is merely the function of recent regulations now requiring impact resistance to wired glass, and not due to the unknown, unforeseen or unobvious ability to create a PET-coated wire glass product, as claimed by the '906 patent.

Requester lastly notes the article Wired Glass: The Illusion of Safety (hereinafter the "Wired Glass article"; attached hereto as Exhibit I). The Wired Glass article clearly points out that:

> "…wired glass manufacturers have had the technology to make their wired glass products impact safe **for a decade**", noting "**[o]rganic safety film products … have been tested successfully** [almost 10 years ago] **with wired glass** by non-wired glazing producers." (Emphasis added; page 2).

Exhibit J is an associated article-index to the Wired Glass article, and reflects that the Wired Glass article was *posted* on the [www.safeglass.org](www.safeglass.org) website on May 12, 2002. Thus, the Wired Glass article itself documents that coating *a piece of wired* glass with an impact resistant film was well known *for almost a decade* prior to the priority date of the '906 patent.  Although Requester does not believe that use of the Wired Glass article in a rejection of the claims of the '906 patent is necessary (given the explicit teachings of the '433 patent and the IWFA document), Requester has provided the same for use by the U. S. Patent Office, at their expert discretion.

Requester has shown through the remarks and analysis above that the broad claim language currently present in claims 1 and 6 of the '906 patent is unsupportable in view of the '433 patent in view of the IWFA document.

Requester has further noted that neither the IWFA document nor the '433 patent had ever been considered by the Examiner during the prosecution of the '906 patent.

Finally, Requester has shown that each and every limitation of claims 1 and 6 of the '906 patent can now be met by the sole or combined teachings of the IWFA document and the '433 patent.

Requester therefore seeks reexamination of claims 1 and 6, at least on the basis that claims 1 and 6 are rendered obvious over the '433 patent in view of the IWFA document.

## V.    DEPENDANT CLAIMS OF THE '906 PATENT

Although independent claims 1 and 6 have been discussed in detail, Requester has the following comments as they pertain to the subject matter of the dependent claims of the '906 patent:

1) Claim 2:  Requester notes the Examiner's repeated assertion (acquiesced to by the Patentee) that "[i]t is well known in the art to incorporate known

16

colorants in polymer films used in glazing applications (*see*, page 2 of Exhibit G);

2) Claim 3:  Requester notes that the Examiner rejected the subject matter of this dependant claim over U. S. Patent 5,230,954 or U. S. Patent 5,624,761 in view of Patentee's own admissions (*see*, rejection of 'old' claim 21, page 2 of Exhibit G).  Further, Requester notes that the "reflective film" recited in claim 3 merely relates to the Patentee's assertion that "[m]etal-containing films can provide greater .. reflectivity" (*see*, *inter alia*, column 2, lines 25-31).  Thus, as Patentee has acquiesced to the Examiner's rejection in this regard, and given the known use of metals in glazing films in general (as discussed below in connection with claims 4 and 5), Requester believes the subject matter of claim 3 to be clearly disclosed and known in the art.

Moreover, it is unclear whether the subject matter of claim 3 truly further limits the claim upon which it depends, or whether it lacks sufficient structure to support its structural recitations, or even whether it is merely reciting an inherent and known quality of PET-containing films (which are all inherently 'reflective' to some extent).  Thus, the subject matter of claim 3 is alternatively disclosed by the prior art, or an inherent quality of known films, or indefinite for not being further limiting or providing sufficient structure; and

3) Claims 4 and 5:  Requester notes the Examiner's repeated assertion (acquiesced to by the Patentee) that "[i]t is well known in the art to apply thin metal coatings comprising stainless steel or other metals to polymeric films for use in safety glazing applications in order to minimize heat transmission through the glazing" (*see*, page 2 of Exhibit G, citing U.S. Patent 4,973,511).

Requester therefore respectfully requests reexamination of dependent claims 2-5.

17

## VI.    REASONS FOR ALLOWANCE OF THE '906 PATENT

The Patentee of the '906 patent made several unsuccessful arguments against the repeated rejections issued by the Examiner, until finally amending the claims to include the more restrictive "consisting essentially of" phraseology, in combination with arguing that the cited prior art only showed use of PET-films with *multiple* wire glass sheet laminates.

In discussing possible amendments to the claims of the '906 patent to gain allowance, Patentee proposed to craft claims,

> *"which would specify that the claimed invention(s) **have only a two layer structure (film/glass)** and thereby distinguish it [from the cited prior art used in the outstanding rejection] which require at least **three layers (two layers of glazing material and a film layer)."*** (*see*, Interview Summary, dated July 12, 2005; attached hereto as Exhibit K).

Requester notes that the 'layers' referred to by Patentee were only layers of glass sheets and film, and not inclusive of any adhesive substance or layer required for the adhesion of the PET-containing film to the glass sheets.

Subsequent to this Interview, the Patentee did, in fact, amend the claims in order to include the restriction phraseology "consisting essentially of", stating:

> *"Applicants have amended the remaining independent claims to include "consisting essentially of" as the connecting phrase.  The Examiner indicated that this amendment could overcome the rejection … over Sakamoto, **which discloses at least two glass plates**."*;  and moreover that,

> *"Applicant respectfully submits that the instant claims are allowable at least because elimination of structures considered to be necessary by Sakamoto while retaining their function  is indicative of nonobviousness."* (emphasis added; *see*, Page 6 of Patentee's Response filed July 19, 2005; attached hereto as Exhibit L).

