## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| Inventors: | WILLIAM O'KEEFFE | ) | Patent No. | 7,090,906 |
| | | ) | | |
| Assignee: | O'KEEFFE'S, INC. | ) | Granted: | Not yet granted |
| | | ) | | |
| Serial No.: | 10/238,115 | ) | Examiner: | Not yet assigned |
| | | ) | | |
| Filed: | September 10, 2002 | ) | | |
| | | ) | Our File No. | 0389-189R-1 |
| For: | FIRE RESISTANT SAFETY GLASS | ) | | |

Mail Stop *Inter Partes* Reexam
COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, VA 22313-1450


## REQUEST FOR *INTER PARTES* REEXAMINATION
## OF U.S. PATENT NO. 7,090,906


Dear Sir:

## TABLE OF CONTENTS

I.    FOUNDATION OF REEXAMINATION ............................................................. 3
II.   REEXAMINATION OF CLAIMS 1 and 6 BASED ON
      ANTICIPATION or, in the alternative, PRIOR ART OBVIOUSNESS ......... 3
III.  REEXAMINATION OF CLAIMS 1 and 6 BASED ON PRIOR ART
      OBVIOUSNESS ....................................................................................... 10
IV.   REEXAMINATION OF CLAIMS 1 and 6 BASED ON PRIOR ART
      OBVIOUSNESS ....................................................................................... 17
V.    DEPENDENT CLAIMS OF THE '906 PATENT ...................................... 24
VI.   REASONS FOR ALLOWANCE OF THE '906 PATENT ........................... 25
VII.  STANDARD OF REVIEW ....................................................................... 26
VIII. MERGER OF REEXAMINATIONS ........................................................ 27

Requester, Anemostat Products, by its undersigned Attorney, respectfully requests *Inter Partes* Reexamination of U.S. Patent No. 7,090,906 ('the '906 patent') issued August 15, 2006. The '906 patent is submitted herewith in double column format, in accordance with 37 C.F.R. § 1.510(b)(4), and is attached hereto as Exhibit A. Reexamination is specifically requested for all claims, claims 1-6, of the '906 patent.

## I.    FOUNDATION OF REEXAMINATION

Requester seeks *Inter Partes* reexamination of claims 1-6 of the '906 patent pursuant to 37 C.F.R. § 1.915. Moreover, Requester asserts that the present Request for Reexamination is based upon substantial new questions of patentability with respect to claims 1-6 of the '906 patent.

The substantial new questions of patentability are themselves based upon prior art references that were not cited during prosecution of the '906 patent, alone, or in combination with prior art that was cited during the original prosecution of the '906 patent. In doing so, Requester submits that a "new question of patentability" may be posed by the combination of newly cited prior art and that prior art considered in the original prosecution of the '906 patent, and/or by the independent consideration of prior art that was considered in the original prosecution.

Requester therefore respectfully submits that reliance upon previously cited prior art references, either by themselves or in combination with previously uncited references, provides the required basis sufficient to warrant the grant of reexamination.

## II.    REEXAMINATION OF CLAIMS 1 and 6 BASED ON ANTICIPATION or, in the alternative, PRIOR ART OBVIOUSNESS

All aspects of claims 1 and 6 of the '906 patent are anticipated under 35 U.S.C. § 102(b) by Thin glazing can be made safe, *Glass Age and Window Construction*, volume 41, No. 11 (November 1998) (hereinafter, "the Glass Age article"; attached hereto, with supporting Affidavit, as Exhibit B); or, in the alternative, rendered obvious, under 35 U.S.C. § 103(a), over the Glass Age

article, in view of the supporting documents in Exhibits C-G (hereinafter; "the Supporting Documents", as described and categorized below).

Neither the Glass Age article, nor the Supporting Documents, were before the Examiner during prosecution of the '906 patent.

As will be described in more detail hereinafter, the expressed rationale for the allowance of claims 1 and 6 of the '906 patent is hereby refuted as being anticipated by the Glass Age article, or in the alternative, rendered obvious through a combination of the Glass Age article with the teachings contained in the Supporting Documents.

Attached to Exhibit B is an Affidavit from the New York Public Library attesting to the 1998 publication date of the Glass Age article. The article itself (on page 26) publicized the results of testing done by the British Standards Institution (BSI) upon glazed-glass products made by Madico, Inc.

In particular, the Madico products that were tested in 1998 included "wired glass" that were treated with Madico's Protekt® safety film. These tests showed that the glazed wired glass met the British Impact Safety requirements of BS 6206:1981 Class B (hereinafter, "the British Standard"; attached hereto as Exhibit C).

Thus, more than three (3) years before the priority date of the '906 patent, at least one major producer of window glazing products (Madico) was already publicly marketing and testing products consisting of a single sheet of wired glass having a single sheet of PET-containing film thereon, in order to meet well-known impact safety standards of 100-150 ft-lbs. Thus, the Glass Age article fully anticipates each and every aspect of at least claim 1 of the '906 patent.

With respect to the method recited in claim 6 of the '906 patent, Requester respectfully submits that the known ability to manufacture a glazed wired glass product, whereby the glazing itself contains PET, is inherent in the Glass Age article, which after all tested just such an assembly.

