

US005230954A

# United States Patent [19]

## Sakamoto et al.

[11] Patent Number: **5,230,954**

[45] Date of Patent: **Jul. 27, 1993**

[54] **FIRE-PROTECTION AND SAFETY COMPOSITE GLASS PANEL**

[75] Inventors: **Akihiko Sakamoto; Kiyoshi Katagi; Takehiro Shibuya,** all of Shiga, Japan

[73] Assignee: **Nippon Electric Glass Co., Ltd.,** Otsu, Japan

[21] Appl. No.: **813,805**

[22] Filed: **Dec. 26, 1991**

[30]     **Foreign Application Priority Data**

Dec. 26, 1990 [JP]  Japan .................................. 2-414822
Sep. 6, 1991 [JP]  Japan .................................. 3-255749

[51] Int. Cl.⁵ ......................... **B32B 17/10; B32B 27/8**
[52] U.S. Cl. .................................... **428/332;** 428/421; 428/422; 428/442
[58] Field of Search ............... 428/421, 422, 442, 426, 428/332

[56]     **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,341,841 | 7/1982 | Ohno et al. | 428/426 |
| 4,606,955 | 8/1986 | Eastman et al. | 428/424 |

*Primary Examiner*—Thomas J. Herbert, Jr.
*Attorney, Agent, or Firm*—Hopgood, Calimafde, Kalil, Blaustein & Judlowe

[57]     **ABSTRACT**

A fire protective glass panel for use in a fire protective window, door, and partition wall, which comprises at least one sheet of fireproof glass plate and a fluorocarbone resin film of a chain molecular structure type bonded to a side surface of the glass plate and which has non-shattering property as well as fire protection property wherein the fireproof glass plate is a heat-resistant and light transparent crystallized glass plate or, alternatively, the fireproof glass plate is a wire glass plate and the fluorocarbone resin film has a thickness of 0.02–1 mm and is made of one of FEP, PFA, PCTFE, ETFE, and PVDF.

**17 Claims, 6 Drawing Sheets**



31    31

21

**U.S. Patent**        July 27, 1993        Sheet 1 of 6        **5,230,954**



21 ～        ～ 31

Fig. 1



21 ～        ～ 32

Fig. 2



31 ～        ～ 31

21

Fig. 3



21          21

32

**Fig. 4**



21          22

31

**Fig. 5**



22          22

32  21  32

**Fig. 6**



23    31

Fig. 7



23    32

Fig. 8



23              23

32

Fig. 9



23     22

31

Fig. 10



22     22

33

Fig. 11



21     22

33

Fig. 12



Fig. 13



Fig. 14



Fig. 15



Fig. 16



Fig. 17

5,230,954

**1**

# FIRE-PROTECTION AND SAFETY COMPOSITE GLASS PANEL

## BACKGROUND OF THE INVENTION

The present invention relates to a glass panel for fire protection and, in particular, to such a glass panel having nonshattering property as well as fire resistant or fireproof property.

In order to prevent the spreading of fire, a door, a window, or a partition wall are made of fire resistant or fire proof materials, for example, iron or steel. However, iron and steel are not light transparent and are, therefore, not desired for the window. Further, the door and the partition are often desired to be made of light transparent materials.

As a glass material for use in fire protection doors, windows, partitions and other fire protection structures, a fireproof or fire resistant glass plate is known in the art. A typical one of the fireproof glass plate is a wire glass which is a sheet glass with woven wire mesh embedded in the center of the sheet. Another type of the fireproof glass plate is made of a heat-resistant and light transparent crystallized glass plate. As one of the crystallized glass, "Fire Lite" glass plate which is made by Nippon Electric Glass Company Limited, a corporation in Japan, and is available in commerce. The crystallized glass consists of 3–5 wt. % Li$_2$O, 20–35 wt. % Al$_2$O$_3$, 55–70 wt. % SiO$_2$, 1–3 wt. % TiO$_2$, 1–4 wt. % ZrO$_2$, 1–5 wt. % P$_2$O$_5$, 0–4 wt. % Na$_2$O, and 0–4 wt. % K$_2$O, but a total amount of Na$_2$O and K$_2$O being 0.5–4 wt. %. The crystallized glass contains the beta-quartz or beta-eucriptite solid solution crystals. The crystallized glass is disclosed as a heat resistant glass in U.S. Pat. No. 3,282,712. The crystallized glass plate has been tested according to the Notification No. 1125 of the Ministry of Construction of Japan and allowed to be used as a fireproof glass for use in a fire protective door, window, partition and other fire protections.

A conventional soda glass plate is low in mechanical impact resistance and in thermal shock. Therefore, it is readily broken and shattered by impact or shock. A safety glass is also known in the art which is improved in the mechanical strength and has nonshattering property. As typical safety glasses, there is known a laminated glass and a glass covered with a thin plastic film. However, such safety glasses do not provide fire protection. Although the wire glass is effective as a safety glass, it tends to broken by a certain strength of mechanical impact to form a through hole. Therefore, the wire glass is not sufficient for the safety glass.

## SUMMARY OF THE INVENTION

Therefore, it is an object of the present invention to provide a fire protection glass panel which is excellent in the resistance and mechanical strength.

According to the present invention, a fire-protection and safety composite glass panel is obtained which comprises a fireproof glass plate with opposite side surfaces and a layer of fluorocarbon resin film of a chain molecular structure type bonded on one of the opposite side surfaces.

The fireproof glass plate is made of a heat-resistant and light transparent crystallized glass, or alternatively, a wire glass.

The fluorocarbon resin film is made of one of fluorinated ethylene propylene (FEP), tetrafluoroethylene perfluoroalkoxy ethylene copolymer (PFA), polychlo-

**2**

rotrifluoroethylene (PCFE), ethylene tetrafluoroethylene copolymer (ETFE), and polyvinyliden fluoride (PVDF).

The fluorocarbon resin film preferably has a thickness of 0.02–1 mm.

According to another aspect of the present invention, a fire-protection and safety composite glass panel is obtained which comprises a plurality of glass plates laminated with a layer of fluorocarbon resin film of the chain molecular structure type between adjacent glass plates. At least one of the glass plates is the fireproof glass plate.

According to further aspects of the present invention, a fire protective door or window is obtained which comprises the composite glass panel and a frame for supporting the composite glass panel.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIGS. 1 to 9 and 10 are cross-sectional views of samples in examples of Nos. 1 to 9 and 10;

FIGS. 11 to 13 and 14 are cross-sectional views of samples in comparative examples of Nos. 1 to 3 and 4;

FIG. 15 is a view illustrating impact resistant test of samples;

FIG. 16 is a front view of a fire-protective window using the composite glass panel according to the present invention; and

FIG. 17 is a perspective view of a fire-protective door using the composite glass panel according to the present invention.

