1  MARK I. SCHICKMAN (CSB #62653)
   schickman@freelandlaw.com
2  DANIEL T. BERNHARD (CSB #104229)
   bernhard@freelandlaw.com
3  FREELAND COOPER & FOREMAN LLP
   150 Spear Street, Suite 1800
4  San Francisco, California 94105
   Telephone:   (415) 541-0200
5  Facsimile:   (415) 495-4332

6  Attorneys for Plaintiff, Counterdefendant and
   Counterclaimant O'KEEFFE'S, INC.
7

8              UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  O'KEEFFE'S, INC.,                    CASE NO.: C 07-cv-03535 JF PVT

13              Plaintiff,               PLAINTIFF'S MEMORANDUM OF
                                         POINTS AND AUTHORITIES IN
14       v.                              OPPOSITION TO ANEMOSTAT'S
                                         MOTION TO STAY LITIGATION
15  TECHNICAL GLASS PRODUCTS,            PENDING REEXAMINATION
    ANEMOSTAT, and PILKINGTON PLC,
16                                       DATE:   November 16, 2007
              Defendants.                TIME:   9:00 a.m.
17                                       DEPT:   Courtroom 3, 5th Floor
                                                 The Honorable Jeremy Fogel
18

19  And Related Actions.

20

21       Plaintiff O'Keeffe's Inc., ("O'Keeffe's") submits the following as its Opposition to defendant

22  Anemostat's motion to stay this litigation.

23  I.   INTRODUCTION

24       O'Keeffe's has a valid patent covering the development and fabrication of a filmed wire glass

25  product that is safety-rated and fire tested in accordance with applicable U.S. safety and fire tests.

26  O'Keeffe's was the first to market with this product, and thus ought to enjoy, at least temporarily, a

27  significant market position and advantage.  Instead, however, defendants are actively eroding

28  O'Keeffe's market position by infringing on O'Keeffe's patent.

                                                                                                    1

The wire glass industry insisted for many years that a filmed wire glass product with safety and fire ratings could not be made. The industry referred to it as the "holy grail," and argued before numerous government agencies, including the Consumer Products Safety Commission, that the technology did not exist to develop such a product. Today, however, defendants insist that the technology was known and published, such that this prior art will invalidate O'Keeffe's patent. This argument is, of course, incongruous in light of past industry representations. Defendant Anemostat wants the validity of the O'Keeffe patent resolved through reexamination by the PTO. That process will deprive plaintiff of the equitable adjudication of all issues involving defendants' infringement by narrowing the dispute to a reexamination of prior art by the PTO; it will deprive plaintiff of the presumption of validity, and will relieve defendants of their obligation to carry the burden of proof.

No stay should be imposed, and this motion should be denied. O'Keeffe's is entitled to elect its choice of forum, as it has done, and to have all issues in dispute fully decided in that forum.

## II.   FACTUAL BACKGROUND

This action was commenced by O'Keeffe's as a straightforward action for infringement of its U.S. Patent 7,090,906, pertaining to the development and fabrication of a filmed wire glass product that is sufficiently impact safe and fire resistant to meet various U.S. safety and fire code requirements. In its response to this patent claim, defendant Anemostat asserted two counterclaims based entirely on the '906 patent. Defendant TGP asserted six counterclaims; three of these pertain directly to the '906 patent and the infringement claim asserted by O'Keeffe's, and allege claims for non-infringement, patent invalidity, and patent unenforceability.

The remaining three TGP counterclaims are entirely unrelated to the O'Keeffe's '906 patent, and involve new legal theories and allegations, including the following: trademark infringement based on TFP's alleged ownership of two U.S. trademarks; Lanham Act violations based on the purported trademark infringement; and a counterclaim for unlawful trade practices and false advertising involving an O'Keeffe's glazing product known as SuperLite I-XL, that includes challenges to O'Keeffe's representations about the fire resistance and safety qualities of SuperLite I-XL.

In response to these counterclaims, O'Keeffe's filed an answer and six counterclaims, including counterclaims directed to TGP's purported trademarks, for Lanham Act violations by TGP, and

2

counterclaims for unfair business practices related to O'Keeffe's SuperLite I-XL glazing product. Plaintiff also alleged counterclaims against a third party, Underwriters Laboratories, Inc.

