MARK I. SCHICKMAN (CSB #62653)
schickman@freelandlaw.com
DANIEL T. BERNHARD (CSB #104229)
bernhard@freelandlaw.com
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Telephone: (415) 541-0200
Facsimile: (415) 495-4332

Attorneys for Plaintiff, Counterdefendant and
Counterclaimant O'KEEFFE'S, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| O'KEEFFE'S, INC., <br><br> Plaintiff, <br><br> v. <br><br> TECHNICAL GLASS PRODUCTS, ANEMOSTAT, and PILKINGTON PLC, <br><br> Defendants. <br><br> And Related Actions. | CASE NO.: C 07-cv-03535 JF PVT <br><br> **DECLARATION OF WILLIAM O'KEEFFE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO STAY ACTION** <br><br> DATE: November 16, 2007 <br> TIME: 9:00 a.m. <br> DEPT: Courtroom 3, 5th Floor <br> The Honorable Jeremy Fogel |

I, WILLIAM O'KEEFFE, declare as follows:

1. I am President and Chief Executive Officer of O'Keeffe's, Inc. ("hereafter referred to as "O'Keeffe's"). SAFTI First is a division of O'Keeffe's.

2. During the period 1997 to 2003, O'Keeffe's was a member of the Accredited Standard Committee for ANSI Z97.1, *Safety Glazing Materials Used in Buildings - Safety Performance Specifications and Methods of Test* (hereafter referred to ASC Z97.1). This standard establishes the specifications and methods of test for the safety properties of safety glazing materials (glazing materials designed to promote safety and to reduce or minimize the likelihood of cutting or piercing

O'KEEFFE DECLARATION ISO PLAINTIFF'S OPPOSITION TO DEFENDANT ANEMOSTAT'S MOTION TO STAY, Case No. 07 cv-03535 JF PVT
{00112656-1}

1

injuries when the glazing materials are broken by human contact), as used for all building and architectural purposes.

3. During this period of time Pilkington PLC was also a member of the ASC Z97.1.

4. One of the issues before the ASC Z97.1 during this period was whether polished wired glass should be classified as safety glazing under the ANSI Z97.1 Safety Glazing Standard, if tested to a lower 100 ft. lb. impact that the CPSC had previously rejected. The CPSC determined that such a test was ineffective to protect anyone but children under five.

5. Pilkington and other wired glass manufacturers who were members of the ASC Z97.1 maintained during those proceedings that they lacked the technology to produce an impact-safe wired glass product that met the higher CPSC impact tests of 150-ft. lbs. and 400 ft. lbs., and also U.S. fire test standards.

6. On or about December 6, 2000. I made a presentation to ASC Z97.1 at its meeting in Tampa, FL, in which I submitted test data showing that O'Keeffe's had developed the technology to make an impact-safe fire resistant wired glass product that met CPSC impact standards and U.S. fire test standards for use in fire doors.

7. Pilkington's ASC Z97.1 representative at that meeting, Brian Waldron, disputed that data and stated that Pilkington had been working unsuccessfully for years to develop an impact safe and fire resistant wired glass product meeting CPSC safety glazing standards, but had not been able to do so.

8. O'Keeffe's was the proponent of a code change heard by the International Code Council in 2001, as S80a-01. Attached hereto as Exhibit A is a true and correct copy of relevant portions of the transcript of the hearing on S80a. O'Keeffe's sought to eliminate the safety glazing exception for wired glass used in fire assemblies, and require wired glass to meet the same CPSC safety glazing standard applied to all other fire rated products.

9. In that proceeding, Pilkington's representative, Brian Waldron, opposed the code change, and stated the following:

> "I'm the European (Inaudible) manager of Pilkington's wired glass manufacturers.

O'KEEFFE DECLARATION ISO PLAINTIFF'S OPPOSITION TO DEFENDANT ANEMOSTAT'S MOTION TO STAY, Case No. 07 cv-03535 JF PVT
{00112656-1}

2

> I work with standardization all of my time. I'm Chairman of the UK European International Standards Committee dealing with glass in building. I'm a member of the ANSI Z97.1 Committee. As an expert with 25 plus years experience in testing glass, I am surprised the proponent [O'Keeffe's] has come up with the solution they have. Applying film to wired glass does not guarantee will obtain CPSC performance certification. In my experience it will not. . . .
>
> As I said I'm a member of the ANSI committee. In recent months we've had many discussions with Am Cal [sic] who are the film manufacturers trade association, because they have the same problem. How do they get a pass on their product because it falls out when the glass breaks? The same comment has been made by the Safety Glazing Certification Council, they cannot pass a glass product which is filmed if the glass breaks and it falls out of the frame.
>
> The proponents have suggested they found the holy grail. Having spent 25 years trying to find it myself, I don't believe they have."

Transcript, pp. 26-27.

10. At the time O'Keeffe's filed its application for U.S. Patent No. 7,090,906, at issue here, Pilkington and other wired glass manufacturers publicly represented to building code regulators, government officials and the public that they could not make an impact safe fire resistant wired glass product that met U.S. fire test and CPSC safety glazing standards. For that reason, they urged that the safety glazing exception applied to wired glass in fire assemblies should be continued, and not altered.

11. I am familiar with the impact performance specifications of ANSI Z97.1-2004, and BS6206:1981. Neither of those standards are specified as the performance test standards for safety glazing products prescribed by United States building codes, the 2006 IBC or prior model building codes, or federal regulations. The applicable safety glazing standard in the United States is prescribed by the Consumer Product Safety Glazing Commission, as set forth in 16 CFR 1201 et seq. I am familiar with the performance specifications and safety glazing classifications specified in the CPSC regulations.

