[NAMES AND ADDRESSES OF COUNSEL APPEAR AT THE END]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| O'KEEFFE'S, INC., <br><br> Plaintiff, <br><br> v. <br><br> TECHNICAL GLASS PRODUCTS, ANEMOSTAT, and PILKINGTON PLC, <br><br> Defendants. | CASE NO.: C 07-cv-03535 JF PVT <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> DATE: November 16, 2007 <br> TIME: 10:30 a.m. <br> DEPT: Courtroom 3, 5th Floor <br> The Honorable Jeremy Fogel |
| And Related Actions. | |

Plaintiff O'Keeffe's, Inc. ("O'Keeffe's") and defendants Technical Glass Products ("TGP") and Anemostat ("Anemostat") (collectively "parties"), submit this Joint Case Management Statement and [Proposed] Order, and request the Court adopt it as its Case Management Order. Absent express agreement, no party accepts or adopts the statements or contentions of any other party herein, and no statement or representation by any party herein shall constitute any admission or other determination of evidence by another party.

Defendant Pilkington, PLC is located in England, and Plaintiff reports that it has been served there. Third-party defendant Underwriters Laboratories has been served also.

### 1. JURISDICTION AND SERVICE

This action was commenced with plaintiff O'Keeffe's, Inc. filing a complaint for patent infringement alleging a single claim for relief on July 6, 2007. Jurisdiction is based on 35 U.S.C. §§1, et seq, and 28 U.S.C. §§1331 and 1338 (a) and (b), and on the pendent, supplementary and ancillary jurisdiction of the Court. Venue is based on 28 U.S.C. §1391. The complaint has been served on all parties.

Thereafter, defendant Anemostat filed an answer and two counterclaims against O'Keeffe's based on the claim of patent infringement. Defendant TGP also filed an answer, and alleged six counterclaims against O'Keeffe's. The first three counterclaims relate to the alleged patent, and seek declarations of non-infringement, invalidity and unenforceability, respectively. The Fourth and Fifth Counterclaims allege that O'Keeffe's use of its "SAFTIFIRE FRAMES" mark infringes TGP's FIREFRAMES® mark, for which TGP has two incontestable federal trademark registrations, and violates Section 43(a) of the Lanham Act. TGP's Sixth Counterclaim alleges that that O'Keeffe's markets its SuperLite 1-XL glass product through false and misleading advertising and unlawful trade practices that indicate the product passes certain fire safety tests required by building codes, when in fact it does not. .

O'Keeffe's filed answers to the counterclaims alleged by Anemostat and TGP, and also filed six counterclaims against TGP and a third party, Underwriters Laboratories, alleging, inter alia, Trademark cancellation, Lanham Act violations, Trade Libel, and unfair business practices. O'Keeffe's alleged a separate jurisdictional basis for these counterclaims, based on 28 U.S.C. §§ 1331, 1338, 1367, 2201 and 2202, and 15 U.S.C. §1121, as well as Rules 13 and 19 of the Federal Rules of Civil Procedure.

### 2. FACTS

The parties intend the following items as a preliminary statement of the issues, subject to change as the issues develop and become known.

In general, the parties dispute all of the factual issues underlying a determination of whether the '906 patent has been infringed, whether any remedy is thereby appropriate, and whether the '906 patent is valid.

**Plaintiff's Statement**

Plaintiff O'Keeffe's is the sole holder of U.S. patent number 7,090,906, dated August 15, 2006 for a product it created, manufactures, markets and sells named SuperLite I-W. SuperLite I-W is a wire reinforced glazing product that is filmed, resulting in a fire rating and a separate safety rating. O'Keeffe's chief competitor id the wired glass industry. For many years wired glass was considered the only glazing material that could meet fire standards for building assemblies such as fire doors and windows. But conventional wired glass is not, in fact, safety glazing, although it is typically mistaken as such. In fact, the wire mesh weakens the glass, leaving it more susceptible to breaking. When exposed to fire, conventional wired glass cracks within minutes. The wire mesh holds the glass in place, preventing large cracks. This product does nothing, however, to limit the transfer of dangerous radiant heat. O'Keeffe's patented SuperLite I-W significantly inhibits the transfer of radiant heat.

