MARK I. SCHICKMAN (CSB #62653)
schickman@freelandlaw.com
DANIEL T. BERNHARD (CSB #104229)
bernhard@freelandlaw.com
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Telephone:   (415) 541-0200
Facsimile:   (415) 495-4332

Attorneys for Plaintiff, Counterdefendant and
Counterclaimant O'KEEFFE'S, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| O'KEEFFE'S, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>TECHNICAL GLASS PRODUCTS, ANEMOSTAT, and PILKINGTON PLC,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO.: C 07-cv-03535 JF PVT<br><br>**PLAINTIFF O'KEEFFE'S, INC. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION AGAINST UNDERWRITERS LABORATORIES, INC.**<br><br>**Date:**  To Be Set<br>**Time:**  To Be Set<br>**Dept.:**  Courtroom 3, 5th Floor<br>         The Honorable Jeremy Fogel |

PLAINTIFF O'KEEFFE'S, INC. MPA ISO EX PARTE APPLICATION FOR TRO AND OSC RE: PRELIMINARY INJUNCTION AGAINST UNDERWRITERS LABORATORIES, INC.

Case No. 07 cv-03535 JF PVT

{00114325-1}

## I. INTRODUCTION

After Defendant Technical Glass Products ("TGP") counter-claimed herein against Plaintiff O'Keeffe's Inc. ("OKI") for, *inter alia*, improperly using a fire rating label on its glazing, OKI responded with a third party claim that TGP improperly used the fire ratings of Underwriters Laboratory ("UL") in an unfair and anti-competitive manner -- with UL's active participation and assistance.

UL responded with an act of pure extortion, warning OKI in mid-November 2007 to drop its suit or "UL will terminate your listing, and you won't be able to sell your glass to anyone." UL carried out that crass threat on November 28, 2007, when it cancelled OKI's listing in retaliation for filing the instant lawsuit against it. The sole reason for that cancellation was express retaliation against OKI for filing this action against UL.

Access to the Courts is the lynchpin of our system of civil justice, without which violence and corruption would rule. Nothing is more threatening to public policy than allowing a citizen to be punished solely because it asked for judicial relief.

Here, that action threatens OKI's very existence because – as UL expressly threatened – OKI cannot sell its safety glazing to anyone without the UL mark. In the past two years alone, OKI has paid UL over $53,000 for the UL mark, and has spent another $400,000 on advertising materials which feature that mark. The damage to OKI would be massive and incalculable if UL is able to carry out its threat. Therefore, UL must be enjoined pending trial of this action from retaliating against Plaintiff O'Keeffe's Inc. in any manner for filing this lawsuit, including terminating OKI's UL mark and listing.

## II. STATEMENT OF FACTS

The approval and installation of architectural glazing in locations which are either fire or safety rated is a field highly regulated by code and by local building officials. Where there is a risk of human impact (for example, when dealing with doors and immediately adjacent areas) glazing

PLAINTIFF O'KEEFFE'S, INC.'S EX PARTE APPLICATION FOR TRO AGAINST UNDERWRITERS LABORATORIES, INC.

Case No. 07 cv-03535 JF PVT

1

{00114325-1}

generally must meet impact standards, such as the ability to withstand up to 400 foot-pounds of force. Similarly, where fire resistance is important (for example, when dealing with a fire corridor) glazing generally must meet standards which reflect an ability to resist or protect against fire for periods such as 20, 45, 60, 90 minutes. See Declaration of William O'Keeffe ("O'Keeffe Decl."), ¶ 2.

Local building officials generally do not perform tests for impact-safety or fire protection/resistance on a construction site. Rather, building codes call for a "listed" or "rated" product, upon which the logo of an accredited listing or rating agency is permanently affixed. Architectural safety glazing will generally not be approved by government officials unless it contains such a rating. See O'Keeffe Decl., ¶ 3.

There are two such major recognized listing and rating organizations in the United States, and counter-defendant UL is the largest and most recognized one. As a practical matter, it is impossible to engage in the business of safety architectural glazing unless a manufacturer has fair access to a UL label. See O'Keeffe Decl., ¶ 4.

