1  MARK I. SCHICKMAN (CSB #62653)
   schickman@freelandlaw.com
2  DANIEL T. BERNHARD (CSB #104229)
   bernhard@freelandlaw.com
3  FREELAND COOPER & FOREMAN LLP
   150 Spear Street, Suite 1800
4  San Francisco, California 94105
   Telephone:    (415) 541-0200
5  Facsimile:    (415) 495-4332

6  Attorneys for Plaintiff, Counterdefendant and
   Counterclaimant O'KEEFFE'S, INC.

7

8                 UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12  O'KEEFFE'S, INC.,                    CASE NO.:  C 07-cv-03535 JF PVT

13                     Plaintiff,         **PLAINTIFF O'KEEFFE'S, INC.'S
                                          OPPOSITION TO UNDERWRITERS
14       v.                               LABORATORIES INC.'S MOTION
                                          TO DISMISS**
15  TECHNICAL GLASS PRODUCTS,
    ANEMOSTAT, and PILKINGTON PLC,        **DATE:    February 1, 2008
16                                        TIME:    9:00 a.m.
                       Defendants.        DEPT:    Courtroom 3, 5th Floor
17                                                 The Honorable Jeremy Fogel**

18  ───────────────────────────────
    AND RELATED COUNTERCLAIMS.
19

20

21

22

23

24

25

26

27

28

*(left margin, vertical text)* FREELAND COOPER & FOREMAN LLP   150 Spear Street, Suite 1800   San Francisco, California 94105

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS
LABORATORIES INC.'S, MOTION TO DISMISS
                                                    Case No. 07 cv-03535 JF PVT

{00114404-1}

## TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND ...................................................................2

     A.   This Lawsuit ..............................................................................2

     B.   Claims Against UL .....................................................................3

III. LEGAL ARGUMENT ............................................................................4

     A.   Summary of Argument ...............................................................4

     B.   This Court has Subject Matter Jurisdiction Over Claims Against UL ..................5

          1.   The Court should Exercise Its Supplemental Jurisdiction Over UL ..................5

          2.   Diversity Exists in this Action ..........................................7

     C.   Venue is Proper in this Court .....................................................7

          1.   The Forum Selection Clause Does Not Establish Venue ...........................8

          a.   The Clause is Neither Mandatory nor Exclusive ......................................8

          b.   Most of the Disputed Matters Are Outside the Listing Agreement ............9

          2.   Even if an Exclusive Forum Selection Clause Existed, Ancillary Venue Requires Litigation in this Court under these Facts.....................10

     D.   OKI Has Stated a Valid Claim under Section 17200 .........................................11

          1.   Principles of Notice Pleading and the Standards for a Rule 12(b)(6) Motion Require Denial of UL's Motion ..................................11

          2.   OKI has Adequately Pled its Section 17200 Claim ................................12

               a.   OKI has Adequately Pled that UL's Conduct is Unlawful . . . . . . . 14

               b.   UL's Conduct is "Unfair" Under 17200 . . . . . . . . . . . . . . . . . . . .14

               c.   UL's Conduct is "Fraudulent" Under the Definition of 17200 . . . . .16

     E.   OKI Has Stated a Valid Claim for Common Law Unfair Competition . . . . 16

     F.   UL's Actions and Conduct Constitute Breach of Contract and of the Covenant

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

---

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS
LABORATORIES INC.'S, MOTION TO DISMISS

i

Case No. 07 cv-03535 JF PVT

{00114404-1}

# TABLE OF CONTENTS

Page(s)

of Good Faith and Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 17

G.   UL, as a State Actor, Violated OKI's Due Process Rights . . . . . . . . . . . . . 17

H.   The Court Should Grant OKI Leave to Amend if Any Part of Its
Counterclaim is Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

IV   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

FREELAND COOPER & FOREMAN LLP

150 Spear Street, Suite 1800
San Francisco, California 94105

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Adickes v. Kress Co.*,

    398 U.S. 144 (1970) ..................................................................................19

*American Home Assurance Company v. TGL Container Lines, Ltd, et al.*,

    347 F. Supp. 2d 749 (N.D. Cal. 2004)........................................................11

*Balistreri v. Pacifica Police Department*,

    901 F.2d 696 (9th Cir. 1990) .....................................................................18

*Bly-Magee v. California*,

    236 F.3d 1014 (9th Cir. 2001) ...................................................................18

*City of New Orleans v. Municipal Administrative Services, Inc.*,

    376 F.3d 501 (5th Cir. 2004) .....................................................................10

*Danner v. Himmelfarb*,

    858 F.2d 515 (9th Cir. 1997) .......................................................................6

*Danner, et al. v. Himmelfarb, et. al*,

    858 F.2d 515 (9th Cir. 1988) .......................................................................7

*Docksider Ltd. v. Sea Technology, Ltd.*,

    875 F.2d 762 (9th Cir. 1989) .......................................................................9

*Dunning v. First Boston Corp.*,

    815 F.2d 1265 (9th Cir. 1987) ...................................................................12

*Erickson v. Pardus, ____U.S.____* ,

    127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)..............................................12

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,

    817 F.2d 75 (9th Cir. 1987) .........................................................................9

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,

    319 F. Supp. 2d 1059 (C.D. Cal. 2003)......................................................16

*One Beacon Insurance Company v. JNB Storage*,

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**TABLE OF AUTHORITIES**

**Page(s)**

312 F. Supp. 2d 824, 828-29 (E.D. Va. 2004) ................................................................ 11

*PAI Corp v. Integrated Science Solution, Inc.,*

2006 U.S. Dist. LEXIS 34838 (N.D. Cal. 2006).......................................................... 17

*Pelleport Investors, Inc. v. BudCo Quality Theatres, Inc.,*

741 F.2d 273 (9th Cir. 1984) ......................................................................................9

*Safe Air for Everyone v. Meyer,*

373 F.3d 1035 (9th Cir. 2004) ....................................................................................5

*Sea-Land Serv., Inc. v. Lozen International, LLC,*

285 F.3d 808 (9th Cir. 2002) ......................................................................................7

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,*

720 F. Supp. 805 (N.D. Cal. 1989) ......................................................................... 12

**STATE CASES**

*Athens Lodge Number 70 v. Wilson,*

117 Cal. App. 2d 322 (1953) ................................................................................... 16

*Bank of the West v. Superior Court,*

2 Cal. 4th 1254 (1992)............................................................................................ 16

*Bank of the West v. Superior Court,*

*2 Cal. 4th 254 (1992)*............................................................................................. 17

*Bondanza v. Peninsula Hospital and Medical Center, et al,*

23 Cal. 3d 260 (1979) ............................................................................................. 16

*Cel-Technology Communications, Inc. v. Los Angeles Cellular Telephone Co.,*

20 Cal. 4th 163 (1999)............................................................................................ 15

*McKell v. Wash. Mutual, Inc.,*

142 Cal. App. 4th 1456 (2006) .............................................................................. 16

*Paulus v. Bob Lynch Ford, Inc.,*

139 Cal. App. 4th 659 (2006) ................................................................................ 15

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**TABLE OF AUTHORITIES**

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**Page(s)**

*People ex rel. Bill Lockyer v. Fremont Life Insurance Co.,*
    104 Cal. App. 4th 508 (2002) ........................................................................ 16

