Kimball R. Anderson (Admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone:    312-558-5600
Facsimile:    312-558-5700
Email: kanderson@winston.com

Daniel F. Bailey (SBN 205888)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5894
Telephone:    415-591-1000
Facsimile:    415-591-1400
Email: dbailey@winston.com

Attorneys for Third-Party Defendant
UNDERWRITERS LABORATORIES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE BRANCH

| | |
|---|---|
| O'KEEFFE'S, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>TECHNICAL GLASS PRODUCTS;<br>ANEMOSTAT; and PILKINGTON PLC,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 07-cv-3535 JF<br><br>**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S, INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:  February 1, 2008<br>Time:  9:00 a.m.<br>Place:  Courtroom 3, 5th Floor<br>The Honorable Jeremy Fogel |

---

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. OKI Faces a Higher Level of Scrutiny Because it Seeks a Mandatory Injunction ................................................................................................................... 2

    B. OKI Has Not Shown a Likelihood of Success on the Merits ....................................... 3

        1. OKI Cannot Prove that UL Breached the Agreement ..................................... 3

        2. OKI Has Little Chance of Success on its Unfair Competition Claims ............. 4

            a. OKI has alleged no unlawful conduct ................................................. 4

            b. UL has not engaged in unfair business conduct .................................. 4

                Code Development and UL's Safety Testing ....................................... 5

                Fire Safety Glazing and Relevant Standards ....................................... 7

                OKI's Objections to UL's Methods Are Subjective and Misleading ............................................................................................ 8

            c. UL has not committed fraud ............................................................... 11

    C. OKI Has Failed to Show Irreparable Injury ............................................................... 12

    D. Reviving the Contract Will Not Return the Status Quo ............................................. 13

    E. UL is Not a State Actor .............................................................................................. 14

III. CONCLUSION .................................................................................................................... 14

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

i

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*
  260 F.Supp.2d 941 (2003) ....................................................................................................4

*Allen v. Ghoulish Gallery*
  06-371, 2007 WL 4207923, S.D. Cal. (2007) ....................................................................12

*Arcamuzi v. Continental Air Lines, Inc.*
  819 F.2d 935 (1987)..............................................................................................................2

*Assoc'd General Contractors of Cal. v. Coal. For Economics Equity*
  950 F.2d 1401 (1991)............................................................................................................4

*Caplan v. Fellheimer Eichen Braverman & Kaskey*
  68 F.3d 828 (1995)..............................................................................................................13

*Churchill Village, LLC v. General Electric Co.*
  169 F.Supp.2d 1119 (2000) ..................................................................................................4

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*
  349 F.3d 376 (2003)..............................................................................................................4

*Dahl v. HEM Pharms. Corp.*
  7 F.3d 1399 (1993)................................................................................................................4

*Dotster, Inc. v. Internet Corp.*
  296 F.Supp.2d 1159 (2003) ................................................................................................12

*Gon v. First State Insurance Co.*
  871 F.2d 863 (1989)..............................................................................................................3

*GoTo.com, Inc. v. The Walt Disney Co.*
  202 F.3d 1199 (2000)..........................................................................................................13

*Green River Bottling Co. v. Green River Corp.*
  997 F.2d 359 (1993)..............................................................................................................4

*Haskell v. Time, Inc.*
  965 F.Supp. 1398 (1997) ....................................................................................................12

*MMJK, Inc. v. Ultimate BlackJack Tour LLC*
  513 F. Supp. 2d 1150 (2007) ................................................................................................2

*Kendall-Jackson Winery, Ltd. v. Branson*
  82 F.Supp.2d 844 (2000) ....................................................................................................13

*Los Angeles Mem'l Coliseum Commission v. National Football League*
  634 F.2d 1197 (1980)..........................................................................................................12

*Lozano v. AT&T Wireless Services, Inc.*
  504 F.3d 718 (2007)..............................................................................................................4

ii

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

*Martin v. International Olympic Committee*
    740 F.2d 670 (1984) .................................................................................................... 3

*Mazurek v. Armstrong*
    520 U.S. 968 (1997) ..................................................................................................... 2

