Kimball R. Anderson (Admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601-9703
Telephone:    312-558-5600
Facsimile:    312-558-5700
Email:  kanderson@winston.com

Daniel F. Bailey (SBN 205888)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5894
Telephone:    415-591-1000
Facsimile:    415-591-1400
Email:  dbailey@winston.com

Attorneys for Third-Party Defendant
UNDERWRITERS LABORATORIES INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE BRANCH**

| | |
|---|---|
| O'KEEFFE'S, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>TECHNICAL GLASS PRODUCTS; ANEMOSTAT; and PILKINGTON PLC,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | **Case No. 07-3535 JF**<br><br>**DECLARATION OF MATTHEW E. SCHUMANN IN SUPPORT OF THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S OPPOSITION TO PLAINTIFF O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:  February 1, 2008<br>Time:  9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br>The Honorable Jeremy Fogel |

I, MATTHEW E. SCHUMANN, declare and state:

1. I am a Senior Project Engineer employed by Third-Party Defendant Underwriters Laboratories, Inc. ("UL").

2. UL is a not-for-profit, non-governmental organization formed in 1894 that scientifically investigates and tests thousands of types of products, materials, constructions, and systems to evaluate electric, fire and casualty hazards; burglar resistance; or ability to detect, control,

1

or limit fires. As an independent, technically expert organization without a financial interest in a product's profitability, UL is unbiased in determining whether a product meets recognized product safety standards. UL is not, however, a code-enforcement agency. Rather, UL helps end-users of UL-tested products confirm that the product has been tested and meets minimum safety standards.

3. I began my employment with UL on August 21, 2000. Before starting at UL, I received a Bachelor of Mechanical Engineering degree on December 18, 1999 from the University of Dayton at Dayton, Ohio. I have over seven years' experience in the field of product safety testing and certification.

4. In my capacity as a Senior Project Engineer at UL, I am responsible for, among other things, developing testing and evaluation programs for new and existing clients in the fire door, glazing material, and related product categories for the purpose of testing and certifying new or revised products under existing UL product safety standards. In addition, I answer technical inquiries about fire doors, glazing materials, and related product categories brought by clients and the general public, and I also help train personnel in UL's Fire Protection Division and overseas affiliates in testing and certification of certain fire door products.

5. I have been involved in, and am familiar with, UL's testing and certification of the products of O'Keeffe's, Inc., ("OKI"), the Plaintiff in this Action.

6. I have personal knowledge of the facts stated in this Declaration. If called to testify to these facts, I could and would do so competently and truthfully.

7. In addition, I have read and am familiar with the allegations contained in OKI's Third-Party Complaint against UL and in the Declaration of William O'Keeffe in support of OKI's Motion.

**Building Code Promulgation and Development of Safety Standards**

8. The promulgation and enforcement of rules governing minimum safety standards for buildings and their component parts is the responsibility of governments at various levels—typically, a local building department or code-enforcement agency, which UL refers to an "Authority Having Jurisdiction." These entities retain the ultimate responsibility for approving and enforcing relevant

2

DECLARATION OF MATTHEW E. SCHUMANN ISO OF THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S OPPOSITION TO PLAINTIFF O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION

building safety codes. UL has absolutely no authority to enact building codes, nor does UL promulgate model building codes. To the contrary, as described below, UL participates in the development of standards for safety performance of products.

9. In promulgating building codes, many local authorities rely upon model codes and standards that are developed and revised by various safety and industry groups. Most prominent among these is the International Building Code ("IBC"), which, along with the International Fire Code ("IFC"), is promulgated by the International Code Consortium ("ICC"). Other organizations that have developed model codes or standards relevant to fire-resistant or fire-protective glazing include the American Society for Testing and Materials ("ASTM") and the National Fire Protection Association ("NFPA") among others.

