1  MARK I. SCHICKMAN (CSB #62653)
   schickman@freelandlaw.com
2  DANIEL T. BERNHARD (CSB #104229)
   bernhard@freelandlaw.com
3  FREELAND COOPER & FOREMAN LLP
   150 Spear Street, Suite 1800
4  San Francisco, California 94105
   Telephone:    (415) 541-0200
5  Facsimile:     (415) 495-4332

6  Attorneys for Plaintiff, Counterdefendant and
   Counterclaimant O'KEEFFE'S, INC.

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10               SAN JOSE DIVISION

11

12 O'KEEFFE'S, INC.,                    CASE NO.: C 07-cv-03535 JF PVT

13              Plaintiff,              **PLAINTIFF O'KEEFFE'S, INC.'S
                                        CLOSING BRIEF IN SUPPORT OF
14       v.                             PRELIMINARY INJUNCTION**

15 TECHNICAL GLASS PRODUCTS,            **DATE:    February 1, 2008**
   ANEMOSTAT, and PILKINGTON PLC,       **TIME:    9:00 a.m.**
16                                       **DEPT:    Courtroom 3, 5th Floor**
                Defendants.             **The Honorable Jeremy Fogel**
17

18 AND RELATED COUNTERCLAIMS.

19

20

21

22

23

24

25

26

27

28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

     A.     ONLY THIS PRELIMINARY INJUNCTION WILL PRESERVE THE STATUS QUO AND PROTECT OKI FROM IRREPARABLE INJURY ................................................................................2

     B.     THE UNDISPUTED FACTS SHOW THAT UL TERMINATED OKI'S LISTING IN RETALIATION FOR FILING THE INSTANT ACTION AGAINST UL................................................................................3

     C.     THE BALANCE OF HARDSHIPS TIPS OVERWHELMINGLY IN OKI's FAVOR ................................................................................4

     D.     OKI HAS A SUFFICIENT LIKELIHOOD OF PREVAILING ON THE MERITS TO JUSTIFY INJUNCTIVE RELIEF ................................................5

         1.     UL's Cancellation Is An Unfair Business Practice ........................5

         2.     UL's Authorities Are Inapposite or Irrelevant ............................8

         3.     UL Breached The Covenant of Good Faith and Fair Dealing Contained in Every Contract........................................................9

         4.     The Abrupt Cancellation of the Mark, In Retaliation For the Filing of This Suit, Is the Denial of Due Process By State Action............10

         5.     This Cancellation is But Another Instance of UL's Unfair Competition ................................................................................12

     E.     OKI'S UNFAIR COMPETITION CLAIMS SUPPORT THE RELIEF SOUGHT ................................................................................12

     F.     OKI DID NOT UNDULY DELAY IN SEEKING INJUNCTIVE RELIEF................................................................................13

II.    CONCLUSION ................................................................................14

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

## FEDERAL CASES

*Adickes v. Kress Co.*
398 U.S. 144 (1970)..................................................................................................10

*Authority of Florida v. Callaway*
489 F.2d 567 (5th Cir. 1974) .....................................................................................3

*Bank of the West v. Superior Court*
2 Cal 4th 1254 (1992) ................................................................................................8

*Family Home & Finance Center, Inc., v. Federal Home Loan Mortg. Corp.*
461 F. Supp. 2d 1188 (C.D. Cal. 2006) ..................................................................8, 9

*Golden Gate Restaurant Assn. v. City and County of San Francisco*
Ninth Circuit Court of Appeal No. 07-17370, January 9, 2008, slip opinion..................3, 5

*NCAA v. Tarkanian*
488 U.S. 179, 109 S. Ct. 454 (1988)......................................................................11

*National Coalition Government of the Union of Burma v. Unocal, Inc.*
176 F.R.D. 329 (C.D. Cal. 1997)............................................................................10

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*
319 F. Supp. 2d 1059 (C.D. Cal. 2003) ..................................................................6

*PAI Corp. v. Integrated Science Solutions, Inc.*
2006 U.S. Dist. LEXIS 34828 (N.D. Cal. 2006) ....................................................9

*Perfect 10, Inc., v. VISA International Service Association, et al.*
494 F.3d 788 (9th Cir. 2007) ................................................................................7, 8

*Rouse v. The Judges of the Circuit Court of Cook County*
609 F. Supp. 243 (N.D. Ill., 1985) ........................................................................10

*Sutton v. Providence St. Joseph Medical Center*
192 F.3d 826 (9th Cir. 1999) ................................................................................10

*Tanner Motor Livery, Ltd. v. Avis, Inc.*
316 F.2d 804 (9th Cir. 1963) ..................................................................................3

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

## STATE CASES

*Athens Lodge Number 70 v. Wilson*
    117 Cal. App. 2d 322 (1953) ...................................................................................6

*Bondanza v. Peninsula Hospital and Medical Center, et al.*
    23 Cal. 3d 260 (1979) ...........................................................................................6

*California Western School of Law v. California Western University*
    125 Cal. App. 3d 1002 (1981) ............................................................................12

