1   MARK I. SCHICKMAN (CSB #62653)
    schickman@freelandlaw.com
2   DANIEL T. BERNHARD (CSB #104229)
    bernhard@freelandlaw.com
3   FREELAND COOPER & FOREMAN LLP
    150 Spear Street, Suite 1800
4   San Francisco, California 94105
    Telephone:    (415) 541-0200
5   Facsimile:    (415) 495-4332

6   Attorneys for Plaintiff, Counterdefendant and
    Counterclaimant O'KEEFFE'S, INC.

7

8

9

10                  UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14   O'KEEFFE'S, INC.,                    CASE NO.:  C 07-cv-03535 JF PVT

15                    Plaintiff,          **SUPPLEMENTAL JOINT CASE**
                                          **MANAGEMENT STATEMENT**
16          v.
                                          **DATE:      February 22, 2008**
17   TECHNICAL GLASS PRODUCTS,            **TIME:      10:30 a.m.**
     ANEMOSTAT, and PILKINGTON PLC,       **DEPT:      Courtroom 3, 5th Floor**
18                                                     **The Honorable Jeremy Fogel**
                     Defendants.
19

20   AND RELATED COUNTERCLAIMS.

21

22

23          Plaintiff O'Keeffe's, Inc. ("O'Keeffe's) and defendants Technical Glass Products ("TGP") and

24   Anemostat (collectively "parties"), submit this Supplemental Joint Case Management Statement and

25   [Proposed] Order, and request the Court to adopt it as its Case Management Order.  This Statement

26   incorporates and supplements the Case Management Statement previously filed by the parties in

27   November 2007.  Absent express agreement, no party accepts or adopts the statements or contentions

28   of any other party herein, and no statement or representation by any party herein shall constitute any

*(sidebar)* FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  admission or other determination of evidence by another party.

## 1.  JURISDICTION AND SERVICE

This action was commenced with plaintiff O'Keeffe's, Inc. filing a complaint for patent infringement alleging a single claim for relief on July 6, 2007. Jurisdiction is based on 35 U.S.C. §§1, et seq, and 28 U.S.C. §§1331 and 1338 (a) and (b), and on the pendent, supplementary and ancillary jurisdiction of the Court. Venue is based on 28 U.S.C. §1391. The complaint has been served on all parties.

Thereafter, defendant Anemostat filed an answer and two counterclaims against O'Keeffe's based on the claim of patent infringement. Defendant TGP also filed an answer, and alleged six counterclaims against O'Keeffe's. The first three counterclaims relate to the alleged patent, and seek declarations of non-infringement, invalidity and unenforceability, respectively. The Fourth and Fifth Counterclaims allege that O'Keeffe's use of its "SAFTIFIRE FRAMES" mark infringes TGP's FIREFRAMES® mark, for which TGP has two allegedly incontestable federal trademark registrations, and violates Section 43(a) of the Lanham Act. TGP's Sixth Counterclaim alleges that that O'Keeffe's markets its SuperLite 1-XL glass product through false and misleading advertising and unlawful trade practices that indicate the product passes certain fire safety tests required by building codes, when in fact it does not. .

O'Keeffe's filed answers to the counterclaims alleged by Anemostat and TGP, and also filed six counterclaims against TGP and a third party, Underwriters Laboratories ("UL"), alleging, inter alia, Trademark cancellation, Lanham Act violations, Trade Libel, and unfair business practices.

## 2.  CURRENT STATUS

The Court entered a stay of all proceedings pertaining to the '906 patent that was the basis of O'Keeffe's patent claim, pending completion of a reexamination by the PTO. Thereafter, UL filed a motion to dismiss under Fed. R. Civ. Pro. Rules 12(b)(1), (2) and (6). The Court granted UL's motion in part, without prejudice, declining to exercise supplemental jurisdiction over UL and finding that venue was improper in this Court based on UL's assertion that a forum selection clause contained in its operative, standard UL listing agreement with plaintiff, made venue in this Court improper.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

**Plaintiff's Statement**

**TGP's Common Law and Statutory MisConduct**

Plaintiff O'Keeffe's is the sole holder of U.S. patent number 7,090,906, dated August 15, 2006 for a product it created, manufactures, markets and sells (through its SAFTI division) named SuperLite I-W. SuperLite I-W is a wired glazing product that is filmed, resulting in the first fire and safety rated wired glass. O'Keeffe's manufactures a fire and safety rated product called SuperLite I-XL which has a reflective coating that causes radiant heat waves to bounce back to the fire, offering important protection from radiant heat dangers. O'Keeffe's also manufactures Superlite II-XL, which meets fire endurance, radiant heat, impact safety and hose stream tests up to at least 120 minutes. O'Keeffe's competitors include wired glass and wired glass kit manufacturers, marketers of ceramic glazing like TGP and their distributors.

For many years, conventional wired glass was considered the only glazing material that could meet fire standards for building assemblies such as fire doors and windows. But conventional wired glass is not safety glazing, as the Consumer Product Safety Commission has found. Rather, the wire mesh weakens the glass, leaving it more susceptible to breaking than ordinary plate glass. When exposed to fire, conventional wired glass cracks within minutes. Though the wire mesh holds the glass in place preventing large openings, it does nothing to limit the transfer of dangerous radiant heat.

Products like SuperLite I-XL have been used for over 25 years throughout the industrialized world (except for the United States and Canada) without the need for any hose stream test, and without any reported incidence of failure. The only major competitive feature of ceramic glazing like Firelite is that it meets the obsolete hose-stream test, which has been proven irrelevant to fire safety in most of the industrial world. The evidence will show that the reliance on the "hose-stream test" by the wired glass and ceramics industries has no safety nexis and is designed to create an artificial and misleading competitive advantage.

At the same time, TGP has made various representations about its own fire rated products, including FireLite, that are misleading and untrue as to the rating requirements of the product. Among other things, TGP omits from its promotion of FireLite in 60 and 90 minute applications that FireLite allows transmission of dangerous radiant heat. TGP also has listed various of defendants'

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  products for unauthorized uses, where those products fail to meet impact and fire safety requirements.

2  These facts are concealed from code officials, and pose serious safety dangers to the public.

3       TGP and others in the glazing industry have unfairly criticized and questioned the qualities of

4  each of O'Keeffe's' SuperLite products, and sale of all of O'Keeffe's' products have been and are

5  harmed by TGP's false promotion of its FireLite product in applications which require impact strength

6  and/or radiant heat protection which FireLite does not provide.

7            O'Keeffe's denies each of the counterclaims alleged by defendants, both on the facts

8  and the law. It is inherent to the building code system that local code bodies have the authority to

9  approve "alternate products" based upon individual building circumstances. TGP's assertion that it can

10  obtain an order eliminating that entire system of individualized discretion, in every building project in

11  the nation, would turn the entire building code system on its head.

12  **Trademark Claims**

13       TGP alleges infringement of two registered trademarks, both for "Fireframes." OKI denies

14  that it infringes these marks, and  TGP cannot meet its burden of proving a likelihood of confusion

15  based on OKI's use of the "SaftiFire Frames" mark.  Consumer confusion is the benchmark of any

16  trademark claim, and because of the weakness of TGP's marks, the differences in the marks, and the

17  absence of any actual or likelihood of confusion, among other reasons, TGP cannot prove consumer

18  confusion and therefore cannot prevail on its claims.  Moreover, TGP's marks are properly cancelled

19  by this  Court .

20       OKI alleges three independent bases for cancellation of the marks in its first and second

21  counterclaims:  the marks are generic; the marks were procured through fraud; and the marks have

22  been abandoned.  Any one of these grounds is a sufficient basis for cancellation.