Thus, it is clear that Patentee rested the allowance of the '906 patent upon the argument that the claims were restricted to "consisting essentially of" only a

*single* wire glass sheet coated with a single PET-containing film.  The Examiner agreed, stating:

> *"The prior art of record fails to disclose or suggest fire resistant safety glass laminates **consisting essentially** of **a** wire glass sheet and **a** fire resistant PET film, with said film having the recited impact resistance (claims 3 and 18)."*
> (emphasis added; *see*, page 4 of Exhibit G).

Requester has shown that the '433 patent does, in fact, instruct the application of a single PET-containing layer on a single glass sheet, without restriction as to the type of glass sheet so coated.  Moreover, the IWFA document explicitly instructs the application of a single polyester (e.g., PET) film upon a single sheet of wired glass.

As Requester has brought forth new prior art references which now explicitly teach those very attributes upon which allowance of the '906 patent was based, Requester respectfully submits that a substantial new question of patentability now exists with respect to the claims of the '906 patent.  Reexamination of the claims of the '906 patent is therefore respectfully requested.

## VII.    STANDARD OF REVIEW

Requester submits that a substantial new question of patentability has been set forth with respect to claims 1-6 of the '906 patent.  As discussed in MPEP § 2242,

> "For "a substantial new question of patentability" to be present, it is only necessary that: the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable … **It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications**. As to the importance of the difference between "a substantial new question of patentability" and a "*prima facie*" case of unpatentability see generally *In re Etter,* 756 F.2d 852, 857 n.5, 225 USPQ 1, 4 n.5 (Fed. Cir. 1985)."  (emphasis added)

Requester thus respectfully asserts that the proposed rejections of claims 1-6 do provide the basis for the grant of reexamination and the rejection of claims 1-6 as they currently stand.  As a minimum, Requester submits that the teachings of the prior art patents discussed above "is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable" (*See*, MPEP § 2242), and therefore the present Request for Reexamination should be granted.

## CONCLUSION

Requester respectfully submits that substantial new questions of patentability have been substantiated in the present Request for Reexamination for all claims of the '906 patent.

A copy of this Request for Reexamination in the '906 Patent has been served on the patent owner via service on the attorney of record, pursuant 37 C.F.R. § 1.33.

Please charge our Deposit Account No. 13-0235 for any fees associated in connection with the filing of the present Request for Reexamination.  No other fees are believed to be due, however, please charge our Deposit Account No. 13-0235 in the advent that any additional fees are required.

An Information Disclosure Statement is attached herewith as Exhibit M, listing all references cited during examination of the '906 patent, as well as those uncited patents and other documents newly presented by the Requester, pursuant to MPEP §2218.

Litigation Notice

The early stages of litigation are currently ongoing between the owner of the '906 patent, and the Requester, in the United States District Court for the Northern District of California, Civil Action Case No. 07-CV03535-JF.  A copy of the Complaint filed in

connection with 07-CV03535-JF is attached hereto as Exhibit N.  Requester therefore respectfully requests a thorough, rapid and substantive review of the present Request for Reexamination and grant of the same.

Finally, it should be noted that the undersigned Attorney holds an appointment from the party on whose behalf this request is being filed (*See*, Power of Attorney, attached as Exhibit O).

Respectfully submitted,

By    /Nicholas J. Tuccillo/
    Nicholas J. Tuccillo
    Registration No. 44,322
    Attorney for Anemostat

Customer No. 35301
McCORMICK, PAULDING & HUBER LLP
CityPlace II
185 Asylum Street
Hartford, CT  06103-4102
Tel. (860) 549-5290
Fax (413) 733-4543

CERTIFICATE OF SERVICE

This is to certify that a copy of the REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 7,090,906 has been furnished by first class mail, this 30th day of August, 2007, on the Attorneys of record for the Patentee.

Mark I. Schickman
Daniel T. Bernhard
Freeland Cooper & Foreman LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Tel.: (415) 541-0200
Fax: (415) 495-4332

/Nicholas J. Tuccillo/
Nicholas J. Tuccillo

EXHIBIT INDEX

Exhibit A          U.S. Patent. No. 7,090,906 in double column format

Exhibit B          Safety/Security Window Film, International Window Association
                   (1999)

Exhibit C          U.S. Patent No. 6,841,106

Exhibit D          Advocates for Safe Glass, Bekaert letter dated October 18, 2001

Exhibit E          U.S. Patent No. 5,049,433

Exhibit F          Office Action dated April 19, 2005

Exhibit G          Office Action dated November 1, 2005

Exhibit H          U.S. Patent 5,462,805

Exhibit I          Wired Glass: The Illusion of Safety

Exhibit J          Article-Index to Wired Glass: The Illusion of Safety

Exhibit K          Interview Summary, dated July 12, 2005

Exhibit L          Response to Office Action, July 19, 2005

Exhibit M          Information Disclosure Statement

Exhibit N          A copy of the Complaint filed in the United States District
                   Court for the Northern District of California, Civil Action Case No.
                   07-CV03535-JF

Exhibit O          Power of Attorney