Thus, Requester respectfully submits that the Glass Age article, alone, encompasses all teachings necessary to provide the basis for an anticipatory rejection of at least independent claims 1 and 6.

To the extent that various inherent elements, or well-known qualities of those elements that are referenced in the Glass Age article, require further clarification and/or documentation in support of an alternative 35 U.S.C. § 103(a) obviousness-type rejection, Requester notes the following:

1)      Exhibit D details the specific assemblies and corresponding test results (hereinafter, "the Test Results") referred to in the Glass Age article. As will be seen, testing was performed upon products that had glazing on polished as well as on rough cast *wired glass* with Madico's *CL 400XSR* film.

2)      Exhibit E is a product sheet (hereinafter, "the Product Sheet") from Madico illustrating that the CL 400XSR film discussed in the Test Results is the "Protekt®" safety film discussed in the Glass Age article.

3)      Further, Exhibit F is a Madico 1995 Material Safety Data Sheet (hereinafter, "the MSDS") specifically and explicitly stating that Madico's CL-400XSR Protekt® safety film was well known in 1995 and was one of the known "PET Films" which contained approximately 80-97% PET by weight.

4)      Also noted on the MSDS for Madico's CL-400XSR Protekt® safety film is the film's 500°F "fire resistant" properties. Thus, at least as far back as 1995, Madico's CL-400XSR Protekt® safety film clearly meets the broad recitation of being "fire resistant", as broadly expressed in claims 1 and 6 of the '906 patent.

5)      Exhibit G is an Affidavit from Carl Kernander of Madico, Inc. (hereinafter, "the Kernander Affidavit") which attests to the accuracy of the information contained in the Glass Age article, as discussed above. Specifically, the Kernander Affidavit attests to the equivalency between the U.S. and British impact safety standards, confirms that the Tests Results are the same results discussed in the Glass Age article,

5

confirms that the tested product consisted of a single piece of wired glass treated with a single piece of Madico's CL-400XSR Protekt® safety film, and attests to the fire resistance of Madico's (CL-400XSR) Protekt® PET-containing safety film.

6)    Lastly, Requester notes that the Glass Age article and the accompanying Supporting Documents clearly show the known ability of those of skill in the art at the time the '906 patent was filed to manufacture a single piece of wired glass having a fire-resistant, PET-film applied thereon.  Thus, the broadly defined 'method' recited in claim 6 of the '906 patent is inherent in these teachings.

Neither the Glass Age article nor the Supporting Documents were before the Examiner during prosecution of the '906 patent, and their teachings were never acknowledged or utilized by the Examiner during prosecution of the '906 patent.

Moreover, given the similarities in structural configuration, operation and intended use, Requester respectfully asserts that the teachings of the Glass Age article and the Supporting Documents would have been considered important and pertinent to the Examiner, had the Glass Age article and/or the Supporting Documents been of record during prosecution of the '906 patent.

As every aspect of claims 1 and 6 of the '906 patent is anticipated by the Glass Age article alone, or in the alternative, rendered obvious over the Glass Age article in view of the Supporting Documents, and given that the Examiner never acknowledged the existence of Glass Age article or the Supporting Documents during prosecution of the '906 patent, Requester respectfully submits that these circumstances alone raise a substantial new question of patentability, at least with respect to the additional teachings of the Glass Age article and/or the Supporting Documents, now presented for consideration for the very first time.

Reference will now be made to the table below, comparing all the elements of claims 1 and 6 to the combined teachings of the Glass Age article and the Supporting Documents.

| Claim 1 of the '906 Patent | The Proposed Combined References |
|---|---|
| A fire resistant safety glass, consisting essentially of: | The Glass Age article discusses the successful testing of Madico's (CL-400XSR) Protekt® safety film as applied to wired glass.<br><br>To the extent necessary, the MSDS confirms the known 'fire-resistance' of Madico's (CL-400XSR) Protekt® safety film. |
| a piece of wire glass; | The Glass Age article explicitly instructs use of a single piece of wired glass.<br><br>To the extent necessary, the Test Results and the Kernander Affidavit both confirm the use of a single piece of wired glass. |
| and a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs. | The Glass Age article and the accompanying Test Results both confirm that the wired glass treated with Madico's (CL-400XSR) Protekt® safety film meets/passes the British impact standard (of at least 100 ft-lbs.).<br><br>The cited impact standard is a well known standard, and thus would be well within the ability of those of skill in the art to meet (also referenced in column 1, lines 51-56 of the '906 patent, as noted by the Examiner during prosecution). |
| and further wherein the fire resistant film contains PET. | The Glass Age article recites the use of Madico's (CL-400XSR) Protekt® safety film, which contains PET.<br><br>The MSDS confirms the PET-containing nature of Madico's (CL-400XSR) Protekt® safety film. |

| Claim 6 of the '906 Patent | The Proposed Combined References |
|---|---|
| A method of manufacturing a fire resistant safety glass, consisting essentially of the steps of: | The Glass Age article inherently encompasses a method of manufacturing a fire-resistant safety glass. |
| providing one sheet of wire glass; | The Glass Age article explicitly instructs use of a single piece of wired glass.<br><br>To the extent necessary, the Test Results and the Kernander Affidavit both confirm the use of a single piece of wired glass. |
| and adhering a fire resistant film of PET to said sheet of wire glass sufficient to impart to said fire resistant safety glass an impact resistance of about 100 foot lbs to about 4000 foot lbs. | The Glass Age article discusses the testing of wired glass having a PET-containing film glazed thereon.<br><br>To the extent necessary, the MSDS confirms the known 'fire-resistance' of Madico's (CL-400XSR) Protekt® safety film.<br><br>The Glass Age article and the accompanying Test Results both confirm that the wired glass treated with Madico's (CL-400XSR) Protekt® safety film meets/passes the British impact standard (of at least 100 ft-lbs.).<br><br>Moreover, as repeatedly asserted by the Examiner during prosecution of the '906 patent, it is well within the ordinary skill in the art to, *inter alia*, select the thickness of the film to meet or exceed <u>any</u> safety standard. |