## DESCRIPTION OF THE INVENTION

Briefly speaking, the present invention attempts to provide the safety or nonshattering property to a fireproof or fire-resistant glass plate by laminating a layer of the fluorocarbon resin film of a chain molecular structure type thereto.

The fluorocarbone resin of the chain molecular structure type has a unit structure represented by the following:

$$\begin{bmatrix} X & X' \\ | & | \\ C & C \\ | & | \\ X'' & F \end{bmatrix}$$

where X, X', and X'' are one of H, Cl, F, —CF3, —O—CF2—CF2—CF3, and the like.

Because of a strong interatomic binding of such as C—C and C—F, and of a barrier effect of F atoms covering the carbon chain, the fluorocarbon resin is incombustible. The fluorocarbon resin is known to have excellent chemical stability, heat resistance, wear resistance, light transparence, and mechanical properties such as extension and tensile strength.

The fluorocarbon resin film can be joined onto a surface of the fireproof or fire resistant glass plate by the thermo compression bonding or by use of adhesive agent. Even if a combustible adhesive is used, it is covered with the incombustible fluorocarbon resin film and it is prevented from firing. When the fluorocarbon film is melted by the further heating, the molten fluorocarbon resin encloses the adhesive so that the adhesive is also prevented from firing.

The resultant composite glass plate has the fluorocarbon resin film laminated onto the glass plate and is pro-

5,230,954

3

4

vided with the nonshattering property and excellent impact absorption without reduction of incombustibility, light transparence, chemical stability and others. Therefore, the composite glass panel is useful for fire protective windows, doors, partitions and others. Further, it is provided with high mechanical strength and nonshattering property and is, therefore, useful as a safety or nonshattering glass plate for windows, doors, and other partition walls.

As several examples of the fluorocarbon resin of the chain molecular structure type, there are known, as typical ones, fluorinated ethylene propylene (FEP), tetrafluoroethylene perfluoroalkoxyl ethylene copolymer (PFA), polychlorotrifluoroethylene (PCFE), ethylene tetrafluoroethylene copolymer (ETFE), and polyvinyliden fluoride (PVDF).

The fluorocarbon resin film used in the present invention can have a desired thickness but preferably, of 0.02–1 mm thickness.

Now, description will be made as to examples of the present invention and comparative examples.

EXAMPLE 1

Referring to FIG. 1, a sheet of "Fire Lite" glass plate 21, that is a heat-resistant light transparent crystallized glass plate, was prepared with a dimension of 2000×900×5 mm. A PFA film 31 with a thickness of 50 μm was bonded onto one side surface of the glass sheet or plate 21 to form a sample of a composite glass panel. The bonding was performed by the use of thermo compression bonding at a pressure of 12 Kg/cm² at a temperature of 330° C.

EXAMPLE 2

Referring to FIG. 2, an FEP film 32 with a thickness of 100 μm was bonded by a silicone adhesive agent onto one surface of the glass plate 21 similar to that in Example 1 to form a sample of the composite glass panel.

EXAMPLE 3

Referring to FIG. 3, a sheet of "Fire Lite" glass plate 21 was prepared with a dimension of 2000×900×8 mm. Two sheets of PFA film 31 with a thickness of 50 μm were bonded by use of acrylic adhesive onto both side surfaces of the glass plate 21 to form a sample of a composite glass panel.

EXAMPLE 4

Two "Fire Lite" glass plates 21 similar to that in FIG. 1 were prepared. Referring to FIG. 4, a film 32 of FEP with a thickness of 125 μm was held between those two glass plates 21 and was bonded thereto to form a sample of the composite glass panel. The bonding was performed by the thermo compression bonding by a pressure of 12 Kg/cm² at a temperature of 280° C.

EXAMPLE 5

The "Fire Lite" glass plate 21 similar to that in Example 1 and a sheet of conventional soda glass plate 22 with a dimension of 2000×900×3 mm were prepared. Referring to FIG. 5, a film 31 of PFA with a thickness of 150 μm was held between the glass plates 21 and 22 and was bonded thereto to form a sample of the composite glass panel. The bonding was performed by the thermo compression bonding by a pressure of 12 Kg/cm² at a temperature of 330° C.

EXAMPLE 6

The "Fire Lite" glass plate 21 similar to that in Example 1 and two sheets of soda glass plate 22 with a dimension of 2000×900×6 mm were prepared. Referring to FIG. 6, the "Fire Lite" glass plate 21 was interposed between two soda glass plates 22 and 22. Two films 32 of FEP with a thickness of 200 μm were held between the glass plates 22 and 21 and between glass plates 21 and 22. Then, those three glass plates were bonded through those FEP films 32 to form a laminated glass panel as a sample of the composite glass panel. The bonding was performed by the thermo compression bonding by a pressure of 12 Kg/cm² at a temperature 280° C.

EXAMPLE 7

A piece of wire glass plate 23 with a dimension of 1900×900×6.8 mm was cut from a wire glass plate which was available in commerce. Referring to FIG. 7, a film 31 of PFA with a thickness of 50 μm was bonded onto one side surface of the wire glass plate piece 23. The bonding was performed by means of thermo compression bonding at a pressure of 12 Kg/cm² at a temperature 330° C.

EXAMPLE 8

Referring to FIG. 8, a film 32 of FEP with a thickness of 100 μm was bonded by use of a silicone adhesive agent onto one side surface of the wire glass plate piece 23 similar to that in Example 7 to form a sample of a composite glass panel according to the present invention.

EXAMPLE 9

Referring to FIG. 9, a film 32 of FEP with a thickness of 125 μm was held between two pieces of wire glass plate 23 similar to that in Example 7 and was bonded thereto under a pressure of 12 Kg/cm², at a temperature of 280° C. Thus, a sample of the composite glass panel was produced.

EXAMPLE 10

Referring to FIG. 10, a film 31 of PFA with a thickness of 150 μm was held between a wire glass piece 23 similar to that in Example 7 and a soda glass piece 22 with a dimension of 1900×900×5 mm and was bonded thereto under a pressure of 12 Kg/cm² at a temperature of 330° C. Thus, a sample of the composite glass panel.

COMPARATIVE EXAMPLE 1

Two pieces of soda glass plate 22 was cut out with a dimension of 2000×900×5 mm. Referring to FIG. 11, a film 33 of polyvinyl butyral (PVB) with a thickness of 1 mm was held between the soda glass plate pieces 22 and was bonded thereto under a pressure of 12 Kg/cm² at a temperature of 170° C. Thus, a comparative sample was produced.