Defendant Anemostat filed its *ex parte* Request for Reexamination in late August, 2007, before it appeared in this action. Thereafter, Anemostat filed an *inter partes* Request for Reexamination on or about October 9, 2007. Anemostat now asks the court to stay this action in its entirety, until the USPTO "has either denied Anemostat's requests or, if granted, until the USPTO has completed its reexamination of the claims of the '906 patent." (Motion, at 3.) Anemostat wants this court to stay this lawsuit for a minimum of approximately three months, and possibly for a period of more than one year. Defendant TGP has not joined in this motion, nor indicated its intent or willingness to be bound by the results of any reexamination by the PTO.[1]

### III.  ARGUMENT

#### A.  Legal Standard

It is well-settled that consideration of a stay pending a patent reexamination lies within a trial court's discretion as part of its inherent capacity to manage its own docket. See, e.g., *Target Therapeutics, Inc. v. Scimed Life Systems, Inc.* 33 U.S.P.Q. 2d 2022, 1995 WL20470*1 (N.D. Cal. 1995). Factors properly considered by the court include the possible prejudice of a stay to the non-moving party; whether a stay would provide some tactical advantage to the moving party; whether the stay would simplify the issues or leave the case unresolved; and the progress and age of the case. Id., at 1995 WL*1. See, also, *Whatley v. Nike, Inc.*, 54 U.S.P.Q. 2d 1124, 2000 U.S. Dist. LEXIS 5815 (D. Or. 2000). As the Whatley court noted, a trial court has a broad range of possible responses to a motion for a stay:

> The court clearly has the discretion to do any of the following: (1) grant a complete stay of all matters pending the final outcome of the PTO reexamination proceedings; (2) grant a partial stay of these proceedings ... pending a final PTO ruling; (3) grant a partial stay of all or part of these proceedings pending the PTO's initial review, but not any appeal; and (4) deny the motion in its entirety.

Id. at *10.

---

[1] Service on the other parties to this action, defendant Pilkington PLC and third party defendant Underwriters Laboratories has been effected so far as plaintiff knows.

For the reasons discussed below, the Court should decline to exercise its discretion to stay any part of this action.

### B. O'Keeffe's Will be Prejudiced by a Stay

One of the factors properly considered by the court in exercising its discretion on a motion to stay is the likely prejudice and harm to the non-moving party if a stay is granted. O'Keeffe's will be harmed in at least two significant ways.

#### 1. A Stay will Permit Continued Infringement

The immediate prejudice to O'Keeffe's is apparent. O'Keeffe's owns a valid patent, and that patent is being infringed every day by defendants. There is no serious dispute that defendants actions constitute infringement of the '906 patent; assuming its validity, then infringement is clear. As a direct consequence, O'Keeffe's pre-eminent position of "first to market" is being quickly eroded in the marketplace, all to the benefit of defendants here, who are plaintiff's direct competitors.

The issue for O'Keeffe's is not simply lost sales, which can be quantified and for which damages can be recovered. The chief damage is the loss of market position and share. The market for an impact and fire resistant wire glass product is just now being developed and established. The opportunities created for O'Keeffe's, as the creator of a new product that brought it to market first, are very substantial, if not readily quantifiable. The market for this product is incipient, and the value – and loss – to O'Keeffe's in being the market leader is potential significant. A stay pending a complete reexamination, which could involve delay of a year or more, will effectively deprive O'Keeffe's of the market it created for an important new glazing product.

#### 2. Plaintiff is Entitled to Have this Court Adjudicate All Issues

O'Keeffe's selection of this court as the forum to resolve this infringement claim is entitled to the deference accorded to any plaintiff's selection of a forum. The issue of what forum is especially important here. Defendants are eager to re-locate this dispute to the PTO in order to avoid the presumptions, evidentiary standards and expanded overview that would prevail in this court sitting in equity. See, *Ethicon, Inc. v. Quigg*, 849 F. 2d 1422, 1427 (Fed. Cir. 1988). Any reexamination by the PTO will focus on prior art, and exclude other important evidence and factual disputes. Defendants

here will be relieved of the presumption they now face of the validity of the '906 patent. "Before the courts, a patent is presumed valid and the party asserting invalidity must prove facts to establish invalidity of each claim by clear and convincing evidence." *Id.* See, also, *In re Etter*, 756 F. 2d 852, 856-57, 225 U.S.P.Q 4 (Fed. Cir. 1985).