12. The CPSC standard is specifically referenced in US building codes, such as 2006 IBC section 2406.1.1. That section states, in relevant part: "**CPSC 16 CFR 1201.** [A]ll glazing shall pass the test requirements of CPSC 16 CFR 1201, listed in Chapter 35. Glazing shall comply with the CPSC 16 CFR, Part 1201 criteria, for Category I or II as indicated in Table 2406.1." BS6206:1981

does not specify the same test method or acceptance criteria as the CPSC standard. Class B under the BS6206:1981 standard is not the equivalent of classification to Category I of the CPSC standard. Comparison of testing of glazing products tested to the British standard is irrelevant to determine acceptance of safety glazing products required to be tested to the CPSC standard.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and corrected.

Executed this 26th day of October, 2007, at San Francisco, California.

_____
WILLIAM O'KEEFFE

O'KEEFFE DECLARATION ISO PLAINTIFF'S OPPOSITION TO DEFENDANT ANEMOSTAT'S MOTION TO STAY, Case No. 07 cv-03535 JF PVT
{00112656-1}

4

PUBLIC HEARINGS

S80-01

S80a-01

and

OPEN FORUM ON AD HOC COMMITTEE

- - -

Transcript of proceedings had and testimony taken in the above-captioned matter, transcribed by me, the undersigned, Kristie L. Birch, a Notary Public in and for the State of Ohio, from a tape-recording.

---

CLASSIC REPORTING SERVICE
1450 National City Bank Building
405 Madison Avenue
Toledo, Ohio 43604
(419) 243-1919

- - -

2

|   |   |
|---|---|
| 1 | **PUBLIC HEARING ON S80-01 and S80a-01** |
| 2 | - - - |
| 3 | MR. MODERATOR:    S80-01 item 1. |
| 4 | MR. ZAREMBA:    My name is Tom |
| 5 | Zaremba, I represent the wired glass |
| 6 | industry as proponent of S80. |
| 7 | Last year O'Keefe's came to this |
| 8 | committee proposing to ban the use of wired |
| 9 | glass on the ground that there were no code |
| 10 | provisions governing or restricting its |
| 11 | size, that was not true.  This change is |
| 12 | being proposed by the wired glass industry |
| 13 | to make it clear that there are, indeed, |
| 14 | size limitations on the use or wired glass |
| 15 | and they are found on Table 714.3.2 of |
| 16 | Chapter 7.  We urge your support. |
| 17 | MR. MODERATOR:    Thank you. |
| 18 | Anyone else in support?  Anyone else in |
| 19 | support?  Mr. Billing, no, yes? |
| 20 | MR. BILLING:    Yes.  Pete |
| 21 | Billing representing WDMA and we are in |
| 22 | support of this, we feel it's appropriate |
| 23 | to put this limitation in the code. |
| 24 | MR. MODERATOR:    Thank you, |

sir. Anyone else in opposition? Mic No. 3.

MR. WALDRON: Brian Waldron, I'm the European (Inaudible) manager of Pilkington's wired glass manufacturers.

I work with standardization all of my time. I'm chairman of the UK European International Standards Committees dealing with glass in building. I'm also a member of the ANSI Z97.1 committee. As an expert with 25 plus years experience in testing glass, I am surprised the proponent has come up with the solution they have. Applying film to wired glass does not guarantee it will obtain a CPSC performance certification. In my experience it will not. Generally what will happen is the glass will break when the impacter impacts it. The glass will then fall out of the test frame. This in accordance with CPSC is a failure.

As I said I'm a member of the ANSI committee. In recent months we've had many discussions with Am Cal who are the

1  film manufacturers trade association,
2  because they have the same problem.  How do
3  they get a pass on their product because is
4  falls out when the glass breaks?  The same
5  comment has been made by the Safety Glazing
6  and Certification Council, they can not
7  pass a glass product which is filmed if the
8  glass breaks and it falls out of the frame.
9          The proponents have suggested
10 they found the holy grail.  Having spent 25
11 years trying to find it myself, I don't
12 believe they have.  They're asking you to
13 ban a product which is a fire product with
14 a certain impact performance based on
15 unsatisfactory and unsustainable evidence.
16 Thank you.
17          MR. MODERATOR:    Thank you,
18 sir.  Anyone else in opposition?  Mic No.
19 3.
20          MR. MEWBOURNE:    My name is Tom
21 Mewbourne and I represent the Flat Glass
22 Manufactuures Association of Japan, a
23 manufacturer of wire glass.
24          I'm in opposition to this

65

1    thank the committee for their hard work in
2    this effort, our Moderator for controlling
3    things and our staff, I thank you all very
4    much.  Continue enjoying the hearings.
5             - - -
6
7
8
9
10              C E R T I F I C A T E
11
12        I, Kristie L. Birch, a Notary Public
13   in and for the State of Ohio, do hereby certify
14   that the above and foregoing is a true and accurate
15   transcription from a tape-recording of the aforementioned
16   matter.
17        IN WITNESS WHEREOF, I have hereunto set my
18   hand and affixed my seal of office at Toledo,
19   Ohio, on this 8th day of May, 2001.
20
21
22   My Commission expires              Kristie L. Birch
     September 11, 2005                 Notary Public
23                                      In and for the State of Ohio.
24