O'Keeffe's also manufactures another fire and safety rated product called SuperLite I-XL. It has a reflective coating that causes radiant heat waves to bounce back to the fire, offering important protection from radiant heat dangers. At various times, TGP and others in the glazing industry have criticized and questioned the qualities of SuperLite I-XL, with the effect of damaging that product in the marketplace. At the same time, TGP has made various representations about its own fire rated products, including FireLite, that O'Keeffe's and others knows to be untrue as to the rating requirements of the product. Among other things, UL (which provides a listing for FireLite) omits from its listing of FireLite in 45, 60 and 90 minute listing the fact that FireLite allows transmission of dangerous radiant heat. UL also has listed various of defendants' products for unauthorized uses, where those products fail to meet local code requirements.

O'Keeffe's denies each of the counterclaims alleged by defendants.

**Defendant Anemostat's Description of the Events Underlying the Action**

Anemostat denies O'Keeffe's allegations in the Complaint regarding the alleged infringement of the '906 patent. Anemostat has asserted several affirmative defenses and sought declaratory judgment of non-infringement and invalidity of the '906 patent. In particular, Anemostat alleges that the claims of the '906 patent are invalid in view of numerous prior art patents, publications, and uses, including a November 1998 Glass Age and Construction article and other references set forth in its

two Reexamination Requests. Anemostat contends that these references show individually or in combination that what is covered by the claims of the '906 patent is neither new nor non-obvious and that the claims of the '906 patent are invalid.

**TGP's Statement:**

**Patent Claims.** TGP denies infringement of the '906 patent. TGP's counterclaims seek declaratory judgments of non-infringement, invalidity and unenforceability of the '906 patent.

The '906 patent has only two independent claims:

> 1. A fire resistant safety glass, consisting essentially of: a piece of wire glass; and a fire resistant film adhered to said piece of wire glass sufficient to impart an impact resistance of at least about 100 foot lbs. and further wherein the fire resistant film contains PET.
>
> 6. A method of manufacturing a fire resistant safety glass, consisting essentially of the steps of: providing one sheet of wire glass; and adhering a fire resistant film of PET to said sheet of wire glass sufficient to impart to said fire resistant safety glass an impact resistance of about 100 foot lbs to about 4000 foot lbs.

It is unclear which of these claims Plaintiff is asserting. It appears that Plaintiff's Complaint is based on the view that at least one of these two claims is infringed by the manufacture or sale of a product consisting of an off-the-shelf PET window film (such as 3M's Scotchshield® window film) applied to standard wire glass. The patent application was filed in September 2002, and claims the priority date of a September 2001 provisional, but no earlier priority date.

TGP contends that all patent claims are invalid because window film has been intended for use on all kinds of windows, including wire glass, and has been used on all kinds of windows, including wire glass, for years if not decades prior to September 2001/2002. For example, TGP has sold FireLite NT® products since the 1990's, it consists of 3M's Scotchshield® window film on glass, and the federal trademark registration for FireLite NT®, the application for which was published on February 13, 2001, describes the goods as "fire-rated and impact safety-rated glazing material for building windows, doors and partitions; namely sheet glass, **wire glass** laminated glass, and multiple glass."

TGP contends that the PTO's reason for allowing the issued claims turned on the limitation that the film contain or be of "PET," a type of polyester plastic. However, the evidence will show that 3M's Scotchshield® window film and many other prior art window films are entirely or primarily PET, so that limitation does not distinguish the prior art.

TGP also alleges that Plaintiff, the named inventor and his patent counsel withheld material prior art from the PTO during prosecution, including prior art relating to FireLite NT®, prior art on PET window films, and their own prior patent, U.S. Pat. No. 5,910,620 ("the '620 patent"). The '620 patent issued on June 8, 1999, and discloses using a PET film (polyethylene terephthalate) on glass panes to obtain fire-rated glass (see Col. 3, lines 42—50).