During 2006 and 2007, OKI paid over $53,000 to UL for testing, listing and labeling services. During that same period, it spent about $400,000 in advertising and brochures which generally feature the UL logo prominently. OKI has committed its publicity campaigns toward a UL listing. Virtually all of its sales literature relies upon and touts its UL listing. See O'Keeffe Decl., ¶ 5, Exh A. Many of the specifications which OKI currently is bidding require a UL label. Many of the components (such as door frames) in which its glazing is placed has a UL rating and – in order to maintain that rating – must have UL listed and rated glazing installed in it, as well. OKI's business is very heavily invested in its UL rating. See O'Keeffe Decl., ¶5.

OKI has performed all of the technical and financial duties required to maintain its UL rating, including: paying all fees when due; creating product which meets UL test standards; providing UL with technical data on our listed and labeled product. OKI's business strategy is based upon the assumption that such compliance, as fairly applied, will allow it to keep and maintain its listing. See

PLAINTIFF O'KEEFFE'S, INC.'S EX PARTE APPLICATION FOR TRO AGAINST UNDERWRITERS LABORATORIES, INC.

Case No. 07 cv-03535 JF PVT

2

{00114325-1}

O'Keeffe Decl., ¶ 6.

OKI filed the current claims against UL <u>after</u> Defendant Technical Glass Products ("TGP") filed a counter-claim against it, accusing it of unfair competition through the alleged misuse of a fire rating label. In response, OKI claimed, among other things, that UL helped TGP to engage in unfair competition by giving TGP favorable treatment such as granting to TGP listings for code applications with which the TGP product did not comply, while refusing similar listings to OKI under similar circumstances. Such conduct provides an unfair and overwhelming competitive advantage to TGP at the risk of public safety considerations. <u>See</u> O'Keeffe Decl., ¶ 7.

Prior to the filing of this action against UL, UL never threatened the cancellation of OKI's UL mark. After OKI filed this lawsuit, however, UL's counsel threatened OKI's counsel, stating that if OKI did not dismiss its lawsuit against UL, "UL would terminate O'Keeffe's listing, and O'Keeffe's will not be able to sell its glass to anyone." <u>See</u> Declaration of Daniel T. Bernhard, ¶2. That is the one and only reason ever provided to OKI for the purported cancellation of its UL listing and mark. <u>See</u> O'Keeffe Decl., ¶ 8.

In early December, 2007 OKI received copies of the cancellation letters dated November 28, 2007. <u>See</u> O'Keeffe's Decl., Exh B. If that cancellation is permitted to be effective, it will devastate OKI's business, in manners which cannot be fully calculated. OKI will not be asked or be able to bid on jobs which require a UL listing. OKI will be shut out of bids and will fail to be awarded bids which it would otherwise get. <u>See</u> O'Keeffe's Decl., ¶ 9.

OKI averages over 30 quotes per day for safety listed products, which are effective for 90 days. Currently, OKI has approximately 2,000 pending quotes for safety listed products. It risks losing all of those potential bids if the cancellation is allowed to become effective. OKI has in excess of $4 million of work in progress for safety listed products. Those pending jobs will be threatened if this termination becomes effective. OKI's reputation for safety glazing will be pummeled. It will be impossible to either fully quantify, or fully remedy, the damages suffered by OKI as a result. An

order enjoining UL's threatened cancellation is the only way for OKI to avoid irreparable injury. See O'Keeffe Decl., ¶ 10.

### III. ANALYSIS

#### A. STANDARD FOR GRANTING A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

The Court has the authority to grant a temporary restraining order and a preliminary injunction in the exercise of its equitable powers. Fed. R. Civ. P. 65. "As the Court is acting in equity, the decision to enter a preliminary injunction is largely left to its discretion." Cabo Distributing Co., Inc. and Black Death USA, v. Nicolas Brady, 821 F. Supp. 582, 594 (N.D. Cal. 1992). The purpose of preliminary injunctive relief, including a temporary restraining order, "is to preserve the status quo pending a determination of the action on the merits." Pac. Rollforming, LLC v. Trakloc Int'l, LLC, 2007 U.S. Dist. LEXIS 82639 (S.D. Cal. 2007). "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." GoTo. com, Inc. v. The Walt Disney Co., 202 F. 3d 1199, 1210 (9th Cir. 2000).