*People ex rel. Van De Kamp v. Cappuccio,*
    204 Cal. App. 3d 750 (1988) ........................................................................ 14

*People v. Duz-Mor Diagnostic Laboratory, Inc.,*
    68 Cal. App. 4th 654 (1988) ........................................................................ 15

*People v. McKale,*
    25 Cal. 3d 626 (1979) ................................................................................ 14

*People v. Toomey,*
    157 Cal. App. 3d 1 (1984) ........................................................................... 16

*Podolsky v. First Healthcare Corp.,*
    50 Cal. App. 4th 632 (1996) ........................................................................ 17

*Saunders v. Superior Court,*
    27 Cal. App. 4th 832 (1994) ........................................................................ 16

*Smith v. State Farm Mutual Automobile Insurance Co.,*
    93 Cal. App. 4th 700 (2001) ........................................................................ 15

*Stop Youth Addiction v. Lucky Stores,*
    17 Cal. 4th 553 (1998) ................................................................................ 14

*United Fars Workers of America, AFL-CIO v. Dutra Farms,*
    83 Cal. App. 4th 1146 (2000) ...................................................................... 14

**FEDERAL STATUTES**

15 U.S.C. §§1121, et seq. ............................................................................... 2, 3, 7

28 U.S.C. § 1331 ........................................................................................... 2, 3

28 U.S.C. § 1338 ........................................................................................... 2, 3

28 U.S.C. § 1367 ........................................................................................ 2, 3, 6

Fed. R. Civ. P Rule 15(a) .................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## MISCELLANEOUS

13 Witkin, Summary of California Law § 106 (10ed. 2005) ......................................................14

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

## I.   INTRODUCTION

The heart of O'Keeffee's, Inc's (OKI) claims against third-party defendant Underwriters Laboratories ("UL") is UL's purposeful assistance to OKI's competitors in the fire safety glazing industry to commit unfair business practices and unfair competition against OKI, in derogation of UL's self-proclaimed public safety mission. As a practical matter, UL is the gatekeeper of the highly regulated fire safety glazing industry: glazing must bear UL's nationally known stamp of certification in order to be used by architects and contractors  and approved by authorities having jurisdiction over code enforcement. Absent the UL stamp, the products that OKI and its competitors make are not saleable. UL provides its essential stamp to the products of OKI's competitors, and does so for applications that are not authorized or approved.

UL tells the public, and this Court, that "[a] core aspect of UL's mission is to keep the public informed of safety issues." (Motion to Dismiss, at 4.)  UL has failed, and continues to fail, to meet this loudly asserted public mission, and has consistently rejected OKI's calls for it to do so.  UL is correct that it is the "benchmark" for building authorities and code enforcement experts in the glazing industry.  Even further, UL is the entity which is relied upon by code officials to certify that a product meets code requirements.

UL sidesteps this an essential issue in this action by mischaracterizing OKI's claims as merely "a business dispute among competitors."  To the contrary, OKI's dispute is with UL's unequally advantageous treatment of O'Keeffe's glazing industry competitors which creates market advantages and opportunities for them in the name of building code officials.

Co-defendant Technical Glass Products (TGP) initiated claims of unfair competition in this action, and UL is prepared to litigate those with TGP in this Court, which has jurisdiction over them. UL's conduct is an essential element of OKI's unfair competition claims, and OKI should be entitled to adjudicate them and obtain relief in this single forum.

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS
LABORATORIES INC.'S, MOTION TO DISMISS                                                                1
Case No. 07 cv-03535 JF PVT

{00114404-1}

## II.    FACTUAL BACKGROUND

### A.    This Lawsuit

This action began as OKI's single claim of patent infringement against defendantsTGP, Anemostat and Pilkington, PLC ("Pilkington") to remedy infringement of OKI's U.S. patent no. 7,090,906 for laminated architectural glazing (the "Patent").  On September 3, 2007, Anemostat filed an answer and counterclaims pertaining to the Patent for a declaration of patent rights.  On September 7, 2007, TGP filed an answer and also filed six counterclaims.

Three TGP counterclaims pertain to the Patent.  The remaining three TGP counterclaims, however, are unrelated to the Patent, and involve new legal theories and allegations, including the following:

1) Lanham Act violations based on purported trademark infringement (fifth counterclaim), and;

2)unlawful trade practices and false advertising  , including challenges to OKI's representations about the fire resistance and safety qualities and applications of SuperLite I-XL (sixth counterclaim).

TGP alleges, *inter alia,* that OKI has engaged in unfair competition by marketing and selling SuperLite I-XL using allegedly untrue representations and false labeling. (TGP Counterclaim, at ¶¶84-85, and 93.) TGP's sixth counterclaim is a "hybrid" that purports to be based on "unlawful trade practices" and rests on two legal theories in a single claim: the Lanham Act and California Business and Professions Code §§17200, et seq. (¶96.)  Jurisdiction for TGP's counterclaims is based on federal question and supplemental jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1338, 1367 and 15 U.S.C. 1121, among other things.

In response to these counterclaims, OKI filed an answer and six counterclaims: two counterclaims directed to TGP's purported trademarks; a third counterclaim for Lanham Act violations by TGP, a fourth  counterclaim for trade libel; a fifth counterclaim for unfair business practices related to OKI's SuperLite I-XL glazing product filed against TGP and UL; and a sixth counterclaim against those same parties for common law unfair competition.  Like TGP, OKI invoked the Court's jurisdiction  based on, *inter alia,* 28 U.S.C. §§1331, 1338, 1367 and 15 U.S.C. §1121.[1]

---

[1] In its answer to these counterclaims, TGP admitted these jurisdictional bases; indeed, TGP did not allege lack of subject matter jurisdiction as an affirmative defense to OKI's counterclaims.  (TGP Counterclaim, ¶ 2)

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

B.    **Claims Against UL**

The allegations in OKI's two counterclaims against UL complain of a classic example of unfair business practices: UL both performs the testing of products <u>and</u> issues the required listings based on those tests, among other acts. A UL listing is mandatory in order to have product approved for many glazing applications.  For the glazing products industry, and for code officials, UL is effectively the major accredited certifying agency for glazing products in the United States.  (OKI Counterclaim, ¶¶ 19-20.)  Absent a UL listing, many uses and applications are closed to OKI or other manufacturers. A glazing manufacturer's economic viability largely depends on the listing that UL alone can supply.[2]