*NRDC, Inc. v. United States EPA*
    966 F.2d 1292 (1992) ................................................................................................. 13

*Orson, Inc. v. Miramax Film Corp.*
    836 F.Supp. 309 (1993) ............................................................................................. 14

*In re Pomona Valley Medical Group, Inc.*
    476 F.3d 665 (2007) ............................................................................................. 4, 12

*Roe v. Anderson*
    134 F.3d 1400 (1998) .................................................................................................. 2

*Roland Machine Co. v. Dresser Industrial, Inc.*
    749 F.2d 380 (1984) .................................................................................................. 13

*Rouse v. Judges*
    609 F.Supp. 243 (1985) ............................................................................................. 14

*Sampson v. Murray*
    415 U.S. 61 (1974) ..................................................................................................... 12

*Stanley v. University of S. Calif.*
    13 F.3d 1313 (1994) .................................................................................................... 3

*Sw. Voter Registration Education Project v. Shelley*
    344 F.3d 914 (2003) .................................................................................................... 2

## STATE CASES

*Abrams v. St. John's Hospital & Health Ctr.*
    25 Cal.App.4th 628 (1994) ....................................................................................... 13

*Buckland v. Threshold Enterprises, Ltd.*
    155 Cal.App.4th 798 (2007) ..................................................................................... 11

*Castro v. Los Angeles County Board of Supervisors*
    232 Cal.App.3d 1432 (1991) ........................................................................... 9, 10, 11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.*
    20 Ca. 4th 163, 185 (1999) ............................................................................. 5, *passim*

*Klein v. Earth Elements, Inc.*
    59 Cal.App.4th 965 (1997) ......................................................................................... 5

*Pastoria v. Nationwide Insurance*
    112 Cal.App.4th 1490 (2003) ...................................................................................... 3

iii

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

# I. INTRODUCTION

O'Keeffe's, Inc. ("OKI") seeks the extraordinary remedy of a preliminary injunction (1) based on claims that it did not plead; (2) under a contract that does not require cause for termination; (3) against a highly respected not-for-profit public safety organization that does not actually compete with OKI but yet stands accused of unfair competition for applying neutral testing standards accepted in California and across the nation; (4) in a venue that is improper; and (5) in a Court that lacks jurisdiction to hear the claims that OKI actually pleaded. Any one of these defects is sufficient, standing alone, to justify denial of the Motion. Taken together, they are an indictment of the abject weakness of OKI's claim against Underwriters Laboratories, Inc. ("UL"). Quite simply, these charges against UL are baseless, and the Motion should be denied outright.

It is elemental that a party cannot seek an injunction based on conduct that is not alleged in the party's complaint. Here, OKI chose not to plead a breach of contract or retaliation claim against UL. Because of this omission, the Court cannot grant the relief sought.[1] But even if the Court were to overlook this fatal flaw, OKI has little likelihood of success on the merits, for two main reasons. First, the Subscription Agreement OKI signed with UL allows for either party to terminate the Agreement upon thirty days' notice ***without cause***. A claim of "retaliation" cannot coexist with a provision that allows termination without cause.

Second, there is no unfair competition here. UL has treated OKI just like it treats every other Subscriber: fairly, evenly, and with the paramount goal of safety always foremost. OKI complains that UL's testing methods are obsolete and that UL has not applied its standards fairly, but as explained below, the converse is true. It is OKI that seeks to gain an unfair advantage by trying to coerce UL to lower its standards so that OKI's products can meet minimum safety standards that have been adopted or endorsed by national, well-respected independent safety organizations and numerous States.

Even if the Court somehow found a strong likelihood of success, reinstating the agreement is

---

[1] See UL's Opposition to Plaintiff O'Keeffe's, Inc.'s Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (the "Initial Opposition"), at 4-5.

1

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

1  not a viable option. The Agreement requires cooperation and trust on multiple levels between the
2  parties. As such, an injunction ordering UL to reinstate the cancelled agreement would require the
3  Court to referee multiple ancillary issues that would undoubtedly arise, especially given the litigious
4  nature of OKI. In these situations, courts have long recognized that a preliminary injunction should
5  not issue in the face of such challenges.