10. In the United States, almost every state has adopted, with minor amendments, the provisions of the IBC. This includes the State of California. With respect to the promulgation of minimum fire-safety standards for buildings, the IBC is consistent with, and takes into account, the standards promulgated by the NFPA.

11. UL has developed over 1000 product safety standards, called "Standards for Safety," applicable to the safety testing, Certification, and Listing of a wide variety of household and industrial products. These Standards set forth the testing methods UL personnel must employ when safety testing a product, and they also set forth the minimum level of safety a product must achieve to be Certified or Listed by UL.

12. In developing its Standards, UL is aware of, and takes into account, the views of numerous participants in the field relevant to the Standard under consideration.

13. More specifically, UL organizes and is a member of certain committees that develop and revise particular UL Standards. These committees, each of which is known as a "Standards Technical Panel," include representatives from manufacturers, insurers, other safety testing organizations, building contractors, code enforcement and other government officials, fire marshals, and members of academia.

14. The purpose of a Standards Technical Panel (hereinafter referred to as "STP" or "the

3

Panel") is to evaluate and develop safety testing standards for relevant products and the minimum level of safety that those products must meet to be Certified and/or Listed by UL. Members of the Panel, as well as any other interested party, are able to propose revisions to UL's Standards for consideration by the Panel. To this end, the Panel considers technical information, the views of Panel members and others interested in the Standard, existing building code requirements, and other material. A Panel's ultimate acceptance of a new UL Standard, or decision to revise an existing UL Standard, is governed by majority vote.

15. Although UL often has one or more members on a given Standards Technical Panel, UL is limited to one vote on each proposal made to the Panel. Final action by a Panel, therefore, represents the consensus view of the Panel members and is not dictated or controlled by UL.

16. Under this process, UL Standards are adopted as "American National Standards" by ANSI. ANSI is a private, not-for-profit entity that oversees the development of voluntary consensus standards for, among other things, products and services in the United States. ANSI's self-described mission is to enhance both the global competitiveness of U.S. business and the U.S. quality of life by promoting and facilitating voluntary consensus standards and conformity assessment systems.

17. The adoption of UL Standards as national standards by ANSI is the result of a consensus process overseen by ANSI. UL does not dictate this process and, in fact, UL has only one vote in the determination by ANSI of whether to adopt a UL Standard as a national standard.

18. UL is currently listed as one of 18 "Nationally Recognized Testing Laboratories" by the Occupational Safety and Health Administration. In this capacity, UL tests products for safety only upon the request of manufacturers, known as "Subscribers," who have entered into a Subscription Agreement with UL. If a product passes UL's neutral testing regimes, the Subscriber is granted a license to use UL's trademark in accordance with the terms of the Subscription Agreement.

19. Warnock-Hersey, an affiliate of Intertek Testing Services NA, Inc., is another nationally recognized testing laboratory in the United States.[1] Products that meet Warnock-Hersey

---

[1] Other nationally recognized testing laboratories that compete with UL and WHI include Southwest Research and FM Approvals. These laboratories are all widely accepted and many manufacturers run successful businesses within the industry without any relationship whatsoever with UL.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

4

DECLARATION OF MATTHEW E. SCHUMANN ISO OF THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S OPPOSITION TO PLAINTIFF O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION

1   requirements can be licensed to carry the "WHI" mark. Where a manufacturer seeks to gain UL certification for a fire-protective window or door assembly that includes glazing certified by Warnock-Hersey, UL does not generally accept testing results from Warnock-Hersey. This is because UL does not consider Warnock-Hersey's procedures for ensuring continuing compliance with safety standards as sufficient to justify placing the UL mark on products containing material not certified by UL.

20. UL has, however, invited representatives from Warnock-Hersey to serve on its Standards Technical Panels. Currently, Rick D. Curkeet of Warnock-Hersey serves on Standards Technical Panel 10. (*See* Exhibit A, at 2.). In addition, OKI, through its duly designated agent, Garrett Tom, serves on ANSI/UL 9 and ANSI/UL 10 STPs.