*Cel-Technology Communications, Inc. v. Los Angeles  Cellular Telephone Co.*
    Cal. 4th 163 (1999)...............................................................................................5

*Finnie v. Town of Tiburon*
    199 Cal. App. 3d 1 (1988) ..................................................................................12

*Foley v. Interactive Data Corp.*
    47 Cal. 3d 654 (1988) ...........................................................................................9

*Foster Enterprises, Inc. v. Germania Federal Savings and Loan Association*
    97 Ill. App. 3d 22, 421 N.E.2d 1375 (1981) ........................................................9

*Gantt v. Sentry Insurance*
    1 Cal 4th 1083 (1992) ...........................................................................................9

*Paulus v. Bob Lynch Ford, Inc.*
    139 Cal. App. 4th 659 (2006) ...............................................................................6

*Payne v. Superior Court*
    17 Cal. 3d 908 (1976) ...........................................................................................4

*People v. Duz-Mor Diagnostic Laboratory, Inc.*
    68 Cal. App. 4th 654 (1988) .................................................................................6

*People v. Toomey*
    157 Cal. App. 3d 1 (1984) ....................................................................................7

*Saunders v. Superior Court*
    27 Cal. App. 4th 832 (1994) .................................................................................7

*Silo v. CHW Medical Foundation*
    27 Cal. 4th 1097 (2002)........................................................................................9

*Smith v. State Farm Mutual Automobile Insurance Co.*
    93 Cal. App. 4th 700 (2001) .................................................................................6

*Ticconi v. Blue Shield of California Life & Health Insurance Co.,*
    2007 Cal. App. LEXIS 1991 (2007) ....................................................................6

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1
2
3

**MISCELLANEOUS**

4  13 Witkin, Summary of California Law § 106 (10th ed. 2005)......................................................6

5  Business and Professions Code § 17200.............................................................................passim

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1          Pursuant to the January 18, 2008 Order of this Court, Plaintiff O'Keeffe's, Inc. ("OKI")

2 submits the following further brief in support of its Application for a Preliminary Injunction.

3 **I.   INTRODUCTION**

4          In seeking immediate injunctive relief, OKI reacted to UL's threat to remove the UL mark and

5 listing from OKI's products, after a relationship of more than 20 years, thereby rendering them

6 unsalable.  Since OKI applied for a TRO, UL has done just that:  UL has approached OKI's

7 distributors demanding return of all of OKI's UL certifications and UL marked products – products

8 that OKI paid for and received from UL prior to this dispute. Supplemental Declaration of William

9 O'Keeffe ("O'Keeffe Supp. Decl"), at ¶¶ 7-8.

10          OKI's relationship with UL commenced in 1984.  O'Keeffe Supp. Decl. at ¶ 2.  In two years,

11 OKI has invested some $400,000 in advertising which prominently lists its UL label, and spent over

12 $53,000 in payments to UL to obtain a UL certification. It has over $100,000 in fabricated UL labeled

13 glazing on its factory floor, at distributors en route to job sites and at building locations. O'Keeffe

14 Supp. Decl., ¶ 8.  UL now has pulled its certification, told OKI to scrap all of that literature and is

15 sending its agents into the field to announce that the UL label affixed to previously fabricated and

16 shipped glazing is invalid. O'Keeffe Supp. Decl., ¶¶ 7-8.  Because of that conduct OKI stands to lose,

17 at the very least,  hundreds of thousands of dollars.  The total damage OKI will suffer in the market

18 place is not easily quantified.

19          At the same time, many of the 30 solicitation calls that OKI receives each day demand a UL

20 listed and certified product.  For some of these applications – for example, to glaze a UL listed door

21 frame or window frame – <u>only</u> a UL listing will suffice, as UL will not accept a competitor's

22 certification in its listed units.[1]  Many of OKI's potential customers premise their purchase of fire and

23 safety glazing on OKI's UL certification. O'Keeffe Supp. Decl., at ¶ 5.  Thus, in the absence of the UL

24 certification which it properly obtained, OKI will lose future business which will cause damage both

25 severe and difficult to quantify.  *Id.* at ¶ 6.  UL's disingenuous claim that OKI has viable alternatives

26

27    [1] That arbitrary, capricious anti-competitive , monopolistic practice is one of the unfair business practices of which

28 OKI complains.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    to UL's mark to sell its products is more than hollow. UL has spent over 100 years positioning itself

2    as the gatekeeper of consumer product safety. The value of its certification is reflected by the fees

3    that UL can charge to listees like OKI.

4        Only the preliminary injunction prayed for will protect OKI from irreparable loss until this

5    Court can rule on the validity of UL's lawless, retaliatory cancellation of OKI's listing. For itself, UL

6    cannot even suggest any harm to it which would result to it from the grant of this sorely needed relief.

7        Just last week, the Ninth Circuit made clear that "prevention of injury" is the Court's proper

8    focus when ruling on a request for a preliminary injunction. Notably, UL can identify no injury that it

9    might suffer by the grant of this motion, and no counter to the grave injury that OKI will suffer if it is

10    denied. Secondly, UL does not challenge the obvious notion that the retaliatory cancellation of its

11    mark, to prevent OKI's exercise of its constitutional right to seek redress in the courts, is improper and

12    unlawful. Though it denies that it did so, the exhibit attached to its opposition proves that the

13    cancellation was based solely upon OKI's request for relief from this Court.