23       Contrary to TGP's assertion these issues are not ripe for summary judgment.  Summary

24  judgment is rarely appropriate on trademark claims, and is certainly not appropriate here.  Rather, a

25  determination of whether there is any likelihood of consumer confusion is a factual analysis.  At a

26  minimum, the following disputed issues must be considered in discovery and at trial before the Court:

27  the strength of the Fireframes mark, the consumer's perception as to the similarities of the mark,

28  whether there has been any consumer confusion between the marks,  whether there is any unfair

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  prejudice to enforcing the marks, whether TGP has acquiesced to the use of "SaftiFire Frames,

2  whether TGP has abandoned its mark, and whether there was fraud during the prosecution of the

3  mark. Finally, TGP's suggestion that the PTO's finding of a likelihood of confusion is dispositive is

4  misleading and wrong; whether or not TGP's marks have been infringed is a decision to be made

5  by this district court, and not the PTO .

6  **OKI Opposes TGP's Request For Stay of Discovery, and its Suggestion of Summary**

7  **Judgment Without Engaging in Discovery**

8  While it is premature for either party to move for summary judgment in the absence of any

9  discovery, it is abundantly clear that discovery should not be stayed before it even commences. This

10  is especially true as OKI has responded to three sets of formal discovery propounded by TGP, while

11  TGP has yet to respond to the discovery OKI has propounded to it.

12  Secondly, discovery is necessary to inquire into the false representations made, and unfair

13  competition engaged in by, TGP. There is no arguable basis preventing that discovery.

14  Third, discovery is required on the issue flagged for resolution by TGP (and the parallel issues

15  raised by OKI which should be determined at the same time, including the propriety of the approvals

16  obtained by TGP's for its non-complying products in locations requiring heat transfer limits and

17  impact safety). Among other things, discovery is required into the substance of TGP's requests that

18  code officials grant the types of variances which it now suggests must be disallowed. Discovery is

19  required into the authority and practice of code officials to grant such waivers, and under which

20  circumstances and procedures they are granted. OKI would be deprived of a fair determination on the

21  merits if these core issues were determined without discovery.

22  **TGP's Statement:**

23  **Patent claims.**  Since the Court stayed O'Keeffe's ("OKI") patent claims pending resolution

24  of Anemostat's reexamination requests, TGP has filed with the PTO its own *inter partes*

25  reexamination request of the asserted patent, submitting additional prior art. That request remains

26  pending.

27  **Summary Judgment is ripe on non-patent claims.**  TGP contends that the core non-patent

28  disputes pending between it and OKI are ripe for resolution by the Court as a matter of law on

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1  summary judgment, without discovery. Therefore, TGP requests that the Court stay discovery until

2  TGP files and the Court resolves summary judgment motions on the non-patent claims.

3       TGP seeks to obtain (a) a declaration on a few narrow legal issues at the heart of the parties'

4  disputes, thereby essentially resolving them; and (b) an injunction against OKI that will insure those

5  disputes stay resolved. If TGP can obtain that on summary judgment, without the expense of further

6  discovery, TGP will drop (without prejudice) its damages claims on its non-patent claims (but not its

7  claims for costs and attorney fees as a prevailing party). The Court may then enter a final judgment

8  on them.

9       **False advertising claims of both parties.** Thirty-seven states, including California as of

10  January 2008, have adopted the International Building Code ("IBC"). The core issues in TGP's Sixth

11  Counterclaim, and OKI's Third, Fourth, Fifth and Sixth Counterclaims, are

12      1.  Whether IBC Section 104.11 allows local building officials to waive the "hose stream test"

13         generally required by IBC Section 715 for OKI's SuperLite 1-XL product; and

14      2.  Whether IBC Section 715.5.2 limits SuperLite 1-XL to a fire test rating for its shortest

15         duration side, which would be a "20 minute" rating rather than a "45 or 60 minute" rating

16         because one side lacks a protective coating.

17  *See* TGP's Sixth Counterclaim at ¶¶ 84-91:

18      84. O'Keeffe's SuperLite I-XL product has not successfully passed the "hose

19  stream" test. In the U.S., the hose stream test is required for any fire-rated glazing to

20  receive a rating higher than 20 minutes. This applies to every state in the country and

21  can be found in standards such as UL9, UL10B, UBC Standards 7-2 and 7-4, and

22  International Building Code ("IBC") §715.

23      85. In addition, O'Keeffe's SuperLite I-XL product does not provide, or

24  sometimes does not provide, substantial fire protection from one side. If a significant

25  fire breaks out on the non-coated side of the glass, there is a high probability that glass

26  will collapse, providing no protection at all.

27      86.   ....

28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

87.    O'Keeffe's markets its SuperLite I-XL product with advertisements that state, among other things, that the product is:

- ...

- "Approved by the GSA and AHJs as an alternate material for 45 and 60 minute applications without hose stream in accordance with IBC 104.11"

- ....

88.    O'Keeffe's advertising statements alleged in the above paragraph are materially false and misleading.

89.    IBC 104.11 (2006) provides in part:

> 104.11 Alternative materials .... The provisions of this code are not intended to prevent the installation of any material ... provided that any such alternative has been approved. An alternative material ... shall be approved where the building official finds ... that the material ... is, for the purpose intended, at least the equivalent of that prescribed in this code in ... fire resistance ... and safety.

90.    O'Keeffe's SuperLite I-XL product is not "at least the equivalent" in "fire resistance" and "safety" of glass products fire rated for 45 and 60 minute applications, because, for example, they do not pass the hose stream test, and they do not provide substantial fire protection from one side.

91.    O'Keeffe's is misleading its customers and building officials by its efforts to induce and assist them to approve and use its SuperLite I-XL product as an "alternative material" under IBC 104.11 for situations where 45 and 60 minute fire rating is required.

*See also* OKI's Counterclaim at ¶12(a) and (b) ("12. ... TGP has misrepresented the following... (a) SuperLite 1-XL is hazardous or somehow otherwise deficient ... because it is 'directional' ... and thus 'if a fire breaks out on the non-coated side of the glass there is a high probability that the glass will collapse...'; (b) SuperLite 1-XL is hazardous or somehow otherwise deficient ... because it has not passed the 'hose-stream' test...; (c) SuperLite 1-XL fails to comply with, and cannot meet various standards for fire-rated materials, including

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    ASTM E-119 and UL 263...."), incorporated in OKI's Third, Fourth, Fifth and Sixth

2    [Counter]claims at ¶¶ 32, 34(b), 40-45, 56, 57(b).

3         Those narrow legal issues primarily require this Court to interpret Sections 104.11 and

4    715 of the International Building Code. This Court can do that now, on summary judgment.

5         To facilitate the Court's resolution of those issues, and to supplement TGP's counterclaims

6    with references to California's new 2007 Building Code ("CBC") that took effect January 2008 and

7    adopts the IBC, TGP seeks leave to file the two supplemental counterclaims attached hereto as Exhibit

8    A hereto. They seek declarations that (1) IBC Section 104.11, and IBC Section 715.3 that refers to

9    104.11, do not allow local officials to approve glass, such as SuperLite 1-XL, that does not meet the

10   "hose stream test" where that test is required by Section 715 (primarily, for fire-protection-rated glass

11   in excess of 20 minutes); and (2) for uses governed by Section 715.5.2, SuperLite 1-XL is not entitled

12   to the "45 or 60 minute" ratings it claims, because the IBC 715.5.2 requires glass to be rated in

13   accordance with its shortest duration side, which for SuperLite 1-XL is only 20 minutes.