As is apparent by a review of the table above, each and every structural limitation of claims 1 and 6, in their recited orientations, are taught and/or suggested by the teachings of the Glass Age article alone, or in the alternative, by combining the teachings of the Glass Age article with those of the Supporting Documents.

The Glass Age article and the Supporting Documents clearly show the known and well publicized ability of glass manufacturers to make and sell PET-containing films, for use on wired glass and for the purposes of meeting known impact safety standards, *years prior* to the priority date of the '906 patent.

Requester has shown through the remarks and analysis above that the broad claim language currently present in claims 1 and 6 of the '906 patent is unsupportable in view of the Glass Age article alone, or, in the alternative, in view of the combined teachings of the Glass Age article and the Supporting Documents.

Requester has further noted that neither the Glass Age article nor the Supporting Documents had ever been considered by the Examiner during the prosecution of the '906 patent.

Finally, Requester has shown that each and every limitation of claims 1 and 6 of the '906 patent can now be met by the sole or combined teachings of the Glass Age article and the Supporting Documents.

Requester therefore seeks reexamination of claims 1 and 6, at least on the basis that claims 1 and 6 are anticipated or, in the alternative, rendered obvious over the Glass Age article alone, or alternatively, in combination with the Supporting Documents.

III.    **REEXAMINATION OF CLAIMS 1 and 6 BASED ON PRIOR ART OBVIOUSNESS**

All aspects of claims 1 and 6 of the '906 patent are obvious, under 35 U.S.C. § 103(a), over U.S. Patent No. 5,049,433 issued to Leotta on September 17, 1991 ("the '433 patent"; attached hereto as Exhibit H) in view of the Glass Age article.

Neither the '433 patent nor the Glass Age article were of record during prosecution of the '906 patent, nor were these references acknowledged or utilized in any rejection asserted by the Examiner during prosecution of the '906 patent.

The '433 patent is directed to a safety glass laminate, and method for manufacturing the same, in which a *"[g]lass sheet 1 is the sole glass sheet of the laminate, i.e. a single glass laminate article."* (*see*, column 2, lines 59-60). Indeed, the '433 patent explicitly discloses the application of a PET-containing film to a single sheet of glass. The '433 patent fails, however, to specifically disclose that the PET-containing film may be applied to a piece of *wired* glass, and that the resultant assembly can be manufactured to withstand an impact resistance of 100 ft-lbs.

The Glass Age article, however, does teach both that a PET-containing film can be applied to a single piece of *wired* glass, as well as disclosing the recited impact resistance of the resultant assembly.

Given that the Glass Age article discusses the testing done on Madico, Inc. products, including a piece of wire glass having Madico's (CL-400XSR) Protekt® safety film applied thereon, Requester respectfully submits that the Glass Age article is analogous art, pursuant to MPEP § 2141.01, and therefore is available for use, in combination with the '433 patent, to reject the claims of the '906 patent.

Moreover, given the similarities in structural configuration, operation and intended use, Requester respectfully asserts that the teachings of the '433 patent and the Glass Age article would have been considered important and pertinent to the Examiner had the '433 patent and/or the Glass Age article been of record during prosecution of the '906 patent.

Thus, it would have been obvious for one of ordinary skill in the art at the time the '906 patent was made to have utilized the application of Madico's (CL-400XSR) *PET-containing* Protekt® safety film to *wired* glass, to produce a given impact resistance, as disclosed in the Glass Age article, with the teachings of the '433 patent, for the purposes of providing known impact and fire resistance to wired glass, as was already known in the art at the time the '906 patent was filed.

Additionally, the '433 patent explicitly instructs a method for applying a single PET-containing film to a single sheet of glass (without restriction as to the *type* of glass that is being glazed) via an adhesive (*see*, e.g., Figures 1-2).  The Glass Age article also inherently discloses and evidences as much, given that the Glass Age article discusses the testing done on just such a wired glass that is glazed with a PET-containing film.

As every aspect of claims 1 and 6 of the '906 patent is rendered obvious over the '433 patent, in view of the Glass Age article, and given that the Examiner never acknowledged the existence of the '433 patent or the Glass Age article during prosecution of the '906 patent, Requester respectfully submits that these circumstances alone constitute a substantial new question of patentability, at least with respect to the additional teachings of the '433 patent and the Glass Age article, now presented for consideration for the very first time.