COMPARATIVE EXAMPLE 2

Referring to FIG. 12, a PVB film 33 with a thickness of 1 mm was held between a "Fire Lite" glass plate piece 21 similar to that in Example 1 and a soda glass plate piece 22 of a dimension of 2000×900×3 mm and was bonded thereto under a pressure of 12 Kg/cm² at a temperature of 170° C. Thus, a comparative sample was produced.

5,230,954

5

## COMPARATIVE EXAMPLE 3

Referring to FIG. 13, a PFA film 31 with a thickness of 50 μm was bonded onto a side surface of a soda glass plate piece 22 under a pressure of 12 Kg/cm² at a temperature of 330° C. Thus, a comparative sample was produced.

## COMPARATIVE EXAMPLE 4

Referring to FIG. 14, a PVB film 33 with a thickness of 1 mm was held between a wire glass plate piece similar to that in Example 7 and a soda glass plate piece 22 with a dimension of 1900×900×5 mm and was bonded under a pressure of 12 Kg/cm² at a temperature of 170° C. Thus, a comparative sample was produced.

These samples and comparative samples were subjected to the following impact-resistant, firing, smoking, and fire-resistant tests.

Now, the impact-resistant test will be described. Referring to FIG. 15, one of those samples and comparative samples in the above-described Examples and Comparative Examples is disposed as a test piece S at a predetermined position of an iron frame 41. The iron frame 41 has a hook 42 on its top to which an end of a wire 43 is connected while a weight 44 being connected to the other end of the wire 43. The weight has a mass of 45 Kg. A distance is adjusted 1524 mm from the hook 42 to the centroid of the weight 44. The weight 44 and the wire 43 are turned about the hook 42 so that the weight 44 is brought up at a level H higher than a free position. Then, the weight 44 is freed and collides with the test piece S. The collision is repeated with gradual increase of the level H one by one. The impact resistant factor of the test piece S is represented by the maximum level $H_{max}$ of the weight which cannot make a through hole in the test piece but makes a total amount of broken and fallen glass fragments 50 grams or less.

The firing and the smoking tests are carried out by heating a test piece in a gas heating furnace according to the standard heating curve by the Notification No. 1125 of the Ministry of Construction of Japan. The test piece is observed as regards whether or not the test piece smokes and fires.

The fire-resistant test is carried out by heating one side surface of the test piece by a gas firing flame according to the standard heating curve and observing whether or not a through hole is made in the test piece and whether or not firing flame blows to an opposite side surface of the test piece. The time duration from start of heating to occurrence of any one of those phenomena represents the fire-resistant factor of the test piece.

Table 1 shows a result of those tests for the samples and comparative samples in the above-described Examples 1–10 and Comparative Examples 1–4.

6

resistance of 180 minutes or more and samples of Examples 7–10 have a fire resistance of 20 minutes or more. However, the samples of Comparative Examples 1–4 have a degraded fire resistance although they are excellent in the impact resistance. In the comparative sample 1, both of soda glass plate pieces 22 thermally cracked to form a through hole about 8 minutes after heating start. In the comparative sample 2, a soda glass plate piece 22 at a nonheated side thermally cracked and falled off about 6 minutes after heating start and then the PVB film 33 was evaporated and fired. In the comparative sample 3, the soda glass plate piece 22 thermally cracked about three minutes and falled off about six minutes after heating start. In the comparative sample 4, the soda glass plate piece 22 at the nonheated side thermally cracked after heating start and the PVB film was evaporated and fired about five minutes after heating start.

Referring to FIG. 16, a window is shown which comprises a glass plate 51 and a sash 52 for the glass plate 51. The composite glass panel according to the present invention is used for the glass plate so that the window is a fire protective and safety window.

Referring to FIG. 17, a fire protection and safety door is also shown which comprises a glass plate 61 made of the composite glass panel and a door frame 62. The door is installed in an opening 63.

What is claimed is:

1. A fire-protection and safety composite glass panel comprising a fireproof glass plate with opposite side surfaces and a film layer of fluorocarbon resin of a chain molecular structure type bonded on one of said opposite side surfaces, said panel being light transparent.

2. A composite glass panel as claimed in claim 1, which further comprises another layer of said fluorocarbone resin film bonded on the other side surface.

3. A composite glass panel as claimed in claim 1, wherein said fireproof glass plate is made of a wire glass.

4. A composite glass panel as claimed in claim 1, wherein said fluorocarbone resin film is made of one of fluorinated ethylene propylene (FEP), tetrafluoroethylene perfluoroalkoxyl ethylene copolymer (PFA), polychlorotrifluoroethylene (PCFE), ethylene tetrafluoroethylene copolymer (ETFE), and polyvinyliden fluoride (PVDF).

5. A composite glass panel as claimed in claim 1, wherein said fluorocarbone resin has a thickness of 0.02–1 mm.

6. A composite glass panel as claimed in claim 1, wherein said fireproof glass plate is made of a heat-resistant and light transparent crystallized glass.

7. A composite glass panel as claimed in claim 6, wherein said crystallized glass consists of 3–5 wt. % Li₂O, 20–35 wt. % Al₂O₃, 55–70 wt. % SiO₂, 1–3 wt. %

### TABLE 1

| | Examples | | | | | | | | | | Comparative Examples | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 1 | 2 | 3 | 4 |
| Impact resistance (cm) | 30 | 50 | 80 | 100 | 140 | 50 | 50 | 65 | 80 | 80 | 120 | 120 | 30 | 110 |
| Firing | No | No | No | No | No | No | No | No | No | No | Yes | Yes | No | Yes |
| Smoking | No | No | No | No | No | No | No | No | No | No | Yes | Yes | No | Yes |
| Fire resistance (minutes) | over 180 | over 180 | over 180 | over 180 | over 180 | over 180 | 20 | 20 | 20 | 20 | 8 | 6 | 6 | 5 |

According to the test result shown in Table 1, the samples in Examples 1–10 by the present invention are excellent in the impact resistance and do neither fire nor smoke. Further, the samples of Examples 1–6 have a fire

TiO₂, 1–4 wt. % ZrO₂, 1–5 wt. % P₂O₅, 0–4 wt. % Na₂O, and 0–4 wt. % K₂O, but a total amount of Na₂O

5,230,954

7

and $K_2O$ being 0.5–4 wt. %, said crystallized glass containing beta-quartz solid solution crystals.

**8.** A fire-protection and safety composite glass panel comprising a plurality of glass plates laminated with a layer of fluorocarbon resin film of a chain molecular structure type between adjacent glass plates, at least one of said glass plates being a fireproof glass plate.

**9.** A composite glass panel as claimed in claim **8**, wherein said fireproof glass plate is made of a wire glass.

**10.** A composite glass panel as claimed in claim **8**, wherein said fluorocarbone resin film is made of one of fluorinated ethylene propylene (FEP), tetrafluoroethylene perfluoroalkoxyl ethylene copolymer (PFA), polychlorotrifluoroethylene (PCFE), ethylene tetrafluoroethylene copolymer (ETFE), and polyvinyliden fluoride (PVDF).