A narrow reexamination of prior art cannot resolve all of the issues here in dispute and raised by defendants' assertions of invalidity. The chief issue is not simply prior art, but defendants knowledge and representations to various government agencies around the filmed wire glass product for which the '906 patent was granted. Anemostat contends in its two Requests for Reexamination that prior art conclusively demonstrates that no patent ought to have been granted. This contention contradicts completely the position for many years of the wire glass industry, including some of the defendants here. Defendants and others insisted for years, and as recently as 2001 in public hearings, that they lacked the technology to produce an impact-safe wired glass product that satisfied applicable CPSC impact tests and U.S. fire test standards. (Declaration of William O'Keeffe in Support of Opposition to Motion to Stay, at ¶¶ 5 and 10.) A representative for defendant Pilkington testified at that time that the industry has spent 25 years trying to create a filmed wire glass that met the heightened CPSC and U.S. fire test standards. He described it as the "holy grail" and asserted that no one had found it. (O'Keeffe Decl., at ¶9.)

It is more than incongruous, therefore, for defendants to argue now that prior art from 1998 will invalidate the '906 patent in a reexamination proceeding. Defendants now contend that this prior art demonstrated in 1998 the process for creating a filmed impact and fire resistant wired glass, although three years later -- in 2001-- defendants insisted that the technology did not exist for such a product. This inconsistency, and others, will not be within the purview of the PTO's reexamination process. But this evidence is critical to a fair adjudication of the claims around O'Keeffe's '906 patent. It must be considered, and can only be fully and fairly reviewed in this court.

### C. Defendants Will Derive a Tactical Advantage from a Stay

Defendants will, of course, enjoy additional unfettered opportunity to infringe on O'Keeffe's valid patent as a consequence of a stay, and be able to expand and consolidate their market base. Beyond the continued infringement, however, defendants will have the crucial tactical advantage of

challenging the patent in the PTO, which is limited to a review of prior art or printed publications. They will not have the burden of the '906 patent's presumed validity, consistent with 35 U.S.C. §282.

### D. The Reexamination Requests Will Not be Conclusive for this Action

Anemostat argues that this stay should be imposed because the pending PTO reexamination, if granted, will eliminate the need for further litigation. This assertion is not supported by the facts. Preliminarily, Anemostat has filed two Requests for Reexamination, and has asked for their consolidation. It is unclear whether the PTO will be inclined to combine them. The other supposed benefits of staying litigation in favor of a PTO reexamination are also largely absent here. The patent claims themselves are not especially extensive nor complex. The nature of the purported prior art is not elaborate. Accordingly, even if there were some benefit derived from the PTO's reexamination of the prior art, it would not be conclusive. The parties will certainly not realize any cost savings through a PTO reexamination, which will involve its own specific actual costs and expenses, and will not resolve much of the present dispute. Even if it does, then the reexamination process will be protracted, with related issues potentially decided in a piecemeal fashion. In the event that the PTO does not grant Anemostat's request, then the parties will have simply lost the time that they could have used to press forward with this lawsuit.

The newly found prior art that is the center of the *inter partes* Request for Reexamination with the PTO cannot be dispositive, regardless of Anemostat's assertions. The claimed prior art is nothing more than a brief 100 word "blurb" in a 1998 edition off *Glass Age,* a British publication. The story reports that "Protekt safety film was installed on 3 mm annealed glass" and impact tested. It further states that the glass thus treated met certain requirements of British Workplace Regulations. It reports nothing about the fire-resistance of the glass tested, or whether any such testing was performed. Equally troubling, the article reports vaguely that "other tests" were carried out using Protekt film and a "selection of thicker glass." There is no description of these "other tests" or how they were conducted, what was actually tested, or the specific results of such "other tests."