In addition, TGP contends that the claims of the '906 patent are invalid in view of numerous prior art patents, publications, and uses, including but not limited to a November 1998 Glass Age and Construction article and other references set forth in Anemostat's two Reexamination Requests. TGP contends that these references show individually or in combination that what is covered by the claims of the '906 patent is neither new nor non-obvious and that the claims of the '906 patent are invalid.

**Trademark Claims.** TGP owns two incontestable, federal registrations for the FIREFRAMES trademark in connection with its fire-rated door and window products. TGP has owned rights in the FIREFRAMES mark since 2000. U.S. Trademark Registration No. 2,162,531 issued in 1998 to Ferche Millwork, Inc. for use of the mark FIREFRAME with wooden door and window products. Ferche assigned the '531 Registration to TGP in 2000. U.S. Trademark Registration No. 2,529,865 was awarded to TGP in 2002 for use of FIREFRAMES in connection with metal door and window products.

O'Keeffe's recently began using SAFTIFIRE FRAMES in connection with similar products. The key factual dispute is whether O'Keeffe's use of SAFTIFIRE FRAMES is likely to deceive or cause confusion or mistake among TGP's customers or potential customers.

**False Advertising Claims.** The false advertising and unlawful trade practices claims relate to a dispute the parties have been having for some time. The parties' products at issue in this case are fire-protection/safety products used in many types of buildings, including public institutions such as schools. The products are subject to certain safety standards and building codes and regulations. One

example is the hose stream test, which must be passed for any fire-rated glazing product to receive a rating higher than 20 minutes. Notwithstanding that fact, O'Keeffe's markets products, such as SuperLite 1-XL, which have not passed the hose stream test, but nonetheless misleadingly tells the public that its products are safe for locations that, by code, require a rating higher than 20 minutes. Because O'Keeffe's sells substandard products, it is able to sell the products cheaper than TGP, thus damaging TGP.

### 3. LEGAL ISSUES

**A.** In TGP's and Anemostat's view, this case has five basic legal issues:

1. Is Plaintiff's '906 patent invalid or unenforceable?

2. Do Defendants' accused products (other than UL) infringe the '906 patent?

3. Should TGP's FIREFRAMES® trademark registrations be cancelled?

4. Does O'Keeffe's use of its SAFTIFIRE FRAMES mark infringe TGP's FIREFRAMES trademark, or violate the Lanham Act;

5. Do statements by O'Keeffe's or TGP mislead the public regarding the fire safety qualities of O'Keeffe's SuperLite 1-XL and TGP's Firelite® products?

**B.** In O'Keeffe's view, there are numerous and divergent legal issues raised by the complaint and the various subsequent counterclaims, including the following.

1. Do the products fabricated and sold by defendants infringe on O'Keeffe's '906 patent?

2. Whether the '906 patent is valid under Title 35 of the United States Code and/or under the applicable judicial precedents

3. Whether the '906 is unenforceable due to inequitable conduct by failing to disclose material prior art, including but not limited to U.S. Pat. No. 5,910,620;

4. Whether Defendants are liable for infringement and whether O'Keeffe's is entitled to damages or other relief;

5. Whether TGP's U.S. Trademark Registration No. 2,162,531 and No. 2,529,865 for use of the mark "FIREFRAMES" have been infringed by O'Keeffe's in violation of 15 U.S.C. §1114(1);

6. Whether O'Keeffe's has violated 15 U.S.C. §1125(a)(1);

7. Whether O'Keefe has engaged in unlawful trade practices and false advertising with

certain marketing and selling activities related to its SuperLite I-XL fire-rated glazing product;

8.  Whether TGP's U.S. Trademark Registration Nos. 2,162,531 and 2,529,865 were fraudulently procured;

9.  Whether TGP violated the Lanham Act by, inter alia, falsely representing that O'Keeffe's SuperLite I-XL is an unsafe and unpermitted fire and safety glazing product;

10. Whether TGP's representations about SuperLite I-XL constitute trade libel;

11. Whether misrepresentations about SuperLite I-XL by TGP and third-party defendant UL constitute violations of Business and Professions Code §§17200, et . seq.;