The Ninth Circuit employs two alternative tests to determine the propriety of a preliminary injunction. A party seeking a temporary restraining order must satisfy the same test required for the issuance of a preliminary injunction. To prevail on a motion for preliminary injunction or a temporary restraining order, the movant must satisfy one of the two tests recognized in the Ninth Circuit: the "traditional" test, or the "alternative" test. See Federal Pretrial Civil Procedure in California § 19.08 (2007) (citing Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005). A party seeking a temporary restraining order must satisfy the same test required for the issuance of a preliminary injunction. See Bronco Wine v. U.S. Dept of Treasury, 997 F. Supp. 1309 1313 (E.D. Cal. 1996); accord Pac. Rollforming, supra, U.S. Dist. LEXIS 82639.

"The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the

PLAINTIFF O'KEEFFE'S, INC.'S EX PARTE APPLICATION FOR TRO AGAINST UNDERWRITERS LABORATORIES, INC.　　4
Case No. 07 cv-03535 JF PVT

{00114325-1}

preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." White Mountain Apache Tribe v. Arizona, Dep't of Game & Fish, 649 F. 2d 1274, 1285 (9th Cir. 1981).

The "alternative" test requires that the moving party demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in his favor. Diamontiney v. Borg, 918 F.2d 793, 795 (9th Cir. 1990). These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. Id.

### B. OKI HAS SATISFIED BOTH THE TRADITIONAL AND ALTERNATIVE TEST FOR GRANTING INJUNCTIVE RELIEF.

#### 1. There is a Strong Likelihood of Success on the Merits.

In this case, OKI can prevail by satisfying either the traditional or the alternative test. OKI has, in fact, satisfied both tests. First, under the "traditional" test, there is a strong likelihood of success on the merits in permanently blocking this retaliatory cancellation of OKI's listing – necessary to sell in "safety " locations listed in the code. OKI has a valid claim against UL under California Business and Professions Code section 17200. See OKI's Opposition to UL's pending Motion to Dismiss filed, January 11, 2008. It is undisputed that after OKI filed this lawsuit against UL, UL threatened to cancel OKI's UL mark and listing unless OKI dismissed its lawsuit. Shortly thereafter, UL made good on its threat. UL's actions are flagrant and bare-knuckle retaliation for OKI bringing this lawsuit, and UL has admitted as much. Such retaliatory actions are designed to punish OKI and obtain an advantage in this litigation, and are thus completely improper; they must be enjoined by the Court.

California Business and Professions Code section 17203 provides in part: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §17203. The Legislature "intended to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might

PLAINTIFF O'KEEFFE'S, INC.'S EX PARTE APPLICATION FOR TRO AGAINST UNDERWRITERS LABORATORIES, INC.

Case No. 07 cv-03535 JF PVT

5

{00114325-1}

occur." People v. McKale, 25 Cal. 3d 626, 632 (1979). In this case, UL's retaliatory act of canceling OKI's UL mark and listing because it filed a lawsuit is yet another unfair business practice by UL that independently violates section17200 and must be enjoined.

Federal courts have the authority to enjoin defendants from retaliating against plaintiffs for filing a lawsuit. See e.g., Mohr v. Chicago Sch. Reform Bd. of Trs. of the Bd. of Educ, 155 F. Supp. 2d 923, 932 (N.D. Ill. 2001) (granting permanent injunction prohibiting retaliation against plaintiff for filing her lawsuit); Lee v. Christian Coalition of Am., Inc., 160 F. Supp. 2d 14 (D.C. 2001) (granting preliminary injunction prohibiting retaliation against plaintiffs for filing lawsuit); Jones v. Browner, 1997 U.S. Dist. LEXIS 7259, *12 (N.D. Ill. 1997) (granting permanent injunction enjoining the defendant from future acts of retaliation because of her lawsuit); Cronin v. United Serv. Stations, 809 F. Supp. 922, 933 (M.D. Ala. 1992) (granting injunction prohibiting defendants from retaliating against plaintiff because she brought this lawsuit).[1]