The allegations supporting OKI's claims against UL are both detailed and specific.  UL represents to the public, and to code enforcement officials and other authorities having jurisdiction, that UL tests and lists products in conformance with recognized codes and standards to ensure public safety.  (OKI's Counterclaim, ¶¶19 and 20.)  As UL admits repeatedly throughout its motion, UL's "core mission" is public safety.  However, UL has repeatedly given its formal approval and safety markings to TGP  products (as well as the glazing products from other makers such as defendant Pilkington) that do not meet code for the uses and applications, nor safety concerns.  Those are acts of unfair competition; they permit competitors a powerful market advantage.  (Steel Declaration, ¶¶ 14-16.)  As alleged in OKI's Counterclaim:

- UL lists TGP products in applications that prevent radiant transfer of heat which may spread fire from one side of the glazing to the other, even though the listed TGP products do not do so (¶ 21);

- UL gives its listing to wired glass for use in fire doors and sidelights, even though it does not meet Consumer Product Safety Counsel human impact standards (¶ 23(a));

- UL lists TGP's product FireLite for 60 minute and 90 minute applications, even though FireLite allows radiant heat transfers which a 60 or 90 minute product may not allow (¶23(e));

---

[2] UL played this "trump" card in the current action; UL terminated its Listing Agreement with OKI – for no cause -- shortly after UL was served with this lawsuit.  UL has "punished" OKI for daring to demand that UL abide by its own mission statement and permit OKI to compete on a level playing field.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

- UL gives TGP's 20 minute FireGlass a rating of "OH-20 – certifying that the glazing will survive a "hose stream" test – even though the glazing does not survive a hose stream, while UL refuses to give OKI's comparable SuperLite1 product the "OH-20" rating (¶23(g)); and

- Without a UL listing and certification, most fire safety glazing products are not saleable and have no value in that market (¶¶ 19-20.)

The effect of these listings of TGP products for applications that are not approved by authorities having jurisdiction, is to have such products "certified" for use in applications for which they are demonstrably unsafe.  For example, radiant heat poses a serious and  recognized danger to public safety, but UL permits glazing products in applications that expose the public to radiant heat dangers, instead of protecting the public from such risks.  (Steel Decl. at ¶ 15.)

UL's motion to dismiss misfocuses its argument on a lawsuit it mischaracterizes as about "patents and trademarks."  UL ignores completely the Lanham Act claims asserted by both UL and OKI, which are interrelated with the state law claims also pled by both parties.   In its attack on O'Keeffe's complaint UL misstates: "TGP answered OKI's complaint and counterclaimed that OKI is infringing its FIREFRAMES trademark by using the term SAFETIFIRE FRAMES.   OKI then significantly escalated this litigation by asserting that TGP was misrepresenting product information to the public …" (UL's Motion, at 3)  Not true.  TGP first raised that claim, and OKI's responses were made only after TGP had transformed OKI's lawsuit about a single claim for patent infringement into a broad unfair competition case.

It is fatal for UL to admit that OKI brought UL into this action in response to TGP's complaints of false advertising and Lanham Act violations, and unfair competition. The Lanham Act provides the jurisdictional basis that UL disputes and, hence, UL ignores it entirely in its motion to dismiss, creating instead a "straw man" about patents and trademarks unrelated to UL.

## III.    LEGAL ARGUMENT

### A.    Summary of Argument

OKI's two counterclaims against UL are not subject to dismissal on the grounds of lack of subject matter jurisdiction, venue  or failure to state a claim for relief.  The claims against UL are

1  brought in this Court because identical claims by another party are already pending here. This Court

2  has exercised its supplemental jurisdiction over unfair competition claims that are interrelated with

3  federal question claims brought by OKI and defendant TGP under the Lanham Act. The fair and

4  efficient adjudication of all of these claims requires that they be litigated in this one forum, and this

5  Court should exercise its supplemental jurisdiction over these claims. Venue is proper in this Court

6  under the doctrine of ancillary venue, and no contractual term overrides proper venue in this Court.

7        Finally, OKI has stated claims for unfair competition against UL under the common law and

8  as codified by statue.  Moreover, as the "approved agency" to inform code officials whether glazing

9  meets code requests for approval, UL's wrongful conduct is actionable "state action," UL has

10  manipulated its official position and created a market that favors some, and disadvantages OKI.  By

11  listing products for applications that are not authorized for such uses, UL causes direct competitive

12  damage to OKI, which is closed out of those markets.

13        **B.    This Court has Subject Matter Jurisdiction Over Claims Against UL**

Formatted: Bullets and Numbering

14        UL's 12(b)(1) motion is a so-called "facial" attack on OKI's pleading, and is based exclusively

15  on the allegations in OKI's claims.  UL has not offered evidence in connection with its 12(b)(1) attack,

16  and therefore the Court must consider OKI's allegations as true, and make all inferences in its favor.

17  See, *Safe Air for Everyone v. Meyer,* 373 F. 3d 1035, 1039 (9th Cir. 2004).

18        1.   The Court should Exercise Its Supplemental Jurisdiction Over UL

19        The Court has jurisdiction over these claims based on principles of supplemental and ancillary

20  jurisdiction.  The Lanham Act – which UL ignores throughout is motion – is the federal question that

21  is the tip-off about what is fatally defective in UL's argument against jurisdiction.

22        In response to TGP's Lanham Act and California Business and Professions Code §17200

23  claims, OKI asserted its own counterclaims against TGP, including a claim for violation of the

24  Lanham Act, and a Sixth Counterclaim for violation of § 17200.  These counterclaims was

25  compulsory pursuant to Fed. R. Civ. Pro. Rule 13(a), in that it arose out of the "same transaction or

26  occurrence" that was the subject matter of TGP's sixth counterclaim against OKI. OKI was obligated

27  to plead its claim against TGP which was based on the same product and the same sort of disputed

28  conduct.   Similar evidence about OKI's SuperLite products, its qualities and applicability will be

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    required to adjudicate the counterclaims by TGP and OKI;  the issues of fact and law are largely the

2    same, and thus OKI's failure to allege the claim put OKI at risk of being later barred as a compulsory

3    counterclaim.    See,  *Pochino v. Prudential Ins. Co.*  827 Fed.2d 1246, 1249 (9th Cir. 1987)

4    (counterclaim is compulsory where "the essential facts of the various claims are so logically

5    connected that individual economy and fairness require all issues to be resolved in a single lawsuit").

6        The Court has supplemental jurisdiction over the § 17200 counterclaims brought by TGP and

7    by OKI, and should exercise that jurisdiction.  The parties' §17200 claims are based on the same facts,

8    including the same product and parties and issues, as each party's federal claims under the Lanham

9    Act.  The federal and state law claims involve the same "case or controversy"  required by 28 U.S.C.

10    § 1367, and arise from a common nucleus of operative facts.  Accordingly, based on the doctrine of

11    supplemental jurisdiction, it is well-established that the district court may adjudicate a state law claim

12    that is transactionally related to a federal claim such as the Lanham Act.  *Danner v. Himmelfarb* 858

13    F.2d 515, 522 (9th Cir. 1997).

14        UL is a proper and necessary party to OKI's counterclaims against TGP. TGP's glazing

15    products are only available in the marketplace because of UL's listing; absent that, TGP would not be

16    able to sell products for applications that are not approved by codes and by various authorities having

17    jurisdiction. UL's conduct is an essential and fundamental component of the unfair competition

18    against which OKI continues to struggle, and the losses it continues to suffer.