6  Finally, for the reasons stated in UL's Motion to Dismiss and its reply brief in support of that
7  Motion, this Court lacks jurisdiction over the subject matter of OKI's claim and, in any event, venue
8  is improper in this District.

## II. ARGUMENT

Due to the weakness of its case, OKI has not met any of the requirements for a preliminary injunction. A preliminary injunction "is an extraordinary and drastic remedy" that "is not to be routinely granted." (*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *MMJK, Inc. v. Ultimate Blackjack Tour LLC*, 513 F. Supp. 2d 1150, 1152 (N.D. Cal. 2007).) It is appropriate only where a plaintiff demonstrates either "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [its] favor." (*Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003).)

The degree of irreparable harm needed to justify preliminary relief increases as the probability of success decreases. (*Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998).) Further, a court "must also consider whether the public interest favors issuance of the injunction." (*Sw. Voter Registration*, 344 F.3d at 917.) But under "any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury." (*Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987).) In this case, OKI cannot carry its burden with respect to any portion of the test. OKI's motion for a preliminary injunction should be denied.

### A.  OKI Faces a Higher Level of Scrutiny Because it Seeks a Mandatory Injunction

Although the bar is already high for all preliminary injunction demands, it is higher still when a party seeks a mandatory injunction—*i.e.*, a court order requiring another party to take any action. (*Stanley v. Univ. of S. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994).) Mandatory injunctions,

2

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

which are disfavored, are "subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." (*Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).)

Here, OKI seeks to compel UL to perform an expired contract. Such an injunction, which requires action, is a mandatory injunction. *Churchill Vill., LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000).) As a result, the Court "should be extremely cautious about issuing a preliminary injunction." (*Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).)

### B. OKI Has Not Shown a Likelihood of Success on the Merits

OKI's claim falls far short of the showing needed to satisfy the likelihood of success requirement before a preliminary injunction can issue. With respect to OKI's "breach of contract" claim, success is highly unlikely for two reasons: first, OKI has not pleaded a breach of contract claim, and second, UL had the contractual right to terminate the contract without cause.

Nor can OKI show a likelihood of success on its unfair competition claims. As UL explained in its Motion to Dismiss, California courts interpret Section 17200 as supporting three separate types of unfair competition: (1) unlawful; (2) unfair; or (3) fraudulent. (*Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (Cal. Ct. App. 2003).) Because UL's testing and certification actions are grounded in a deliberative, consensus process that is recognized nationwide, OKI has little chance of showing that UL's conduct was unlawful, unfair, or fraudulent under Section 17200 or the common law.

#### 1. OKI Cannot Prove that UL Breached the Agreement

OKI cannot show that it has a likelihood of success in proving that UL breached the contract. First, and most significantly, OKI did not plead a breach of contract or retaliation claim. An injunction is "an order that is directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief *sought by a complaint* in more than temporary fashion." (*Gon v. First State Ins. Co.*, 871 F.2d 863, 865 (9th Cir. 1989) (emphasis added).) OKI chose not to plead a breach of contract claim, and no injunction can issue based on this new theory. (*See id.*)

Second, UL ended the contract pursuant to a 30-day termination provision that does not

3

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

require cause.² The covenant of good faith cannot override the express terms of such a provision. (*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395-96 (7th Cir. 2003) (under Illinois law, duty of good faith and fair dealing does not override the clear right to terminate contract at will).) Finally, there was no retaliation by UL. As set forth in the Declaration of Kimball R. Anderson, UL notified OKI of the termination provision during a confidential settlement discussion, but did not threaten retaliation. (Jan. 25, 2008 Declaration of Kimball R. Anderson.)

Where the moving party has no chance of success on the merits—as here—the motion for preliminary injunction must be denied. (*See Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359, 361 (7th Cir. 1993) ("If it is plain that the party seeking the preliminary injunction has no case on the merits, the injunction should be refused regardless of the balance of harms."); *see also Assoc'd Gen. Contractors of Cal. v. Coal. For Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991).)