21. UL approval for a manufacturer or other entity to market a product as being certified or listed by UL does not constitute a permit or other legal authority for any entity to use that product in an architectural building. To the contrary, UL specifically states publicly that the "installation of glazing materials is intended to be in accordance with the local building code as determined by the Authority Having Jurisdiction. Authorities Having Jurisdiction should be consulted before installation." (See *KCMZ.GuideInfo* publication entitled "Fire-protection-rated Glazing Materials," attached as Exhibit B.) This warning is prominently listed on what UL terms a "guide card" that precedes the listing of individual manufacturers as UL approved. In the print versions of UL's listing, the guide card physically precedes the manufacturers listing. In the online version cited in this paragraph, there is a prominent hyperlinked URL that directs the reader to UL's relevant guide card.

**Fire Safety Glazing and Relevant Standards**

22. As is relevant to this Action, UL tests and certifies two broad classes of glazing: (1) fire-protection-rated glazing; and (2) fire-resistance-rated glazing. Fire-protection-rated glazing is typically used in so-called "protective openings" in buildings, including doorways and windows, that are intended to slow or stop the spread of fire. Fire-protection-rated glazing is engineered to limit the creation of holes, breakage, and separation of glazing as a result of a fire.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

23.     In contrast, fire-resistance-rated glazing is used where glazing takes the place of drywall, masonry, or similar materials in forming a transparent but fire-resistance-rated barrier wall.

24.     As part of its core public-safety mission, UL tests both fire-protection-rated and fire-resistance-rated glazing in accordance with the relevant UL Standards.

25.     There are four UL Standards that govern UL's testing of fire-protective and fire-resistant glazing: ANSI/UL9, ANSI/UL10B, ANSI/UL10C, and ANSI/UL263.  Standards ANSI/UL9, ANSI/UL10B, and ANSI/UL10C pertain to testing of fire-protection-rated glazing.  In contrast, Standard UL263 pertains to testing of fire-resistance-rated glazing.  As stated above, each of these testing standards has been developed and adopted by consensus through Standards Technical Panels.

26.     Each of the Standards listed above has been adopted as a national standard by ANSI.

27.     In addition, the ASTM has standard testing methods that are either materially similar to the Standards above or have been withdrawn due to the availability of similar NFPA or UL Standards.  UL participates in several ASTM committees.

28.     Standard ANSI/UL9 is entitled "Fire Tests of Window Assemblies."  (Exhibit C.)  This standard governs the testing of glazing included in a window assembly for the purpose of determine whether such glazing meets minimum standards of fire protection.  Standard UL10B is entitled "Fire Tests of Door Assemblies" and governs the testing of glazing installed as part of a "door assemblies . . . for use in wall openings to retard the passage of fire."  (Exhibit D, Section 1.1.)  Standard ANSI/UL10C is entitled "Positive Pressure Fire Tests of Door Assemblies" and governs the testing of "swinging door assemblies . . . for use in wall openings to retard the passage of fire."  (Exhibit E, Section 1.1.)  Finally, Standard ANSI/UL263 is entitled "Fire Tests of Building Construction and Materials" and governs the testing of structural materials for, among other things, walls, partitions, and other "assemblies and structural units that constitute permanent integral parts of a finished building."  (Exhibit F, Section 1.1.)

29.     These four Standards require the use of several devices and procedures to test the ability of glazing and other components to resist breaking down under the stresses of fire.  Among

6

DECLARATION OF MATTHEW E. SCHUMANN ISO OF THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S OPPOSITION TO PLAINTIFF O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION

these tests are the "fire resistance" and "hose stream" tests, which are designed to test the ability of glazing to resist flaming and the creation of holes, breakage, and separation of glazing from the window frame.