14        UL presents no fact, law, logic or equity behind its position. To prevent irreparable harm

15    during the pendency of this proceeding, an injunction should issue.

16    **A.    ONLY THIS PRELIMINARY INJUNCTION WILL PRESERVE THE STATUS**
      **QUO AND PROTECT OKI FROM IRREPARABLE INJURY**
17

18        OKI is faced with immediate and irreparable injury, as set forth in the evidence it submitted in

19    support of its TRO application and with this filing. Without a UL listing, not only will OKI be closed

20    out of important markets in which it has invested more than 20 years, and many thousands of dollars;

21    it will also lose existing projects already underway. O'Keeffe Supp. Decl., ¶¶ 4-5. The result is that

22    more than 20 years of OKI's advertising and market development, much of it based on reliance upon

23    its UL listing, will be eviscerated.

24        UL errs in its argument that OKI's motion seeks to change the "status quo." The status quo

25    here is what existed on the day that the claim against UL was filed, before UL undertook its campaign

26    of retaliation against OKI. A UL listing agreement is the status quo for OKI in this action.

27        On January 9, 2008 the Ninth Circuit Court of Appeal discussed and rejected the interpretation

28    of "status quo," that UL urges here, rejecting the argument that a preliminary injunction is slavishly

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  tied to the status quo. San Francisco's new health insurance ordinance law was slated to become

2  effective on January 1, 2008, but this Court invalidated the ordinance on December 27, 2007. The

3  City asked the Ninth Circuit to stay that order, which was objected to because such a stay would not

4  preserve the "status quo" but, rather, allow the brand new ordinance to change the "status quo." The

5  Ninth Circuit noted that "irreparable injury" – not the "status quo" -- was the proper subject of inquiry.

> "Maintaining the status quo is not a talisman. As the Fifth Circuit wrote in *Canal Authority of Florida v. Callaway*, 489 F. 2d 567, 576 (5th Cir. 1974): It must not be thought … that there is any particular magic in the phrase 'status quo.' The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. It often happens that this purpose is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury … The focus always must be on prevention of injury by a proper order, not merely preservation of the status quo. See also, *Tanner Motor Livery, Ltd. v. Avis, Inc.* 316 F. 2d 804, 809 (9th Cir. 1963) (observing that the principle that a preliminary injunction should preserve the status quo is 'not to be understood as … [a] hard and fast rule[], to be rigidly applied to every case regardless of its peculiar facts') …. As the D.C. Circuit has recognized, 'it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant." [Citations] (*Golden Gate Restaurant Assn. v. City and County of San Francisco*, Ninth Circuit Court of Appeal No. 07-17370, January 9, 2008, slip opinion, pp 6-7)

Only OKI faces "irreparable injury" by the retaliatory post-litigation cancellation of the UL mark in which it has so heavily invested both dollars and years. Only the preliminary injunction sought will prevent that injury while this court determines the propriety of that cancellation. At the same time, UL has made no effort to identify one iota of inconvenience, let alone injury, that it will suffer as a consequence of maintaining OKI's UL listing. There is none.

**B.    THE UNDISPUTED FACTS SHOW THAT UL TERMINATED OKI'S LISTING IN RETALIATION FOR FILING THE INSTANT ACTION AGAINST UL**

UL's denial that it tried to blackmail OKI into dismissing its lawsuit fails under the weight of the admitted facts. UL's counsel admits that it was only after UL demanded that OKI dismiss the lawsuit, and after OKI refused, that UL announced that it would cancel OKI's listing and the UL mark. expressly warning that OKI's products would thereby become unsalable. When OKI objected to the threat of retaliation, UL's counsel wrote (five days before the notice of cancellation was issued): "UL has the contract right not to do business with people who file frivolous lawsuits." Anderson Decl., Ex. A. Anderson was sure to underscore the drastic economic consequences to OKI of this arbitrary act,

1  stating that OKI would have a lot of product and "no one to sell it to." The email attached to the

2  Anderson declaration tells the story of UL's hard-ball tactics and designs.

3      Stripped of its disingenuous equivocation, the undisputed facts show that UL's termination of

4  the OKI certification was an act of pure retaliation for OKI's protected act of filing this lawsuit.

5  Despite his surface denial, Mr. Anderson shamelessly admits that UL cancelled the OKI listing

6  because OKI brought a lawsuit against it, so UL "did not want to do business" with OKI . UL has

7  been pleased to do business – and collect large fees—from OKI for more than 20 years. OKI was

8  (and is) within its legal rights to do pursue legitimate claims for relief in this Court, and it should not

9  be punished by UL because it refuses to be bullied out of seeking the help of the federal court. OKI's

10  right to seek relief through the federal courts is fundamental, and is an essential right in any business

11  dealing. Indeed, access to the courts is guaranteed to all person by the federal and California

12  constitutions. *See, e.g., Payne v. Superior Court,* 17 Cal. 3d 908, 914 (1976)(stating that "the United

13  States Supreme Court has long recognized a constitutional right of access to the courts for all

14  persons.") *citing, inter alia, Johnson* v. *Avery,* 393 U.S. 483, 487 (1969).