14       This Court's declaration on these two issues of law should resolve the core issues in dispute in

15   both parties' pending false advertising counterclaims.

16       TGP will also move for summary judgment on the third issue raised in OKI's Counterclaim

17   ¶12: whether "SuperLite 1-XL fails to comply with, and cannot meet various standards for fire-rated

18   materials, including ASTM E-119 and UL 263...." TGP contends that, without question, SuperLite 1-

19   XL cannot meet the fire resistance standards in ASTM E-119 and UL 263. OKI does not squarely

20   allege that it can meet them (though it implies it). TGP believes that OKI cannot produce evidence

21   that it can meet the fire resistance standards in ASTM E-119 and UL 263. Therefore, summary

22   judgment is ripe on this claim as well.

23       **Trademark claims of both parties.** TGP's fourth and fifth counterclaims allege that OKI's

24   use of the "SaftiFire Frames" mark infringes TGP's two federally registered and incontestable

25   "Fireframes" trademarks. OKI's First and Second [Counter]Claims seek to cancel those registrations

26   (and related damages) because the mark is allegedly "descriptive." But as a matte of law, that is not a

27   defense to incontestable registrations. They also allege fraud in procuring, and abandonment of, the

28   first of the two registered marks. But TGP need not rely on both, and seeks leave to withdraw its

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    claim on the first registration to simplify this case. Finally, they allege that the second registration is

2    invalid due to the alleged fraud in the first registration. But as a matter of law, alleged fraud in one

3    registration is not a basis for cancelling a second registration. Therefore, OKI's trademark claims are

4    ripe for decision on summary judgment.

5    TGP's claim that OKI's mark is confusingly similar to TGP's mark is also ripe for decision on

6    summary judgment, because the marks on their face are highly similar, and OKI admits in its claims

7    that: (a) the goods sold under the marks "are of a related nature"; (b) "the prima facie evidentiary

8    effect of [TGP's] registration tends to impair" OKI's use of its mark; (c) and its mark "has been

9    denied registration … on the basis of TGP's" registrations. *See* OKI's First and Second

10    [Counter]Claims at ¶¶ 27, 29. The PTO decision denying registration finds that there would be a

11    likelihood of confusion between the marks.

12    Therefore, this core trademark issue is also ripe for summary judgment.

**Anemostat's Statement:**

14    Anemostat's *ex parte* and *inter partes* reexamination requests of U.S. Pat. No. 7,090,906 have

15    both been granted by the U.S. Patent Office. Anemostat's reexaminations are currently proceeding

16    and have not been resolved.

17                                   **3.    MOTIONS**

18    TGP intends to promptly move for summary judgment on all core non-patent issues in the

19    case, as discussed above, and seeks a stay of discovery until those motions are resolved.

20    For the reasons noted above, OKI believes strongly that discovery cannot be stayed, and that

21    dispositive motions in the absence of discovery are premature.

22

23                          **4.    AMENDMENT OF PLEADINGS**

24    TGP seeks leave now to file the Seventh and Eighth Counterclaims for declaratory judgments

25    attached in Exhibit A hereto (without Exhibits). TGP will then promptly move for summary judgment

26    on those new counterclaims. TGP also seeks leave to amend paragraph 96 of its Sixth Counterclaim

27    to correct a typographical error, changing "15 U.S.C. § 1125(a)(2)" to "15 U.S.C. § 1125(a)(1)"; OKI

28    does not oppose this amendment. TGP also seeks leave to amend its trademark claims to withdraw its

*FREELAND COOPER & FOREMAN LLP*
*150 Spear Street, Suite 1800*
*San Francisco, California 94105*

1  claim on its first registration, to simplify this case.  The proposed amended claims are also shown in

2  Exhibit A.

3      O'Keeffe's reserves the right to respond to amended pleadings by moving to add new parties

4  claims and defenses.

5                          **5.    DISCOVERY**

6      TGP has served a first set of Interrogatories, Requests for Admission and Requests for

7  Production of Documents and Things.  O'Keeffe's has served responses to this written discovery.

8  O'Keeffe's has also served on TGP a first set of Interrogatories, and Requests for Production of

9  Documents and Things.  Neither of TGP's responses is yet due.

10  **Proposed Discovery Plan and Schedule**

11      TGP contends that the Court should stay of discovery until it decides the summary judgment

12  issues noted above.  TGP contends this makes sense not only because the core issues can be resolved

13  without discovery, but also because, based on OKI's limited initial discovery responses and the

14  parties' failure to negotiate to date a stipulated protective order, discovery is likely to be a time-

15  consuming process involving expensive motions practice.  TGP agrees with the proposed schedule

16  below only if its request to stay discovery is denied.

17      The parties propose the following discovery schedule for the non-patent claims, in light of the

18  stay of the patent claim pending re-examination. At this time limited discovery has actually been

19  exchanged, so the parties cannot know the scope of the documentary record, the likely number of

20  depositions, and such other discovery matters that will directly affect the preparations for and

21  scheduling of the trial in this matter:

22          Fact Discovery cut-off: October 31, 2008

23          Expert Designations: December 1, 2008

24          Expert Rebuttal Reports:  January 5, 2009

25          Expert Discovery Cut-Off: February 20, 2009

26          Dispositive Motions Deadline: March 27, 2009

27          Final Pre-Trial Conference: May 15, 2009

28          Jury Trial: June 8, 2009.

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    **Other Issues**

2        (1)    The parties have not agreed upon the number of interrogatories and depositions that

3    should apply to this action.

4        (2)    The parties plan to seek a modification of the default Protective Order in this District.

5                                    **6.    RELIEF**

6        O'Keeffe's also seeks damages for defendants' unfair competition, false advertising and trade

7    libel affecting O'Keeffe's SuperLite I-XL product. Specifically, O'Keeffe's seeks injunctive relief and

8    recovery of money damages including the loss of its revenues resulting from defendants' actions, and

9    also for its loss of market share and related damages, resulting from defendants tortuous conduct.

10        Anemostat and TGP seek declaratory relief that they do not infringe the '906 patent and that

11    the '906 patent is invalid and unenforceable, and seek costs and attorneys' fees.

12        TGP seeks an injunction prohibiting O'Keeffe's from using the SAFTIFIRE FRAMES mark

13    and any other mark confusingly similar to TGP's incontestable, registered FIREFRAMES mark.  TGP

14    seeks to enjoin O'Keeffe's from falsely advertising its SuperLite 1-XL product.  TGP seeks damages

15    based on that trademark infringement and false advertising, in an amount to be determined based on

16    expert analysis and discovery.

17                            **7.    SETTLEMENT AND ADR**

18        To date the parties have not engaged in ADR.   OKI requests a court-mediated settlement

19    conference at the earliest appropriate time.

20        TGP requests that the Court order a court-mediated settlement conference after the Court rules

21    on the summary judgment issues noted above, so that the parties may attempt to resolve any

22    remaining issues.

23                                **8.    SCHEDULING**

24        Without the need to conduct discovery and claim construction proceedings on the patent claim,

25    O'Keeffe's believes that the remaining claims can be ready for trial in approximately one year.

26                                **9.    OTHER MATTERS**

27        The parties are unaware of any other pertinent matters at this time.

28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1    Dated:  February  20, 2008            Respectfully Submitted,

2                                         FREELAND COOPER & FOREMAN LLP

3

4                                         By:        /s/ Daniel T. Bernhard
                                          Daniel T. Bernhard
5                                         Attorneys for Plaintiff, Counterdefendant and
                                          Counterclaimant O'KEEFFE'S, INC.