Reference will now be made to the table below, comparing all the elements of claims 1 and 6 to the combined teachings of the '433 patent and the Glass Age article.

| Claim 1 of the '906 Patent | The Proposed Combined References |
|---|---|
| A fire resistant safety glass, consisting essentially of: | The '433 patent is directed to a safety glass laminate, and method for manufacturing the same. |
| a piece of wire glass; | The '433 patent teaches the coating of "a glass sheet", without limitation as to the type of glass sheet utilized.<br><br>The Glass Age article teaches the coating of a single piece of *wired* glass. |
| and a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs. | The '433 patent teaches coating a glass sheet with a fire resistant film (e.g., PET).<br><br>The Glass Age article clearly instructs the application of Madico's (CL-400XSR) PET-containing Protekt® safety film to a single piece of *wired* glass.<br><br>The Glass Age article explicitly notes the very same 100 ft-lb standard (as also referenced in column 1, lines 51-56 of the '906 patent, as noted by the Examiner during prosecution). |
| and further wherein the fire resistant film contains PET. | The '433 patent explicitly teaches the application of a PET-containing film to a single glass sheet (see, *inter alia*, column 2, lines 31-60 and Figure 1).<br><br>The Glass Age article recites the use of Madico's (CL-400XSR) Protekt® safety film, which contains PET.<br><br>The MSDS confirms the fire-resistant and PET-containing nature of Madico's (CL-400XSR) Protekt® safety film. |

| Claim 6 of the '906 Patent | The Proposed Combined References |
|---|---|
| A method of manufacturing a fire resistant safety glass, consisting essentially of the steps of: | The '433 patent is directed to a method of manufacturing a safety glass laminate. |
| providing one sheet of wire glass; | The '433 patent discloses utilizing a single sheet of glass in its manufacturing process, *without reservation* as to the type of glass sheet utilized.<br><br>The Glass Age article explicitly instructs use of a single piece of wired glass.<br><br>To the extent necessary, the Test Results and the Kernander Affidavit both confirm the use of a single piece of wired glass. |
| and adhering a fire resistant film of PET to said sheet of wire glass sufficient to impart to said fire resistant safety glass an impact resistance of about 100 foot lbs to about 4000 foot lbs. | The '433 patent discloses applying a PET film to a single sheet of glass, via an adhesive, in its manufacturing process.<br><br>The Glass Age article discusses the testing of wired glass having a PET-containing film glazed thereon.<br><br>To the extent necessary, the MSDS confirms the known 'fire-resistance' of Madico's (CL-400XSR) Protekt® safety film.<br><br>The Glass Age article and the accompanying Test Results both confirm that the wired glass treated with Madico's (CL-400XSR) Protekt® safety film meets/passes the British impact standard (of at least 100 ft-lbs.).<br><br>Moreover, as repeatedly asserted by the Examiner during prosecution of the '906 patent, it is well within the ordinary skill in the art to, *inter alia*, select the thickness of the film to meet or exceed any safety standard. |

14

As is apparent by a review of the table above, each and every structural and method step limitation of claims 1 and 6, in their recited orientations, is taught and/or suggested by the teachings of the '433 patent in view of the Glass Age article.

The '433 patent teaches that a PET-containing film may be applied to "**a** glass sheet" (emphasis added; *see, inter alia*, column 1, lines 3-5 and claim 1). Thus, "a single glass laminate article" can be achieved (see, column 2, lines 59-50 of the '433 patent). Moreover, there is <u>no restriction</u> on the type of glass sheet to which the PET-containing film of the '433 patent may be applied.

For its part, the Glass Age article specifically instructs that at least Madico, Inc. had tested products consisting of a PET-containing film applied to *a single piece* of **wired** glass.

Still further, the Glass Age article also explicitly recites that the glazed wired glass meets the 100 ft-lbs standard recited in claim 1 of the '906 patent.

With respect to the recited impact resistance of claim 6 of the '906 patent ("to about 4000 ft-lbs"), Requester notes column 3, lines 35-38 of the '906 patent, and Patentee's admission that:

> "However, *any desired degree of impact resistance* can be obtained by providing additional layers of wire glass, fire resistant films and other fire resistant glazing materials." (emphasis added).

Thus, in agreement therewith, and as repeatedly asserted by the Examiner during prosecution of the '906 patent itself, the '4000 ft-lb' limitation present in claim 6 of the '906 patent is an obvious design choice well within the ability of one or ordinary skill in the art, merely be selecting, *inter alia*, an appropriate thickness of the applied film (*see*, page 2 of the Office Action dated April 19, 2005; as well as page 2 of the Office Action dated November 1, 2005; attached hereto as Exhibits I and J, respectively).

Requester notes that the '906 patent does not itself disclose any particular or specific method of manufacturing the filmed wired glass product, as described therein and recited in claim 6, aside from merely stating that the film is "adhered" or "applied" to the wired glass.  Thus, the manufacturing process disclosed and taught in the '433 patent, and inherently evidenced by the testing done of the glazed-wired glass assembly in the Glass Age article, is believed to be fully anticipatory in this respect.

Lastly, Requester notes that the fire resistant qualities of PET containing films was well known and widely understood by those of ordinary skill in the art, as evidenced by, *inter alia*, column 3, lines 12-20 of U.S. Patent No. 5,462,805 issued to Sakamoto et al. on October 31, 1995  ("the '805 patent"; attached hereto as Exhibit K). Requester therefore asserts the fire-resistance of PET-containing films to be an inherent and well-known quality thereof (*see*, also, the MSDS), although use of the '805 patent or other reference on this point is well within the expertise and discretion of the U. S. Patent Office.