**11.** A composite glass panel as claimed in claim **8**, wherein said fluorocarbon resin film has a thickness of 0.02–1 mm.

**12.** A composite glass panel as claimed in claim **8**, wherein said fireproof glass plate is made of a heat-resistant and light transparent crystallized glass.

**13.** A composite glass panel as claimed in claim **12**, wherein said crystallized glass consists of 3–5 wt. % $Li_2O$, 20–35 wt. % $Al_2O_3$, 55–70 wt. % $SiO_2$, 1–3 wt. % $TiO_2$, 1–4 wt. % $ZrO_2$, 1–5 wt. % $P_2O_5$, 0–4 wt. % $Na_2O$, and 0–4 wt. % $K_2O$, but a total amount of $Na_2O$

8

and $K_2O$ being 0.5–4 wt. %, said crystallized glass containing beta-quartz solid solution crystals.

**14.** A fire protective window comprising a window glass and a sash for said window glass, said window glass comprising a fireproof glass plate with opposite side surfaces and a layer of fluorocarbon resin film of a chain molecular structure type bonded on one of said opposite side surfaces.

**15.** A fire protective window as claimed in claim **14**, wherein said window glass comprises a plurality of glass plates laminated with a layer of fluorocarbon resin film of a chain molecular structure type between adjacent glass plates, at least one of said glass plates being a fireproof glass plate.

**16.** A fire protective door comprising a glass panel and a frame for said glass panel, said glass panel comprising a fireproof glass plate with opposite side surfaces and a layer of fluorocarbone resin film of a chain molecular structure type bonded on one of said opposite side surfaces.

**17.** A fire protective door as claimed in claim **16**, wherein said glass panel comprises a plurality of glass plates laminated with a layer of fluorocarbone resin film of a chain molecular structure type between adjacent glass plates, at least one of said glass plates being a fireproof glass plate.

*  *  *  *  *

US005624761A

# United States Patent [19]

## Sakamoto et al.

[11] **Patent Number:** **5,624,761**

[45] **Date of Patent:** **Apr. 29, 1997**

[54] **FIRE-PROTECTION AND SAFETY COMPOSITE GLASS PANEL**

[75] Inventors: **Akihiko Sakamoto; Tadashi Takahashi**, both of Shiga-ken; **Masayuki Ninomiya**, Osaka-fu, all of Japan

[73] Assignee: **Nippon Electric Glass Co., Ltd.**, Osaka-fu, Japan

[21] Appl. No.: **555,764**

[22] Filed: **Nov. 9, 1995**

[30] **Foreign Application Priority Data**

Nov. 9, 1994 [JP] Japan ..................................... 6-301363

[51] **Int. Cl.**[6] ..................................................... **B32B 9/00**

[52] **U.S. Cl.** ............................. **428/426**; 428/38; 428/178; 428/332; 428/412; 428/408; 428/415; 428/417; 428/421; 428/422; 428/441; 428/442; 428/473.5; 428/913

[58] **Field of Search** ...................................... 428/421, 442, 428/412, 415, 417, 426, 38, 913, 408, 441, 332, 422, 178, 473.5

[56] **References Cited**

U.S. PATENT DOCUMENTS

4,341,841  7/1982  Ohno et al. ................................ 428/414

4,606,955  8/1986  Eastman et al. .......................... 428/36
5,230,954  7/1993  Sakamoto et al. ...................... 428/332

*Primary Examiner*—Patrick Ryan
*Assistant Examiner*—Abraham Bahta
*Attorney, Agent, or Firm*—Hopgood, Calimafde, Kalil & Judlowe

[57] **ABSTRACT**

A fire-protection and safety composite glass panel includes a fireproof glass plate and a film of fluorocarbon resin of a chain molecular structure type. The film is bonded onto one of opposite side surfaces of the fireproof glass plate by the thermo-compression bonding. The fluorocarbon resin is a copolymer of at least three kinds of monomers. It may be arranged that another film of the fluorocarbon resin is further bonded onto the other side surface of the fireproof glass plate by the thermo-compression bonding. Another glass panel may be arranged that a plurality of fireproof glass plates are attached with a film of the foregoing fluorocarbon resin interposed between adjacent glass plates through the thermo-compression bonding. Those glass panels can be used as glass plates in fire-protective windows and doors.

**9 Claims, 3 Drawing Sheets**





10    11

Fig. 1



12    13

14

Fig. 2



15    16

Fig. 3



17    18

19

Fig. 4

**U.S. Patent**    Apr. 29, 1997    Sheet 2 of 3    5,624,761



Fig. 5



Fig. 6



Fig. 7



Fig. 8

5,624,761

1

# FIRE-PROTECTION AND SAFETY COMPOSITE GLASS PANEL

## BACKGROUND OF THE INVENTION

The present invention relates to a fire-protection and safety composite glass panel having nonshattering property as well as fire resistant or fireproof property and, in particular, to such a glass panel comprising a fireproof glass plate and a fluorocarbon resin film of a chain molecular structure type laminated onto the glass plate for providing the nonshattering property.

In light of the recent expansion of large-sized buildings, such as department stores and supermarkets, the demand for such glass panels has increased. That is, to say a fireproof or fire-resistant property is required, such as a fire door, for blocking flame and smoke upon occurrence of fire. Thus to prevent the spread of fire, a nonshattering or shatter-resistant property is necessary for a safety glass plate for preventing damage or, shattering of cracked pieces to avoid generation of through holes therein.

For a fireproof glass plate to be used as a fire door, there has been available, for example, a wire glass plate or a heat-resistant transparent crystallized glass plate.

On the other hand, for a safety glass plate, there has been available, for example, a tempered glass plate, a laminated glass or a glass plate coated with a resin film.

The tempered glass plate is advantageous in that it is capable of resisting constant impact, and even if the plate is broken, the broken pieces are small enough to minimize the possibility of injury. On the other hand, it can be dangerous because the breaking of the glass plate can result in a through hole.

In view of this, the laminated glass plate or the resin-film coated glass plate having the nonshattering or shatter-resistant property is preferable to the tempered glass plate in that the demand for these nonshattering glass plates has been increasing as compared with the use of tempered glass plate.

A fire-protection and safety composite glass panel having both the fireproof property and the nonshattering property is disclosed in U.S. Pat. No. 5,230,954 (corresponding to JP-A-H04-224938 and JP-A-H05-70190) and has been provided for actual use.

The fire-protection and safety composite glass panel disclosed in the foregoing United States Patent is formed by bonding a fluorocarbon resin film of a chain molecular structure type onto at least one of opposite side surfaces of the heat-resistant transparent crystallized glass plate. The resultant composite glass panel has excellent characteristics in terms of the fireproof property and the nonshattering property. However, the manufacturing of such a composite glass panel presents a problem.