Similarly, the affidavit submitted by Anemostat for Carl Kernander, evidently to expand on the scarce facts presented in the *Glass Age* article, suffers basic evidentiary defects and establishes nothing. Most significant, the fire resistance qualities of the product and tests are undetermined, and

barely addressed. Mr. Kernander states only that "to the best of my knowledge" product film mounted on glass is fire resistant "and has been independently tested to verify its fire resistance." (Aff., at ¶ 14). This purported test result is not identified, much less provided. There is no reason to believe that there is any test data for filmed wire glass tested to U.S. fire safety standards. If there is such existing data, why has Anemostat not produced it?[2]

It is similarly unclear whether other test data referred to by Mr. Kernander, such as at paragraph 6(c), was published. It is also doubtful that this witness is even competent to opine about the correspondence between British and U.S. safety testing; while perhaps experienced in certain aspects of the glass industry, his testimony provides no adequate foundation of his expertise in the area of code regulations and requirements. In fact, O'Keeffe's evidence is that, contrary to Mr. Kernander's unsupported opinion, the applicable safety glazing standard in the United States prescribed by building codes is not ANSI Z97.1-2004, and is unrelated to the British regulation he cites, BS6206:1981. (O'Keeffe Decl., ¶11.)[3]

### E. The Non-Patent Claims Should Proceed to Trial

Even if the court is inclined to stay the claims related to the '906 patent pending a reexamination by the PTO, the numerous counterclaims unrelated to that patent should proceed. As a consequence of TGP's counterclaims, and those subsequently alleged by O'Keeffe's, there are now multiple claims and issues in dispute between the parties, including third-party Underwriters Laboratories, completely separate from the '906 patent.[4] O'Keeffe's has alleged in its pleading an independent jurisdictional basis of this court over these counterclaims. There are no persuasive grounds to stay these claims, which can be fully adjudicated by the parties through trial in this court

---

[2] One possible answer is that Anemostat, as a door manufacturer that uses infringing products, does not have ready access to such data and test results, unlike the other defendants. TGP certainly would have such data, which makes its absence from this present motion more peculiar, unless TGP hopes to avoid disclosure of certain test data and results.

[3] Plaintiff should be permitted, and requests, to take Mr. Kernander's deposition to test his unsupported testimony before the court relies on it to grant Anemostat's request for a stay.

[4] O'Keeffe's anticipates that when defendant Pilkington appears in this action, additional counterclaims unrelated to the '906 patent may also arise, and be appropriate for adjudication also in this action.

7

PLAINTIFF'S OPPOSITION TO DEFENDANT ANEMOSTAT'S MOTION TO STAY
Case No. 07 cv-03535 JF PVT
{00112623-1}

without reference to the '906 patent. Whatever the outcome of any reexamination by the PTO, that process will not affect the litigation or resolution of these unrelated claims. None of the decisions cited by Anemostat in support of its motion provide authority to stay an entire action which includes multiple counterclaims and a third party unrelated to the patent claims. See, e.g., *Brown v. Shimano American Corporation, et al,* 1991 U.S. Dist. LEXIS 9431, 18 U.S.P.Q. 2d 1496 (BNA) (1991).

Defendant TGP has submitted nothing indicating its position on any stay; it has not joined in the motion itself, and Anemostat merely represents in its motion that TGP "has not objected to the requested stay being implemented for at least the patent counts in view of Anemostat's pending Reexamination Requests." (Motion, at 4). Even Anemostat seems not wholly committed to a stay this of entire action; it readily proposes in its motion an alternative, narrower ruling for the court which would limit a stay simply to "all claims and counterclaims regarding the '906 patent." If the court is inclined to impose any stay, O'Keeffe's urges that it be limited to the claims directly related to the '906 patent, a position that the moving party has proposed, and TGP has endorsed.

## IV.  CONCLUSION

For the foregoing reasons, in order to insure the complete, timely and fair adjudication of all claims and defenses in this action, defendant's motion to stay should be denied. Alternatively, the motion to stay the entire action should be denied as to any claim not directly related to the '906 patent.

Dated: October 26, 2007    FREELAND COOPER & FOREMAN LLP

By: _____
DANIEL T. BERNHARD
Attorneys for Plaintiff and Counter
defendant O'KEEFFE'S, INC.