12  Whether misrepresentations about SuperLite I-XL constitute common law unfair competition; and

13. Whether any party is entitled to costs and an award of attorneys' fees.

### 4. MOTIONS

Defendant Anemostat filed an *ex parte* request for re-examination with the PTO, on August 31, 2007, which was granted by the PTO as asserted a substantial new question of patentability on November 2, 2007. Anemostat also recently filed a second *inter partes* request for reexamination with the PTO on October 9, 2007, and is awaiting a determination from the PTO as to whether a substantial new question of patentability has been raised by prior art evidence that was not before the PTO during original prosecution of the '906 patent or in the first *ex parte* request for reexamination. Based on these filings, Anemostat filed a Motion to stay this action, or alternatively to stay all claims specifically involving the '906 patent, pending any such reexamination of the '906 patent claims by the PTO. Briefing on Anemostat's Motion is complete and the Motion has been noticed for November 16, 2007.

Defendant TGP has joined Anemostat's Motion with respect to a stay of all claims related to the '906 patent. Anemostat and TGP anticipate that summary judgment motions as to patent-specific claims in this action are likely to be filed expeditiously if the Motion is denied.

### 5. AMENDMENT OF PLEADINGS

O'Keeffe's anticipates adding additional claims against defendant Pilkington, PLC depending on its response to the complaint herein.

---

JOINT CASE MANAGEMENT CONFERENCE STATEMENT  
Case No. 07 cv-03535 JF PVT  
{00113010-1}

7

### 6. EVIDENCE PRESERVATION

The parties have advised their employees of the action, the issues in dispute, and has directed that documents and materials that could be related to any claim or defense be preserved.

### 7. DISCLOSURES

O'Keeffe's has served it initial disclosures under Fed. R. Civ. P. 26(a)(1).

Anemostat served its initial disclosures required by Fed. R. Civ. P. 26(a)(1) on October 5, 2007. TGP served its initial disclosures required by Fed. R. Civ. P. 26(a)(1) on October 12, 2007, and supplemental initial disclosures on November 9, 2007.

### 8. DISCOVERY

No discovery has occurred to date, with the exception that TGP has served third-party subpoenas on three companies who are believed to possess relevant prior art materials.

**Discovery the Parties Intend to Pursue**

(1) *Plaintiff's Statement*: O'Keeffe's will pursue discovery of the nature and extent of defendants' infringement of the '906 patent, and the damages resulting to plaintiff therefrom. Plaintiff will also seek discovery on the unfair trade practices, including trade libel and false advertising concerning O'Keeffe's SuperLite I-W and SuperLite I-XL products. Plaintiff will also pursue discovery as to its unfair competition claims with respect to the listing by UL of various unauthorized products manufactured and sold by defendants TGP and Pilkington which do not meet applicable code requirements, despite UL listings. O'Keeffe's will also seek discovery to defend against the various counterclaims alleged against it.

(2) *Defendant Anemostat's Statement*: Anemostat intends to pursue documentary and deposition discovery concerning the alleged invention and subject matter of the claims of the '906 patent, validity of the '906 patent, including prior art and the state of the art, prosecution of the '906 patent, Plaintiff's alleged damages including profits and licensing activities; and Anemostat's affirmative defenses and counterclaims.

(3) *Defendant TGP's Statement*: TGP intends to pursue documentary and deposition discovery concerning the alleged invention and subject matter of the claims of the '906 patent, validity of the '906 patent, including prior art and the state of the art, prosecution of the '906 patent, Plaintiff's

alleged damages including profits and licensing activities. TGP will also pursue discovery concerning its non-patent counterclaims, including but not limited to discovery related to O'Keeffe's use of its SAFTIFIRE FRAMES mark and product sales associated with that mark, its marketing and sales of its SuperLite 1-XL product and issues concerning whether that product meets applicable building codes for fire rated glass.