Injunctive relief is also appropriate where a regulatory agency revokes a certification without cause. In Cabo Distributing Co., Inc. and Black Death USA v. Brady, 821 F. Supp. 582, 594 (N.D. Cal. 1992), Plaintiffs were a corporation that owned the rights to a vodka brand name and the corporation that imported and distributed the vodka. The United States Department of the Treasury, the Bureau of Alcohol, Tobacco and Firearms (BATF), granted approval of Plaintiff's proposed "Black Death Vodka" label carrying the image of a skull wearing a top hot. However, the BATF subsequently revoked its approval after the Plaintiffs began promoting the vodka label and brand name and soliciting celebrity endorsements. The Plaintiffs filed a claim against the BATF and other defendants alleging that they violated the corporations' rights under the Administrative Procedures Act

---

[1] Courts will also enjoin contracting parties from terminating an agreement where it is done to effectuate anticompetitive practices. See Milsen v. Southland Corp., 454 F.2d 363, 366 (7th Cir. 1971) ("Many courts have held that defendants who are or may be guilty of anticompetitive practices should not be permitted to terminate franchises, leases or sales contracts when such terminations would effectuate those practices"); Germon v. Times Mirror Co., 520 F.2d 786, 788 (9th Cir. 1975) ("A termination might be enjoinable even if done pursuant to contract, if the contractual clause relied upon were being used to foster an unlawful anticompetitive scheme.")

PLAINTIFF O'KEEFFE'S, INC.'S EX PARTE APPLICATION FOR TRO AGAINST UNDERWRITERS LABORATORIES, INC.

6

Case No. 07 cv-03535 JF PVT

{00114325-1}

(APA) and the United States Constitution by revoking the label certificate without cause. The court found that it was likely that the Plaintiffs would succeed on the merits of their claims for arbitrary and capricious actions and their due process claims, and had thereby satisfied the first element of their claim for preliminary injunctive relief. The BATF's articulated reasons for revoking the label were: (1) the label would lead consumers to falsely believe that the vodka was inherently dangerous; and (2) by mocking the dangers of alcohol, consumers would be misled into believing that alcohol is not dangerous. The court stated that the first reason lacked rational basis and was plainly absurd. Id. at 597. Indeed, the two reasons offered by the BATF conflicted with each other. A label which dissuades people from trying the vodka for fear that it is poisonous cannot simultaneously seduce the same people to try it by purposely diminishing the possible dangerous effects of alcohol, the court reasoned. Id. The court declared that the second reason advanced by the BATF for its decision, that consumers will ignore inherent dangers of alcohol, was not relevant to the BATF's purpose, and that the BATF had overstepped its bounds by engaging in regulation of marketing rather than labeling. Id. at 596.

In this case, UL similarly attempted to revoke its agreement to allow OKI to use the UL mark on its safety products. UL offered no explanation for its attempted revocation of OKI's UL mark other than OKI's refusal to dismiss this lawsuit. Revoking OKI's right to use the UL mark in retaliation for bringing a civil action is simply a continuation of UL's unfair business practices that prompted this lawsuit. Moreover, it constitutes state action, depriving OKI of a property right without due process.

The conduct of a private entity becomes state action where, as here, UL entity performs a public function (either de facto, or de jure) as a gatekeeper for enjoyment of a property right. As noted in the building codes attached to the Steel Declaration, Exhibit B, safety glazing must be "labeled" by an "approved Agency," which vouchsafes for the products compliance with code requirements. See Declaration of Kate Steel in Support of Plaintiff's Opposition to Underwriter's Laboratories Inc.'s Motion to Dismiss, ("Steel Decl."), Exh. B. That label is required by code for the

PLAINTIFF O'KEEFFE'S, INC.'S EX PARTE APPLICATION FOR TRO AGAINST UNDERWRITERS LABORATORIES, INC.