19        Even if OKI's §17200 claim against UL were not compulsory,  this Court still has jurisdiction

20    over UL based on the interrelatedness of the §17200 claim with Lanham Act claim, and the federal

21    question jurisdiction the Lanham Act establishes, under the Court's ancillary jurisdiction.  Even a

22    permissive counterclaim does not require a separate jurisdictional basis if it shares a "common nucleus

23    of operative facts" with claims over which the Court already has jurisdiction.  *Sea-Land Serv., Inc. v.*

24    *Lozen Int'l, LLC,* 285 F.3d 808 (9th Cir. 2002).

25        OKI is entitled to join a  party, like UL here,  needed for the fair, just and efficient adjudication

26    of its counterclaim, as specified by Fed. R. Civ. Pro. 13 (h).  OKI thus joined UL, which was properly

27    served with process and has now appeared. Consequently, UL's argument that "OKI has not alleged

28    that UL had anything to do with the granting of the patents and trademarks at issue" is simply a non

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS                                6
LABORATORIES INC.'S, MOTION TO DISMISS
                                                           Case No. 07 cv-03535 JF PVT
{00114404-1}

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  sequitor and is irrelevant to OKI's counterclaims.   The federal jurisdictional basis for OKI's

2  counterclaim is the Lanham Act, 15 U.S.C. §§1121, et seq., which permits the court to exercise its

3  supplemental jurisdiction over "cases and controversies," including state law claims like §17200

4  which are completely inter-related.

5       The Court should exercise supplemental jurisdiction  over UL and OKI's state law claims, to

6  achieve the well-established policies of judicial economy and efficient litigation and resolution of

7  disputes.  The Ninth Circuit has specifically noted that, where the court "already has jurisdiction over

8  the main claim between the plaintiff and defendants, convenience, economy and fairness dictate that it

9  should be able to resolve all other claims arising out of the same transaction or occurrence …"

10 *Danner, et al. v. Himmelfarb, et. al,* 858 F. 2d 515 (9th Cir. 1988)(citations omitted).

11      The same facts, issues and evidence must be litigated as to TGP and UL on OKI's sixth

12 counterclaim; these should all be adjudicated in a single forum.  UL wants, instead, to require OKI to

13 litigate the same claims and evidence in two forums: this Court and in Cook County, Illinois,

14 burdening two Courts with identical claims and creating the risk of inconsistent adjudication -- --

15 precisely the outcome that the Ninth Circuit rejects under the  supplemental jurisdiction doctrine .  *Id.*

16          2.     Diversity Exists in this Action

17      In the event that the Court declines to exercise supplemental jurisdiction over these claims and

18 parties, diversity jurisdiction exists.  Although not pled in the existing counterclaims, there is no

19 serious dispute that complete diversity exists between OKI – a California company  and the sole

20 California resident in this action --and the defendants, including UL.   TPG alleges that it is a

21 Washington corporation (TGP Counterclaim, at ¶1.)  UL has submitted  a Listing Agreement  that

22 identifies UL as a " Delaware corporation" located in Northbrook, Illinois. (Rego Decl., Ex. A)

23 Accordingly, absent a federal question jurisdictional basis, OKI respectfully requests an opportunity

24 to amend its counterclaims to plead diversity jurisdiction, which the pleadings show exists.

25     **C.     Venue is Proper in this Court**                                    [Formatted: Bullets and Numbering]

26      UL's second argument is that these counterclaims should be dismissed pursuant to Rule

27 12(b)(3), because venue in this Court is improper.  OKI's burden in opposing UL's 12(b)(3) motion is

28 limited. Once OKI makes a prima facie showing of proper venue, then UL's motion must be denied.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS                          7
LABORATORIES INC.'S, MOTION TO DISMISS
                                                        Case No. 07 cv-03535 JF PVT
{00114404-1}

1   <u>Murphy v. Schneider National, Inc.</u>, 362 F 3d 1133, 1138 (9th Cir. 2004).

2       UL argues that a purported forum selection clause contained in UL's 2005 form Listing

3   Agreement vests shall have jurisdiction over claims against UL under the Listing Agreement in state

4   and federal courts located in Cook County, Illinois.  (Rego Decl., Ex. A)  However, as discussed

5   below, the forum selection clause does not establish mandatory venue  in Cook County, and  -- even

6   as a preliminary matter -- does not preclude the parties from litigating these disputes in this Court.

7   Moreover, the matters subject to the forum selection clause are limited to disputes pertaining to

8   matters involved in OKI's Listing Agreement with UL.  The chief disputes between OKI and UL

9   alleged in the counterclaims do not involve matters covered by OKI's listing; they pertain instead to

10  UL's listing and treatment of products manufactured by <u>others</u> in the fire and safety glazing industry

11  (including TGP), which result in competitive injury and immediate hazards to an unsuspecting public.

12      1.    <u>The Forum Selection Clause Does Not Establish Venue</u>

13          a.    The Clause is Neither Mandatory nor Exclusive

14  The forum selection clause that UL relies on provides, in its entirety, as follows:

15      **"11.0  Governing Law.**  This Agreement shall be governed by the laws
16      of the State of Illinois, USA without reference to its choice of law
        principles.  Any action related to the Agreement shall be filed in the
17      federal or state court having jurisdiction in Cook County, Illinois, USA.
        The parties consent to the exercise of personal jurisdiction of that court
18      and shall bear any costs, legal fees and expenses incurred in transferring
        actions filed elsewhere."

19      The first and third sentences of this provision do not pertain to subject matter jurisdiction in

20  any way.  Only the second sentence addresses the issue of jurisdiction, and it is silent on the matter of

21  venue.  Nothing in this forum selection clause specifically sets venue in any location or court, and

22  certainly does not mandate that venue be in Illinois.

23      It is well established in the Ninth Circuit that forum selection clauses may be either

24  "permissive" or "mandatory" based on the specific language used.  See, e.g. *Hunt Wesson Foods, Inc.*

25  *v. Supreme Oil Co.,* 817 F. 2d 75, 78 (9th Cir. 1987). The established rule in the Ninth Circuit is that

26  "where venue is specified with mandatory language the clause will be enforced . . . [W]hen only

27  jurisdiction is specified the clause will generally not be enforced without some further language

28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  indicating the parties' intent to make jurisdiction exclusive." *Docksider Ltd. v. Sea Technology, Ltd.*

2  875 F.2d 762, 764 (9th Cir. 1989).  See, also, *Hunt Wesson Foods , Inc. v. Supreme Oil Co. supra*, at

3  77 ("in cases in which forum selection clauses have been held to require litigation in a particular court,

4  the language of the clauses clearly required <u>exclusive</u> jurisdiction.").