**2. OKI Has Little Chance of Success on its Unfair Competition Claims**

**a. OKI has alleged no unlawful conduct.**

OKI alleges that UL has engaged in unlawful business practices by violating federal and state laws and regulations. (Third-Party Complaint ¶ 49(a).) A claim of "unlawful" practices under § 17200 must identify a separate law that has been violated. (*In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 674 (9th Cir. 2007).) Further, the violation of an actual law, not merely a contract, is required. (*Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003).) Because OKI has not alleged a single federal, state, or local law that UL has violated, OKI has failed to show a likelihood of success on the merits for this claim.

**b. UL has not engaged in unfair business conduct.**

As UL explained in its Motion to Dismiss, California law governing claims of unfair practices is "in flux."³ (*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007).) In short, a claim of unfair business practices must be either "tethered" to a legislatively-declared policy or be subject to a balancing test that weighs the impact of the practice or act on its victim against the "reasons, justifications and motives" of the alleged wrongdoer. (*Cel-Tech Commc'ns,*

---

² For additional argument on this issue see Initial Opposition pages five and six.
³ For further argument on this issue, see UL's Motion to Dismiss page eleven.

4

THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION

*Inc. v. Los Angeles Cellular Tel.*, 20 Ca. 4th 163, 185 (1999); *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (Cal. Ct. App. 1997).)

OKI cannot demonstrate a likelihood of success under either formulation for unfair practices. *Cel-Tech* explained that, under the "tethering" test, unfairness requires "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech*, 20 Cal. 4th at 186-87.) OKI has not pointed to any law or legislatively declared policy that UL has violated. To the contrary, as shown below, UL's business practices are grounded in the same standards that have been adopted by safety officials nationwide, including in California. A practice that has been adopted by California officials can hardly be in violation of California law. (Declaration of Matthew E. Schumann ¶¶ 8-10.)

OKI likewise fails to demonstrate a likelihood of success on its claim of unfair practices under the balancing test. The impact of UL's practices on OKI is substantially outweighed by UL's "reasons, justifications and motives," which are based in sound scientific methodology and consensus decision-making. As set forth in the Declaration of Matthew E. Schumann, UL has developed standards for testing and certification through a collaborative process of which OKI was fully aware and participated in, and UL will not bend the rules so that OKI can try to sell more of its products. (*Id.* ¶¶ 11-17, 46.)

**Code Development and UL's Safety Testing**

A brief explanation of product performance safety standards and UL's methods shows that UL is not engaged in unfair business practices. In the United States, the promulgation and enforcement of rules governing minimum safety standards for buildings and their component parts is the responsibility of governments at various levels—typically, a local building department or code-enforcement agency. These entities retain the ultimate responsibility for approving and enforcing relevant safety codes, and UL has absolutely no authority to enact or enforce building codes. In promulgating building codes, many local authorities rely upon model codes and standards that are developed and revised by various safety and industry groups. Most prominent among these is the International Building Code ("IBC") promulgated by the International Code Consortium ("ICC").

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

5

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

Other relevant organizations include the American Society for Testing and Materials ("ASTM"), the National Fire Protection Association ("NFPA"), and the American National Standards Institute ("ANSI"), among others. (*Id.* ¶¶ 8-9.)

In the United States, almost every state has adopted, with minor amendments, the provisions of the IBC. This includes California. With respect to the promulgation of minimum fire-safety standards for products or buildings, the IBC is consistent with, and takes into account, the standards promulgated by the NFPA. And although UL is not a code-generating entity, it has a voice in the development of safety testing and rating standards worldwide. (*Id.* ¶ 10.)

UL has developed over 1000 "Standards for Safety" applicable to, among other things, fire safety testing. In developing its Standards, UL is aware of, and takes into account, the views of numerous participants in the field relevant to the Standard under consideration. More specifically, UL organizes and is a member of certain committees that develop and revise particular Standards. These committees, each of which is known as a "Standards Technical Panel," include representatives from manufacturers, insurers, other safety testing organizations, building contractors, code enforcement and other government officials, fire marshals, and members of academia. (*Id.* ¶¶ 11-13.)