30. The hose stream test is an integral part of this safety testing regime. The cooling, impact, and erosion effects of the hose stream test help to evaluate the integrity of the material being tested. Put another way, the hose stream test not only measures the ability of glazing to withstand thermal shock, but also tests the strength and durability of the material being tested through the systematic application of pressurized water.

31. Because of the purpose of the hose stream test, it continues to be required under numerous local building codes and under IBC § 715 (attached as Exhibit G). For example, the 2007 California Building Code, which is based on the IBC, adopted without amendment the provisions of IBC § 715.5, which requires inclusion of the hose stream test for the testing of fire-protection-rated glazing in fire-protective window assemblies in accordance with NFPA 257 and NFPA 80.

32. Indeed, the continuing validity of the hose stream test has been confirmed by the retention of the test in the consensus standards of UL, NFPA, ANSI, ASTM, and by the inclusion of the test in the IBC. These autonomous, highly experienced, and safety-minded organizations have independently reviewed the hose stream test and concluded that the value of the test compels its retention as a testing standard.

33. I am aware that OKI objects to the hose stream test as obsolete and unfair to OKI's products. I am also aware that OKI has, on several occasions, petitioned various consensus bodies to eliminate the hose stream test, but these consensus bodies have refused to grant OKI's request based upon their independent evaluations of the merits of the test.

34. Based on the deliberative and democratic process of UL's Standards Technical Panel 10 (Exh. A), which includes both a representative of Warnock-Hersey and an agent of OKI, Garrett Tom (see Exh. A, H), UL continues to retain the hose stream test as an integral part of its testing Standards for fire glazing products. This decision represents the considered judgment of the Standards Technical Panel and is based on the expertise and credibility of the members of this

7

DECLARATION OF MATTHEW E. SCHUMANN ISO OF THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S OPPOSITION TO PLAINTIFF O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

consensus group. Further, Warnock-Hersey, through its presence on the Standards Technical Panel, has never proposed that the hose-stream test be eliminated from UL's Standards.

### Responses to Allegations of OKI

35. OKI has made certain allegations in its Third-Party Complaint against UL that are not factually accurate or are stated in a misleading fashion. The statements below are intended to respond to certain of those allegations.

36. OKI alleges that the safety glazing impact performance standard of the CPSC exceeds that found in ANSI Z97.1. This allegation, to the extent it is directed at UL, is misleading, because UL does not perform impact safety testing. Such testing is performed by the manufacturers themselves, who must self-certify the compliance of their product with applicable standards.

37. OKI alleges that the standards found in NFPA 251 and ASTM E119 do not require the hose stream test for fire rated construction of less than one hour. This is technically true, but misleading, because it fails to make clear that the standards referred to relate to wall components, not window assemblies. Further, UL263 is equivalent to NFPA 251 and ASTM E119 and, like those two standards, does not require a hose stream test for wall assemblies fire rated to less than one hour. Moreover, it is demonstrably false that no fire-rated glass manufacturer has demonstrated that any product can withstand the hose stream test from 20 feet away. The UL Standards for the hose stream test require this distance, and current UL certifications for other companies prove that the products of those companies (including TGP, Schott, and Vetrotech) have passed the hose stream test under these conditions.

38. There are no existing consensus standards for radiant heat transmission, nor does any local building code specify requirements for radiant heat. As a result, UL does not test for radiant heat. In fact, OKI has sought a consensus requirement for several years, but the various consensus groups have concluded that such a standard is unnecessary. OKI's statements regarding radiant heat, therefore, reflect only OKI's opinion and marketing strategy and do not represent a consensus standard.

39. In Paragraph 21 of its Third-Party Complaint, OKI alleges that UL provides certain

8

DECLARATION OF MATTHEW E. SCHUMANN ISO OF THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S OPPOSITION TO PLAINTIFF O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION

1 ratings indicating that the products meet temperature rise limits for doors, even though the products do not limit temperature rise. This is misleading. Under NFPA's Standard for doors that contain less than 100 square inches of glass, the entire door assembly must limit temperature rise to a certain amount without respect to any temperature rise allowed by the glass.