15      The effect of UL's conduct is to force any business with a legitimate dispute to choose between

16  two evils: either tolerate UL's misconduct; or suffer cancellation, with a potential business impact that

17  can outweigh any practical benefit to the affected party. Under UL's approach, UL is free to use the

18  threat of devastating retaliation to achieve an extra-judicial result. Rather than being governed by

19  laws, a party – like OKI here—is subject to being bullied or coerced into abandoning its rights.

20  Despite UL's insistence on a purported contract forum selection clause that requires application of

21  Illinois law, such a remedy is in fact an empty pretense. Any UL listee bold enough to challenge UL

22  will be threatened with cancellation, rendering moot any rights to Illinois or any other law.

23  **C.    THE BALANCE OF HARDSHIPS TIPS OVERWHELMINGLY IN OKI's FAVOR**

24

25      UL is plain wrong when  it argues that OKI will not suffer irreparable harm if its UL listing

26  and mark are cancelled. OKI's evidence establishes that certain projects specify UL listed products,

27  and that OKI products without the UL label will, therefore, not be acceptable. Moreover, there is no

28  ready way to prove which jobs were lost because of UL's illegal and unfair cancellation of the mark.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

PLAINTIFF O'KEEFFE'S, INC.'S CLOSING BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

4

Case No. 07 cv-03535 JF PVT

{00114503-1}

UL's assertion (with no evidentiary support because there is none) that "[t]he expiration of OKI's license to use UL's marks will not prevent OKI from selling its products" (Opposition, at 6) is disingenuous speculation based on incompetent facts, and it is disproven by OKI's undisputed material evidence, which UL ignores.

The advertising materials attached to the supporting Declaration of William O'Keeffe proves that the $400,000 in print media purchased by OKI relies heavily on the UL mark. (O'Keeffe Supp. Decl., Ex. B.) The mark, and listing, are prominent in that advertising. There is over $100,000 of fabricated product in the field, which UL now seeks to decertify. During 2006 and 2007 alone, OKI paid UL over $53,000 to have its products tested and listed. An even more significant cost is OKI's decades in being a UL listee. Those huge dollar investments would be lost if OKI is forced to follow UL's directive to cease using, and replace, its current advertising.

Notably, UL points to <u>no</u> prejudice that it can claim to suffer from the grant of the injunctive relief sought. There is no suggestion that OKI failed to follow UL rules, failed to make required payments when due, or otherwise breached any substantive provision of the agreement. Thus, the hardships are entirely on OKI. There is no prejudice to UL if the OKI listing remains in place during the pendency of this litigation, with the possible exception of UL's loss of the *in terrorem* effect of threatening listees with cancellation if they talk back to UL.

### D. OKI HAS A SUFFICIENT LIKELIHOOD OF PREVAILING ON THE MERITS TO JUSTIFY INJUNCTIVE RELIEF

Courts apply a two-part sliding scale in determining the property of an injunction <u>pendant lite</u> weighing the risk of irreparable injury and the likelihood of prevailing on the merits; where the risk of harm falls on one party, a lesser showing of likelihood of prevailing is required. *See, e.g., Golden Gate Restaurant Assn. v. City and County of San Francisco*, *supra*, at 15. That describes the legal test here, since the risk of irreparable injury falls solely on OKI.

### 1. UL's Cancellation Is An Unfair Business Practice[2]

California's statutory and common law unfair business practices law encompass a wide range

[2] OKI incorporates by reference its argument and authorities as to OKI's valid state law claims already presented to the Court in OKI's Opposition to UL's pending Motion to Dismiss, at 11-16.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  of acts which are either unfair or illegal. Section 17200 proscribes "any unlawful" business practice

2  by "borrowing" violations of other laws and treating them as unlawful practices that the unfair

3  competition law makes independently actionable. *See, Cel-Tech Communications, Inc. v. Los Angeles*

4  *Cellular Telephone Co.* Cal.4th 163, 180 (1999). The scope of conduct covered by § 17200 is

5  purposefully very broad. "The statutory language referring to 'any unlawful, unfair or fraudulent'

6  practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some

7  other law." 13 Witkin, Summary of California Law § 106 (10ed. 2005); *Paulus v. Bob Lynch Ford,*

8  *Inc.* 139 Cal. App. 4th 659 (2006). An "unfair" business practice occurs when that practice "offends

9  an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or

10  substantially injurious to consumers." *Smith v. State Farm Mutual Automobile Ins. Co.,* 93

11  Cal.App.4th 700, 718-719 (2001); *Ticconi v. Blue Shield of California Life & Health Ins. Co.,* 2007

12  Cal. App. Lexis 1991, *13 (2007).

13       An "unlawful" business activity "includes anything that can properly be called a business

14  practice and that at the same time is forbidden by law. Virtually any law--federal, state or local--can

15  serve as a predicate for an action under § 17200." *Smith v. State Farm Mutual Automobile Ins. Co.,*

16  *supra, 93* Cal. App. 4th at 717-718 (citations omitted); *see also People v. Duz-Mor Diagnostic*

17  *Laboratory, Inc.,* 68 Cal. App. 4th 654, 658 (1988) ( "A business practice constitutes unfair

18  competition if it is forbidden by any law, 'be it civil or criminal, federal, state, or municipal, statutory,

19  regulatory, or court-made.'") The immediate cancellation of the UL mark in retaliation for the filing

20  of this action violates these independent legal doctrines.