6                                         150 Spear Street, 18th Floor
7                                         San Francisco, CA  94105
                                          Telephone:     (415) 541-0200
8                                         Facsimile:     (415) 495-4332
                                          bernhard@freelandlaw.com

9

10   Dated:  February 20, 2008

11                                        KLARQUIST SPARKMAN, LLP

12

13                                        By:        /s/  Jeffrey S. Love
                                          Jeffrey S. Love
14                                        Attorneys for Defendant and
                                          Counterclaimant TECHNICAL GLASS
15                                        PRODUCTS

16                                        121 S.W. Salmon Street, Suite 1600
                                          Portland, OR 97204
17                                        Telephone:     (503) 595-5300
                                          Facsimile:     (503) 595-5301
18                                        Jeffrey.love@klarquist.com

19   Dated:  February 20, 2008

20                                        McCORMICK, PAULDING & HUBER LLP

21

22                                        By:        /s/  Kevin H. Vanderleeden
                                          Kevin H. Vanderleeden
23                                        Attorneys for Defendant and
                                          Counterclaimant ANEMOSTAT

24                                        CityPlace II, 185 Asylum Street
25                                        Hartford, Connecticut 06103
                                          Telephone:     (860) 549-5290
26                                        Facsimile:     (860) 527-0464
                                          vanderleeden@ip-lawyers.com

27

28

FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105

1   Jeffrey S. Love (State Bar No. 195068)
    jeffrey.love@klarquist.com
2   Kelly I. Dunham (*Pro Hac Vice*)
    kelly.dunham@klarquist.com
3   Robert F. Scotti (*Pro Hac Vice*)
    robert.scotti@klarquist.com
4   Klarquist Sparkman, LLP
5   121 S.W. Salmon Street, Suite 1600
    Portland, OR  97204-2988
6   Telephone:  (503) 595-5300
    Facsimile:  (503) 595-5301
7

8   Eric L. Wesenberg (State Bar No. 139696)
    ewesenberg@orrick.com
9   Gabriel M. Ramsey (State Bar No. 209218)
    gramsey@orrick.com
10  Orrick, Herrington & Sutcliffe LLP
11  1000 Marsh Road
    Menlo Park, CA 94025-1015
12  Telephone:  (650) 614-7400
    Facsimile:  (650) 614-7401
13

14  Attorneys for Defendant and TGP,
    Technical Glass Products

15

16          **UNITED STATES DISTRICT COURT**

17         **NORTHERN DISTRICT OF CALIFORNIA**

18              **SAN JOSE DIVISION**

| | |
|---|---|
| 19  O'KEEFFE'S, INC., | CASE NO.:  C 07-cv-03535 JF |
| 20         Plaintiff, | |
| 21       v. | **SUPPLEMENTAL COUNTERCLAIMS OF DEFENDANT TECHNICAL GLASS PRODUCTS** |
| 22  TECHNICAL GLASS PRODUCTS, ANEMOSTAT, and PILKINGTON PLC, | **JURY TRIAL DEMANDED** |
| 23       Defendants. | |
| 24 | |
| 25  AND RELATED COUNTERCLAIMS. | |

26

27

28

**EXHIBIT A:**
**Proposed Supplemental**
**Counterclaims of TGP**

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP -- Case No.:  07-3535JF

J.R. Four Ltd., a Washington corporation, does business as "Technical Glass Products" ("TGP" or "Defendant"). It pleads the following Supplemental Counterclaims in response to the Complaint filed in this action by Plaintiff O'Keeffe's, Inc. ("O'Keeffe's"):

## SUPPLEMENTAL COUNTERCLAIMS

### Parties

1.      J.R. Four Ltd. is a Washington corporation with its principal place of business at 600 Sixth St. South, Kirkland, WA 98033, that does business as Technical Glass Products ("TGP").

2.      O'Keeffe's, Inc. is a California corporation with a principal place of business at 325 Newhall Street, San Francisco, CA 94124-1432.

### Jurisdiction

3.      These counterclaims arise under the patent laws of the United States, Title 35 U.S.C., the Trademark Act of 1946, 15 U.S.C. §§ 1051-1127, the laws of the States of California, and the common law. This Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. §§ 1331, 1338, 1367, 2201, 2202 and 15 U.S.C. § 1121.

4.      O'Keeffe's purports to be the owner of the U.S. Patent No. 7,090,906 (hereinafter "the '906 patent").

5.      O'Keeffe's has sued TGP, alleging infringement of the '906 patent. TGP denies that that it infringes the '906 patent, and alleges that the '906 patent is invalid and unenforceable.

### FIRST COUNTERCLAIM – DECLARATION OF NONINFRINGEMENT

6.      TGP realleges and incorporates by reference the allegations above.

7.      An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between O'Keeffe's and TGP as to the non-infringement of the '906 patent.

8.      TGP has not directly or indirectly infringed any valid and/or enforceable claim of the '906 patent.

9.      TGP seeks a declaration that it does not infringe the '906 Patent.

### SECOND COUNTERCLAIM – DECLARATION OF PATENT INVALIDITY

10.     TGP realleges and incorporates by reference the above allegations.

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1        11.    An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists

2    between O'Keeffe's and TGP as to the invalidity of the '906 patent.

3        12.    The '906 patent is invalid for failure to satisfy the conditions for patentability

4    specified under 35 U.S.C., including but not limited to §§101, 102, 103, and 112.

5        13.    TGP seeks a declaration that the '906 patent is invalid.

6    **THIRD COUNTERCLAIM – DECLARATION OF PATENT UNENFORCEABILITY**

7        14.    TGP realleges and incorporates by reference the above allegations.

8

9    * * * [For simplicity, Paragraphs 15-59 and all exhibits except the new exhibits are omitted; they

10   will be included in the filed counterclaims] * * *

11

12       60. TGP is entitled to a declaration that the '906 Patent is unenforceable.

13   **FOURTH COUNTERCLAIM –TRADEMARK INFRINGEMENT**

14       61. TGP realleges and incorporates by reference the allegations in counterclaim paragraphs

15   1-5 above.

16       62. [TGP owns rights in the mark FIREFRAMES arising out of use of the mark by a

17   predecessor-in-interest in connection with fire-resistant wooden door jambs that began at least as

18   early as 1996.] TGP [also] owns rights in the mark FIREFRAMES based upon its use of the mark

19   with metal door and window framing products since at least as early as 2000.

20       63. TGP owns an [two] incontestable U.S. trademark registration[s] for the FIREFRAMES

21   mark: [Registration No. 2,162,531 for use of the mark FIREFRAMES in connection with "wooden

22   door jambs"; and] Registration No. 2,529,865 for use of the mark FIREFRAMES in connection with

23   "door casings of metal, door frames of metal, door jambs of metal, door panels of metal, metal door

24   frames, metal door panels, metal door units, metal window frames, metal window sills, window

25   casements of metal." A True copy[ies] of the U.S. Trademark Office ("PTO") record[s] of this[ese]

26   registration[s], as shown on the PTO website, is [are] attached hereto as Exhibit[s] C [and D].

27

28                                                  SUPPLEMENTAL COUNTERCLAIMS OF
                                 -2-               DEFENDANT TGP-- Case No.: 07-3535 JF

1    64. TGP features the FIREFRAMES mark in marketing materials, including on its website at

2  www.fireglass.com, in advertising and promoting fire-resistant TGP glass and framing products.