The '433 patent clearly shows prior known use of PET-containing safety films on 'a glass sheet', without restriction, while the Glass Age article explicitly instructs the use of PET-containing films on *wired* glass.  Requester has therefore shown through the remarks and analysis above that the broad claim language currently present in claims 1 and 6 of the '906 patent is unsupportable in view of the '433 patent in view of the Glass Age article.

Requester has further noted that neither the Glass Age article nor the '433 patent had ever been considered by the Examiner during the prosecution of the '906 patent.

Finally, Requester has shown that each and every limitation of claims 1 and 6 of the '906 patent can now be met by the sole or combined teachings of the the '433 patent and the Glass Age article.

Requester therefore seeks reexamination of claims 1 and 6, at least on the basis that claims 1 and 6 are rendered obvious over the '433 patent in view of the Glass Age article.

## IV.    REEXAMINATION OF CLAIMS 1 and 6 BASED ON PRIOR ART OBVIOUSNESS

All aspects of claims 1 and 6 of the '906 patent are obvious, under 35 U.S.C. § 103(a), over either U.S. Patent No. 5,230,954 issued to Sakamoto et al. on July 27, 1993 (hereinafter, "the '954 patent"; attached hereto as Exhibit L), or U.S. Patent No. 5,624,761 issued to Sakamoto et al. on April 29, 1997 (hereinafter, "the '761 patent"; attached hereto as Exhibit M) in view of the Glass Age article.

The '954 patent and the '761 patent were of record (and utilized by the Examiner) during the prosecution of the '906 patent.  The Glass Age article was not of record during prosecution of the '906 patent, nor was the Glass Age reference acknowledged or utilized in any rejection asserted by the Examiner during prosecution of the '906 patent.

Both the '954 patent and the '761 patent are directed towards a fire protection and safety composite glass panel, in which various types of glass are glazed with fire and impact resistant film.  Indeed, the '954 patent explicitly discloses the application of a fluorocarbon film to a *single* sheet of *wired glass* (see, column 1, lines 63-65;  column 4, lines 19-26 and Figure 7).  Likewise, the '761 patent explicitly discloses the application of a fluorocarbon film to a *single* sheet of *wired glass* (see, column 3, lines 39-51 and Figures 1 and 3).  Both the '954 patent and the '761 patent fail, however, to specifically disclose that the fluorocarbon film that is applied to a piece of *wired* glass may be a PET-containing film, and that the resultant assembly can be manufactured to withstand an impact resistance of 100 ft-lbs.

The Glass Age article, however, does teach both that a PET-containing film can be applied to a single piece of *wired* glass, as well as disclosing the recited impact resistance of the resultant assembly.

17

Given that the Glass Age article discusses the testing done on Madico, Inc. products, including a piece of wire glass having Madico's (CL-400XSR) Protekt® safety film applied thereon, Requester respectfully submits that the Glass Age article is analogous art, pursuant to MPEP § 2141.01, and therefore is available for use, in combination with either the '954 patent or the '761 patent, to reject the claims of the '906 patent.

Moreover, given the similarities in structural configuration, operation and intended use, Requester respectfully asserts that the teachings of either the '433 patent or the '761 patent, and those contained in the Glass Age article, would certainly have been considered important and pertinent to the Examiner had the Glass Age article been of record during prosecution of the '906 patent.

Thus, it would have been obvious for one of ordinary skill in the art at the time the '906 patent was made to have utilized the application of Madico's (CL-400XSR) *PET-containing* Protekt® safety film to *wired* glass, to produce a given impact resistance, as disclosed in the Glass Age article, with the teachings of either the '954 patent or the '761 patent, for the purposes of providing known impact and fire resistance to wired glass, as was already known in the art at the time the '906 patent was filed.

Additionally, both the '954 patent and the '761 patent explicitly instruct a method for applying a single fluorocarbon film to a single sheet of wired glass via an adhesive, or the like.  The Glass Age article also inherently discloses and evidences as much, given that the Glass Age article discusses the testing done on just such a wired glass that is glazed with a PET-containing film.

As every aspect of claims 1 and 6 of the '906 patent is rendered obvious over either the '954 patent or the '761 patent, in view of the Glass Age article, and given that the Examiner never acknowledged the existence of the Glass Age article or its inherent teachings therein during prosecution of the '906 patent, Requester respectfully submits that these circumstances alone constitute a substantial new question of patentability, at least with respect to the additional teachings of the Glass Age article which address all shortcomings of either the '954 patent or the '761 patent..