Specifically, the fluorocarbon resin film can be attached onto the glass plate using an adhesive or through thermo-compression bonding. With respect to using the adhesive, a material and a surface configuration of the adhesive should be strictly controlled such that it is laborious to assure quality control of the adhesive.

In case of the thermo-compression bonding, since a melting point of the fluorocarbon resin is higher than that of a polyvinyl butyral (PVB) resin or the like to be used for the normal laminated glass plate, a higher temperature is necessary for the bonding. Thus, special thermo-compression bonding equipments are required which increases the manufacturing cost of the fire-protection and safety composite glass panel.

2

In addition to the foregoing manufacturing problem, it is rather difficult to obtain the fluorocarbon resin of this type with high light transparency. Accordingly, if the fluorocarbon resin film of a large thickness is used, the resultant fire-protection and safety composite glass panel has slightly milky or opaline appearance and deteriorates in light transmittance.

## SUMMARY OF THE INVENTION

Therefore, it is an object of the present invention to provide an improved and economical fire-protection and safety composite glass panel.

It is another object of the present invention to provide a fire-protection and safety composite glass panel using a fluorocarbon resin film of a chain molecular structure type which has a high light transparence and can be easily manufactured through the thermo-compression bonding.

According to one aspect of the present invention, a fire-protection and safety composite glass panel is provided comprising a fireproof glass plate having opposite side surfaces; and a film of fluorocarbon resin of a chain molecular structure type, the film being bonded on one of the opposite side surfaces, and wherein the fluorocarbon resin is a copolymer of at least three kinds of different monomers.

Another film of the fluorocarbon resin may be bonded on the other side surface of the fireproof glass plate.

According to another aspect of the present invention, a fire-protection and safety composite glass panel comprises a plurality of fireproof glass plates with a film of fluorocarbon resin interposed between adjacent glass plates, the fluorocarbon resin having only a chain molecular structure, wherein the fluorocarbon resin is a copolymer of at least three kinds of different monomers.

The different monomers used for the copolymer are preferably tetrafluoroethylene, hexafluoropropylene and vinylidene fluoride.

According to further aspect of the present invention, a fire protective door or window is obtained which comprises the composite glass panel and a frame for supporting the composite glass panel.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a sectional view of a sample obtained in Example 1 according to the present invention;

FIG. 2 is a sectional view of a sample obtained in Example 2 according to the present invention;

FIG. 3 is a sectional view of a comparative sample obtained in Comparative Example 1;

FIG. 4 is a sectional view of a comparative sample obtained in Comparative Example 2;

FIG. 5 is a diagram for explaining a method of measuring impact resistances of the samples and the comparative samples;

FIG. 6 is a graph showing visible light transmittance of the sample in Example 2 and the comparative sample in comparative Example 2.

FIG. 7 is a front view of a fire-protective window using the composite glass panel according to the present invention; and

FIG. 8 is a front view of a fire-protective door using the composite glass panel according to the present invention.

## DESCRIPTION OF THE INVENTION

The present invention attempts to provide a nonshattering or shatter-resistant property to a fireproof or fire-resistant

5,624,761

3

glass plate by laminating thereto a fluorocarbon resin film which is a chain molecular structure type and is a copolymer of at least three kinds of monomers.

Due to a strong interatomic binding of carbon-fluorine and a barrier effect of fluorine atoms covering the carbon chain, the fluorocarbon resin film of the chain molecular structure type is incombustible in the air.

Further, the fluorocarbon film of this type has a high polymerization degree and thus a complicated structure as compared with fluorocarbon resin films of other molecular structures. Accordingly, the fluorocarbon film of this type has the large extensible and tensile strength so that bonding it onto a glass plate can provide a glass panel which is excellent in impact absorptivity and nonshattering property.

Further, by selecting a thickness and/or a material of the fluorocarbon resin film of this type, a desired impact resistance can be achieved. For this purpose, a thickness of 0.02–1 mm is preferable.

Further, the fluorocarbon resin formed by copolymerizing at least three kinds of monomers has a low melting point at 110°–180° C., while keeping the foregoing excellent properties. Therefore, the thermo-compression bonding can be achieved for the fluorocarbon resin film used in the present invention at a temperature approximate to that for the PVB resin film so that the special or expensive thermo-compression bonding equipments are not required.

On the other hand, a fluorocarbon resin film formed of monomers of one or two kinds has a melting point of 200°–330° C. which is considerably higher than a melting point of the PVB resin film (about 130° C.) used in the laminated glass plate.

Furthermore, by controlling a copolymerization rate of three or more kinds of monomers, the resultant fluorocarbon copolymer resin film with higher light transparency can be achieved as compared with the fluorocarbon resin film formed of monomers of one or two kinds.

As monomers forming the fluorocarbon resin film used in the present invention, for example, tetrafluoroethylene (TFE), hexafluoropropylene (HFP), vinylidene fluoride (VDF), polychlorofluoroethylene (PCTFE), vinyl fluoride (VF), perfluoroalkyl vinyl ether (PFA) and others may be used. In particular, the fluorocarbon resin of a copolymer of the monomers of tetrafluoroethylene (TFE), hexafluoropropylene (HFP) and vinylidene fluoride (VDF) is preferable since its melting point is low.

The fireproof glass plate used in the present invention may be a transparent glass plate, such as a heat-resistant crystallized glass plate, a wire glass plate, a tempered borosilicate glass plate or the like, which passes the fire protecting test according to the Notification No. 1125 of the Ministry of Construction of Japan. In view of heat resistance and appearance, it is most preferable to use a heat-resistant transparent crystallized glass plate having a thermal expansion coefficient of $-10\times10^{-7}/^\circ$ C. to $10\times10^{-7}/^\circ$ C.

As one of the crystallized glass, "FIRELITE" glass plate is available in commerce, which is made by Nippon Electric Glass Co., Ltd., a corporation in Japan. The crystallized glass is disclosed in U.S. Pat. No. 3,282,712 and consists of 3–5 wt. % $Li_2O$, 20–35 wt. % $Al_2O_3$, 55–70 wt. % $SiO_2$, 1–3 wt. % $TiO_2$, 1–4 wt. % $ZrO_2$, 1–5 wt. % $P_2O_5$, 0–4 wt. % $Na_2O$, and 0–4 wt. % $K_2O$ but a total amount of $Na_2O$ and $K_2O$ being 0.5–4 wt. %.

Now, examples of the present invention and comparative examples will be described hereinbelow.