The parties propose that Claim Construction occur at the beginning of July, 2008 with other dates set by the Local Rules up to that hearing date. Following Claim Construction, other discovery dates would be as follows:

Fact Discovery: October 17, 2008

Expert Designations: November 10, 2008

Expert Rebuttal Reports: December 10, 2008

Expert Discovey Cut-Off: January 15, 2009

Dispositive Motions Deadline: February 20, 2009

Final Pre-Trial Conference: May 15, 2009

Trial: June 15, 2009

In the event that the patent-specific claims are stayed pending reexamination, the parties propose the following discovery schedule for the remaining non-patent claims:

Fact Discovery cut-off: May 2, 2008

Expert Designations: June 2, 2008

Expert Rebuttal Reports: July 1, 2008

Expert Discovery Cut-Off: August 1, 2008

Dispositive Motions Deadline: September 19, 2008

Final Pre-Trial Conference: December 1, 2008

Trial: January 19, 2009

In either case (with or without the stay of patent claims), TGP and O'Keeffe's would prefer an earlier trial date if available.

E-Discovery Issues

(1) *Format*: The parties have agreed that electronic documents shall be produced to the

requesting party as a tiff image file with a Summation load file. When the image file is produced, the producing party must preserve the integrity of the electronic document's contents – i.e., the original formatting of the document, its metadata and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of electronic documents in their native format.

(2) *Privilege*: Electronic documents that contain privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production. All copies shall be returned or destroyed by the receiving party.

Other Issues

(1) The parties have not agreed to any limitations on the subject matter of discovery at this time. If this action is stayed with respect to patent-specific claims, then the parties may readdress this issue.

(2) The parties have not agreed upon the number of interrogatories and depositions that should apply to this action.

(3) The parties plan to seek a modification of the default Protective Order in this District.

### 9. CLASS ACTION

Not applicable.

### 10  RELATED CASES

Not applicable

### 11. RELIEF

O'Keeffe's seeks a permanent injunction against all defendants to prevent further infringement of the '906 patent. O'Keeffe's also seeks money damages for defendants' infringement based on O'Keeffe's lost revenue resulting from defendants' sale of infringing products that displace O'Keeffe's SuperLite I-W product, and its lost market share. These damages must be calculated based, inter alia, on a market analysis and other economic factors to be performed by O'Keeffe's experts following discovery.

O'Keeffe's also seeks damages for defendants' unfair competition, false advertising and trade libel affecting O'Keeffe's SuperLite I-XL product. Specifically, O'Keeffe's seeks recovery of money damages equal to the loss of its revenues resulting from defendants' actions, and also for its loss of market share and related damages, resulting from defendants tortuous conduct.

Anemostat and TGP seek declaratory relief that they do not infringe the '906 patent and that the '906 patent is invalid and unenforceable, and seek costs and attorneys' fees.

TGP seeks an injunction prohibiting O'Keeffe's from using the SAFTIFIRE FRAMES mark and any other mark confusingly similar to TGP's incontestable, registered FIREFRAMES mark. TGP seeks to enjoin O'Keeffe's from falsely advertising its SuperLite 1-XL product. TGP seeks damages based on that trademark infringement and false advertising, in an amount to be determined based on expert analysis and discovery.

## 12. SETTLEMENT AND ADR

To date the parties have not made any efforts to engage in ADR. At this stage Plaintiff is unable to determine the prospects for settlement, but remains open to an ADR effort.

Plaintiff and Defendants' TGP and Anemostat have discussed ADR options and agreed to private arbitration with JAMS following the issuance of a claim construction order in the event the patent claims are not stayed. However, two additional parties have been added to the case since the parties discussed ADR, so the Stipulated Order regarding selecting an ADR process pursuant to Local Rule 16-8(c) has not been completed. TGP and O'Keeffe's will file their ADR certification pursuant to Local Rule 16-8(b) prior to the Case Management Conference.

## 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to a magistrate for all purposes in this action.

## 14 OTHER REFERENCES

The parties do not believe that this action is suitable for any reference at this time.

## 15. NARROWING OF ISSUES

With the pendency of the motion to stay this proceeding, it is difficult to propose other narrowing of issues. Because of the multiple claims that are separate and unrelated to the specific

patent claims, it appears that there is ample opportunity to resolve several claims, assuming that the action is not stayed in its entirety.