Case No. 07 cv-03535 JF PVT

7

{00114325-1}

product to be used in safety or fire rated applications. In <u>Rouse v. The Judges of the Circuit Court of Cook County</u>, 609 F. Supp 243 (N.D. Ill., 1985), the judiciary was assigned the task of "qualifying" candidates for the Cook County bench and the court looked to the Cook County Bar Association to rate those candidates. The *Rouse* court found that, as a practical matter, a judicial candidate could not be appointed without a qualified rating from the bar association. "Private parties who de facto perform governmental functions are acting under color of state law. <u>Id.</u>, at 246  Therefore, because the Cook County Bar Association's unqualified rating had the practical effect of disqualifying a candidate from a profession, (either on a <u>de</u> <u>facto</u> or <u>de jure</u> reference from the governmental body assigned the task of establishing that qualification), the rating of the Cook County Bar constituted actionable state action. <u>Id.</u>, at 247.

Again, the United States Supreme Court wrote in <u>NCAA v. Tarkanian</u>, 488 U.S. 179, 192, 109 S. Ct. 454, 462 (1988), in a state action case:

> … a private party has taken the decisive step that caused harm to the plaintiff. This may occur if the state delegates its authority to the private actor…[2]

Similarly, the uniform building codes require the approval of building materials by the government "authority having jurisdiction," subject to building code provisions. <u>See</u> Steel Decl., ¶¶ 3-4. The building codes delegate to "approved agencies," such as UL, the certification that building materials meet code requirements. Steel Decl., ¶¶ 3-4, 13.  UL is such an "approved agency," and the elimination of its certification makes the building materials improper for installation.  As the Cook County Bar Association qualified rating was a <u>sine qua non</u> for a job on the Cook County Bench, so the UL certification is essential for qualification as a building code approved product. Accordingly, arbitrary denial of that certification effectively constitutes a denial of due process.

---

[2] In *Tarkanian*, the Court found that Tarkanian's employer – the university of Nevada, Las Vegas – was free to reject the NCAA's recommendation to fire Tarkanian, so no state action was found.

PLAINTIFF O'KEEFFE'S, INC.'S EX PARTE APPLICATION FOR TRO AGAINST UNDERWRITERS LABORATORIES, INC.

Case No. 07 cv-03535 JF PVT

8

{00114325-1}

UL also breached its listing agreement with OKI by arbitrarily and capriciously cancelling it. California and Illinois law agree that every contract has a covenant of good faith and fair dealing preventing a party from acting arbitrarily and capriciously to deprive the other of its benefits. McCollum v. Xcare.net, Inc., 212 F. Supp 2d 1142, 1152 (N.D. Cal., 2002)("Every contract carries an implied-in-law covenant of good faith and fair dealing"); Foley v. Interactive Data Corp., 47 Cal. 3d 654 (1988); Foster Enterprises, Inc. v. Germania Federal Savings and Loan Assn., 97 Ill. App 3d 22, 28, 421 N.E. 2d 1375, 1380 (1981) ("[C]ovenant of fair dealing and good faith is implied into every contract absent express disavowal.")

There is no question that UL disqualified O'Keeffe's products arbitrarily and capriciously, in the exercise of state action. OKI will prevail on the merits of that due process and breach of contract claim.

2.  **OKI Will Suffer Irreparable Injury If the Temporary Restraining Order and Preliminary Injunction are Not Granted.**

The second element in the traditional test for granting a temporary restraining order is "the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted." White Mountain Apache Tribe v. Arizona, Dep't of Game & Fish, 649 F. 2d 1274, 1285 (9th Cir. 1981). Here, the second element is easily satisfied because not only is there a "possibility" of irreparable injury to OKI, but such injury will be immediate and unavoidable. In unfair competition cases, irreparable harm is presumed once a sufficient likelihood of success is raised. Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1190-1191 (CD Cal. 2002); Visions Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 (9th Cir. 1989). Even absent that presumption, it is clear that OKI will be irreparably harmed if the requested injunctive relief is denied. Absent such equitable relief, UL will succeed in its retaliation against OKI. Without the UL listing and mark OKI will not be asked or be able to bid on jobs which require a UL listing, and OKI will not be awarded bids which it would otherwise obtain, and its reputation for safety glazing will be destroyed.