5       UL's forum selection clause is a classic example of a "permissive" clause; it fails to even

6  mention venue, and it reflects no intention whatsoever by the parties that Cook County should be the

7  <u>exclusive</u> or sole venue for litigation.  In short, UL's clause is just like the example used in *Docksider:*

8  it specifies only jurisdiction, not venue, and has no "further language indicating the parties' intent to

9  make jurisdiction exclusive."  *Docksider Ltd., v. Sea Technology, Ltd., supra, at, 764.*  Those cases

10 holding that a forum selection clause mandates litigation in a specific court are based on express

11 language establishing the clear and exclusive jurisdiction of the selected court.  For example, the

12 Ninth Circuit has recognized court selection language as mandatory and exclusive when it provides

13 that "this Agreement shall be litigated only in the Superior Court for Los Angeles (and in no other)."

14 *Pelleport Investors, Inc. v. BudCo Quality Theatres, Inc.* 741 F.2d 273, 275 (9th Cir. 1984).

15      The language of the clause here is not exclusive, but is merely permissive.  It is nearly

16 identical, indeed, to that noted by the Ninth Circuit, "the court of California County of Orange, shall

17 have jurisdiction over the parties in any action of law relating to the subject matter or the

18 interpretation of this contract.")  See, *Hunt, supra,* at 76.  See, also, *City of New Orleans v. Municipal*

19 *Administrative Services, Inc.* 376 F.3d 501, 504 (5th Cir. 2004) ("This agreement shall be construed

20 and enforceable according to the law of the State of New York and the parties submit to the

21 jurisdiction of the Court of New York.").

22       b.    Most of the Disputed Matters Are Outside the Listing Agreement

23      Forum selection clauses are subject to the same rules of interpretation governing all contracts.

24 *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F 2d 509, 514-15 (9th Cir., 1988). The listing

25 agreement submitted by UL as part of its Motion pertains to testing, analysis and listing of OKI's

26 products and related activities.  (Rego Decl., Ex. A.)  For this reason, UL is at pains to characterize

27 OKI's claims as a dispute with its engineers over "testing procedures."  But UL ignores completely

28 that a centerpiece of OKI's claim is UL's preferential treatment of TGP and others.  Those claims do

---

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS                                                    9
LABORATORIES INC.'S, MOTION TO DISMISS

                                                                                    Case No. 07 cv-03535 JF PVT

{00114404-1}

1  not implicate UL's testing of OKI's products, but rather UL's mis-listing and promotion of products

2  by, and which unfairly advantage, OKI's competitors in the marketplace.

3      OKI's claims for unfair competition relate to UL's treatment of the glazing industry, not OKI

4  exclusively.  As alleged in the counterclaims, UL, among other things, has listed glazing products for

5  uses and applications for which they are not safe, based on the applicable code requirements and

6  provisions. (See, Steel Declaration, ¶ 14-18.) These matters are unrelated to OKI's listing agreement,

7  and are relevant to all competitors and consumers. Accordingly, even if the forum selection clause is

8  valid, as to those matters that lie outside the Agreement venue in this Court is proper because they are

9  beyond the reach of  the OKI  Listing Agreement itself.

10      2.    Even if an Exclusive Forum Selection Clause Existed, Ancillary Venue
           Requires Litigation in this Court under these Facts

11

12      Regardless of the deficiencies of the forum selection clause in the UL listing agreement, a

13  separate and dispositive basis exists for venue in this court.  Under third party practice, the doctrine of

14  ancillary venue mandates that the claims and defenses in this action be litigated in this forum.

15      Venue is an issue over which the legislature has plenary control, and "it raises no

16  constitutional questions . . . [A]n impleader claim and subsequent Rule 14(a) claims should not have

17  to satisfy the provisions of venue statutes. " 3 Moore's Federal Practice, Civil § 14.42  It is established

18  that "the third party defendant may not object to its impleader on venue grounds." Id.

19      As discussed above, TGP's counterclaim for unfair competition under Business and

20  Professions Code § 17200 involves the same product (SuperLite I-XL) and the same issues and

21  alleged conduct under the same legal theory that underlie OKI's counterclaim for violation of § 17200

22  against TGP and UL.  OKI's counterclaim was accordingly compulsory as to TGP under Fed. R. Civ.

23  Proc. Rule 13(a)(1)(A), and OKI was further entitled to add UL as a third party to its 17200 claim.

24  For these reasons, the doctrine of ancillary venue controls, and makes this forum the appropriate place

25  to adjudicate all of the issues in this action.

26      A recent decision of this Northern District demonstrates the operation of ancillary venue in

27  this action.  In *American Home Assurance Company v. TGL Container Lines, Ltd, et al.* 347

28  F.Supp.2d 749 (N.D. Cal. 2004) the court stated:  "The theory of ancillary venue posits that if venue is

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

proper for the original action an independent basis of venue for third-party claims is not required. (citation omitted)" Id. at 764. *American Home* was an admiralty action, and thus controlled by Fed. Rule. Civ. Proc., Rule 14(c), and not Rule 14(a) for usual third-party practice. Although Rule 14(a) is not applicable to an admiralty action, the court noted that "a defendant impleaded under Federal Rule of Court Procedure 14(a) has no standing to raise the defense that venue in the original forum is improper." *Id.; see also One Beacon Insurance Company v. JNB Storage*, 312 F. Supp. 2d 824, 828-29 (E.D. Va. 2004).

### D.    OKI Has Stated a Valid Claim under Section 17200

UL's final ground to attack OKI's counterclaims is under Rule 12(b)(6) for an alleged failure to state any claim for relief under the unfair competition law in California as codified in Bus. and Prof. Code sections 17200 et seq.  UL's lengthy argument is a combination of the hyper-technical and the vague: UL focuses on obscure nuances of section 17200's various statutory provisions, while consistently ignoring the specific allegations of its conduct, including its issuance of defective listings which strike at its core "public safety" mission, and which unfairly advantages TGP and others.

#### 1. Principles of Notice Pleading and the Standards for a Rule 12(b)(6) Motion Require Denial of UL's Motion

OKI's counterclaims give UL a "short plain statement" of the claims alleged against UL and the relief sought; these give UL "fair notice of what [OKI's] claim is and the grounds upon which it rests." Fed. R. Civ. Proc. Rule 8(a)(2).  As alleged in its counterclaims, UL provides TGP and other competitors of OKI with safety and related listings that are essential to the ratings and designations required to use glazing products in various specified applications. (OKI's Counterclaim, ¶ 23) Without UL's listings for their products, TGP and others in the glazing industry would be unable to sell any products requiring approval from the authorities having jurisdiction. In effect, without such listings, a manufacturer's glazing products become unsaleable. Among other things, such conduct by UL (and TGP) constitutes violations of section 17200, as described in detail in the counterclaims.