The purpose of a Standards Technical Panel is to evaluate and develop product performance safety testing standards for relevant products and the minimum level of safety that those products must meet to be Certified and/or Listed by UL. A Panel's ultimate acceptance of a new Standard, or decision to revise an existing Standard, is governed by majority vote. Although UL often has one or more members on a given Standards Technical Panel, UL is typically limited to one vote. Final action by a Panel, therefore, represents the consensus view of the Panel members and is not dictated or controlled by UL. Indeed, many UL Standards have been adopted as "National Standards" by ANSI through a collaborative process. (*Id.* ¶¶ 14-17.)

UL is one of 18 "Nationally Recognized Testing Laboratories" noted by the Occupational Safety and Health Administration. In this capacity, UL tests products for safety only upon the request of manufacturers, known as "Subscribers," who have entered into a Subscription Agreement with UL. If a product passes UL's neutral testing regimes, the Subscriber is granted a license to use

6

THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION

1  UL's trademark in accordance with the terms of the Subscription Agreement. Similarly, Warnock-
2  Hersey is another nationally recognized testing laboratory in the United States. Products that meet
3  Warnock-Hersey standards can be licensed to carry the "WHI" mark. Although UL does not
4  recognize certain uses of the Warnock-Hersey mark, because of UL's concerns regarding Warnock-
5  Hersey's procedures for ensuring continuing compliance with safety standards, UL has invited
6  representatives from Warnock-Hersey to serve on its Standards Technical Panels. (*Id.* ¶¶ 18-20.)

7        UL approval for a manufacturer or other entity to market a product as being certified or listed
8  by UL does not constitute a permit or other legal authority for any entity to use that product in an
9  architectural building. To the contrary, UL specifically states publicly that the "installation of
10 glazing materials is intended to be in accordance with the local building code as determined by the
11 Authority Having Jurisdiction. Authorities Having Jurisdiction should be consulted before
12 installation." (*Id.* ¶ 21.) This warning is prominently listed on what UL terms a "guide card" that
13 precedes the listing of individual manufacturers as UL approved. In the print versions of UL's
14 listing, the guide card physically precedes the manufacturers listing. In the online version cited in
15 this paragraph, there is a prominent hyperlinked URL that directs the reader to UL's relevant guide
16 card. (*Id.* ¶¶ 21.)

17 **Fire Safety Glazing and Relevant Standards**

18       UL tests and certifies two broad classes of glazing: (1) fire-protection-rated glazing; and (2)
19 fire-resistant-rated glazing. Fire-protection-rated glazing is typically used in so-called "protective
20 openings" in buildings, including doorways and windows, that are intended to slow or stop the
21 spread of fire. Fire-protection-rated glazing is engineered to limit the creation of holes, breakage,
22 and separation of glazing as a result of a fire. In contrast, fire-resistant-rated glazing is used where
23 glazing takes the place of drywall, masonry, or similar materials in forming a transparent but fire-
24 resistant barrier wall. (*Id.* ¶¶ 22-23.)

25       As part of its core public-safety mission, UL tests both fire-protection-rated and fire-
26 resistant-rated glazing in accordance with the relevant UL Standards, each of which has been
27 developed and adopted by consensus through Standards Technical Panels and has been adopted as a
28 national standard by ANSI. These Standards require the use of several devices and procedures to

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

test the ability of glazing and other components to resist breaking down under the stresses of fire. Among these tests are the "fire resistance" and "hose stream" tests, which are designed to test the ability of glazing to resist flaming and the creation of holes, breakage, and separation of glazing from the window frame. (*Id.* ¶¶ 24-29.)

The hose stream test is an integral part of this safety testing regime. The cooling, impact, and erosion effects of the hose stream test help to evaluate the integrity of the material being tested. Put another way, the hose stream test not only measures the ability of glazing to withstand thermal shock, but also tests the strength and durability of the material being tested through the systematic application of pressurized water. (Schumann Dec. ¶¶ 29-33.)