40. OKI alleges that UL lists wired glass for use in fire doors and sidelights, even though those uses are allegedly no longer permitted by code. This is misleading. It is true that the IBC does not permit wired glass, but certain building codes in large cities still permit and, in fact, require the use of wired glass. (*See*, *e.g.*, Municipal Code of Chicago § 15-12-110, attached as Exhibit I, at 4-5.) UL still accepts testing requests for wired glass because its use is required in some jurisdictions. UL does not govern the end use of products and expresses no opinions whether one product is better or more suitable for a particular use than another, as that is the prerogative of the Authority Having Jurisdiction. Rather, UL tests products to ensure that they meet minimum safety standards for a product of that type.

41. Contrary to OKI's allegation, UL does not have knowledge of thousands of injuries resulting from impact with wired glass fire doors.

42. OKI alleges that UL's refusal to list SuperLite I-XL for more than 20-minute applications is insupportable, because UL lists wired glass and FireLite for uses not permitted by code. Although it is true that UL does not certify or list Super-Lite I-XL as safe for applications greater than 20 minutes, this is only because the product fails the hose stream test under UL's Standards. It is false that UL lists wired glass and FireLite for uses not permitted by code. UL certifies and lists these products in accordance with the results of tests conducted under UL's Standards. It is up to the Authority Having Jurisdiction to determine whether a product that meets UL's Standards will be permitted under the building code(s) used by the Authority.

43. OKI further contends that UL has allowed its personnel to appear in marketing and promotional videos of TGP, an OKI competitor, thereby impliedly endorsing TGP's products. I am not certain to which videos OKI is referring. I have reviewed three videos on TGP's website and am unaware of the existence of any additional videos. Based on my review of the videos on TGP's

9

DECLARATION OF MATTHEW E. SCHUMANN ISO OF THIRD-PARTY DEFENDANT UNDERWRITERS LABORATORIES INC.'S OPPOSITION TO PLAINTIFF O'KEEFFE'S INC.'S MOTION FOR PRELIMINARY INJUNCTION

website, no UL employee speaks on these videos, the UL mark does not appear, and there is otherwise no reference to UL at all. As a result, there is no explicit or implied UL endorsement in the videos cited by OKI.

### **UL's Relationship with OKI**

44. OKI has been a difficult Subscriber for UL to work with. OKI has consistently sought certification from UL based solely on evaluation of documentary evidence without going through a full testing protocol. UL has refused to do this, because there has been insufficient documentary support for OKI's products to receive the ratings it seeks.

45. I have had several discussions with William O'Keeffe regarding UL's testing of OKI's products and ratings given to competitors' products. During a recent discussion concerning OKI's dissatisfaction with UL's certification for glazing materials, Mr. O'Keeffe threatened UL by stating to me in effect that he and I "should talk before I sue you."

46. Despite the difficulties of dealing with OKI, UL has made numerous good faith efforts to work with OKI, including inviting OKI to the most recent industry roundtable discussion that was held at UL to discuss current safety standards and UL's involvement in the fire door and glazing industry. This roundtable discussion was intended to inform our Subscribers of recent developments at UL and to provide them the opportunity to raise concerns, ideas, and items regarding their businesses and their relationship with UL.

47. OKI is correct that UL has not accepted OKI's offer to attend and witness certain fire testing performed by OKI. UL chose not to attend, however, because UL, in its considered judgment, was uncomfortable with the proposed testing and did not know how any data gathered from the test would be used. As a result, UL exercised its right not to accept OKI's offer.

48. UL has never singled out OKI for disfavored treatment, nor has UL extended special treatment to other manufacturers.

1   I declare under penalty of perjury that the foregoing is true and correct and that I executed
2   this Declaration on this 25th day of January 2008 at Northbrook, Illinois.

_____
Matthew E. Schumann