21       UL suggests, without authority, that it should not be subject to OKI's § 17200 claim because it

22  is not a "direct competitor" with OKI, and is merely a "non-profit testing" service. UL is wrong on

23  both counts. First, this argument ignores the plain language of the statute, which applies to "[a]ny

24  person who engages in" acts of unfair competition. Section 17203. UL's suggestion that it can have

25  no liability under § 17200 because it is not a "direct competitor " with OKI in the glazing industry just

26  ignores the breadth of protection afforded by §17200, as well as case law. *National Rural*

27  *Telecommunications Cooperative v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1076-79 (C.D. Cal. 2003)

28  (Court rejected argument that a party must be a direct competitor or member of the general public to

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1 ‖ assert a claim under the UCL.)[3]

2       Second, not for profit organizations are not automatically immunized from claims of unfair

3 competition, including claims under §17200. See, generally, *Bondanza v. Peninsula Hospital and*

4 *Medical Center,* et al, 23 Cal. 3d 260 (1979); and see, *Athens Lodge No. 70 v. Wilson,* 117 Cal. App

5 2d 322, 325 (1953). UL's insinuation otherwise is not supported by any authority.

6       UL's conduct constitutes unfair competition by, *inter alia*, promoting and effecting the unfair

7 competition of TGP and others in the fire and safety glazing industry that are permitted listings for

8 non-approved uses of their competing products. *People v. Toomey,* 157 Cal. App 3d 1, 20-21 (1984).

9 As discussed in detail in the Declaration of Kate Steel submitted in Support of OKI's Opposition to

10 UL's Motion to Dismiss,  UL consistently provides listings for products in applications that are not

11 approved by applicable building codes. For example, Steel testifies that UL listings are issued to TGP

12 for its FireLite product in fire doors "where FireLite does not meet the safety glazing requirements of

13 IBC 2006, Section 2406.1" Steel Decl., ¶16.  Furthermore, UL has issued listings to TGP for its

14 Fireglass 20 product "which has not been tested to the hose stream portion of the fire window test

15 specified in NFPA 257," nevertheless, UL has given that TGP product "a building code identification

16 of 'OH'.... Under the IBC 2006 identification provision section 715.5.8.1, that marking means that the

17 product passes the hose stream test, when in fact it does not." Steel Decl., ¶ 17.

18       UL argues that OKI is obliged to, and has failed, to identify any "legislatively-declared policy"

19 that UL has violated, as a pre-requisite to OKI stating a claim for violation of the "unfair" prong under

20 the UCL.  A plaintiff is not obliged to plead the "reasons, justifications and motives of the alleged

21 wrongdoer," and UL's cited authority does not so hold. See, *Family Home & Fin. Ctr., Inc., v. Fed.*

22 *Home Loan Mortgage Corp.,* 461 F. Supp. 2d 1188, 1195 (C.D. Cal. 2006)("... the court must weigh

23 the utility of the defendant's conduct against the gravity of the harm to the alleged victim... An unfair

24 business practice occurs when the practice offends an established public policy or when the practice is

25

26 [3] The UCL is sufficiently broad, in fact, that a plaintiff suing under it need not even prove that it was directly harmed
by the defendant's business practices. Section 17204 authorizes an action by any "person, corporation or association
27 or by any person acting for the interests of itself, its members or the general public." *Saunders v. Superior Court,* 27
Cal. App 4th 832, 839 (1994). *See also, Bank of the West v. Superior Court,* 2 Cal 4th 1254, 1266 (1992) (remedies
28 under UCL are purposefully limited in order to facilitate broad general application of the statute).

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.*, (quoting

2    *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App 4th 654, 662 (1999)). The plain facts establish

3    that UL's conduct has been oppressive and unscrupulous as to OKI in its monopolistic designs for the

4    market. UL's conduct, moreover, poses a potentially fatal risk to consumers who rely on fire and

5    safety glazing that is used for improper applications because of UL's mark.[4] UL is charged, by its own

6    terms, with protection of public safety. Although it is an "approved agency" for purposes of numerous

7    building and enforcement codes, UL is disregarding its obligations and approving products for uses

8    that are unauthorized and thus pose a clear threat to public safety.    While UL pursues classic

9    monopolistic practices, under the cloak of a quasi-government agency, it is violating the specific

10   public trust that it proclaims as its mission.[5]

11              **2.    UL's Authorities Are Inapposite or Irrelevant**

12       UL relies on several decisions to challenge OKI's right to pursue a claim against it under the

13   UCL. In fact, the cases cited by UL for various propositions to deny OKI access to a remedy in this

14   Court simply do not support UL's argument.    OKI will, accordingly, address these decisions

15   summarily:

16       a.    *Perfect 10, Inc., v. Visa Int'l Service Assn.*, 494 F. 3d 788 (9th Cir. 2007): UL

17   cites this decision for the proposition that dismissal of a claim is required "if the facts are insufficient

18   to support a cognizable claim." (UL's Reply to Opposition to Motion to Dismiss, at 12). Importantly,

19   the *Perfect 10* court held that "[a] complaint should not be dismissed unless it appears beyond doubt

20   that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at

21

22   _____

23   [4] The breadth of the UCL is evident in the range of conduct that is actionable under the "unfair" prong of §17200.
     Courts have found the following, for example, to constitute "unfair" practices: breach of the covenant of good faith
     and fair dealing (*State Farm and Casualty Co. v. Sup Ct.*, 45 Cal. App. 4th 1093, 1105 (1996)); asserting a

24   contractual right that a party does not have (*Samura v. Kaiser Foundation Health Plan, Inc.* 17 Cal. App. 4th 1284
     (1993); disparate and undisclosed charges by court reporters for deposition transcripts where one party receives a

25   volume discount (*Saunders v. Superior Court*, 27 Cal. App 4th 832 (1994).)

26   [5] UL positions itself as the standard of safety throughout its public materials. One typical UL representation states
     that " ... in the U.S. there are many municipalities that have laws, codes or regulations which require a product to be

27   tested by a nationally recognized testing laboratory before it can be sold in their area. UL is the largest and oldest
     nationally recognized testing laboratory in the United States." Bernhard Decl. in Support of Ex Parte Application for

28   TRO, Ex. A.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    794. (Court found that defendant was not vicariously liable for unfair infringing activity because it had

2    no ability to control the misconduct.)  First, OKI is not claiming vicarious or secondary liability by

3    UL, so *Perfect 10* is simply inapposite. Second, UL controls the misconduct complained of by OKI,

4    so *Perfect 10* is factually distinct, since the Court found that defendants control wan sufficient to be

5    actionable. OKI will be able to demonstrate that UL's own misconduct has resulted in direct and

6    potentially devastating harm to OKI, for which OKI is entitled to seek a remedy.

7              b.      *Family Home & Finance Center, Inc., v. Fed. Home Loan Mortg. Corp.*, 461 F.

8    Supp. 2d 1188 (C.D. Cal. 2006): UL relies on this decision for the proposition that OKI must plead

9    facts about motive, although the case does not so hold. *Family Home* is, furthermore, easily

10   distinguished factually because the Court there found that Freddie Mac had a legitimate business

11   purpose for placing plaintiffs on an exclusion list:  a reasonable expectation that loans to plaintiffs

12   would result in future defaults based on prior losses already suffered with the same plaintiffs. Here,

13   UL does not claim any legitimate business reason to de-certify OKI products, but only the illegal

14   motive of chilling access to the courts. Similarly, it will be proven at trial that UL's other wrongs are

15   for not legitimate purposes – but only to build a monopoly in the certification industry, and to

16   improperly favor its most lucrative customers.

17              c.      *PAI Corp. v. Integrated Science Solutions, Inc.* 2006 U.S. Dist. Lexis 34828

18   (N.D. Cal. 2006): The *PAI* court did not, as UL argues, hold that California common law unfair

19   competition "concerns only" pirating or palming off others' labors or products. To the contrary, the

20   Court noted that with respect to the dispute whether California or Tennessee law should apply, that

21   "[I]f California law applies, Plaintiff can probably state a claim for unfair competition given the broad

22   reach of California law." *Id.*, at ¶ 15.

23              **3.      UL Breached The Covenant of Good Faith and Fair Dealing Contained in
                          Every Contract**

24

25         It is part of every contract – in California and Illinois – that a party will not act unfairly or in

26   bad faith to deprive the other of the benefits of the contract. *Foley v. Interactive Data Corp.*, 47 Cal

27   3d 654, 683 (1988). See also, *Foster Enterprises, Inc. v. Germania Federal Savings and Loan Assn.*,

28   97 Ill. App 3d 22, 28, 421 N.E.2d 1375, 1380 (1981).  Even accepting UL's characterization of its

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   listing agreement with OKI as "terminable without cause," UL nevertheless cannot abandon its

2   contractual obligations to OKI for an *illegal* cause. *See, e.g., Silo v. CHW Medical Foundation,* 27

3   Cal 4th 1097, 1104 (2002)(right to terminate no-cause contract for an unlawful purpose that

4   contravenes a fundamental public policy)(relying on *Gantt v. Sentry Insurance,* 1 Cal 4th 1083, 1094

5   (1992)). That is, nevertheless, just what UL has done.

6       If UL is legally permitted to cancel the UL mark and listing, essential property interests of its

7   listees like OKI, in order to "punish" listees for filing a lawsuit, no term of an important ongoing

8   contract could ever be enforced, for fear of losing the critical benefits of the agreement before the

9   parties' respective rights were fully adjudicated. UL's termination was designed and intended to

10  prevent OKI from enjoying the even-handed application of the contract terms – an act of bad faith and

11  unfair dealing plainly actionable in this Court.