3  Exhibits E-H hereto are examples of the use of the mark on its website for the following series of

4  TGP products:  FIREFRAMES® Heat Barrier Series (Exhibit E hereto); FIREFRAMES®

5  Curtainwall Series (Exhibit F hereto); FIREFRAMES® Hardwood Series (Exhibit G), and

6  FIREFRAMES® Designer Series (Exhibit H).

7    65. TGP has spent, and continues to spend, thousands of dollars annually to promote

8  products featuring the FIREFRAMES mark.  TGP enjoys valuable goodwill in that mark.

9    66. Knowing of TGP's prior registration of the FIREFRAMES mark, on or about May 18,

10  2006, O'Keeffe's filed an application number 78/886,746 (Exhibit I hereto) with the U.S. Trademark

11  Office to register the mark SAFTIFIRE FRAMES for use in connection with "Fire and safety rated

12  panel systems comprised primarily of metal goods and consisting of wall panels, windows, and

13  doors, all sold as a unit."  On or about June 15, 2007, the U.S. Trademark Office issued a final

14  refusal to register that mark to O'Keeffe's.

15    67. The PTO refused to register the mark SAFTIFIRE FRAMES to O'Keeffe's because the

16  PTO found it confusingly similar to TGP's registered FIREFRAMES mark (*see* Exhibit I).

17    68. Knowing of TGP's prior registration of its FIREFRAMES mark, O'Keeffe's paid Google

18  to link to one of O'Keeffe's websites, http://www.safti.com/, in search results for the term

19  "FIREFRAMES."  As a result, a Google database search for "FIREFRAMES" returns a page that

20  features a link to http://www.safti.com/, a website of O'Keeffe's "Safti" division, as shown in

21  Exhibit J attached hereto.

22    69. The SAFTIFIRE FRAMES mark is confusingly similar to TGP's FIREFRAMES mark.

23    70. O'Keeffe's uses the SAFTIFIRE FRAMES mark to market products similar to TGP's

24  FIREFRAMES® products to potential customers of TGP's FIREFRAMES® products.

25    71. O'Keeffe's use of the SAFTIFIRE FRAMES mark has and is likely to continue to

26  deceive or cause confusion or mistake among members of the public.

27

28

1   72. O'Keeffe's use of the SAFTIFIRE FRAMES is without the consent of TGP, and over

2   TGP's objections.   It has caused, and unless restrained by this Court will continue to cause, serious

3   and irreparable injury to TGP and the goodwill associated with TGP's FIREFRAMES mark.

4   73. The acts of O'Keeffe's constitutes trademark infringement under Section 32(1) of the

5   Lanham Act (15 U.S.C. § 1114(1)), and California common law.

6   74. O'Keeffe's use of the SAFTIFIRE FRAMES mark was made with actual knowledge of

7   TGP's rights in the FIREFRAMES mark.

8   75. O'Keeffe's use of the SAFTIFIRE FRAMES mark as alleged herein is likely to cause

9   confusion, mistake, or deception as to the source, sponsorship, or approval of the products of

10   O'Keeffe's.  Members of the public, including potential customers, are likely to believe that

11   O'Keeffe's products are in some way connected with, sponsored by, licensed by, or otherwise

12   related to TGP.

13   76. O'Keeffe's acts of trademark infringement are willful, and have caused TGP to suffer

14   monetary damages and, if not enjoined, will cause TGP to sustain additional monetary damages,

15   loss, and injury, and resulted in wrongful profits to O'Keeffe's, in amounts to be determined in this

16   action.

17   77. TGP is without an adequate remedy at law.

18   **FIFTH COUNTERCLAIM –SECTION 43(A) LANHAM ACT VIOLATIONS**

19   78. TGP realleges and incorporates by reference the allegations in its Fourth Counterclaim

20   above.

21   79. O'Keeffe's activities described herein violate Section 43(a) of the Lanham Act, 15 U.S.C.

22   § 1125(a)(1).

23   80. O'Keeffe's has sold or offered goods for sale in interstate commerce in a manner likely to

24   cause confusion, mistake, or deception as to the source, sponsorship, or approval of those products

25   without authorization from TGP.

26   81. On information and belief, O'Keeffe's conduct alleged herein has been willful and

27   designed to cause confusion or mistake.

28

-4-                SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1

## SIXTH COUNTERCLAIM –FALSE ADVERTISING

2

## AND UNLAWFUL TRADE PRACTICES

3      82. TGP realleges and incorporates by reference the allegations in counterclaim paragraphs

4   1-5 above.

5      83. O'Keeffe's and its "SAFTI" division, also known as its "SAFTI*FIRST*" division, market

6   and sell in California and across the United States a glass product known as "SuperLite I-XL,"

7   which they market as a "fire-rated glazing material."

8      84. O'Keeffe's SuperLite I-XL product has not successfully passed the "hose stream" test. In

9   the U.S., the hose stream test is required for any fire-rated glazing to receive a rating higher than 20

10   minutes.  This applies to every state in the country and can be found in standards such as UL9,

11   UL10B, UBC Standards 7-2 and 7-4, and International Building Code ("IBC") §715.

12      85. In addition, O'Keeffe's SuperLite I-XL product does not provide, or sometimes does not

13   provide, substantial fire protection from one side.  If a significant fire breaks out on the non-coated

14   side of the glass, there is a high probability that glass will collapse, providing no protection at all.

15      86.  O'Keeffe's sells its SuperLite I-XL product with a WHI label showing a 45/60 minute

16   rating without a hose stream test.  WHI refers to Warnock Hersey International, Inc., a testing

17   company located in Wisconsin that tests glass for compliance with fire and safety standards.

18      87. O'Keeffe's markets its SuperLite I-XL product with advertisements that state, among

19   other things, that the product is:

20   • "Choose the Clear Fire Protective Solution that Provides the Best Value"

21   • "Fully approved for 20 minute applications"

22   • "Approved by the GSA and AHJs as an alternate material for 45 and 60 minute

23      applications without hose stream in accordance with IBC 104.11"

24   • "More cost-effective than safety-rated ceramics"

25      88. O'Keeffe's advertising statements alleged in the above paragraph are materially false and

26   misleading.

27      89. IBC 104.11 (2006) provides in part:

28

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> 104.11 Alternative materials .... The provisions of this code are not intended to
> prevent the installation of any material ... provided that any such alternative has been
> approved. An alternative material ... shall be approved where the building official
> finds ... that the material ... is, for the purpose intended, at least the equivalent of that
> prescribed in this code in ... fire resistance ... and safety.

90. O'Keeffe's SuperLite I-XL product is not "at least the equivalent" in "fire resistance" and "safety" of glass products fire rated for 45 and 60 minute applications, because, for example, they do not pass the hose stream test, and they do not provide substantial fire protection from one side.

91. O'Keeffe's is misleading its customers and building officials by its efforts to induce and assist them to approve and use its SuperLite I-XL product as an "alternative material" under IBC 104.11 for situations where 45 and 60 minute fire rating is required.

92. It is materially misleading for O'Keeffe's to market and sell its SuperLite I-XL product with that WHI label and the advertising statements alleged above.

93. O'Keeffe's use of that WHI label, the advertising statements alleged above and similar statements has a tendency to mislead customers, building officials and the public into believing that the product passes the fire safety tests for the 45/60 minute rating, when in fact the product does not, or that the product is "at least the equivalent" in "fire resistance" and "safety" of products that do pass the fire safety tests for the 45/60 minute rating, when in fact it is not.

94. It is potentially dangerous to use O'Keeffe's SuperLite I-XL product in locations requiring a product that has passed the fire safety tests for the 45/60 minute rating.