Reference will now be made to the table below, comparing all the elements of claims 1 and 6 to the combined teachings of either the '954 patent or the '761 patent, and the Glass Age article.

| Claim 1 of the '906 Patent | The Proposed Combined References |
|---|---|
| A fire resistant safety glass, consisting essentially of: | Both the '954 patent and the '761 patent are directed to a fire-resistant safety glass composite, and method for manufacturing the same. |
| a piece of wire glass; | Both the '954 patent and the '761 patent teach the glazing of a single plate of "wire glass".<br><br>The Glass Age article also teaches the coating of a single plate of *wired* glass. |
| and a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs. | Both the '954 patent and the '761 patent teach the glazing of a wire glass sheet with a fire resistant film, and meeting specified impact standards for the resultant assembly.<br><br>The Glass Age article explicitly references impact testing according to the British Standard (equivalent to the 100 ft-lb standard, as also referenced in column 1, lines 51-56 of the '906 patent, as noted by the Examiner during prosecution). |
| and further wherein the fire resistant film contains PET. | Both the '954 patent and the '761 patent teach the glazing of a wire glass sheet with a fire resistant fluorocarbon film.<br><br>The Glass Age article recites the use of Madico's (CL-400XSR) Protekt® safety film, which contains PET.<br><br>The MSDS confirms the fire-resistant and PET-containing nature of Madico's (CL-400XSR) Protekt® safety film. |

| Claim 6 of the '906 Patent | The Proposed Combined References |
|---|---|
| A method of manufacturing a fire resistant safety glass, consisting essentially of the steps of: | Both the '954 patent and the '761 patent are directed to a method of manufacturing a fire-resistant safety glass composite. |
| providing one sheet of wire glass; | Both the '954 patent and the '761 patent teach the glazing of a single plate of "wire glass".<br><br>The Glass Age article also teaches the coating of a single plate of *wired* glass.<br><br>To the extent necessary, the Test Results and the Kernander Affidavit both confirm the use of a single piece of wired glass. |
| and adhering a fire resistant film of PET to said sheet of wire glass sufficient to impart to said fire resistant safety glass an impact resistance of about 100 foot lbs to about 4000 foot lbs. | Both the '954 patent and the '761 patent teach the glazing of a wire glass sheet with a fire resistant fluorocarbon film, via an adhesive, in its manufacturing process.<br><br>The Glass Age article discusses the testing of wired glass having a PET-containing film glazed thereon.<br><br>To the extent necessary, the MSDS confirms the known 'fire-resistance' of Madico's (CL-400XSR) Protekt® safety film.<br><br>The Glass Age article and the accompanying Test Results both confirm that the wired glass treated with Madico's (CL-400XSR) Protekt® safety film meets/passes the British impact standard (of at least 100 ft-lbs.).<br><br>Moreover, as repeatedly asserted by the Examiner during prosecution of the '906 patent, it is well within the ordinary skill in the art to, *inter alia*, select the thickness of the film to meet or exceed any safety standard. |

As is apparent by a review of the table above, each and every structural and method step limitation of claims 1 and 6, in their recited orientations, is taught and/or suggested by the teachings of either the '433 patent or the '761 patent, in view of the Glass Age article.

Both the '954 patent and the '761 patent teach the glazing of a wire glass sheet with a fire resistant fluorocarbon film, but fail to explicitly instruct that the film may contain PET.

For its part, the Glass Age article specifically teaches that it was known that a PET-containing film maybe applied to *a single piece* of **wired** glass.

It therefore would have been obvious to one of ordinary skill in the art at the time the invention of the '906 patent was made, to utilize the fire-resistant PET film noted in the Glass Age article, in addition to (or in lieu of) the various fluorocarbon films noted in both the '954 patent and the '761 patent, in order to provide desired impact and fire-resistant qualities to plate of wired glass.

Still further, the Glass Age article also explicitly recites that the glazed wired glass meets the British-equivalent 100 ft-lbs standard recited in claim 1 of the '906 patent.

With respect to the recited impact resistance of claim 6 of the '906 patent ("to about 4000 ft-lbs"), Requester notes column 3, lines 35-38 of the '906 patent, and Patentee's admission that:

> "However, *any desired degree of impact resistance* can be obtained by providing additional layers of wire glass, fire resistant films and other fire resistant glazing materials."  (emphasis added).

Thus, in agreement therewith, and as repeatedly asserted by the Examiner during prosecution of the '906 patent itself, the '4000 ft-lb' limitation present in claim 6 of the '906 patent is an obvious design choice well within the ability of one or ordinary

skill in the art, merely be selecting, *inter alia*, an appropriate thickness of the applied film (*see*, page 2 of Exhibits I and J, respectively).

Requester again notes that the '906 patent does not itself disclose any particular or specific method of manufacturing the filmed wired glass product, as described therein and recited in claim 6, aside from merely stating that the film is "adhered" or "applied" to the wired glass. Thus, the manufacturing process disclosed and taught in either the '954 patent or the '761 patent, and inherently evidenced by the testing done of the glazed-wired glass assembly in the Glass Age article, is believed to be fully anticipatory in this respect.

Both the '954 patent and the '761 patent clearly show prior known use of various fluorocarbon safety films on a single plate of wire glass, while the Glass Age article explicitly instructs the use of PET-containing films on wire glass. Requester has therefore shown through the remarks and analysis above that the broad claim language currently present in claims 1 and 6 of the '906 patent is unsupportable in view of either the '954 patent or the '761 patent, in view of the Glass Age article.

Requester has further noted that the Glass Age article had never been considered by the Examiner during the prosecution of the '906 patent.

Finally, Requester has shown that each and every limitation of claims 1 and 6 of the '906 patent can now be met by the sole or combined teachings of either the '954 patent or the '761 patent, and the Glass Age article.