4

## Example 1

First, a film of 250 μm thickness was prepared of a fluorocarbon resin which was a chain molecular structure type and formed of a copolymer of 40 weight % of tetrafluoroethylene (TFE), 20 weight % of hexafluoropropylene (HFP) and 40 weight % of vinylidene fluoride (VDF). Further, a heat-resistant transparent crystallized glass plate with a dimension of 2000×900×5 mm was also prepared of the "FIRELITE" which had a thermal expansion coefficient of $-5\times10^{-7}/^\circ$ C.

Subsequently, as shown in FIG. 1, the foregoing fluorocarbon resin film 11 was attached onto one side surface of the FIRELITE glass plate 10 by the thermo-compression bonding so as to obtain a sample of a fire-protection and safety composite glass panel. The thermo-compression bonding was performed at a predetermined temperature under pressure of 12 kgf/cm² for 15 minutes. The predetermined temperature represents a temperature which is required for achieving a sufficient bonded state between the glass plate and the film and indicated in Table 1 as a thermo-compression bonding temperature.

## Example 2

Two plates of the "FIRELITE" glass and a film of the fluorocarbon resin were prepared similar to those in Example 1. Subsequently, as shown in FIG. 2, the film 14 was interposed between the FIRELITE glass plates 12 and 13 to obtain another sample of a fire-protection and safety composite glass panel through the thermo-compression bonding. The thermo-compression bonding was performed at a different thermo-compression bonding temperature shown in Table 1 under pressure of 12 kgf/cm² for 15 minutes.

## Comparative Example 1

A FIRELITE glass plate was prepared similar to that in Example 1, while a film of 250 μm was prepared of a fluorocarbon resin film which was a chain molecular structure type and formed of a copolymer of 80 weight % tetrafluoroethylene (TFE) and 20 weight % hexafluoropropylene (HFP). Subsequently, as shown in FIG. 3, the film 16 was attached onto one side surface of the FIRELITE glass plate 15 by the thermo-compression bonding so as to obtain a comparative sample of a fire-protection and safety composite glass panel. The thermo-compression bonding was performed at a different thermo-compression bonding temperature shown in Table 1 under pressure of 12 kgf/cm² for 15 minutes.

## Comparative Example 2

Two FIRELITE glass plates similar to that in Example 1 and a fluorocarbon resin film similar to that in Comparative Example 1 were prepared. Subsequently, as shown in FIG. 4, the film 19 was interposed between the FIRELITE glass plates 17 and 18 to obtain another comparative sample of a fire-protection and safety composite glass panel through the thermo-compression bonding. The thermo-compression bonding was performed at a different thermo-compression bonding temperature shown in Table 1 under pressure of 12 kgf/cm² for 15 minutes.

As appreciated from Table 1, the thermo-compression bonding temperature of the fluorocarbon resin films is 120° C. and 140° C. in Examples 1 and 2, respectively, but 280° C. and 300° C. in Comparative Examples 1 and 2, respectively. Accordingly, the thermo-compression bonding can be

5,624,761

| | | | | |
|---|---|---|---|---|
| 5 | | | 6 | |

achieved at the lower temperature in Examples 1 and 2 according to the present invention.

TABLE 1

| | Ex. 1 | Ex. 2 | Compar. Ex. 1 | Compar. Ex. 2 |
|---|---|---|---|---|
| Thermo-Compression Bonding Temperature (°C.) | 120 | 140 | 280 | 300 |
| Appearance | Transp. | Transp. | Slightly Opaline | Slightly Opaline |
| Impact Resistance (cm) | 80 | 140 | 80 | 140 |
| Fire Protection | Good | Good | Good | Good |

Further, when visually observing appearance of the samples and comparative samples of the composite glass panels, it was confirmed that the samples of Examples 1 and 2 were excellent in transparency, while the comparative samples of Comparative Examples 1 and 2 were slightly opaline.

On the other hand, all the samples and comparative samples were confirmed to have good impact resistance and good fire resistance by an impact resistance test and a fire resistance test, respectively.

The impact resistance test will be described referring to FIG. 5.

In FIG. 5, each of the samples and comparative samples is fixed, as a test piece G at a predetermined position of an iron frame 20. The frame 20 has a hook 21 on its top to which an end of a wire 22 is connected while a weight 23 with 45 kg mass being connected to the other end of the wire 22. A distance is set to 1524 mm from the hook 21 to the centroid of the weight 23. The weight 23 and the wire 22 are then turned about the hook 21 so that the weight 23 is raised by a level H from an initial position where the wire is vertically suspended. Subsequently, the weight 23 is released to collide with the test piece G. The collision is repeated with gradual increase of the level H. The impact resistance is represented by the maximum level of H before a total weight of fallen-off broken glass fragments exceeds 50 grams.

The fire resistance test was performed by heating each sample or comparative sample, using a gas heating furnace, according to a standard heating curve specified in the Notification No. 1125 of the Ministry of Construction of Japan. None of the samples and comparative samples was broken over three hours.

FIG. 6 shows a visible light transmittance of the sample and the comparative sample in Example 2 and Comparative Example 2, which was a result of measurement by using a spectrophotometer. In the figure, a curve A represents a transmittance of the sample of Example 2, while a curve B represents that of the comparative sample of Comparative Example 2. As appreciated, the sample of Example 2 has the higher transmittance than the comparative sample of Comparative Example 2 over the range of visible light.

In the foregoing Example 1, the fluorocarbon resin film 11 is attached onto only one side surface of the FIRELITE glass plate 10 by the thermo-compression bonding. It will be understood that another fluorocarbon resin film which is similar to the fluorocarbon resin film 11 may also be attached to the other side surface of the glass plate 10 in the same manner.

In the foregoing Example 2, only the two FIRELITE glass plates 12 and 13 are attached with the film 14 interposed therebetween through the thermo-compression bonding. It will also be understood that a further glass plate may be attached to the sample in Example 2 with another fluorocarbon resin film, which is similar to the film 14, interposed therebetween.

Referring to FIG. 7, a window is shown which comprises a glass plate 31 and a sash 32 for the glass plate 31. The composite glass panel according to the present invention is used for the glass plate so that the window is a fire protective and safety window.

Referring to FIG. 8, a fire protective and safety door is also shown which comprises a glass plate 41 made of the composite glass panel and a door frame 42. The door is installed in an opening 43.

What is claimed is:

1. A fire-protection and safety composite glass panel comprising:
a fireproof glass plate having opposite side surfaces; and
a film of fluorocarbon resin of a chain molecular structure type, said film bonded on one of said opposite side surfaces,
wherein said fluorocarbon resin is a copolymer of at least three kinds of monomers.

2. The composite glass panel according to claim 1, wherein another film of said fluorocarbon resin is bonded on the other side surface of said fireproof glass plate.

3. The composite glass panel according to claim 1, wherein said monomers are tetrafluoroethylene, hexafluoropropylene and vinylidene fluoride.