Anemostat and TGP believe that the legal issues pertaining to the patent-specific claims in this action will be narrowed considerably by virtue of reexamination of the claims of the '906 patent by the PTO, especially in view of prior art evidence that was not before the PTO during original prosecution of the claims. Anemostat's *ex parte* reexamination request was granted by the PTO on November 2, 2007. Anemostat's *inter partes* reexamination has not yet been acted on by the PTO. If the patent claims in this case are stayed, TGP intends to file an *inter partes* reexamination request promptly thereafter.

TGP has alleged infringement of two incontestable trademark registrations for the mark FIREFRAMES. Rights in the earlier registration were acquired by TGP by assignment from a third party. O'Keeffe's has raised defenses and grounds for cancelling that registration that do not apply to TGP's later registration. To narrow the issues in TGP's trademark infringement action, TGP may amend its trademark infringement claims to drop the earlier registration.

### 16.  EXPEDITED SCHEDULE

O'Keeffe's is unaware of any specific facts or circumstances that make this action especially suited to an expedited schedule, except that continued infringement of its patent deprives O'Keeffe's of the substantial advantages of being "first to market" with a new product.

The Defendants agree only to the extent that they are likewise unaware of any specific facts or circumstances that make this action especially suited to an expedited schedule, especially in view of the existing and likely reexamination proceedings of the asserted '906 patent before the PTO.

### 17.  SCHEDULING

See, Section 8, above. In the event that the patent–specific claims in this action are stayed pending reexamination, the schedule for the trial of the remaining claims can be shortened. Without the need to conduct discovery and claim construction proceedings on the patent claim, O'Keeffe's believes that the remaining claims can be ready for trial in approximately one year.

## 18. TRIAL

The parties propose a June 15, 2009 trial date if the action is not stayed.

If the patent-specific claims are stayed pending reexamination, the parties propose a January, 2009 trial date.

## 19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

O'Keeffe's and Anemostat are unaware of any persons, firms, partnerships or corporation or other entities that have either (a) a financial interest in the subject matter in controversy or in a party to the proceeding; or (b) any other kind of interest that could be substantially affected by the outcome of the proceeding. O'Keeffe's is a privately owned S corporation, and has no parent company; no publicly traded company owns 10% or more of its stock. Defendant Anemostat is a division of Pacific Air Balance, Inc., a privately held California corporation. No publicly held company owns 10% or more of its stock.

TGP is a closely held Washington corporation that has no parent corporation; no publicly held company owns 10% or more of its stock; and its principal officers are President Jerry Razwick and Chief Operating Officer Michael Moroney.

## 20. OTHER MATTERS

The parties are unaware of any other pertinent matters at this time.

Dated: November 9, 2007                    Respectfully Submitted,

FREELAND COOPER & FOREMAN LLP


By:   /s/ Daniel T. Bernhard
      Daniel T. Bernhard
      Attorneys for Plaintiff, Counterdefendant and
      Counterclaimant O'KEEFFE'S, INC.

      150 Spear Street, 18th Floor
      San Francisco, CA 94105
      Telephone:  (415) 541-0200
      Facsimile:  (415) 495-4332
      bernhard@freelandlaw.com

Dated: November 9, 2007

KLARQUIST SPARKMAN, LLP

By:     /s/ Jeffrey S. Love
Jeffrey S. Love
Attorneys for Defendant and
Counterclaimant TECHNICAL GLASS
PRODUCTS

121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
Telephone: (503) 595-5300
Facsimile: (503) 595-5301
Jeffrey.love@klarquist.com

Dated: November 9, 2007

FULWIDER PATTON LLP

By:     /s/ Michael S. Elkind
Michael S. Elkind
Attorneys for Defendant and
Counterclaimant ANEMOSTAT

6060 Center Drive, Tenth Floor
Los Angeles, CA 90045
Telephone: (310) 824-5555
Facsimile: (310) 824-9696
melkind@fulpat.com

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105