In Cabo Distributing Co., Inc. and Black Death USA v. Brady, 821 F. Supp. 582, 594 (N.D. Cal. 1992), the court also held that Plaintiffs would likely suffer severe and irreparable injuries if the BATF decision to revoke the label approval was not enjoined because a prohibition on the vodka's

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

chosen brand name could slash the corporations' economic prospects. Id. at 599. The Court found that Plaintiff's would be irreparably harmed because there was a "very real possibility" that the loss of the right to sell vodka under the "Black Death" label would cause Plaintiffs to lose the benefit of all the consumer goodwill that has developed toward "Black Death Vodka." Id. The Court noted that Plaintiffs had invested over $1 million in promoting and marketing "Black Death Vodka." The court held that Plaintiffs had met both prongs of the test for preliminary injunctive relief and enjoined the BATF from revoking the certificates of label approval.

Similarly, here OKI will suffer severe and irreparable injuries if UL's decision to revoke its mark is not enjoined. In the past two years alone, OKI has paid UL over $53,000 for the mark, and has spent another $400,000 on advertising materials which feature the mark. OKI has approximately 2,000 pending quotes for safety listed products, and in excess of $4 million worth of work in progress for safety listed products. OKI will likely lose all of those potential bids and its pending jobs will be threatened if this termination becomes effective.

### 3. A Balance Of Hardships Favors OKI.

The third element in the "traditional test" of "a balance of hardships favoring the plaintiff" is also met. White Mountain Apache Tribe v. Arizona, Dep't of Game & Fish, 649 F.2d 1274, 1285(9th Cir. 1981) Enjoining UL from engaging in retaliatory acts against OKI, including canceling its UL listing and mark, would impose no hardship on UL. In fact, this injunction would allow UL to continue its ongoing business relationship with OKI and continue to receive compensation. But denying injunctive relief will cause irreparable to OKI, as discussed above.

### 4. Granting Injunctive Relief Advances Public Interest.

The final element of the traditional test is "advancement of the public interest" in cases where its applicable. Id. Here, granting the requested temporary restraining order and preliminary injunction favors the public interest. There is an underlying public interest in allowing the public to file civil lawsuits without the fear of reprisal. Moreover, the public interest is served by prohibiting business from engaging in unfair business practices.

### 5. OKI Has Also Satisfied the Alternative Test.

Under the alternative test, OKI has demonstrated a combination of probable success on the

PLAINTIFF O'KEEFFE'S, INC.'S EX PARTE APPLICATION FOR TRO AGAINST UNDERWRITERS LABORATORIES, INC.

Case No. 07 cv-03535 JF PVT

10

{00114325-1}

merits and the possibility of irreparable injury, and that serious questions are raised and the balance of hardships tips sharply in its favor. Under either test, the analysis "creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." <u>Southwest Voter Registration Ed. Project v. Shelley</u>, 344 F.3d 914, 918 (9th Cir. 2003). "The *critical element* in determining the test to be applied is the *relative hardship* to the parties. If the balance of harms tips *decidedly* toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." <u>State of Alaska ex rel. Yukon Flats School Dist. v. Native Village of Venetie</u>, 856 F.2d 1384, 1389 (9th Cir. 1988) (emphasis added). In this case, the public interest and the relative hardships weigh heavily in favor of OKI, which has also demonstrated the probability of its success on the merits.

## IV. CONCLUSION

This Court should not permit UL to unilaterally cancel OKI's UL mark in retaliation for filing this civil action against it. OKI has used UL as its listing agency for many years, and has relied on it. After filing this action against UL, UL threatened OKI with termination of its UL listing unless it dismissed this lawsuit. UL then followed through on its threat. The sole reason provided to OKI for the cancellation of its UL listing and mark was its refusal to dismiss this lawsuit. UL must be enjoined from retaliating against OKI because it filed this lawsuit. If injunctive relief is not granted, OKI will suffer immediate and irreparable injury .

Dated: January 11, 2008                    FREELAND COOPER & FOREMAN LLP


                                           By:    /s/ Daniel T. Bernhard
                                                  DANIEL T. BERNHARD
                                                  Attorneys for Plaintiff and Counter
                                                  defendant O'KEEFFE'S, INC.