UL has failed to present any coherent basis for dismissing OKI's section 17200 claim, and thus UL's motion must be denied under Rule 12(b)(6). "A motion to dismiss for failure to state a claim must be denied unless it appears beyond doubt that plaintiff can prove no set of facts which would

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

entitle him to relief." *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,* 720 F. Supp 805, 807 (N.D. Cal. 1989).  All material allegations must be taken as true and construed in a light most favorable to OKI. *Id.*; see also *Dunning v. First Boston Corp.*, 815 F. 2d 1265, 1267 (9th Cir. 1987). "A complaint attacked by a rule 12(b)(6) motion to dismiss *does not need detailed factual allegations.*" Id. at 1964 (emphasis added) but only "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.  Thus, a 12(b)(6) motion to dismiss should be only granted when plaintiff fails to "nudge [ ] their claims across the line from conceivable to plausible." Id.

The Supreme Court made clear that its decision in *Twombly* was no departure from notice-pleading to fact-pleading in the federal courts. *See Erickson v. Pardus,* ____U.S.____ , 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007).  *Erickson* reaffirmed that under Rule 8 "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" 127 S.Ct. at 2200 (quoting *Twombly,* 127 S.Ct. at 1964).  Rule 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at p. 2200 (internal quotation marks omitted).  Here, O'Keeffe's has properly plead sufficient facts to state a claim to relief that is plausible, and thus is not subject to 12(b)(6) dismissal.

2.  OKI has Adequately Pled its Section 17200 Claim

OKI's claims against UL are based largely on UL's treatment of OKI's competitors, who have been given UL listings that do not comply with publicly stated code requirements and approved uses. The effect of such misconduct is twofold: First, it creates a skewed market in which UL bestows on "preferred" members of the glazing industry  valuable listings that make their products saleable, while those  like OKI that do not get listings are thereby disabled from selling products, which are otherwise identical.  Second,  it creates an immediate and persistent safety risk, jeopardizing tens of thousands of consumers nationwide who rely – mistakenly – on glazing products to provide a level of safety and protection that they in fact do not, despite their uses being "approved." OKI's claims  specify that the competitive unfairness of UL's conduct is grounded in UL's disregard of clear safety requirements and procedures, by knowingly permitting glazing product applications for non-approved uses. [3]

---

[3] E.g. OKI's Counterclaim, par. 22: "TGP has obtained from UL certain ratings, certifications and listings for Fire-Lite, which ratings, either expressly or impliedly, represent that it not only meets specific  standards referenced in the

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS LABORATORIES INC.'S, MOTION TO DISMISS

12

Case No. 07 cv-03535 JF PVT

{00114404-1}

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  UL's accusations that OKI is seeking "preferential" treatment or "better" test results are simply

2  untrue.  OKI wants UL to follow its own rules, to create a level playing field that all competitors are

3  entitled to and should expect.  OKI will not gain a competitive advantage as a result; OKI will simply

4  cease to suffer a continuing competitive disadvantage.

5  Section 17200 defines "unfair competition" as including "any unlawful, unfair or fraudulent

6  business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."[4]  A practice is

7  prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa."  *Cel-Tech Communications,*

8  *Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (1999) (citation omitted). The

9  coverage of the unfair competition law is "sweeping, embracing anything that can properly be called a

10 business practice and that at the same time is forbidden by law." *See Barquis v. Merchants Collection*

11 *Assn.,* 7 Cal.3d 94, 113 (1972). It governs "anti-competitive business practices" as well as injuries to

12 consumers, and has as a major purpose "the preservation of fair business competition." *Id.,* at 110.

13 That goal makes § 17200 uniquely suited to remedy UL's conduct here, which damages OKI as a

14 result of UL's persistent failure to follow its own safety mandate throughout the glazing industry.

15 UL's attempt to argue strict pleading standards for a §17200 claim ignores that actionable

16 conduct "cannot be mechanistically determined under the relatively rigid legal rules applicable to the

17 sustaining or overruling of a demurrer.  Rather, the determination is one question of fact, requiring

18 consideration and weighing of evidence from both sides before it can be resolved."  *McKell v.*

19 *Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1472 (2006) (citation omitted); *cf People v. McKale,*

20 25 Cal.3d 626, 635 (1979) (what constitutes unfair competition or unfair  business practices is a

---

listing, but that it also is acceptable for listed uses, including, without limitation, applications in , and adjacent to doors, UL states no limitations on accepted uses as part of the listing, or that special approval is required by the authority having jurisdiction, to alert the code enforcer and end-user that the product does not meet code requirements, and may pose an unreasonable risk to life safety due to dangerous transmissions of radiant heat. Absent the UL listing and related certifications, TGP's FireLite would not … be useable in many of the applications that it is now used in …."

[4]  As originally enacted the statutory definition referred only to an "unlawful, unfair or fraudulent business *practice.*"  In 1992, section 17200 was substantially broadened by redefining unfair competition to include any "unlawful, unfair or fraudulent business *act or practice.*"  Under the current statute, even a single act of unfair competition may create liability. See, *Stop Youth Addiction v. Lucky Stores,* 17 Cal. 4th 553, 570 (1998); *United Fars Workers of America, AFL-CIO v. Dutra Farms,* 83 Cal. App. 4th 1146, 1163 (2000).

1  question of fact; the essential test is whether the public is likely to be deceived). Proof of a violation

2  of section 17200 does not require an intent to injure. *People ex rel. Van De Kamp v. Cappuccio,* 204

3  Cal. App. 3d 750, 761 (1988).

4         a.    OKI has Adequately Pled that UL's Conduct is Unlawful

5         Section 17200 proscribes "any unlawful" business practice by "borrowing" violations of other

6  laws and treating them as unlawful practices that the unfair competition law makes independently

7  actionable. *See, Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*  Cal.4th 163,

8  180 (1999). An "unlawful" business activity "includes anything that can properly be called a business

9  practice and that at the same time is forbidden by law.  Virtually any law--federal, state or local--can

10  serve as a predicate for an action under § 17200." *Smith v. State Farm Mutual Automobile Ins. Co.*, 93

11  Cal. App. 4th 700, 717-718 (2001) (citations omitted); *see also People v. Duz-Mor Diagnostic*

12  *Laboratory, Inc.*, 68 Cal. App. 4th 654, 658 (1988) ( "A business practice constitutes unfair

13  competition if it is forbidden by any law, 'be it civil or criminal, federal, state, or municipal, statutory,

14  regulatory, or court-made.'"

15         b.    UL's Conduct is "Unfair" Under 17200

16         The scope of conduct covered by § 17200 is purposefully very broad.  "The statutory language

17  referring to 'any unlawful, unfair or fraudulent' practice makes clear that a practice may be deemed

18  unfair even if not specifically proscribed by some other law."  13 Witkin, Summary of California Law

19  § 106 (10ed. 2005); *see also Paulus v. Bob Lynch Ford, Inc.* 139 Cal. App. 4th 659 (2006).