Because of the usefulness and validity of the hose stream test, it continues to be required under numerous local building codes and under IBC § 715. For example, the 2007 California Building Code, which is based on the IBC, adopted without amendment the provisions of IBC § 715.5, which requires inclusion of the hose stream test for the testing of fire-protection-rated glazing in fire-protection rated window assemblies in accordance with NFPA 257. Indeed, the continuing validity of the hose stream test has been confirmed by the retention of the test in the consensus standards of UL, NFPA, ANSI, ASTM, and by the inclusion of the test in the IBC. These autonomous, highly experienced, and safety-minded organizations have independently reviewed the hose stream test and concluded that the value of the test compels its retention as a testing standard. (*Id.* ¶¶ 29-34.)

### OKI's Objections to UL's Methods Are Subjective and Misleading

OKI lodges numerous meritless complaints regarding UL's testing procedures and certification methods. Most importantly, OKI objects to the hose stream test as obsolete and unfair to OKI's products. OKI contends that UL has wrongfully refused to rate certain of OKI's products because they cannot pass the hose stream test, which OKI describes as "largely a relic of outdated testing procedures that fail to account for modern materials, designs and application." (Third-Party Complaint ¶ 13.) OKI admits, however, that the hose stream test is universally required within the United States, and in fact, the hose stream test is required in California. (*E.g.* 2006 Int'l Building Code, adopted as 2007 Cal. Building Code 715.4.3.2.)

8

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

OKI's allegations reflect an ignorance of UL's processes. As stated above, UL's testing standards are developed through a consensus process that involves numerous entities involved in issues related to fire safety. OKI has, on several occasions, petitioned the various consensus bodies to eliminate the hose stream test, without success. But based on the deliberative and democratic process of UL's Standards Technical Panel 10, which includes both a representative of Warnock-Hersey and an agent of OKI, Garrett Tom (Schumann Dec. ¶ 34), UL continues to retain the hose stream test as an integral part of its testing Standards for fire glazing products. This decision represents the considered judgment of the Standards Technical Panel and is based on the expertise and credibility of the members of this consensus group, not on a subjective desire to harm OKI. Further, Warnock-Hersey, through its presence on the Standards Technical Panel, has never proposed that the hose stream test be eliminated from UL's Standards. (Schumann Dec. ¶ 34.) To the extent OKI complains of the presence of the hose stream test in building codes, that issue does not concern UL, which does not promulgate building codes. UL cannot be held liable in a private action for the content of codes for which it is not responsible. (*Castro v. Los Angeles County Bd. of Supervisors*, 232 Cal. App. 3d 1432 (1991) (§ 17200 claim will not stand where law permits or mandates practice).)

As is clear from the foregoing, OKI cannot show a likelihood of success on its claims that UL is engaged in unfair competition under the balancing test. UL has sound scientific reasons for retaining the hose stream test, and its judgment is shared by a broad consensus of the fire safety community. OKI may have a difference of opinion regarding the hose stream test, but it is hardly unfair competition for UL to adhere to the consensus standard.

OKI's other allegations are similarly flawed. For example, OKI alleges that the safety glazing impact performance standard of the CPSC exceeds that found in ANSI Z97.1. This allegation, to the extent it is directed at UL, is misleading, because UL does not perform impact safety testing. Such testing is performed by the manufacturers themselves, who must self-certify the compliance of their product with applicable standards. (Schumann Dec. ¶ 36.)

OKI also alleges that the standards found in NFPA 251 and ASTM E119 do not require the hose stream test for fire rated construction of less than one hour. This is technically true, but

misleading, because it fails to make clear that the standards referred to relate to wall components, not window assemblies. Further, UL263 is equivalent to NFPA 251 and ASTM E119 and, like those two standards, does not require a hose stream test for wall assemblies fire rated to less than one hour. Moreover, it is demonstrably false that no fire-rated glass manufacturer has demonstrated that any product can withstand the hose stream test from 20 feet away. (*Id.* ¶ 37.)

OKI's allegations regarding "radiant heat" are a red herring. There are no existing consensus standards for radiant heat transmission, nor does any local building code specify standards for radiant heat. As a result, UL does not test for radiant heat. In fact, OKI has sought a consensus standard for several years, but the various consensus groups have concluded that such a standard is unnecessary. OKI's statements regarding radiant heat, therefore, reflect only OKI's opinion and marketing strategy and do not represent a consensus standard. (*Id.* ¶ 38.)