### 4.  The Abrupt Cancellation of the Mark, In Retaliation For the Filing of This Suit, Is the Denial of Due Process By State Action

12      The building codes delegate to "approved agencies," such as UL, the certification that building

13  materials meet code requirements. For example, Section 1703, "Approvals," of the International

14  Building Code ("IBC") 2006 provides in relevant part as follows:

> **1703.1 Approved agency.** An agency shall provide all information as necessary for the building official to determine that the agency meets the applicable requirements.
>
> **1703.1.1 Independent.** An approved agency shall be objective and competent. The agency shall also disclose possible conflicts of interest so that objectivity can be confirmed.
> .......................................
> **1703.5 Labeling.** Where materials or assemblies are required by this code to be labeled, such materials and assemblies shall be labeled by an approved agency in accordance with Section 1703......

See, Steel Decl., Ex "A", and ¶¶ 4-5.[6]  UL is such an "approved agency," to which a basic

---

[6] The IBC, as the preface to IBC 2006 describes it, provides a "comprehensive building code [that] establishes minimum regulations for building systems using prescriptive and performance-related provisions. It is founded on broad-based principles that make possible the use of new materials and new building designs." *Id.*, Ex. "A".

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

---

PLAINTIFF O'KEEFFE'S, INC.'S CLOSING BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

10

Case No. 07 cv-03535 JF PVT

{00114503-1}

governmental function has been delegated, and on which local building officials and other "authorities having jurisdiction" rely. The elimination of UL's certification makes the building materials improper for installation. While such a basic safety function would presumably be controlled by a state agency, it is controlled, instead, by UL, which effectively functions like a state or governmental entity. *Adickes v. Kress Co.*, 398 U.S. 144, 169-171 (1970); *National Coalition Government of the Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 345 (C.D. Cal, 1997)( Private party acts under color of state law when acts together with state officials ); *Sutton v. Providence St. Joseph Medical Center*, 192 F. 3d 826, 842 (9th Cir. 1999)(Acts of a heavily regulated industry with something of a monopoly more likely to be found to be a state actor.)   Private parties such as UL, who de facto perform governmental functions by controlling public officials or acting as their agents, are acting under color of state law.

In *Rouse v. The Judges of the Circuit Court of Cook County*, 609 F. Supp 243 (N.D. Ill., 1985). the judiciary was assigned the task of "qualifying" candidates for the Cook County bench and the court looked to the Cook County Bar Association to rate those candidates.   The *Rouse* court found that, as a practical matter, a judicial candidate could not be appointed without a qualified rating from the bar association.  "Private parties who *de facto* perform governmental functions are acting under color of state law. *Id.*, at 246   Therefore, because the Cook County Bar Association's unqualified rating had the practical effect of disqualifying a candidate from a profession, (either on a de facto or de jure reference from the governmental body assigned the task of establishing that qualification), the rating of the Cook County Bar constituted actionable state action. *Id.*, at 247.

Again, as the United States Supreme Court wrote in *NCAA v. Tarkanian,* 488 U.S. 179, 192, 109 S. Ct. 454, 462 (1988), in a state action case:

> "... a private party has taken the decisive step that caused harm to the plaintiff. This may occur if the state delegates its authority to the private actor..."[7]

Here, UL – the defacto and dejure gatekeeper to code compliance certification -- has vindictively frozen OKI's products out of code compliance:  it has done so not because of the quality of OKI's products, or for some actual deficiency or safety issue, but because OKI sought recourse to

---

[7] In *Tarkanian*, the Court found that Tarkanian's employer – the University of Nevada, Las Vegas – was free to reject the NCAA's recommendation to fire Tarkanian, so no state action was found.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   the courts.  It is akin to a police department declaring that a residence was no longer subject to police

2   protection because a resident had previously filed a citizen complaint against a police officer.  It is an

3   actionable abuse of state power.

**5.    This Cancellation is But Another Instance of UL's Unfair Competition**

5   The gravamen of OKI's complaint has always been that UL acts collusively with TGP to

6   unfairly direct business away from OKI in favor of TGP – which received UL listings which UL

7   denied to OKI for identical products.  UL's latest misconduct – pulling its listing from <u>all</u> OKI

8   products, including those which were fabricated and shipped long before UL's purported cancellation

9   – is the worst and most recent example of that misbehavior.

10   Section 17200 defines "unfair competition" as including "any unlawful, unfair or fraudulent

11   business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  A practice is

12   prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa."  *Cel-Tech Communications,*

13   *Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (1999) (citation omitted).  The

14   coverage of the UCL is "sweeping, embracing anything that can properly be called a business practice

15   and that at the same time is forbidden by law."  *See Barquis v. Merchants Collection Assn.,* 7 Cal.3d

16   94, 113 (1972).  It governs "anti-competitive business practices" as well as injuries to consumers, and

17   has as a major purpose "the preservation of fair business competition."  *Id.,* at 110.  That goal makes

18   § 17200 uniquely suited to remedy UL's conduct here, which damages OKI as a result of UL's

19   persistent failure to follow its own safety mandate throughout the fire and safety glazing industry.