95. Customers have been misled by O'Keeffe's marketing of its SuperLite I-XL product into buying the product for use in locations where it is not suitable and is a potential danger. At least one such customer in California used the product in a building, but the product then failed a building inspection due to its failure to meet the fire safety tests for the 45/60 minute rating. That customer had to remove it, and replaced it with a TGP product that does meet code.

96. O'Keeffe's marketing and sale of its SuperLite I-XL product as alleged above constitutes false advertising pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)[(2)](1) and

1  unlawful trade practices in violation of California Business & Professions Code § 17200 et. seq. and

2  §17500 et seq.

3      97. O'Keeffe's sells its SuperLite I-XL product for less money than competing products

4  offered by TGP and others that do pass the fire safety tests for the 45/60 minute rating.  O'Keeffe's

5  advertises that cost advantage by, for example (as alleged above), stating in advertisements that its

6  SuperLite I-XL product is "More cost-effective than safety-rated ceramics" and a "Fire Protective

7  Solution that Provides the Best Value."  As a result, TGP and others have lost sales of competing

8  products that do meet the fire safety tests for the 45/60 minute rating.

9      98. O'Keeffe's false advertising and unlawful trade practices alleged above are causing and

10  will continue to cause irreparable harm to TGP, including loss of customers for TGP's competing

11  products and loss of TGP's goodwill in those products and their trademarks, for which TGP has no

12  adequate remedy at law.

13      99. On information and belief, the acts of O'Keeffe's alleged herein were undertaken

14  willfully and with the intention of causing confusion, mistake or deception.

15      **SEVENTH COUNTERCLAIM – DECLARATORY JUDGMENT**

16  **(Declaring That Hose Stream Test Required By Code Sections 715.4 and 715.5 for Glass in**

17  **Doors and Windows Cannot Be Waived Under Sections 104.11 or 715.3)**

18      100.    TGP realleges and incorporates by reference the above allegations.

19      101.    An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists

20  between O'Keeffe's ("OKI") and TGP as to the parties' rights to have local building authorities

21  waive fire resistance standards, including the "hose stream test," for glass windows and doors under

22  Section 104.11 of the International Building Code ("IBC"), 2003 and 2006 Editions, either

23  independently or as referenced in Section 715.3 of IBC (2006).  IBC 104.11 and/or 715.3 have been

24  adopted by 37 states, including California (where OKI is headquartered) and Washington (where

25  TGP is headquartered).

26      102.    California adopted Chapter 7 of IBC 2006 in material part (with amendments),

27  including Section 715.3 (without amendments), as part of the California Building Code (2007)

28

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

("CBC") effective January 1, 2008. **Exhibit K** hereto is a true copy of the California Building Code (2007), Title 24, Part 2, California Code of Regulations, Sections 101.1 – 101.3, 701, 702, and 715, including 715.3. CBC Section 715.3 refers to IBC section 104.11. The CBC does not independently adopt section 104.11, but it does include it in Appendix Chapter 1 to the CBC, and a true copy of it is also attached in **Exhibit K.**

103.    Washington adopted Chapters 1 and 7 of IBC 2006 in material part (with amendments), including Sections 104.11 and 715.3 (without amendments), as part of the Washington State Building Code, Chapter 51-50 WAC, effective July 1, 2007. *See* WAC 51-50-003. **Exhibit L** hereto is a true copy of IBC (2006) Sections 104.11, 701, 702 and 715 as adopted by the State of Washington.

104.    Seventeen other states have also adopted Chapters 1 and 7 of IBC 2006 in material part, including IBC Sections 104.11 and 715.3. The following chart lists the States that have adopted IBC 2006 in material part, and is adapted from the list on the website of the International Code Council ("ICC") that promulgates the IBC (see http://www.iccsafe.org/government/adoption.html and http://www.iccsafe.org/government/stateadoptions.xls):

| 19 States – 2006 IBC |
| --- |
| Alabama |
| California |
| Georgia |
| Hawaii |
| Iowa |
| Kentucky |
| Louisiana |
| Maryland |
| Minnesota |
| Montana |
| New Hampshire |
| New Jersey |
| Ohio |
| Oklahoma |
| Pennsylvania |

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

| Rhode Island |
| Tennessee |
| Utah |
| Washington |

105.    Eighteen states have adopted Section 104.11 and Chapter 7 of IBC 2003 Edition in material part. Section 104.11 is identical in the 2003 and 2006 IBC Editions. Chapter 7 of IBC 2003 and 2006 are identical for all material purposes, except that the 2003 Edition did not include the current Section 715.3. **Exhibit M** hereto is a true copy of IBC (2003) Sections 104.11, 701, 702 and 715. The following chart identifying these eighteen states is adapted from the list on the website of the International Code Council ("ICC"), which promulgates the IBC (see http://www.iccsafe.org/government/adoption.html and http://www.iccsafe.org/government/stateadoptions.xls):

**18 States – 2003 IBC**
Alaska
Connecticut
Florida
Idaho
Kansas
Maine
Massachusetts
Michigan
Nevada
New Mexico
New York
North Carolina
Oregon
South Carolina
Texas
Vermont
Virginia
West Virginia

SUPPLEMENTAL COUNTERCLAIMS OF DEFENDANT TGP-- Case No.: 07-3535 JF

1    106.    IBC (2003 and 2006), as adopted by the states alleged above, require glass to satisfy

2    the hose stream test criteria in NFPA 252 or 257 to be used in certain building locations specified by

3    those codes that require fire resistant glass in doors and windows.

4    107.    NFPA 257 prescribes standardized fire test and hose stream test procedures that apply

5    to the evaluation of fire window assemblies to retard the spread of fire through openings in fire

6    resistance-rated walls. **Exhibit N** hereto is a true copy of NFPA 257 (2007 Edition).

7    108.    NFPA 252 prescribes standardized fire test and hose stream test procedures that apply

8    to fire door assemblies, including windows in such door assemblies, intended to be used to retard the

9    spread of fire through door openings in fire resistive walls. The standard is intended to evaluate the

10    ability of a door assembly, including any windows therein, to remain in a wall opening during a

11    prescribed fire test exposure, which is then followed by the application of a prescribed hose stream.

12    **Exhibit O** hereto is a true copy of NFPA 252 (2003 and 2008 Editions).

13    109.    IBC Chapter 7, titled "Fire-Resistance-Rated Construction," governs the fire-

14    resistance standards for the glass that TGP and OKI sell in most states, to "safeguard against the

15    spread of fire and smoke within a building and the spread of fire to or from buildings." IBC Section

16    701.1.

17    110.    Within Chapter 7, Section 715 ("Opening Protectives") is most pertinent to the

18    standards governing fire resistant glass. An "opening" under the Code generally means a glass

19    window or a door that may include a glass window. Section 715's requirements apply to glass

20    "openings" in other sections of the code, as well. *See, e.g.,* IBC Sections 715.1 ("Opening

21    protectives required by other sections of this code shall comply with the provisions of this section");

22    704.12 ("Windows in exterior walls required to have protected openings … shall comply with

23    Section 715.5"), 706.7 ("Openings in a fire barrier shall be protected in accordance with Section

24    715."), 707.7 ("Openings in a shaft enclosure shall be protected in accordance with Section 715"),

25    708.6 ("Openings in a fire partition shall be protected in accordance with Section 715."); 709.5

26    ("Openings in a smoke barrier shall be protected in accordance with Section 715").