Requester therefore seeks reexamination of claims 1 and 6, at least on the basis that claims 1 and 6 are rendered obvious over either the '954 patent or the '761 patent, in view of the Glass Age article.

## V.    DEPENDENT CLAIMS OF THE '906 PATENT

Although independent claims 1 and 6 have been discussed in detail, Requester has the following comments as they pertain to the subject matter of the dependent claims of the '906 patent:

1)  Claim 2:  Requester notes the Examiner's repeated assertion (acquiesced to by the Patentee) that "[i]t is well known in the art to incorporate known colorants in polymer films used in glazing applications (*see*, page 2 of Exhibit J);

2)  Claim 3:  Requester notes that the Examiner rejected the subject matter of this dependant claim over U. S. Patent 5,230,954 (Exhibit L) or U. S. Patent 5,624,761 (Exhibit M) in view of Patentee's own admissions (*see*, rejection of 'old' claim 21, page 2 of Exhibit J).  Further, Requester notes that the "reflective film" recited in claim 3 merely relates to the Patentee's assertion that "[m]etal-containing films can provide greater ... reflectivity" (*see*, *inter alia*, column 2, lines 25-31).  Thus, as Patentee has acquiesced to the Examiner's rejection in this regard, and given the known use of metals in glazing films in general (as discussed below in connection with claims 4 and 5), Requester believes the subject matter of claim 3 to be clearly disclosed and known in the art.

Moreover, it is unclear whether the subject matter of claim 3 truly further limits the claim upon which it depends, or whether it lacks sufficient structure to support its structural recitations, or even whether it is merely reciting an inherent and known quality of PET-containing films (which are all inherently 'reflective' to some extent).  Thus, the subject matter of claim 3 is alternatively disclosed by the prior art, or an inherent quality of known films, or indefinite for not being further limiting or providing sufficient structure; and

3) Claims 4 and 5:  Requester notes the Examiner's repeated assertion (acquiesced to by the Patentee) that "[i]t is well known in the art to apply thin metal coatings comprising stainless steel or other metals to polymeric films for use in safety glazing applications in order to minimize heat transmission through the glazing" (*see*, page 2 of Exhibit J, citing U.S. Patent 4,973,511).

Requester therefore respectfully requests reexamination of dependent claims 2-5.

## VI.    REASONS FOR ALLOWANCE OF THE '906 PATENT

The Patentee of the '906 patent made several unsuccessful arguments against the repeated rejections issued by the Examiner, until finally amending the claims to include the more restrictive "consisting essentially of" phraseology, in combination with arguing that the cited prior art only showed use of PET-films with *multiple* wire glass sheet laminates.

In discussing possible amendments to the claims of the '906 patent to gain allowance, Patentee proposed to craft claims,

> *"which would specify that the claimed invention(s) **have only a two layer structure (film/glass)** and thereby distinguish it [from the cited prior art used in the outstanding rejection] which require at least **three layers (two layers of glazing material and a film layer)."* (see*, Interview Summary, dated July 12, 2005;  attached hereto as Exhibit N).

Requester notes that the 'layers' referred to by Patentee were only layers of glass sheets and film, and not inclusive of any adhesive substance or layer required for the adhesion of the PET-containing film to the glass sheets.

Subsequent to this Interview, the Patentee did, in fact, amend the claims in order to include the restriction phraseology "consisting essentially of", stating:

> *"Applicants have amended the remaining independent claims to include "consisting essentially of" as the connecting phrase.  The Examiner indicated that this amendment could overcome the rejection … over Sakamoto, **which discloses at least two glass plates**."*;  and moreover that,

> *"Applicant respectfully submits that the instant claims are allowable at least because elimination of structures considered to be necessary by Sakamoto while retaining their function is indicative of nonobviousness."* (emphasis added; *see*, Page 6 of Patentee's Response filed July 19, 2005; attached hereto as Exhibit O).

Thus, it is clear that Patentee rested the allowance of the '906 patent upon the argument that the claims were restricted to "consisting essentially of" only a *single* wire glass sheet coated with a single PET-containing film. The Examiner agreed, stating:

> *"The prior art of record fails to disclose or suggest fire resistant safety glass laminates **consisting essentially** of a wire glass sheet and **a** fire resistant PET film, with said film having the recited impact resistance (claims 3 and 18)."* (emphasis added; *see*, page 4 of Exhibit J).

Requester has shown that the '433 patent does, in fact, instruct the application of a single PET-containing layer on a single glass sheet, without restriction as to the type of glass sheet so coated.

Moreover, the Glass Age article explicitly discusses the testing of a PET-containing film upon a single sheet of wired glass.

As Requester has brought forth new prior art references which now explicitly teach those very attributes upon which allowance of the '906 patent was based, Requester respectfully submits that a substantial new question of patentability now exists with respect to the claims of the '906 patent. Reexamination of the claims of the '906 patent is therefore respectfully requested.