4. A fire-protection and safety composite glass panel comprising:
a plurality of fireproof glass plates with a film of fluorocarbon resin of a chain molecular structure type interposed between adjacent glass plates,
wherein said fluorocarbon resin is formed of a copolymer of at least three kinds of monomers.

5. The composite glass panel according to claim 4, wherein said monomers are tetrafluoroethylene, hexafluoropropylene and vinylidene fluoride.

6. A fire protective window comprising a window glass and a sash for said window glass, said window glass comprising a fireproof glass plate with opposite side surfaces and a film of fluorocarbon resin of a chain molecular structure type, said film bonded on one of said opposite side surfaces, wherein said fluorocarbon resin is a copolymer of at least three kinds of monomers.

7. A fire protective window as claimed in claim 6, wherein said window glass comprises a plurality of glass plates laminated with a layer of the fluorocarbon copolymer resin film of the chain molecular structure type between adjacent glass plates, at least one of said glass plates being a fireproof glass plate.

8. A fire protective door comprising a glass panel and a frame for said glass panel, said glass panel comprising a fireproof glass plate with opposite side surfaces and a film of fluorocarbon resin of a chain molecular structure type, said film bonded on one of said opposite side surfaces, wherein said fluorocarbon resin is a copolymer of at least three kinds of monomers.

9. A fire protective door as claimed in claim 8, wherein said glass panel comprises a plurality of glass plates laminated with a layer of the fluorocarbon copolymer resin film of the chain molecular structure type between adjacent glass plates, at least one of said glass plates being a fireproof glass plate.

* * * * *

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/238,115 | 09/10/2002 | William O'Keeffe | OKEF-07982US1 DBB/SRM | 6410 |

23910    7590    07/15/2005

FLIESLER MEYER, LLP
FOUR EMBARCADERO CENTER
SUITE 400
SAN FRANCISCO, CA 94111

| EXAMINER |
|---|
| CHEN, VIVIAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1773 | |

DATE MAILED: 07/15/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| *Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/238,115 | O'KEEFFE, WILLIAM |
| | Examiner | Art Unit | |
| | Vivian Chen | 1773 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Vivian Chen, Exr.*          (3)*Mr. Myer, Atty.*

(2) *Mr. Borson, Atty.*          (4)_____.

Date of Interview: *12 July 2005*.

Type:  a)☒ Telephonic    b)☐ Video Conference
      c)☐ Personal [copy given to: 1)☐ applicant    2)☐ applicant's representative]

Exhibit shown or demonstration conducted:    d)☐ Yes    e)☒ No.
    If Yes, brief description: _____.

Claim(s) discussed: *1-32*.

Identification of prior art discussed: *references of record*.

Agreement with respect to the claims f)☐ was reached.    g)☒ was not reached.    h)☐ N/A.


Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *Mr. Borson discussed possible amendments to claim 1 which would specify that the claimed invention(s) have only a two layer structure (film/glass) and thereby distinguish it from SAKAMOTO '805 and ITOH '839 which require at least three layers (two layers of glazing material and a film layer)*.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached. Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note: You must sign this form unless it is an Attachment to a signed Office action.

_____
Examiner's signature, if required

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2 Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

07/19/2005 13:09 FAX 415 362 2928    FLIESLER MEYER LLP    ☑001

# FLIESLER MEYER LLP

RECEIVED
CENTRAL FAX CENTER

JUL 1 9 2005

INTELLECTUAL PROPERTY LAW

FOUR EMBARCADERO CENTER • FOURTH FLOOR
SAN FRANCISCO • CALIFORNIA 94111-4156
TELEPHONE    415.362.3600
FACSIMILE    415.362.2928
INTERNET    WWW.FDML.COM

TO:        Commissioner for Patents: Art Unit 1773: Examiner Vivian Chen

FAX NO.:    (571) 273 - 8300

FROM:      D. Benjamin Borson, Ph.D., Reg. No: 42,349

RE:        Serial No: 10/238,115

DATE:      July 19, 2005            Total Pages :    7

Original will follow by mail:  No

If you do not receive all of the pages, please call    Ben Borson    at 415.362.3800.

* Reply to Office Action mailed April 19, 2005
* Certificate of Facsimile Transmission

This facsimile is intended only for the addressee and those authorized by the addressee to receive it. Any use, dissemination, distribution or copying of this facsimile by any others is prohibited. Any others receiving this facsimile are requested to notify FLIESLER MEYER LLP immediately by telephone or fax and to return the original facsimile to FLIESLER MEYER LLP.

07/19/2005 13:10 FAX 415 362 2928          FLIESLER MEYER LLP                                    Ø002

RECEIVED

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE CENTRAL FAX CENTER

JUL 1 9 2005

| | |
|---|---|
| In re Application | **PATENT APPLICATION** |
| Inventor(s):   William O'Keeffe | |
| Appln. No.:   10/238,115 | Art Unit:   1773 |
| Confirm. No.:   6410 | Examiner:   Vivian Chen |
| Filed:   September 10, 2002 | |
| Title:   FIRE RESISTANT SAFETY GLASS | **Customer No. 23910** |

**CERTIFICATE OF FACSIMILE TRANSMISSION UNDER 37 C.F.R. § 1.8**

I hereby certify that this correspondence is being transmitted by facsimile to the Commissioner for Patents, the United States Patent and Trademark Office, Examining Group 1773 Facsimile No. (571) 273-8300, on July 19, 2005. Total number of pages transmitted: 7.

D. Benjamin Borson, Reg. No. 42,349
Signature Date:  July 19, 2005

## REPLY TO OFFICE ACTION

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

This REPLY is in response to an Office Action mailed April 19, 2005 and a telephonic interview

between the Examiner and the undersigned on July 12, 2005. Thus, this REPLY is timely filed.

### Amendments

Please amend the above-identified application as follows:

PAGE 2/7 * RCVD AT 7/19/2005 4:06:53 PM [Eastern Daylight Time] * SVR:USPTO-EFXRF-6/24 * DNIS:2738300 * CSID:415 362 2928 * DURATION (mm-ss):01-22

07/19/2005 13:10 FAX 415 362 2928          FLIESLER MEYER LLP                    ☑003

In the Claims:

Please cancel claims 4-7, 9-16, 19-20, 26 and 27. Please amend claims 1, 17 and 24 as indicated. Applicant reserves the right to prosecute the unamended and canceled claims and other claims in Continuing applications.

1.    (Currently amended)   A fire resistant safety glass, ~~comprising~~ consisting essentially of:

a piece of wire glass; and

a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs.

2.    (Original)     The fire resistant safety glass of claim 1, wherein said fire resistant film is a polymer.

3.    (Original)     The fire resistant safety glass of claim 2, wherein said polymer is PET.