20         The test of whether a business practice is unfair "involves an examination of [that practice's]

21  impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged

22  wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of

23  the harm to the alleged victim . An "unfair" business practice occurs when that practice "offends an

24  established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or

25  substantially injurious to consumers." *Smith v. State Farm Mutual Automobile Ins. Co., supra,* 93

26  Cal.App.4th at pp. 718-719 ; *Ticconi v. Blue Shield of California Life & Health Ins. Co.,* 2007 Cal.

27  App. Lexis 1991, *13 (2007).

28         UL suggests, without authority, that is it should not be subject to OKI's 17200 claim because it

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

is not a "direct competitor" with OKI, but is merely a "non-profit testing" service. First, this argument ignores the plain language of the statute, which applies to "[a]ny person who engages in" acts of unfair competition. Section 17203. UL's status does not determine its liability, and not for profit organizations are not automatically immunized from claims of unfair competition, including claims under 17200. See, generally, *Bondanza v. Peninsula Hospital and Medical Center,* et al, 23 Cal. 3d 260 (1979); and see, *Athens Lodge No. 70 v. Wilson,* 117 Cal. App 2d 322, 325 (1953). UL's suggestion that it can have no liability under 17200 because it is not a "direct competitor " with OKI in the glazing industry similarly ignores the breadth of protection afforded by 17200, as well as case law.[5] UL's conduct constitutes unfair competition by, *inter alia,* aiding and abetting the unfair competition of TGP and others in the glazing industry that are permitted listing for non-approved uses of their products. *People v. Toomey,* 157 Cal. App 3d 1, 20-21 (1984); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, *supra*, 1076-79 (C.D. Cal. 2003) (Court rejected argument that a party must be a direct competitor or member of the general public to assert a claim under the UCL.)[6]

    c.    UL's Conduct is "Fraudulent" Under the Definition of 17200

UL's conduct and actions also constitute fraudulent conduct under the UCL: by listing products for applications for which those products are not authorized or approved by applicable code provisions, the public generally is likely to be deceived and mislead.  The term "fraudulent" used in the UCL does not refer to the common law tort of fraud; it requires only a sowing that members of the public "are likely to be deceived." *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992).

---

[5] *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal. 4th 163, 180, involved an action between direct *competitors.* See, *National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 319 F. Supp 2d 1059, 1075, (C.D. Cal. 2003) ("The test enunciated in *Cel-Tech,* however, applies only to cases between direct competitors.")  "The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *McKell v. Wash. Mut., Inc.,* 142 Cal. App. 4th 1456, 1459 (2006).

[6] The UCL is sufficiently broad, in fact, that a plaintiff suing under it need not even prove that it was directly harmed by the defendant's business practices. Section 17204 authorizes an action  by any "person, corporation or association or by any person acting for the interests of itself, its members or the general public." *Saunders v. Superior Court,* 27 Cal. App 4th 832, 839 (1994).

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    The fraud prong of section 17200 "bears little resemblance to common law fraud or deception."

2    *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,* 104 Cal. App. 4th 508, 516 (2002) (citation

3    omitted).  "A violation can be shown even if no one was actually deceived, relied upon the fraudulent

4    practice, or sustained any damage. Instead, it is only necessary to show that members of the public are

5    likely to be deceived."  *Podolsky v. First Healthcare Corp.,* 50 Cal. App. 4th 632, 647-648 (1996).

6    Accordingly, UL's conduct is actionable under the UCL merely if there is a likelihood of deception,

7    regardless whether any one was actually deceived, relied upon the conduct, or sustained any damage.

8        Allegations of non-fraudulent conduct, which is the essence of OKI's claim against UL,  need

9    only satisfy the ordinary notice pleading standards of Rule 8(a).  <u>Id.</u> at 1105.  "Fraud can be averred

10   by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word

11   "fraud" is not used).  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-1104, (2000). OKI is not

12   required to plead fraud with the particularity required by Fed. R. Civ. Pro. Rule 9(b), and its claim

13   under the "fraudulent prong" of §17200 is adequately pled.  Once again, UL overstates its authorities

14   and its argument, arguing that Rule 9(b)'s heightened pleading requirements must be satisfied.  Such

15   heightened standards only apply to "averments" of fraud supporting a claim, rather than to the claim

16   as a whole, where plaintiff alleges some fraudulent and some non-fraudulent conduct.  *Id.*  Thus,

17   under *Vess,*  only if OKI expressly alleged fraud would portions of its claim be subject to heightened

18   pleading requirements under Rule 9(b).

19   **E.**   <u>**OKI Has Stated a Valid Claim for Common Law Unfair Competition**</u>

20        OKI has stated a claim under the common law tort of unfair competition, an equitable remedy

21   designed to remedy competitive injury.  *Bank of the West v. Superior Court, 2  Cal 4th 254, 259*

22   *(1992).*  OKI has alleged competitive injury caused by UL's unfair practices in listing products of

23   OKI's competitors for unauthorized applications in the fire and safety glazing industry.  Although

24   OKI's products are comparable, OKI is barred from the same markets for such applications because

25   UL refuses to list OKI's products. UL should not open fire and safety glazing markets to any

26   manufacturer by listing products for applications that are not authorized.

27        Again, UL's misstates and miscites its purported authorities. For example, *PAI Corp v.*

28   *Integrated Science Solution, Inc.,* 2006 U.S. Dist. LEXIS 34838 (N.D. Cal. 2006) does not hold, as

FREELAND COOPER & FOREMAN LLP

150 Spear Street, Suite 1800

San Francisco, California 94105

UL argues, that common law unfair competition "concerns only" pirating other's products or "palming off." In fact, the Court specifically noted the "broad reach of California [unfair competition] law." Although §17200 was eventually devised, in part, to add additional remedies to specifically protect consumers who did not suffer any competitive injury, OKI here is a direct competitor with TGP and others in the glazing industry, and UL's actions cause OKI direct harm.

### F.    UL's Actions and Conduct Constitute Breach of Contract and of the Covenant of Good Faith and Fair Dealing

UL has also breached its listing agreement with OKI by arbitrarily and capriciously purporting to cancel it. Every contract has a covenant of good faith and fair dealing preventing a party from acting arbitrarily and capriciously to deprive the other of its benefits. *McCollum v. Xcare.net, Inc.,* 212 F. Supp 2d 1142, 1152 (N.D. Cal., 2002)("Every contract carries an implied-in-law covenant of good faith and fair dealing."); *Foley v. Interactive DataCorp.* 47 Cal. 3d 654 (1988). See also, *Foster Enterprises, Inc. v. Germania Federal Savings and Loan Assn.,* 97 Ill. App 3d 22, 28, 421 N.E. 2d 1375, 1380 (1981) ("Covenant of good faith and fair dealing implied into every contract absent express disavowal.") Terminating a contract because the other party has exercised the legal right to sue certainly constitutes bad faith and unfair dealing . That is precisely the misconduct that UL has committed here.

### G.    UL, as a State Actor, Violated OKI's Due Process Rights

UL controls the fire glazing market in another and even more significant manner: it determines what products can be offered to the fire and safety glazing market. UL actually writes its own test standards, thereby setting the performance requirements for products. UL also tests, certifies and then lists products, making it the only entity in the fire glazing industry that performs all four discrete functions. From product creation to sale, then, UL determines the fire glazing products that get sold and used. Although such comprehensive regulation and control over a basic safety matter is typically the province of a public body or agency, UL has assumed the role commonly associated with governmental action.