Similarly, OKI alleges that UL lists wired glass for use in fire doors and sidelights, even though those uses are allegedly no longer permitted by code. This is also misleading. It is true that the IBC does not permit wired glass, but certain building codes in large cities still permit and, in fact, require the use of wired glass. (*Id.* ¶ 40.) UL still accepts testing requests for wired glass because its use is required in some jurisdictions. UL does not govern the end use of products and expresses no opinions whether one product is better or more suitable for a particular use than another, as that is the prerogative of the Authority Having Jurisdiction. Rather, UL tests products to ensure that they meet minimum safety standards for a product of that type. (*Id.* ¶¶ 40-41.)

OKI contends that UL's refusal to list SuperLite I-XL for more than 20-minute applications is insupportable, because UL lists wired glass and FireLite for uses not permitted by code. Although it is true that UL does not certify or list Super-Lite I-XL as safe for applications greater than 20 minutes, this is only because the product fails the hose stream test under UL's Standards. It is false that UL lists wired glass and FireLite for uses not permitted by code. UL certifies and lists these products in accordance with the results of tests conducted under UL's Standards. It is up to the Authority Having Jurisdiction to determine whether a product that meets UL's Standards will be permitted under the rules of the Authority. (*Id.* ¶ 42.)

Finally, OKI contends that UL has allowed its personnel to appear in marketing and

10

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

promotional videos of TGP, an OKI competitor, thereby impliedly endorsing TGP's products. Based on a review by Matthew Schumann of the videos on TGP's website, no UL employee speaks on these videos, the UL mark does not appear, and there is otherwise no reference to UL at all. As a result, there is no explicit or implied UL endorsement in the videos cited by OKI. (*Id.* ¶ 43.)

Further, to the extent that OKI alleges harm to the public from the alleged actions of UL, OKI does not have standing to pursue these claims. (*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 812-13 (2007); *see* Third-Party Complaint ¶¶ 23(a), 25.) Plaintiffs under § 17200 must have been injured in fact and lost money or property, and "only the California Attorney General and local public officials [are] authorized to file and prosecute actions on behalf of the general public." (*Id.* (quoting Prop. 64, § 1(b), (e), (f)).) Thus, OKI's allegations that UL has withheld safety information from the public with respect to the dangers of radiant heat and the shortcomings of wired glass as a fire protectant should not factor into this court's assessment of OKI's likelihood of success on the merits.

### c. UL has not committed fraud.

OKI alleges that UL has engaged in fraudulent business practices by mischaracterizing the quality of both OKI's and TGP's products. (Third-Party Complaint ¶ 49(c).) A claim of "fraud" under § 17200 must assert that "members of the public are likely to be deceived" by the defendant's conduct (*In re Pomona Valley Med. Group, Inc.*, 476 F.3d at 674), and this burden cannot be met through anecdotal evidence. (*Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997).)

The only representations that UL makes to the public is whether certain products have passed certain tests. UL makes no statements as to whether products are recommended for certain uses, and UL specifically states in its guide card that the Authority Having Jurisdiction must be consulted before the use of any product. Accordingly, OKI's allegations fall far short of demonstrating a likelihood of success in proving that UL's tests and listings are likely to mislead the public.

Finally, OKI's common law unfair competition claim fails for the simple reasons that OKI and UL are not in competition, and UL does not "palm off" any OKI products as its own. (*See Allen v. Ghoulish Gallery*, Slip Copy No. 06-371, 2007 WL 4207923, at *11 (S.D. Cal. Nov. 20, 2007).)

11

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

### C. OKI Has Failed to Show Irreparable Injury

Even if this Court finds that OKI has demonstrated a likelihood of success on the merits for any of its claims against UL, OKI has failed to show irreparable injury. For this independent reason, the motion for preliminary injunction should be denied.

First, OKI's injuries, if any, can be remedied through money damages. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (*Sampson v. Murray*, 415 U.S. 61, 90 (1974).) To the extent OKI contends it can sell more product with a UL mark, such sales should be easily quantifiable. (*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).)