**E.    OKI'S UNFAIR COMPETITION CLAIMS SUPPORT THE RELIEF SOUGHT**

21   OKI has appropriately raised a claim for an injunction  by seeking relief against UL under both

22   common law unfair competition and  under the UCL.  Accordingly, UL's argument that OKI is barred

23   from injunctive relief because it is not specifically sought in its pending claims against UL makes no

24   sense.  The chief remedy OKI seeks against UL is an injunction stopping UL from continuing its

25   unfair business practices.  The present request for a preliminary injunction seeks the same injunctive

26   relief, now focused against UL's specific unfair practice of terminating OKI's listing.  That purported

27   termination is simply another unfair practice by UL that should be enjoined; it is the same brand of

28   lawless misconduct already pled in OKI's counterclaims.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   If the Court pleases, OKI is prepared to amend its counterclaim to more specifically allege this

2   new retaliatory misconduct, and the attendant breaches of the covenant of good faith and fair dealing

3   implied in this contract, and denial of due process by a state actor. UL's latest misconduct has resulted

4   in an additional claim, and OKI should be permitted to seek affirmative relief for it in the pending

5   action, should the Court deem the current pleading allegations insufficient.

6   **F.    OKI DID NOT UNDULY DELAY IN SEEKING INJUNCTIVE RELIEF**

7   UL's argument that OKI has somehow "slept on its rights" ignores the facts and the case

8   authorities. The defense of laches to a request for injunctive relief is measured by a showing of

9   "unreasonable delay" in seeking injunctive relief, combined with prejudice to the responding party as

10  a result of the delay. *Finnie v. Town of Tiburon*, 199 Cal. App 3d 1, 14 (1988). Where there is a

11  continuing and intentional invasion of a party's rights – as here where UL seeks to destroy OKI's

12  ability to market and sell its products – the delay in seeking equitable relief must amount to assent or

13  acquiescence. *California Western School of Law v. California Western University* 125 Cal. App. 3d

14  1002, 1007 (1981).

15  The factors typically considered by a court in deciding whether there has been unreasonable

16  delay are: (a) the length of the delay; (b) the excuses for any delay; (c) the moving party's

17  acquiescence or assent; (d) the prejudice to the responding party by any delay; (e) possible changes in

18  conditions during the delay; and (f) a general balancing of the equities. *Id.*, at 1006. These factors,

19  applied to the facts here, demonstrate that OKI has not slept on its rights or prejudiced or

20  compromised UL in any way.

21  The earliest that OKI could possibly have sought this injunction was the beginning of

22  December, when UL's threatened termination – to be effective 30 days thereafter – was first received

23  by OKI. OKI's first order of business was to consider how it could survive in the event that UL in fact

24  made good on its threatened termination. That internal process overlapped with the holidays, and the

25  pleading schedule set by the filing of UL's motion to dismiss. OKI never gave any sign that it assented

26  to the termination, of course, and no changes occurred in the facts or positions of the parties during

27  December that could affect the relief OKI needs now. None of the equities changed, and UL did not

28  recant or withdraw its termination. At the same time, there is no prejudice to UL resulting from

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  granting OKI the relief it needs now, instead of in the last days of December.

2  **II.    CONCLUSION**

3    OKI has important complaints that UL has been using its muscle as an "approved certifying

4  agency" to the competitive harm of OKI, and in derogation of public safety. It gives TGP (and others

5  in the industry) listings which are unwarranted by code or by performance.  It lists product which can

6  be broken by a child, in locations carrying catastrophic risks of fatal impact breakage. It refuses to

7  allow code-complying certifications of the other major  "approved agency" in assemblies which it

8  certifies -- a monopolistic practice prohibited by code.

9    When OKI said "enough", and sued to remedy those wrongs, UL threatened to – and did –

10  retaliate by de-certifying OKI's products:  That act makes hundreds of thousands of dollars of

11  advertising unusable, hundreds of thousands of dollars of product unsalable, $53,000 in UL tests

12  worthless, and millions of dollars of bids automatically unwinnable. It is inexcusable, unjustifiable

13  extortion, designed to prevent OKI's constitutional recourse to federal court.

14    OKI will prove its case, but, absent a preliminary injunction, it will suffer irreparable,

15  unquantifiable damage while doing so. On the other hand, UL suffers no damage from this relief. OKI

16  respectfully requests that UL be preliminarily enjoined from the catastrophic, unlawful, and retaliatory

17  cancellation of its UL listing.

18

19

20                                  Respectfully Submitted,

21

22  Dated: January 25, 2008              FREELAND COOPER & FOREMAN LLP

23

24                          By:    _____/s/ Daniel T. Bernhard_____
                                DANIEL T. BERNHARD
25                              Attorneys for Plaintiff and Counter
                                defendant O'KEEFFE'S, INC.
26

27

28

*FREELAND COOPER & FOREMAN LLP*
*150 Spear Street, Suite 1800*
*San Francisco, California 94105*