27

28

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1    111.    Within Section 715, the section most pertinent to glass standards is IBC Section

2    715.5, "Fire-protection-rated glazing," which provides in material part: "Glazing in fire window

3    assemblies shall be fire protection rated in accordance with this section and Table 715.5.  Glazing in

4    fire door assemblies shall comply with Section 715.4.6.  Fire-protection rated glazing shall be tested

5    in accordance with and shall meet the acceptance criteria of NFPA 257...."  Section 715.4.6 permits

6    glazing in fire doors if it meets the requirements of Section 715.4, which require the glass and door

7    assemblies to conform to the test requirements of Section 715.4.1 - .4, which require testing in

8    accordance with NFPA 252 (or UL 10C or 10B).  The testing requirements under NFPA 252 and

9    257 (and the testing requirements under UL 10C and 10B) require that the glass be subjected to both

10    a "fire test" and a "hose stream test."

11    112.    Superlite 1-XL does not pass the hose stream test in NFPA 252 and 257.  **Exhibit P**

12    hereto is a true copy of a report of a test of Superlite 1-XL in which it failed that hose stream test.

13    113.    OKI advertises, markets and sells its Superlite 1-XL product as a product that passes

14    the fire test but not the hose stream test in NFPA 252 and 257.

15    114.    OKI advertises, markets and sells its Superlite 1-XL product as a product that can be

16    used in building locations in which the CBC (2001 or 2007) or IBC (2003 or 2006) require glass that

17    passes both the fire test and hose stream test in NFPA 252 and 257, if Superlite 1-XL is approved as

18    "alternative fire protection glazing" by local building officials.

19    115.    **Exhibit Q** hereto is are true copies of two pages on an OKI website.  The first

20    webpage provides product information on Superlite 1-XL.  It states in part:

21        • "Positive Pressure fire rated to 45/60-minutes without hose stream";
22        • "For information on obtaining AHJ approval for SuperLite 1-XL click here";
          • "Superlite is fire tested to ... NFPA 252, NFPA 257....  SuperLite 1-XL requires AHJ
23          approval because it carries a conditional listing similar to glass block products";
          • "Standards ... NFPA 252, NFPA 257....  This product requires AHJ approval
24          because it does not pass the hose stream portion of the fire test."

25    116.    **Exhibit Q**, second webpage, includes an offer for a download of an OKI publication

26    titled Technical Bulletin #9-2006, that "is intended to provide design professionals and authorities

27

28

SUPPLEMENTAL COUNTERCLAIMS OF
                                                    DEFENDANT TGP-- Case No.: 07-3535 JF

having jurisdiction (AHJ) with information regarding the performance of Superlite 1-XL for the purpose of either specifying or approving the product for use as alternative fire protection glazing."

117.    **Exhibit R** hereto is a true copy of OKI's Technical Bulletin #9-2006. It lists at Appendix B projects in almost every state in the country in which it has sold SuperLite 1-XL for use in buildings as 45 or 60 minute fire rated glass. It quotes on pages 3 and 6 IBC (2003) section 104.11, "Alternative materials, design and methods of construction and equipment." It states on pages 3 that, "The 2003 International Building Code ... allow[s] for the use of alternative materials such as SuperLite 1-XL," and that "SuperLite 1-XL meets the equivalency test [in IBC 104.11] by providing the following: ... **Fire Resistance -- *SuperLite 1-XL*** was fire tested to NFPA 252, NFPA 257 ... without the hose stream. ***SuperLite 1-XL*** is listed and labeled by Warnock Hersey, Inc. ...."

118.    **Exhibit R** at the bottom of page 4 makes the argument, which OKI has made elsewhere to code officials and repeated in this litigation, that SuperLite 1-XL is safer, even though it does not pass the hose stream test, than some alternative products that do pass the hose stream test, because it offers some protection against radiant heat.

119.    OKI has used that argument successfully in obtaining sales and approval of its SuperLite 1-XL product for use in locations that by code require a glass that passes the hose stream test. **Exhibit P** hereto is a true copy of an OKI marketing publication for SuperLite 1-XL, which states in part: "Approved by the GSA and AHJs as an alternate material for 45 and 60 minute applications without hose stream in accordance with IBC 104.11."

120.    This raises an issue of law as to whether IBC 104.11 authorizes local building officials to waive the hose stream test required by state building codes, based on arguments that the product provides some other safety benefit, such as protection against radiant heat.

121.    TGP disputes OKI's position on this legal issue. **Exhibit Q** hereto are true copies of pages from a TGP website in which TGP warns the public against the use of Superlite 1-XL for certain locations requiring fire rated glass because it does not satisfy code requirements, including the hose stream test. It states in part:

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

The fire-rated glass product, SuperLite I-XL, is advertised as carrying 45 and 60 minute fire ratings. However, closer inspection reveals that the listing has significant limitations:

SuperLite I-XL does not pass the mandatory hose stream test – a requirement for any rating in the U.S. over 20 minutes. There are dozens of alternative choices with ratings of 45 minutes or more, from multiple manufacturers. SuperLite I-XL is the only product that does NOT comply with the standards – yet still claims to have a 45-60 minute fire-rating.

122.    The parties have an actual controversy as to whether, under Section 715.3 of the California Building Code (2007), which refers to IBC (2006) Section 104.11, or under the building codes of the other states that have adopted IBC (2003 or 2006) 104.11, local building officials have authority to waive the hose stream test for fire rated glass.

123.    OKI refers to this controversy in its Counterclaim in this action at paragraph 12(b) and Exhibit C ("TGP has misrepresented the following … (b) SuperLite 1-XL is hazardous or somehow otherwise deficient for general use because it has not passed the 'hose-stream' test which is 'critical' to a glazing product's fire-safety characteristics and features."). **Exhibit S** hereto is a true copy of two TGP documents, titled SuperLite 1-XL Informational Bulletin and SuperLIte 1-XL Alert, that OKI attached as Exhibit C to its counterclaim as evidence of this controversy between the parties.

124.    TGP seeks a declaration that the hose stream test is a mandatory test under state building codes that cannot be waived by local building officials.

125.    TGP seeks an injunction pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1116(a) and 1125(a) enjoining OKI from further inducing local building officials to waive the hose stream test for SuperLite 1-XL, from telling customers that the hose stream test can be waived under IBC 104.11 or that OKI's SuperLite 1-XL product can be approved as an "alternate material" under IBC 104.11 even though it cannot pass the hose stream test, and from selling SuperLite 1-XL for use in locations where it knows that state code requires glass that passes the hose stream test.

## EIGHTH COUNTERCLAIM – DECLARATORY JUDGMENT

### (Declaring that for Uses Covered by Building Code Section 715.5.2 OKI's SuperLite 1-XL

### Shall Be Assigned No More Than a 20 Minute Rating)

126.    TGP realleges and incorporates by reference the above allegations.

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

127.    An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists between O'Keeffe's ("OKI") and TGP as to the meaning of Code Section 715.5.2 of the International Building Code ("IBC") 2003 and 2006 Editions, as adopted by 37 states, including California (CBC 2007 Section 715.5.2) and Washington.

128.    OKI advertises its SuperLite 1-XL glass product has being entitled to a 45 or 60 minute rating

129.    **Exhibit P** hereto is a true copy of a fire test conducted in compliance with NFPA 257, finding that one side of SuperLite 1-XL failed the fire test after 22 minutes.

130.    OKI advertises SuperLite 1-XL as having as having "been fire tested for both 45 and 60 minutes without the hose stream test" (**Exhibit R** at p. 1), and as approved "for 45 and 60 minute applications without hose stream in accordance with IBC 104.11" (**Exhibit Q**).  OKI advertises that it has sold SuperLite 1-XL with a 45 or 60 minute fire rating in almost every state in theU.S. from 2004 to 2006 (**Exhibit R** Appendix B).