## VII.    STANDARD OF REVIEW

Requester submits that a substantial new question of patentability has been set forth with respect to claims 1-6 of the '906 patent. As discussed in MPEP § 2642,

"[F]or "a substantial new question of patentability" to be present, it is only necessary that: (A) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the prior art patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable … **It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications**. As to the importance of the difference between "a substantial new question of patentability" and a "*prima facie*" case of unpatentability see generally *In re Etter,* 756 F.2d 852, 857 n.5, 225 USPQ 1, 4 n.5 (Fed. Cir. 1985)."  (emphasis added)

Requester thus respectfully asserts that the proposed rejections of claims 1-6 do provide the basis for the grant of reexamination and the rejection of claims 1-6 as they currently stand.  As a minimum, Requester submits that the teachings of the prior art documents and patents discussed above "is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable" (*See*, MPEP § 2642), and therefore the present Request for *Inter Partes* Reexamination should be granted.

## VIII.   MERGER OF REEXAMINATIONS

Requester has previously filed an *Ex Parte* Reexamination Request for the '906 patent (Reexamination Serial Number 90/010016).  A decision on this Request has not yet been issued by the U.S. Patent Office.

Since the filing of the earlier *Ex Parte* Request for Reexamination, Requester has uncovered even more uncited, pertinent prior art references and documents which highlight the invalidity of the claims of the '906 patent.  The present *Inter Partes* Request for Reexamination reflects these newly discovered references and documents.

Pursuant to MPEP § 2686.01 and 37 C.F.R. 1.989, Requester therefore respectively requests that the present *Inter Partes* Request for Reexamination be merged with the previously filed *Ex Parte* Request for Reexamination, and that all grounds for reexamination be considered alone, and in combination with one another.

## <u>CONCLUSION</u>

Requester respectfully submits that substantial new questions of patentability have been substantiated in the present Request for Reexamination for all claims of the '906 patent.

A copy of this Request for Reexamination in the '906 Patent has been served on the patent owner via service on the attorney of record, pursuant 37 C.F.R. § 1.33.

Pursuant to 37 C.F.R. § 1.915(b)(7), Requester further certifies that the estoppel provisions of 37 C.F.R. § 1.907 do not prohibit the presently requested *Inter Partes* Reexamination.  Moreover, pursuant to 37 C.F.R. § 1.915(b)(8), Requester notes that the real party in interest is Anemostat Products of Carson, California.

Please charge our Deposit Account No. 13-0235 for any fees associated in connection with the filing of the present Request for *Inter Partes* Reexamination.  No other fees are believed to be due, however, please charge our Deposit Account No. 13-0235 in the advent that any additional fees are required.

An Information Disclosure Statement is attached herewith as Exhibit P, listing all references cited during examination of the '906 patent, as well as those uncited patents and other documents newly presented by the Requester, pursuant to MPEP §2618.

<u>Litigation Notice</u>

The early stages of litigation are currently ongoing between the owner of the '906 patent, and the Requester, in the United States District Court for the Northern District of California, Civil Action Case No. 07-CV03535-JF.  A copy of the Complaint filed in connection with 07-CV03535-JF is attached hereto as Exhibit Q.  Requester therefore

respectfully requests a thorough, rapid and substantive review of the present Request for Reexamination and grant of the same.

Finally, it should be noted that the undersigned Attorney holds an appointment from the party on whose behalf this request is being filed (*See*, Power of Attorney, attached as Exhibit R).

Respectfully submitted,

By     /Nicholas J. Tuccillo/
       Nicholas J. Tuccillo
       Registration No. 44,322
       Attorney for Anemostat

Customer No. 35301
McCORMICK, PAULDING & HUBER LLP
CityPlace II
185 Asylum Street
Hartford, CT  06103-4102
Tel. (860) 549-5290
Fax (413) 733-4543

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the REQUEST FOR *INTER PARTES* REEXAMINATION OF U.S. PATENT NO. 7,090,906 has been furnished by first class mail, this 10th day of October, 2007, on the Attorneys of record for the Patentee.

Daniel Borson
Fliesler Meyer LLP
650 California Street
14th Floor
San Francisco, CA  94108
(415) 362-3800

/ Nicholas J. Tuccillo /
Nicholas J. Tuccillo

EXHIBIT INDEX

| | |
|---|---|
| Exhibit A | U.S. Patent No. 7,090,906 in double column format |
| Exhibit B | Thin glazing can be made safe, *Glass Age and Window Construction*, volume 41, No. 11 (November 1998) and supporting Affidavit |
| Exhibit C | British Standard; Specification for Impact Safety requirements for flat safety glass and safety plastics for use in buildings (1999) |
| Exhibit D | Test Results (of Glass Age Article) |
| Exhibit E | Product Sheet:  CL 400XSR film |
| Exhibit F | Madico 1995 Material Safety Data Sheet |
| Exhibit G | Affidavit of Carl Kernander of Madico, Inc. |
| Exhibit H | U.S. Patent No. 5,049,433 |
| Exhibit I | Office Action dated April 19, 2005 |
| Exhibit J | Office Action dated November 1, 2005 |
| Exhibit K | U.S. Patent No. 5,462,805 |
| Exhibit L | U.S. Patent No. 5,230,954 |
| Exhibit M | U.S Patent No. 5,624,761 |
| Exhibit N | Interview Summary dated July 12, 2005 |
| Exhibit O | Response to Office Action dated July 19, 2005 |
| Exhibit P | Information Disclosure Statement |
| Exhibit Q | A copy of the Complaint filed in the United States District Court for the Northern District of California, Civil Action No. 07-CV03535-JG |
| Exhibit R | Power of Attorney |