4.    (Canceled)     The fire resistant safety glass of claim 1, further comprising at least one additional piece of fire resistant glazing material.

5.    (Canceled)     The safety glass of claim 4, wherein said fire resistant glazing material is selected from the group consisting of wire glass, annealed glass, tempered glass, fire resistant fiberglass, fire resistant plastics and ceramics.

6.    (Canceled)     A fire resistant safety glass, comprising:

a piece of wire glass;

a sheet of fire resistant transparent material separated from said piece of wire glass defining a space therebetween; and

a fire resistant film sufficient to provide to said fire resistant safety glass an impact resistance of at least about 100 foot lbs.

Attorney Docket No: OKEF 7982 US1 SRM/DBB
dbb/OKEF/7982 US1.023..wpd                        2

7.     (Canceled)     The fire resistant safety glass of claim 6, wherein said space comprises an insulating fire resistant gel.

8.     (Original)     The fire resistant safety glass of claim 1, further comprising a coloring agent.

9.     (Canceled)     The fire resistant safety glass of claim 6, wherein said glass withstands an impact of about 100 foot lbs to about 4000 foot lbs.

10.     (Canceled)     The fire resistant safety glass of claim 6, wherein said sheet of transparent material is selected from the group consisting of tempered glass, laminated glass, fire resistant plastics and fire resistant fiberglass.

11.     (Canceled)     The fire resistant safety glass of claim 6, wherein said fire resistant film is PET.

12.     (Canceled)     A fire resistant safety glass, comprising:
        a pane of wire glass;
        at least one other pane of fire resistant glazing material adhered to said pane of wire glass by a fire resistant adhesive; and
        at least one layer of fire resistant film sufficient to impart to said fire resistant safety glass, an impact resistance of at least about 100 foot lbs.

13.     (Canceled)     The fire resistant safety glass of claim 12, wherein said fire resistant adhesive is water glass.

14.     (Canceled)     The fire resistant safety glass of claim 12, wherein said fire resistant glazing material is selected from the group consisting of wire glass, annealed glass, tempered glass, fire resistant fiberglass and fire resistant plastics.

3

15.    (Canceled)    The fire resistant safety glass of claim 14, wherein said fire resistant film is PET.

16.    (Canceled)    The fire resistant safety glass of claim 12, wherein said glass withstands an impact in the range of about 100 foot lbs to about 4000 foot lbs.

17.    (Currently amended)    A method of manufacturing a fire resistant safety glass, comprising the steps of:

providing at least one sheet of wire glass; and

adhering a fire resistant film to said sheet of wire glass sufficient to impart to said fire resistant safety glass an impact resistance of about 100 foot lbs to about 4000 foot lbs.

18.    (Original)    The method of claim 17, wherein said fire resistant film is PET.

19.    (Canceled)    The method of claim 17, further comprising the step of adhering one or more sheets of fire resistant glazing material to said sheet of wire glass.

20.    (Canceled)    The method of claim 19, wherein said fire resistant glazing material is selected from the group consisting of wire glass, annealed glass, tempered glass, fire resistant fiberglass and fire resistant plastics.

21.    (Original)    The fire resistant safety wire glass of claim 1, wherein said fire resistant film is a reflective film.

22.    (Original)    The fire resistant safety wire glass of claim 1, wherein said fire resistant film comprises a metal.

23.    (Original)    The fire resistant safety wire glass of claim 21, wherein said metal comprises

stainless steel or lead.

24.     (Currently amended)   A fire resistant safety glass, ~~comprising~~ <u>consisting essentially of</u>:

a piece of wire glass; and

a piece of fire resistant glazing adhered thereto said fire resistant safety glass having an impact resistance of between about 100 foot lbs and about 4000 foot lbs.

25.     (Original)     The fire resistant safety glass of claim 24, wherein said fire resistant glazing is selected from the group consisting of tempered glass, annealed glass, wire glass, fire resistant fiberglass, fire resistant plastics and ceramics.

26.     (Canceled)     The fire resistant safety glass of claim 24, further comprising an insulating space between said piece of wire glass and said piece of fire resistant glazing.

27.     (Canceled)     The fire resistant safety glass of claim 26, wherein said insulating space comprises a fire resistant material.

07/19/2005 13:10 FAX 415 362 2928          FLIESLER MEYER LLP                    ☑007

### Remarks

The above Amendments and these Remarks are in reply to an Office Action mailed April 19, 2005 and to a telephonic interview between the Examiner and the undersigned on July 12, 2005. The claims were rejected under 35 U.S.C. §103(a) as obvious.

Applicants have amended the remaining independent claims to include "consisting essentially of" as the connecting phrase. The Examiner indicated that this amendment could overcome the rejection under 35 U.S.C. §103(a) over Sakamoto, which discloses at least two glass plates. Further, Sakamoto does not disclose the recited impact resistance.

Applicant incorporates all prior remarks herein fully by reference and reiterates them herein.

Applicant respectfully submits that the instant claims are allowable at least because elimination of structures considered to be necessary by Sakamoto while retaining their function is indicative of nonobviousness.

In view of the above remarks, Applicant submits that all of the claims currently pending are patentable and request reconsideration of the rejections and further requests the issuance of a Notice of Allowance.

The Commissioner is authorized to charge any underpayment or credit any overpayment to Deposit Account No. 06-1325 for any matter in connection with this response, including any fee for extension of time, which may be required.

Respectfully submitted,

Date:       July 19, 2005       By: _____
                                        D. Benjamin Borson, Ph.D.
                                        Reg. No. 42,349

Customer No. 23910
FLIESLER MEYER LLP
Four Embarcadero Center, Fourth Floor
San Francisco, California 94111-4156
Telephone: (415) 362-3800

Attorney Docket No: OKEF 7982 US1 SRM/DBB
dbb/OKEF/7982 US1.010.Reply Dec 28 2004.wpd          6

# PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2001

Application or Docket Number

1023811S

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 22 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 27 minus 20 = | 7 |
| INDEPENDENT CLAIMS | 8 minus 3 = | 22 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE 370.00 | | OR | BASIC FEE 740.00 | |
| X$ 9= | 63 | OR | X$18= | |
| X42= | 126 | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL | 559 | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

04/13/05

| AMENDMENT A | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 32 | Minus | ** 27 | = 5 |
| Independent | 6 | Minus | *** 5 | = 1 |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

7/19/05

| AMENDMENT B | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | 10 | Minus | ** 32 | = 0 |
| Independent | 3 | Minus | *** 6 | = 0 |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

| AMENDMENT C | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | | Minus | ** | = |
| Independent | | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875  (Rev. 8/01)                    ☆U.S. GPO:2001 483-134 / SN:93                    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

BEST AVAILABLE COPY

Paul