UL effectively functions like a state or governmental entity. *Adickes v. Kress Co.*, 398 U.S. 144, 169-171 (1970); *National Coalition Government of the union of Burma v. Unocal, Inc.*, 176

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

F.R.D. 329, 345 (C.D. Cal, 1997)( Private party acts under color of state law when acts together with state officials ) ; *Sutton v. Providence St. Joseph Medical Center,* 192 F. 3d 826, 842 (9th Cir. 1999)(Acts of a heavily regulated industry with something of a monopoly more likely to be found to be a state actor.)    Private parties such as UL, who de facto perform governmental functions by controlling public officials or acting as their agents, are acting under color of state law.

UL's conduct of a private entity becomes state action where, as here, the UL entity performs a public function (either de facto, or de jure) as a gatekeeper for enjoyment of a property right.  As noted in the building codes attached to the Steel Declaration, Exhibit B,  safety glazing must be "labeled" by an "approved Agency," which vouchsafes for the product's compliance with code requirements.  That label is required by code for the product to be used in safety or fire rated applications. Thus, it engages in state action.

In *Rouse v. The Judges of the Circuit Court of Cook County*, 609 F. Supp 243 (N.D. Ill., 1985), the judiciary was assigned the task of "qualifying" candidates for the Cook County bench and the court looked to the Cook County Bar Association to rate those candidates.  The *Rouse* court found that, as a practical matter, a judicial candidate could not be appointed without a qualified rating from the bar association.  "Private parties who *de facto* perform governmental functions are acting under color of state law. *Id*., at 246  Therefore, because the Cook County Bar Association's unqualified rating had the practical effect of disqualifying a candidate from a profession, (either on a de facto or de jure reference from the governmental body assigned the task of establishing that qualification), the rating of the Cook County Bar constituted actionable state action. *Id*., at 247.

Again, as the United States Supreme Court wrote in *NCAA v. Tarkanian,* 488 U.S. 179, 192, 109 S. Ct. 454, 462 (1988), in a state action case:

"… a private party has taken the decisive step that caused harm to the plaintiff. This may occur if the state delegates its authority to the private actor…"[7]

Similarly, the uniform building codes require the approval of building materials by the

[7] In *Tarkanian*, the Court found that Tarkanian's employer – the University of Nevada, Las Vegas – was free to reject the NCAA's recommendation to fire Tarkanian, so no state action was found.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

government "authority having jurisdiction," subject to building code provisions. Declaration of Kate Steel in Support of Plaintiff's Opposition to Underwriter's Laboratories Inc.'s Motion to Dismiss, ("Steel Decl.") ¶¶ 3-4. The building codes delegate to "approved agencies," such as UL, the certification that building materials meet code requirements. Steel Decl., ¶¶ 3-4, 13. UL is such an "approved agency," and the elimination of its certification makes the building materials improper for installation. Just as the Cook County Bar Association qualified rating was a sine qua non for a seat on the Cook County Bench, so the UL certification is essential for qualification as a building code approved product. Accordingly, arbitrary denial of that certification effectively constitutes a denial of due process.

In the same fashion, UL has become, through both code and custom, the de facto and de jure standard for fire glazing in the United States, and while such a basic safety function would presumably be controlled by a state agency, it is controlled, instead, by UL.[8] In this case, UL similarly attempted to revoke its agreement to allow OKI to use the UL mark on its safety products. UL offered no explanation for its attempted revocation of OKI's UL mark other than OKI's refusal to dismiss this lawsuit. Revoking OKI's right to use the UL mark in retaliation for bringing a civil action is simply a continuation of UL's pattern of unfair business practices that prompted this lawsuit and, moreover, it violates public policy.

**H.    The Court Should Grant OKI Leave to Amend if Any Part of Its Counterclaim is Dismissed**

In the event that the Court grants any part of UL's motion to dismiss, and thereby dismisses any part of OKI's action against UL, OKI requests that the Court grant it leave to amend its pleading. Fed. R. Civ. P Rule 15(a) states that leave to amend "shall be freely given when justice so requires." This rule is reflected in the established policy in the Ninth Circuit that leave to amend is commonly granted where the facts demonstrate that a valid claim for relief could be stated in plaintiff's pleading.

---

[8] The standards that UL writes (and then tests for, certifies and finally lists) are part of the structure of building codes that are applied by local government and other governmental code enforcement officials. For example, the International Building Code ("IBC") commonly refers to and specifies various fire glazing standards in terms of UL written standards; the IBC typically requires performances or tolerances that "shall meet UL standards." Steel Declaration, ¶ 4.

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS                            19
LABORATORIES INC.'S, MOTION TO DISMISS
                                                                  Case No. 07 cv-03535 JF PVT

{00114404-1}

1  Se, e.g., *Allen v. City of Beverly Hills*, 911 F 2d 367, 373 (9th Cir. 1990).

2       Accordingly, if any part of OKI's counterclaim against UL is dismissed, O'Keeffe's should be

3  granted leave to amend. "Leave to amend should be granted if it appears at all possible that the

4  plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990);

5  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (when dismissing for failure to comply

6  with Rule 9(b) "leave to amend should be granted unless the district court determines that the pleading

7  could not  possibly be cured by the allegation of other facts"). Such leave to amend includes

8  amendment to remedy jurisdictional allegations that may be defective. See, *Telluride Management*

9  *Solutions, Inc. v. Telluride Investment Group,* 55 F 3d 463, 466 (9th Cir. 1995).

10

11              **IV     CONCLUSION**

12       Before UL's Appearance herein, the issue of the anti-competitive effect of labeling

13  irregularities was raised by TGP; it makes no sense to resolve that issue( as it relates to all parties) any

14  place but in this one Court  Jurisdiction exists, and venue is proper.

15       While there was never any doubt that a valid claim exists against UL, UL clarified that issue

16  by its extortionate, retaliatory, arbitrary and unlawful "blackball" of O'Keeffe glazing in any regulated

17  building location – all because OKI dared to sue UL. If that is not an unfair business practice, in

18  breach of contract and violative of due process by an important governmentally "approved agency", it

19

20  is hard to imagine what is.  Therefore, Plaintiff respectfully requests that UL's motion be denied in its

21  entirety.

22

23

24  Dated:  January 11, 2008         FREELAND COOPER & FOREMAN LLP

25

26            By:      /s/  Daniel T. Bernhard

27                 DANIEL T. BERNHARD
               Attorneys for Plaintiff and Counter

28                 defendant O'KEEFFE'S, INC.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

PLAINTIFF O'KEEFFE'S, INC.'S OPPOSITION TO UNDERWRITERS
LABORATORIES INC.'S, MOTION TO DISMISS         20
                 Case No. 07 cv-03535 JF PVT

{00114404-1}

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105