Second, OKI's harm is self-inflicted and "does not qualify as irreparable." (*Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995).) Self-inflicted harm includes adverse consequences resulting from a contract between the parties. "If Plaintiffs entered a disadvantageous contract, they must suffer the consequences." (*Dotster, Inc. v. Internet Corp.*, 296 F. Supp. 2d 1159, 1163 (C.D. Cal. 2003).) Here, OKI chose to sign an agreement that contained a termination without cause provision. It ought to be held to the terms it negotiated.

Third, OKI can seek listings from other independent testing labs. Laboratories such as Warnock-Hersey, Southwest Research, and FM Approvals are also widely accepted and many manufacturers run successful businesses within the industry without any relationship whatsoever with UL. (Schumann Dec. fn. 1.)

For these reasons, OKI cannot show irreparable injury sufficient to justify a preliminary injunction.

### D. Reviving the Contract Will Not Return the Status Quo

OKI cannot show that the status quo will be preserved through a preliminary injunction. To the contrary, an injunction would alter the status quo by compelling UL effectively to abandon the termination without cause provision in the Agreement. OKI cites *GoTo.com, Inc. v. The Walt Disney Co.* for the proposition that "[t]he status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the ***last uncontested status*** which preceded the pending

12

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

controversy." (202 F.3d 1199, 1210 (9th Cir. 2000) (emphasis added).) But the last uncontested status before this Motion was filed was that the parties had agreed that the contract could be terminated without cause.

Reviving the Agreement would not return the status quo, because it would rewrite the Agreement. (*See Abrams v. St. John's Hosp. & Health Ctr.*, 25 Cal. App. 4th 628, 638 (1994); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 383 (7th Cir. 1984) (granting a preliminary injunction would alter the status quo because it would make "the dealership agreement no longer terminable by either party on 90 days' notice"); *Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 871 (N.D. Ill. 2000) ("where the contract is at-will in nature, termination without cause does not give rise to a violation of good faith rights because the terminating party was acting within its rights under the contract" and several states have found that the "retroactive imposition of a termination-only-for-cause requirement was an unconstitutional impairment of contract rights").) Because a court cannot rewrite valid contract language, OKI's status quo argument should be rejected.

Finally, the status quo cannot be regained because injunctive relief would require persistent oversight by the court. (*NRDC, Inc. v. United States EPA*, 966 F.2d 1292, 1300 (9th Cir. 1992).) If compliance with the proposed preliminary injunction would be difficult or impossible for the court to determine, the injunction should not issue. (*Orson, Inc. v. Miramax Film Corp.*, 836 F. Supp. 309, 313 (E.D. Pa. 1993).) Here, the Agreement is not simple and would require regular supervision by the Court. For this reason, the Court should not order the parties to do business together again.

E. **UL is Not a State Actor**

OKI contends that UL is a state actor. Again, this theory was not pleaded in OKI's Third-Party Complaint and should be ignored. But even if the Court chooses to address the argument, it fails on the merits. Private entities can only be state actors if they perform "exclusive public functions." (*Rouse v. Judges*, 609 F. Supp. 243, 246 (N.D. Ill. 1985).) UL does not perform exclusive public functions. Rather, it tests products for safety at the request of subscribers. Although there is a public dimension to what UL does, it is not exclusively so. OKI's argument should be rejected out of hand.

13
**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**

### III.  CONCLUSION

OKI's motion is procedurally defective; fails to demonstrate a likelihood of success on any of OKI's claims against UL; and fails to prove that irreparable injury to OKI will occur absent the court compelling UL to continue performing a complex and multi-faceted contract. UL respectfully requests that the Court deny OKI's motion for preliminary injunction.

Dated: January 25, 2008                    UNDERWRITERS LABORATORIES INC.


                                           By:  /s/
                                                Kimball R. Anderson
                                                Attorney for Third-Party Defendant
                                                UNDERWRITERS LABORATORIES INC.

14

**THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S SUPPLEMENTAL OPPOSITION TO O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**