131.    Only one side of SuperLite 1-XL can pass the fire test, even without the hose stream not, for 45 or 60 minutes.  The other side of that product cannot pass the test for more than about 20 minutes.

132.    IBC (2003 and 2006) Section 715.5.2 provides that for certain uses, such as uses in "fire partitions," glass windows must be tested on both sides and rated in accordance with "the shortest duration obtained from the two tests conducted in compliance with NFPA 257."  True copies of CBC 2007 Section 715.5.2 and IBC Section 715.5.2 (2003 and 2006) are attached hereto as **Exhibits K, L and M**.

133.    OKI markets SuperLite 1-XL for uses that include use in fire partitions covered by IBC Section 715.5.2.

134.    OKI does not rate SuperLite 1-XL in accordance with the shortest duration obtained from testing both sides.  It rates it in accordance with the highest duration obtainable from testing the two sides.

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1    135.   A dispute exists between the parties over whether SuperLite 1-XL is over-rated due to

2    its failure to comply with the "shortest duration" rating requirement of Section IBC Section 715.5.2.

3    OKI refers to this dispute in its Counterclaim in this action at paragraph 12(a) and Exhibit C ("TGP

4    has misrepresented the following …: (a) SuperLite 1-XL is hazardous or somehow otherwise

5    deficient for its standard accepted uses because it is 'directional,' meaning that the reflective coating

6    is applied to only one side of the two exposed glass surfaces, and thus 'if a fire breaks out on the

7    non-coated side of the glass there is a high probability that the glass will collapse, providing no

8    protection at all …'"). **Exhibit S** hereto is a true copy of two TGP documents, titled SuperLite 1-XL

9    Informational Bulletin and SuperLite 1-XL Alert, that OKI attached as Exhibit C to its counterclaim

10   as evidence of this controversy between the parties.

11   136.   TGP seeks a declaration that, for uses referenced in Code Section 715.5.2, SuperLite

12   1-XL must be assigned a fire protection rating in accordance with "the shortest duration obtained

13   from the two tests conducted in compliance with NFPA 257," which is about 20 minutes, and not a

14   45 or 60 minute rating.

15   137.   TGP seeks an injunction pursuant to Section 43(a) of the Lanham Act, 15 U.S.C.

16   §§ 1116(a) and 1125(a) enjoining OKI from further advertising SuperLite 1-XL as having a fire

17   protection rating in excess of 20 minutes for uses covered by Section 715.5.2.

18                                    **Prayer**

19   WHEREFORE, TGP prays for entry of Judgment for TGP and against Plaintiff O'Keeffe's:

20       A.   Dismissing Plaintiff's claims against TGP with prejudice;

21       B.   On TGP's First, Second and Third Counterclaims, declaring that the '906

22            Patent is not infringed by TGP, is invalid and is unenforceable in light of 35

23            U.S.C. §§101, 102, 103, and 112;

24       C.   On TGP's Fourth and Fifth Counterclaims, for O'Keeffe's willful

25            infringement of TGP's registered FIREFRAMES mark and Lanham Act

26            violations, awarding TGP treble damages it has suffered and will suffer

27            therefore, all profits wrongfully derived thereby, and prejudgment interest

28                                    SUPPLEMENTAL COUNTERCLAIMS OF
                                     DEFENDANT TGP-- Case No.: 07-3535 JF
-15-

1    pursuant to 15 U.S.C. §§ 1114 and 1117, and permanently enjoining

2    O'Keeffe's, its agents, servants, employees, and attorneys, and all other

3    persons in active concert or participation with them, from using the

4    SAFTIFIRE FRAMES mark and any variant thereof that is confusingly

5    similar to TGP's registered FIREFRAMES mark pursuant to 15 U.S.C.

6    § 1116;

7    D.    On TGP's Sixth Counterclaim, for O'Keeffe's false advertising and unlawful

8    trade practices, awarding TGP treble damages it has suffered and will suffer

9    therefore, all profits wrongfully derived thereby, exemplary damages, and

10    prejudgment interest pursuant to 15 U.S.C. §§ 1114 and 1117 and California

11    Business & Professions Code §§ 17202, 17205 and 17534, and permanently

12    enjoining O'Keeffe's, its agents, servants, employees, and attorneys, and all

13    other persons in active concert or participation with them, from mislabeling

14    products to give the impression they satisfy fire and safety requirements when

15    they do not pursuant to 15 U.S.C. § 1116 and California Business &

16    Professions Code §§ 17203 and 17535;

17    E.    On TGP's Seventh Counterclaim, declaring that local building officials lack

18    authority to waive the hose stream test under Section 104.11 of the IBC (2006

19    and 2003) as adopted by the 36 states alleged above, and enjoining OKI

20    pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1116(a) and

21    1125(a) from inducing local building officials in those states to waive the hose

22    stream test for SuperLite 1-XL, from telling customers that it may be so

23    waived, and from selling SuperLite 1-XL for use in building locations where

24    it knows that state code requires glass that passes the hose stream test;

25    F.    On TGP's Eighth Counterclaim, declaring that, for uses referenced in Code

26    Section 715.5.2, SuperLite 1-XL must be assigned a fire protection rating in

27    accordance with "the shortest duration obtained from the two tests conducted

28    SUPPLEMENTAL COUNTERCLAIMS OF
     DEFENDANT TGP-- Case No.: 07-3535 JF

-16-

1    in compliance with NFPA 257," which is about 20 minutes, and not a 45 or 60

2    minute rating, and enjoining OKI pursuant to Section 43(a) of the Lanham

3    Act, 15 U.S.C. §§ 1116(a) and 1125(a) from further advertising SuperLite 1-

4    XL as having a fire protection rating in excess of 20 minutes for uses covered

5    by Section 715.5.2;

6    G.    Awarding TGP its costs and reasonable attorneys' fees incurred herein under

7          15 U.S.C. § 1117 and California Business & Professions Code §§ 17202 and

8          17534;

9    H.    Awarding TGP its costs and reasonable attorneys' fees incurred herein under

10         35 U.S.C. § 285 because this is an exceptional case, and under 15 U.S.C.

11         § 1117 and California Business & Professions Code §§ 17202 and 17534; and

12   I.    For such other and further relief as the Court deems just and proper.

13                              **DEMAND FOR JURY TRIAL**

14   Technical Glass Products requests a jury trial on all issues triable by right to a jury.

15
16   Dated this ____ day of February, 2008

17                                   By: _____
                                          Jeffrey S. Love
18                                        jeffrey.love@klarquist.com
                                          Klarquist Sparkman, LLP
19                                        121 S.W. Salmon Street, Suite 1600
20   **EXHIBIT A:**                       Portland, OR  97204-2988
     **Proposed Supplemental**            Telephone:  (503) 595-5300
21   **Counterclaims of TGP**             Facsimile:  (503) 595-5301

22                                        Eric L. Wesenberg
23                                        ewesenberg@orrick.com
                                          Orrick, Herrington & Sutcliffe LLP
24                                        1000 Marsh Road
                                          Menlo Park, CA 94025-1015
25                                        Telephone: (650) 614-7400
                                          Facsimile: (650) 614-7401
26
27                                        Attorneys for Defendant Technical Glass Products

28
                                              SUPPLEMENTAL COUNTERCLAIMS OF
                          -17-                DEFENDANT TGP-- Case No.: 07-3535 JF