1  Jeffrey S. Love (State Bar No. 195068)
2  jeffrey.love@klarquist.com
   Todd Siegel (*Pro Hac Vice*)
3  Todd.siegel@klarquist.com
   Klarquist Sparkman, LLP
4  121 S.W. Salmon Street, Suite 1600
   Portland, OR  97204-2988
5  Telephone:  (503) 595-5300
   Facsimile:  (503) 595-5301
6
7  Eric L. Wesenberg (State Bar No. 139696)
   ewesenberg@orrick.com
8  Gabriel M. Ramsey (State Bar No. 209218)
   gramsey@orrick.com
9  Orrick, Herrington & Sutcliffe LLP
   1000 Marsh Road
10 Menlo Park, CA 94025-1015
   Telephone:  (650) 614-7400
11 Facsimile:  (650) 614-7401
12
   Attorneys for Defendant and Counterclaim Plaintiff
13 Technical Glass Products

14                  **UNITED STATES DISTRICT COURT**

15                 **NORTHERN DISTRICT OF CALIFORNIA**

16                       **SAN JOSE DIVISION**

17

18 O'KEEFFE'S, INC.,                    CASE NO.:  C 07-cv-03535 JF

19                 Plaintiff,           **SUPPLEMENTAL AND AMENDED**
                                        **COUNTERCLAIMS OF DEFENDANT**
20        v.                            **TECHNICAL GLASS PRODUCTS**

21 TECHNICAL GLASS PRODUCTS,            **JURY TRIAL DEMANDED**
   ANEMOSTAT, and PILKINGTON PLC,
22
                  Defendants.
23
   _____
24 AND RELATED COUNTERCLAIMS.

25

26

27

28

1        J.R. Four Ltd., a Washington corporation, does business as "Technical Glass Products"

2  ("TGP" or "Defendant").  TGP pleads the following Supplemental And Amended Counterclaims in

3  response to the Complaint filed in this action by Plaintiff O'Keeffe's, Inc. ("O'Keeffe's").

4                  **SUPPLEMENTAL AND AMENDED COUNTERCLAIMS**

5                              **Parties**

6        1.      J.R. Four Ltd. is a Washington corporation with its principal place of business at 600

7  Sixth St. South, Kirkland, WA 98033, that does business as Technical Glass Products ("TGP").

8        2.      O'Keeffe's, Inc. is a California corporation with a principal place of business at 325

9  Newhall Street, San Francisco, CA 94124-1432.

10                           **Jurisdiction**

11        3.      These counterclaims arise under the patent laws of the United States, Title 35 U.S.C.,

12  the Trademark Act of 1946, 15 U.S.C. §§ 1051-1127, the laws of the States of California, and the

13  common law.  The amount in controversy exceeds $75,000.  This Court has subject matter

14  jurisdiction over these counterclaims under 28 U.S.C. §§ 1331, 1332, 1338, 1367, 2201, 2202 and 15

15  U.S.C. § 1121.

16                     **General Allegations**

17        4.      O'Keeffe's purports to be the owner of the U.S. Patent No. 7,090,906 (hereinafter

18  "the '906 patent").

19        5.      O'Keeffe's has sued TGP, alleging infringement of the '906 patent.  TGP denies that

20  that it infringes the '906 patent, and alleges that the '906 patent is invalid and unenforceable.

21           **FIRST COUNTERCLAIM – DECLARATORY JUDGMENT**

22         **(Declaration That TGP Does Not Infringe The '906 Patent)**

23        6.      TGP realleges and incorporates by reference the allegations above.

24        7.      An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists

25  between O'Keeffe's and TGP as to the non-infringement of the '906 patent.

26        8.      TGP has not directly or indirectly infringed any valid and/or enforceable claim of the

27  '906 patent.

28

1    9.    TGP seeks a declaration that it does not infringe the '906 Patent.

2    **SECOND COUNTERCLAIM – DECLARATORY JUDGMENT**

3    **(Declaration That Each Claim Of The '906 Patent Is Invalid)**

4    10.    TGP realleges and incorporates by reference the above allegations.

5    11.    An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists

6    between O'Keeffe's and TGP as to the invalidity of the '906 patent.

7    12.    The '906 patent is invalid for failure to satisfy the conditions for patentability

8    specified under 35 U.S.C., including but not limited to §§ 101, 102, 103, and 112.

9    13.    TGP seeks a declaration that the '906 patent is invalid.

10    **THIRD COUNTERCLAIM – DECLARATORY JUDGMENT**

11    **(Declaration That The '906 Patent Is Unenforceable)**

12    14.    TGP realleges and incorporates by reference the above allegations.

13    15.    An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists

14    between O'Keeffe's and TGP as to the unenforceability of the '906 patent.

15    16.    The '906 patent is unenforceable, among other reasons, due to the inequitable conduct

16    of O'Keeffe's, its President, CEO and the purported "inventor" on the '906 patent William

17    O'Keeffe, and/or its patent counsel who prosecuted the '906 patent, in failing to submit to the U.S.

18    Patent and Trademark Office ("PTO") during prosecution of the '906 patent material prior art (the

19    "withheld prior art") of which they were aware.

20    17.    The withheld prior art includes:  U.S. Pat. No. 5,910,620 ("the '620 patent");

21    references cited in the '620 patent, such as the reference "Brochure--Firelite™ and Firelite Plus™,

22    Nippon Electric Glass Co., Ltd., Kirkland, WA, Sep. 1993, 8 pages"; TGP's prior art product

23    FireLite NT® and prior art brochures and other information on FireLite NT®.

24    18.    William O'Keeffe owed a duty of candor to the PTO during prosecution of the '906

25    patent.  This included a duty to disclose to the PTO material prior art of which he was aware.

26    19.    O'Keeffe's owed a duty of candor to the PTO during prosecution of the '906 patent.

27    This included a duty to disclose to the PTO material prior art of which it was aware.

28

20.     Attorneys at Fliesler Meyer LLP prosecuted the '906 patent.  They owed a duty of candor to the PTO during prosecution of the '906 patent.  This included a duty to disclose to the PTO material prior art of which any of them was aware.

21.     William O'Keeffe is a named "inventor" on the '620 patent.  He was aware of the '620 patent during the time the '906 patent was being prosecuted.  He did not disclose the '620 patent to the PTO during prosecution of the '906 patent.

22.     O'Keeffe's has owned the '620 Patent since it issued.  It was aware of the '620 patent during the time the '906 patent was being prosecuted.  It did not disclose the '620 patent to the PTO during prosecution of the '906 patent.

23.     Sheldon Meyer is a named partner of the law firm Fliesler Meyer LLP.  He prosecuted the '620 patent.  He was aware of the '620 patent during the time the '906 patent was being prosecuted.  He did not disclose the '620 patent to the PTO during prosecution of the '906 patent.

24.     The '620 patent is prior art to the '906 patent.

25.     The '620 patent issued on June 8, 1999, more than one year before the filing of the application for the '906 patent, and more than one year before the filing date of the earliest application to which the '906 patent claims priority.

26.     The '620 patent discloses information material to the patentability of claims initially filed with the '906 patent application, and to the patentability of amended claims filed during the prosecution of the '906 patent, and to the patentability of claims that ultimately issued in the '906 patent.

27.     The '620 patent discloses using a PET film (polyethylene terephthalate) on glass panes to obtain fire-rated glass (see Col. 3, lines 42—50).  It further discloses using steel in film on fire-rated glass (Col. 2, lines 60-65).

28.     Use of PET film on glass to obtain impact and/or fire-rated glass is material to all claims of the '906 patent.

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

29.    Claims 1-5 of the '906 patent each includes as a limitation a "fire resistant film [that] contains PET." Claim 6 of the '906 patent includes as a limitation, "adhering a fire resistant film of PET." In the prosecution history of the '906 patent, the examiner stated that the claims which issued as claims 1 and 5 were allowed because the prior art of record did not disclose use of PET film on glass.

30.    Use of steel in a glass film is material to claims 4 and 5 of the '906 patent.

31.    Claim 4 of the '906 patent claims "the fire resistant safety wire glass of claim 1, wherein said fire resistant film comprises a metal." Claim 5 claims "the fire resistant safety wire glass of claim 4, wherein said metal comprises stainless steel or read [sic.]."

32.    No prior art of record considered by the PTO during prosecution of the '906 patent disclosed a PET film in conjunction with fire-rated glass and using steel in a film coating.

33.    The '620 patent discloses laminated glass material to claims for laminated glass sought (and ultimately rejected by the PTO) during prosecution of the '906 patent prosecution.

34.    For the reasons alleged above, U.S. Patent Number 5,910,620 was highly material to the patentability of the claims sought during prosecution of the '906 patent prosecution.

35.    The failure of William O'Keeffe, O'Keeffe's, Sheldon Meyer and/or other attorneys at Fliesler Meyer LLP to disclose the '620 patent to the PTO during prosecution of the '906 patent was, on information and belief, made with intent to deceive the PTO. It was inequitable conduct.

36.    William O'Keeffe was aware, during the time the '906 patent was being prosecuted, of:  the reference cited on the face of the '620 patent titled "Brochure--Firelite™ and Firelite Plus™, Nippon Electric Glass Co., Ltd., Kirkland, WA, Sep. 1993, 8 pages"; TGP's FireLite NT® product; and brochures and other information on TGP's FireLite NT® product. Each of these references is material to the patentability of claims sought during prosecution of the '906 patent. William O'Keefe did not disclose any of these references to the PTO during prosecution of the '906 patent.

37.    O'Keeffe's was aware, during the time the '906 patent was being prosecuted, of:  the reference cited on the face of the '620 patent titled "Brochure--Firelite™ and Firelite Plus™, Nippon

1    Electric Glass Co., Ltd., Kirkland, WA, Sep. 1993, 8 pages"; TGP's FireLite NT® product; and

2    brochures and other information on TGP's FireLite NT® product.

3        38.    One or more of O'Keeffe's' websites included, both during and prior to the time the

4    '906 patent was being prosecuted, information on TGP's FireLite NT® product.  For example,

5    Exhibit A hereto is a true copy of pages archived at www.archive.org that were available, in

6    materially identical form, on O'Keeffe's "safti.com" website in 2003.  Ex. A page one includes a

7    link to a "product comparison chart."  Ex. A page two discloses a chart comparing FireLite NT with

8    other products, and disclosing that FireLite NT is a ceramic glass with a "film applied" that is fire

9    resistant and has a "safety rating" sufficient to impart an impact resistance of "400 ft. lbs."

10    O'Keeffe's did not disclose any information on FireLite NT® to the PTO during prosecution of the

11    '906 patent.

12        39.    Sheldon Meyer and the law firm Fliesler Meyer LLP were aware of the reference

13    cited on the face of the '620 patent titled "Brochure--Firelite™ and Firelite Plus™, Nippon Electric

14    Glass Co., Ltd., Kirkland, WA, Sep. 1993, 8 pages."  They did not disclose that reference to the PTO

15    during prosecution of the '906 patent.

16        40.    The reference "Brochure--Firelite™ and Firelite Plus™, Nippon Electric Glass Co.,

17    Ltd., Kirkland, WA, Sep. 1993, 8 pages" is prior art to the '906 patent.  It was published in 1993.

18        41.    TGP's FireLite NT® product is prior art to the '906 patent.  It was in public use and

19    on sale in the United States in the 1990's.

20        42.    On information and belief, William O'Keeffe and O'Keeffe's were aware of the

21    features of TGP's FireLite NT® product both prior to and during the prosecution of the '906 patent,

22    including that it was a ceramic glass pane with a film of 3M's Scotchshield® product, from their

23    review of the product itself, and of brochures and other written information on that product.  Some

24    of that information was published prior to the earliest date to which the '906 patent claims priority,

25    and some was published more than one year prior to that date, and that information is prior art to the

26    '906 patent.

27

28

SUPPLEMENTAL COUNTERCLAIMS OF
                                       DEFENDANT TGP-- Case No.: 07-3535 JF

43.    FireLite NT® has been a registered trademark with the U.S. PTO for goods that

include "fire-rated and impact safety-rated … wire glass" since May 8, 2001.  That mark for those

goods was published by the PTO on February 13, 2001.  The PTO's website describes that

registration in part as follows:

| | |
|---|---|
| **Word Mark** | **FIRELITE NT** |
| **Goods and Services** | IC 019. US 001 012 033 050. G & S: fire-rated and impact safety-rated glazing material for building windows, doors and partitions; namely sheet glass, wire glass, laminated glass, and multiple glass. FIRST USE: 19970500. FIRST USE IN COMMERCE: 19970500 |
| **Filing Date** | April 27, 2000 |
| **Published for Opposition** | February 13, 2001 |
| **Registration Number** | 2449172 |
| **Registration Date** | May 8, 2001 |
| **Owner** | (REGISTRANT) Nippon Electric Glass Co., Ltd. COMPANY JAPAN 7-1, Seiran 2-chome, Otsu-shi Shiga, 520-8639 JAPAN |

44.    Scotchshield® has been a registered trademark with the U.S. PTO for "plastic film for

attachment to windows" since 1987.  That mark for those goods was published by the PTO in 1987.

The PTO's website describes that registration in part as follows:

| | |
|---|---|
| **Word Mark** | **SCOTCHSHIELD** |
| **Goods and Services** | IC 017. US 001. G & S: PLASTIC FILM FOR ATTACHMENT TO WINDOWS. FIRST USE: 19870225. FIRST USE IN COMMERCE: 19870225 |
| **Published for Opposition** | August 18, 1987 |
| **Registration Number** | 1464570 |
| **Registration Date** | November 10, 1987 |
| **Owner** | (REGISTRANT) MINNESOTA MINING AND MANUFACTURING COMPANY AKA 3M CORPORATION DELAWARE 3M CENTER SAINT PAUL MINNESOTA 55144 |

45.    3M publicly disclosed during and prior to the prosecution of the '906 patent that its

Scotchshield® window film product contains PET.  For example, Exhibit B hereto is a true copy of

3M's Material Safety Data Sheet for its Scotchshield® window film product, as published on 3M's

website prior to and during the prosecution of the patent.  Exhibit B bears a 2001 copyright date and

issue date of April 18, 2001.  It discloses that the "ingredient" in the product is "2-7 mil polyethylene

1  terephthalate polyester film with acrylic PSA and backside coating," "100" "Percent."  PET is an

2  abbreviation for polyethylene terephthalate.

3  46.    Scotchshield® was a product in public use and on sale in the United States prior to

4  September 25, 2001, and prior to September 25, 2000.  It is prior art to the '906 patent, and is

5  material to the patentability of claims sought during prosecution of the '906 patent.

6  47.    Scotchshield® is a fire resistant film.

7  48.    Scotchshield® contains PET.

8  49.    Scotchshield® was adhered to sheets of Fire Lite glass to manufacture FireLite NT®.

9  50.    Scotchshield® was recommended in written materials published by 3M for use on

10  windows to impart a greater impact resistance.

11  51.    Scotchshield® adhered to a piece of wire glass would be sufficient to impart an

12  impact resistance of at least about 100 foot lbs.

13  52.    On information and belief, William O'Keeffe and O'Keeffe's were aware of

14  Scotchshield®, and of each of the facts alleged in the preceding six paragraphs, both prior to and

15  during the prosecution of the '906 patent.  (If some but not all of those allegations are denied, please

16  admit and deny them separately.)

17  53.    On information and belief, William O'Keeffe and O'Keeffe's were aware of other

18  prior art fire resistant window films containing PET and imparting impact resistance that were in

19  public use and on sale in the United States prior to September 25, 2001, and prior to September 25,

20  2000.

21  54.    William O'Keeffe and O'Keeffe's failed to disclose to the PTO during prosecution of

22  the '906 patent any information about FireLite NT®, Scotchshield® or any other prior art fire

23  resistant window films containing PET and imparting impact resistance.

24  55.    On information and belief, William O'Keeffe and O'Keeffe's withheld information

25  about FireLite NT®, Scotchshield® and other prior art fire resistant window films containing PET

26  and imparting impact resistance to deceive the PTO.

27

28

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

56.     Use of PET film on glass panes to impart impact resistance is material to all claims of the '906 patent.

57.     The PTO examiner's only "statement of reasons for the indication of allowable subject matter" during prosecution of the '906 patent was that: "The prior art of record fails to disclose or suggest fire resistant safety glass laminates consisting essentially of a wire glass sheet and a fire resistant PET film, with said laminate having the recited impact resistance."  In that same office action, the examiner rejected all claims that did not expressly require "PET" film, stating in part: "SAKAMOTO ET AL '954 or '761 discloses an impact resistant, fire resistant laminates comprising a fire resistant polymeric film adhered to a first wire glass sheet," that "Applicant admits that current minimum safety glazing standards require an impact resistance of at least 100 ft-lbs (Applicant's Specification, page 1, paragraph 0008).  It would have been obvious to a person of ordinary skill in the art at the time the invention was made to select the thickness and mechanical properties of the various layers in SAKAMOTO ET AL '954 or '761 in order to obtain sufficient impact resistance to meet or exceed established safety standards...."

58.     Prior art on the sale and use in the United States of fire resistant film that contains "PET" was highly material to the claims that issued in the '906 patent.

59.     Failure to disclose material prior art, including O'Keeffe's own prior art patent that discloses PET for use with fire resistant glass, failure to disclose TGP's well-known prior art product FireLite NT that used Scotchshield® PET film on glass, and failure to disclose prior art Scotchshield® and other PET films designed for use on fire resistant and safety rated glass, was inequitable conduct.

60.     TGP is entitled to a declaration that the '906 Patent is unenforceable.

## FOURTH COUNTERCLAIM

### (Trademark Infringement Under
### 15 U.S.C. § 1114(1) And California Common Law)

61.     TGP realleges and incorporates by reference the allegations in counterclaim paragraphs 1-3 above.

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

62.     TGP owns rights in the mark FIREFRAMES based upon its use of the mark with certain metal products related to doors and windows since at least as early as 2000.

63.     TGP owns an incontestable U.S. trademark registration for the FIREFRAMES mark: Registration No. 2,529,865 for use of the mark FIREFRAMES in connection with "door casings of metal, door frames of metal, door jambs of metal, door panels of metal, metal door frames, metal door panels, metal door units, metal window frames, metal window sills, window casements of metal." True copies of records of this registration in the U.S. Trademark Office ("PTO"), as shown on the PTO website and in the PTO file history for this registration, are attached hereto as Exhibits C and D.

64.     TGP features the FIREFRAMES mark in marketing materials, including on its website at www.fireglass.com, in advertising and promoting fire-resistant TGP glass and framing products. Exhibits E-H hereto are examples of the use of the mark on its website for the following series of TGP products: FIREFRAMES® Heat Barrier Series (Exhibit E hereto); FIREFRAMES® Curtainwall Series (Exhibit F hereto); FIREFRAMES® Hardwood Series (Exhibit G), and FIREFRAMES® Designer Series (Exhibit H).

65.     TGP has spent, and continues to spend, thousands of dollars annually to promote products featuring the FIREFRAMES mark. TGP enjoys valuable goodwill in that mark.

66.     Knowing of TGP's prior registration of the FIREFRAMES mark, on or about May 18, 2006, O'Keeffe's filed an application number 78/886,746 (Exhibit I hereto) with the U.S. Trademark Office to register the mark SAFTIFIRE FRAMES for use in connection with "Fire and safety rated panel systems comprised primarily of metal goods and consisting of wall panels, windows, and doors, all sold as a unit." On or about June 15, 2007, the U.S. Trademark Office issued a final refusal to register that mark to O'Keeffe's.

67.     The PTO refused to register the mark SAFTIFIRE FRAMES to O'Keeffe's because the PTO found it confusingly similar to TGP's registered FIREFRAMES mark (*see* Exhibit I).

68.     Knowing of TGP's prior registration of its FIREFRAMES mark, O'Keeffe's paid Google to link to one of O'Keeffe's websites, http://www.safti.com/, in search results for the term

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

"FIREFRAMES."  As a result, a Google database search for "FIREFRAMES" returns a page that features a link to http://www.safti.com/, a website of O'Keeffe's "Safti" division, as shown in Exhibit J attached hereto.

69.    The SAFTIFIRE FRAMES mark is confusingly similar to TGP's FIREFRAMES mark.

70.    O'Keeffe's uses the SAFTIFIRE FRAMES mark to market products similar to TGP's FIREFRAMES® products to potential customers of TGP's FIREFRAMES® products.

71.    O'Keeffe's use of the SAFTIFIRE FRAMES mark has and is likely to continue to deceive or cause confusion or mistake among members of the public.

72.    O'Keeffe's use of the SAFTIFIRE FRAMES is without the consent of TGP, and over TGP's objections.   It has caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to TGP and the goodwill associated with TGP's FIREFRAMES mark.

73.    The acts of O'Keeffe's constitute trademark infringement under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), and California common law.

74.    O'Keeffe's use of the SAFTIFIRE FRAMES mark was made with actual knowledge of TGP's rights in the FIREFRAMES mark.

75.    O'Keeffe's use of the SAFTIFIRE FRAMES mark as alleged herein is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of the products of O'Keeffe's.  Members of the public, including potential customers, are likely to believe that O'Keeffe's products are in some way connected with, sponsored by, licensed by, or otherwise related to TGP.

76.    O'Keeffe's acts of trademark infringement are willful, and have caused TGP to suffer monetary damages and, if not enjoined, will cause TGP to sustain additional monetary damages, loss, and injury, and resulted in wrongful profits to O'Keeffe's, in amounts to be determined in this action.

77.    TGP is without an adequate remedy at law.

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1

**FIFTH COUNTERCLAIM**

2

**(Violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))**

3         78.    TGP realleges and incorporates by reference the allegations in its Fourth

4    Counterclaim above.

5         79.    O'Keeffe's activities described herein violate Section 43(a) of the Lanham Act, 15

6    U.S.C. § 1125(a)(1)(A).

7         80.    O'Keeffe's has sold or offered goods for sale in interstate commerce in a manner

8    likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of those

9    products without authorization from TGP.

10        81.    On information and belief, O'Keeffe's conduct alleged herein has been willful and

11   designed to cause confusion or mistake.

12

**SIXTH COUNTERCLAIM**

13
14

**(False Advertising And Unfair Competition
Under 15 U.S.C. § 1125(a)(1)(B) and California Law)**

15        82.    TGP realleges and incorporates by reference the foregoing allegations in paragraphs 1

16   to 3 and 61-81.

17        83.    O'Keeffe's and its "SAFTI" division, also known as its "SAFTI*FIRST*" division,

18   market and sell in California and across the United States a glass product known as "SuperLite I-

19   XL," which they market as a "fire-rated glazing material."

20        84.    O'Keeffe's SuperLite I-XL product has not successfully passed the "hose stream"

21   test.  In the U.S., the hose stream test is required for any fire-rated glazing to receive a rating higher

22   than 20 minutes.  This applies to every state in the country and can be found in standards such as

23   UL9, UL10B, UBC Standards 7-2 and 7-4, and International Building Code ("IBC") §715.

24        85.    In addition, O'Keeffe's SuperLite I-XL product does not provide, or sometimes does

25   not provide, substantial fire protection from one side.  If a significant fire breaks out on the non-

26   coated side of the glass, there is a high probability that glass will collapse, providing no protection at

27   all.

28

-11-

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

86.    O'Keeffe's sells its SuperLite I-XL product with a WHI label showing a 45/60 minute rating without a hose stream test.  WHI refers to Warnock Hersey International, Inc., a testing company located in Wisconsin that tests glass for compliance with fire and safety standards.

87.    O'Keeffe's markets its SuperLite I-XL product with advertisements that state, among other things, that the product is:

- "Choose the Clear Fire Protective Solution that Provides the Best Value"
- "Fully approved for 20 minute applications"
- "Approved by the GSA and AHJs as an alternate material for 45 and 60 minute applications without hose stream in accordance with IBC 104.11"
- "More cost-effective than safety-rated ceramics"

88.    O'Keeffe's advertising statements alleged in the above paragraph are materially false and misleading.

89.    IBC 104.11 (2006) provides in part:

> 104.11 Alternative materials ….  The provisions of this code are not intended to prevent the installation of any material … provided that any such alternative has been approved. An alternative material … shall be approved where the building official finds … that the material … is, for the purpose intended, at least the equivalent of that prescribed in this code in … fire resistance … and safety.

90.    O'Keeffe's SuperLite I-XL product is not "at least the equivalent" in "fire resistance" and "safety" of glass products fire rated for 45 and 60 minute applications, because, for example, they do not pass the hose stream test, and they do not provide substantial fire protection from one side.

91.    O'Keeffe's is misleading its customers and building officials by its efforts to induce and assist them to approve and use its SuperLite I-XL product as an "alternative material" under IBC 104.11 for situations where 45 and 60 minute fire rating is required.

92.    It is materially misleading for O'Keeffe's to market and sell its SuperLite I-XL product with that WHI label and the advertising statements alleged above.

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

93.     O'Keeffe's use of that WHI label, the advertising statements alleged above and similar statements has a tendency to mislead customers, building officials and the public into believing that the product passes the fire safety tests for the 45/60 minute rating, when in fact the product does not, or that the product is "at least the equivalent" in "fire resistance" and "safety" of products that do pass the fire safety tests for the 45/60 minute rating, when in fact it is not.

94.     It is potentially dangerous to use O'Keeffe's SuperLite I-XL product in locations requiring a product that has passed the fire safety tests for the 45/60 minute rating.

95.     Customers have been misled by O'Keeffe's marketing of its SuperLite I-XL product into buying the product for use in locations where it is not suitable and is a potential danger.

96.     O'Keeffe's marketing and sale of its SuperLite I-XL product as alleged above constitutes false advertising pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as well as false advertising in violation of California Bus. & Prof. Code § 17500 et seq. O'Keeffe's actions, as alleged herein, comprise unlawful and unfair business acts or practices as well as unfair, deceptive, untrue and misleading advertising, that separately or in combination constitute unfair competition in violation of California Business & Professions Code § 17200 et. seq.

97.     O'Keeffe's sells its SuperLite I-XL product for less money than competing products offered by TGP and others that do pass the fire safety tests for the 45/60 minute rating. O'Keeffe's advertises that cost advantage by, for example (as alleged above), stating in advertisements that its SuperLite I-XL product is "More cost-effective than safety-rated ceramics" and a "Fire Protective Solution that Provides the Best Value." As a result, TGP and others have lost sales of competing products that do meet the fire safety tests for the 45/60 minute rating. By misleading customers, building officials and the public into believing that SuperLite I-XL passes the fire safety tests for the 45/60 minute rating, when in fact the product does not, or that the product is "at least the equivalent" in "fire resistance," "durability" and "safety" of products that do pass the fire safety tests for the 45/60 minute rating, when in fact it is not, in order to sell the SuperLite I-XL product at a price below the competing prices of products that in fact satisfy controlling fire safety tests, O'Keeffe's conduct significantly harms and threatens to harm competition and is an unfair business practice.

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

98.     O'Keeffe's false advertising and unfair competition alleged above are causing and will continue to cause irreparable harm to TGP, including loss of customers for TGP's competing products and loss of TGP's goodwill in those products and their trademarks, for which TGP has no adequate remedy at law.

99.     On information and belief, the acts of O'Keeffe's alleged herein were undertaken willfully and with the intention of causing confusion, mistake or deception.

## SEVENTH COUNTERCLAIM – DECLARATORY JUDGMENT

**(Declaring That Hose Stream Test Required By Code Sections 715.4 and 715.5 for Glass in Doors and Windows Cannot Be Waived Under Code Sections 104.11 or 715.3)**

100.    TGP realleges and incorporates by reference the allegations in paragraphs 1-3 above.

101.    An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists between O'Keeffe's ("OKI") and TGP as to the parties' rights to have local building authorities waive fire resistance standards, including the "hose stream test," for glass windows and doors under Section 104.11 of the International Building Code ("IBC"), 2003 and 2006 Editions, either independently or as referenced in Section 715.3 of IBC (2006).  IBC 104.11 and/or 715.3 have been adopted by California (where OKI is headquartered), Washington (where TGP is headquartered) and most other states.

102.    California adopted Chapter 7 of IBC 2006 in material part (with amendments), including Section 715.3 (without amendments), as part of the California Building Code (2007) ("CBC") effective January 1, 2008.  **Exhibit K** hereto is a true copy of the California Building Code (2007), Title 24, Part 2, California Code of Regulations, Sections 101.1 – 101.3, 701, 702, and 715, including 715.3.  CBC Section 715.3 refers to IBC section 104.11.  The CBC does not independently adopt section 104.11, but it does include it in Appendix Chapter 1 to the CBC, and a true copy of it is also attached in **Exhibit K**.

103.    Washington adopted Chapters 1 and 7 of IBC 2006 in material part (with amendments), including Sections 104.11 and 715.3 (without amendments), as part of the Washington State Building Code, Chapter 51-50 WAC, effective July 1, 2007.  *See* WAC 51-50-

003.  **Exhibit L** hereto is a true copy of IBC (2006) Sections 104.11, 701, 702 and 715 as adopted by the State of Washington.

104.     Seventeen other states have also reportedly adopted Chapters 1 and 7 of IBC 2006 in material part, including IBC Sections 104.11 and 715.3.  The following chart lists the States that have adopted IBC 2006 in material part, as reported on the website of the International Code Council ("ICC") that promulgates the IBC (see http://www.iccsafe.org/government/adoption.html and http://www.iccsafe.org/government/stateadoptions.xls):

| 19 States – 2006 IBC |
| --- |
| Alabama |
| California |
| Georgia |
| Hawaii |
| Iowa |
| Kentucky |
| Louisiana |
| Maryland |
| Minnesota |
| Montana |
| New Hampshire |
| New Jersey |
| Ohio |
| Oklahoma |
| Pennsylvania |
| Rhode Island |
| Tennessee |
| Utah |
| Washington |

105.     Eighteen states have reportedly adopted Section 104.11 and Chapter 7 of IBC 2003 Edition in material part.  Section 104.11 is identical in the 2003 and 2006 IBC Editions.  Chapter 7 of IBC 2003 and 2006 are identical for all material purposes, except that the 2003 Edition did not include the current Section 715.3.  **Exhibit M** hereto is a true copy of IBC (2003) Sections 104.11, 701, 702 and 715.  The following chart identifies these eighteen states as reported on the website of

1  the International Code Council ("ICC"), which promulgates the IBC (see

2  http://www.iccsafe.org/government/adoption.html and

3  http://www.iccsafe.org/government/stateadoptions.xls):

4

5  **18 States – 2003 IBC**

   Alaska
6  Connecticut
   Florida
7  Idaho
   Kansas
8  Maine
   Massachusetts
9  Michigan
   Nevada
10  New Mexico
   New York
11  North Carolina
   Oregon
12  South Carolina
13  Texas
   Vermont
14  Virginia
15  West Virginia
16

17      106.    IBC (2003 and 2006), as adopted by California, Washington and most other states,
18
   require glass to satisfy the hose stream test criteria in NFPA 252 or 257 to be used in certain building
19
   locations specified by those codes that require fire resistant glass in doors and windows.
20
       107.    NFPA 257 prescribes standardized fire test and hose stream test procedures that apply
21
   to the evaluation of fire window assemblies to retard the spread of fire through openings in fire
22
   resistance-rated walls.  **Exhibit N** hereto is a true copy of NFPA 257 (2007 Edition).
23
       108.    NFPA 252 prescribes standardized fire test and hose stream test procedures that apply
24
   to fire door assemblies, including windows in such door assemblies, intended to be used to retard the
25
   spread of fire through door openings in fire resistive walls.  The standard is intended to evaluate the
26
   ability of a door assembly, including any windows therein, to remain in a wall opening during a
27

28
SUPPLEMENTAL COUNTERCLAIMS OF
                         DEFENDANT TGP-- Case No.: 07-3535 JF

1    prescribed fire test exposure, which is then followed by the application of a prescribed hose stream.

2    **Exhibit O** hereto is a true copy of NFPA 252 (2003 and 2008 Editions).

3         109.    IBC Chapter 7, titled "Fire-Resistance-Rated Construction," governs the fire-

4    resistance standards for the glass that TGP and OKI sell in most states, to "safeguard against the

5    spread of fire and smoke within a building and the spread of fire to or from buildings."  IBC Section

6    701.1.

7         110.    Within Chapter 7, Section 715 ("Opening Protectives") is most pertinent to the

8    standards governing fire resistant glass.  An "opening" under the Code generally means a glass

9    window or a door that may include a glass window.  Section 715's requirements apply to glass

10   "openings" in other sections of the code, as well.  *See, e.g.,* IBC Sections 715.1 ("Opening

11   protectives required by other sections of this code shall comply with the provisions of this section");

12   704.12 ("Windows in exterior walls required to have protected openings … shall comply with

13   Section 715.5"), 706.7 ("Openings in a fire barrier shall be protected in accordance with Section

14   715."), 707.7 ("Openings in a shaft enclosure shall be protected in accordance with Section 715"),

15   708.6 ("Openings in a fire partition shall be protected in accordance with Section 715."); 709.5

16   ("Openings in a smoke barrier shall be protected in accordance with Section 715").

17        111.    Within Section 715, the section most pertinent to glass standards is IBC Section

18   715.5, "Fire-protection-rated glazing," which provides in material part:  "Glazing in fire window

19   assemblies shall be fire protection rated in accordance with this section and Table 715.5.  Glazing in

20   fire door assemblies shall comply with Section 715.4.6.  Fire-protection rated glazing shall be tested

21   in accordance with and shall meet the acceptance criteria of NFPA 257…."  Section 715.4.6 permits

22   glazing in fire doors if it meets the requirements of Section 715.4, which require the glass and door

23   assemblies to conform to the test requirements of Section 715.4.1 - .4, which require testing in

24   accordance with NFPA 252 (or UL 10C or 10B).  The testing requirements under NFPA 252 and

25   257 (and the testing requirements under UL 10C and 10B) require that the glass be subjected to both

26   a "fire test" and a "hose stream test."

27

28

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

112.    Superlite 1-XL does not pass the hose stream test in NFPA 252 and 257.  **Exhibit P** hereto is a true copy of a report of a test of Superlite 1-XL in which it failed that hose stream test.

113.    OKI advertises, markets and sells its Superlite 1-XL product as a product that passes the fire test but not the hose stream test in NFPA 252 and 257.

114.    OKI advertises, markets and sells its Superlite 1-XL product as a product that can be used in building locations in which the CBC (2001 or 2007) or IBC (2003 or 2006) require glass that passes both the fire test and hose stream test in NFPA 252 and 257, if Superlite 1-XL is approved as "alternative fire protection glazing" by local building officials.

115.    **Exhibit Q** hereto is are true copies of two pages on an OKI website.  The first webpage provides product information on Superlite 1-XL.  It states in part:

- "Positive Pressure fire rated to 45/60-minutes without hose stream";
- "For information on obtaining AHJ approval for SuperLite 1-XL click here";
- "Superlite is fire tested to … NFPA 252, NFPA 257…. SuperLite 1-XL requires AHJ approval because it carries a conditional listing similar to glass block products";
- "Standards … NFPA 252, NFPA 257…. This product requires AHJ approval because it does not pass the hose stream portion of the fire test."

116.    **Exhibit Q**, second webpage, includes an offer for a download of an OKI publication titled Technical Bulletin #9-2006, that "is intended to provide design professionals and authorities having jurisdiction (AHJ) with information regarding the performance of Superlite 1-XL for the purpose of either specifying or approving the product for use as alternative fire protection glazing."

117.    **Exhibit R** hereto is a true copy of OKI's Technical Bulletin #9-2006.  It lists at Appendix B projects in almost every state in the country in which it has sold SuperLite 1-XL for use in buildings as 45 or 60 minute fire rated glass.  It quotes on pages 3 and 6 IBC (2003) section 104.11, "Alternative materials, design and methods of construction and equipment."  It states on pages 3 that, "The 2003 International Building Code … allow[s] for the use of alternative materials such as SuperLite 1-XL," and that "SuperLite 1-XL meets the equivalency test [in IBC 104.11] by providing the following: … **Fire Resistance -- *SuperLite 1-XL*** was fire tested to NFPA 252, NFPA 257 … without the hose stream.  ***SuperLite 1-XL*** is listed and labeled by Warnock Hersey, Inc. …."

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

118.    **Exhibit R** at the bottom of page 4 makes the argument, which OKI has made elsewhere to code officials and repeated in this litigation, that SuperLite 1-XL is safer, even though it does not pass the hose stream test, than some alternative products that do pass the hose stream test, because it offers some protection against radiant heat.

119.    OKI has used that argument successfully in obtaining sales and approval of its SuperLite 1-XL product for use in locations that by code require a glass that passes the hose stream test.  **Exhibit S** hereto are true copies of OKI marketing publications for SuperLite 1-XL.  The first page states in part:  "approved by the GSA and AHJs as an alternate material for 45/60 minute applications without hose stream in accordance with Section 104.11, *Alternative Materials, Design and Methods of Construction and Equipment*, of the IBC."

120.    As a result of O'Keeffe's actions as set forth in the foregoing allegations, there is a case of actual controversy between TGP and O'Keeffe's on the legal question as to whether IBC 104.11 authorizes local building officials to waive the hose stream test required by state building codes, based on arguments that the product provides some other safety benefit, such as protection against radiant heat.

121.    TGP disputes OKI's position on this legal issue.  **Exhibit T** hereto are true copies of pages from a TGP website in which TGP warns the public against the use of Superlite 1-XL for certain locations requiring fire rated glass because it does not satisfy code requirements, including the hose stream test.  It states in part:

> The fire-rated glass product, SuperLite I-XL, is advertised as carrying 45 and 60 minute fire ratings. However, closer inspection reveals that the listing has significant limitations:
>
> SuperLite I-XL does not pass the mandatory hose stream test – a requirement for any rating in the U.S. over 20 minutes. There are dozens of alternative choices with ratings of 45 minutes or more, from multiple manufacturers. SuperLite I-XL is the only product that does NOT comply with the standards – yet still claims to have a 45-60 minute fire-rating.

122.    The parties have an actual controversy as to whether, under Section 715.3 of the California Building Code (2007), which refers to IBC (2006) Section 104.11, or under the building

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1    codes of the other states that have adopted IBC (2003 or 2006) 104.11, local building officials have

2    authority to waive the hose stream test for fire rated glass.

3        123.    OKI refers to this controversy in its Counterclaim in this action at paragraph 12(b)

4    and Exhibit C ("TGP has misrepresented the following … (b) SuperLite 1-XL is hazardous or

5    somehow otherwise deficient for general use because it has not passed the 'hose-stream' test which

6    is 'critical' to a glazing product's fire-safety characteristics and features."). **Exhibit U** hereto is a

7    true copy of two TGP documents, titled SuperLite 1-XL Informational Bulletin and SuperLite 1-XL

8    Alert, that OKI attached (as Exhibit C) to its counterclaim as evidence of this controversy between

9    the parties.

10        124.    TGP seeks a declaration that the hose stream test is a mandatory test under state

11   building codes that cannot be waived by local building officials.

12        125.    TGP seeks an injunction pursuant to the Lanham Act, 15 U.S.C. §§ 1116(a) and

13   1125(a), as well as California Bus. & Prof. Code §§ 17203 and 17535, enjoining OKI from further

14   inducing local building officials to waive the hose stream test for SuperLite 1-XL, from telling

15   customers that the hose stream test can be waived under IBC 104.11 or that OKI's SuperLite 1-XL

16   product can be approved as an "alternate material" under IBC 104.11 even though it cannot pass the

17   hose stream test, and from selling SuperLite 1-XL for use in locations where that state code requires

18   glass that passes the hose stream test.

19                  **<u>EIGHTH COUNTERCLAIM – DECLARATORY JUDGMENT</u>**

20
     **(Declaring That for Uses Covered by Building Code Section 715.5.2 OKI's SuperLite 1-XL
21                  Shall Be Assigned No More Than a 20 Minute Rating)**

22        126.    TGP realleges and incorporates by reference the above allegations.

23        127.    An actual controversy, within the meaning of the 28 U.S.C. §§ 2201 and 2202, exists

24   between O'Keeffe's ("OKI") and TGP as to the meaning of Code Section 715.5.2 of the

25   International Building Code ("IBC") 2003 and 2006 Editions, as adopted by 37 states, including

26   California (CBC 2007 Section 715.5.2) and Washington.

27

28
SUPPLEMENTAL COUNTERCLAIMS OF
                                                                DEFENDANT TGP-- Case No.: 07-3535 JF

128.   OKI advertises its SuperLite 1-XL glass product as having a 45 or 60 minute fire rating based on the fire test (but not hose stream test).

129.   **Exhibit P** hereto is a true copy of a fire test conducted in compliance with NFPA 257, finding that one side of SuperLite 1-XL failed the fire test after no more than 22 minutes.

130.   OKI advertises SuperLite 1-XL as having as having "been fire tested for both 45 and 60 minutes without the hose stream test" (**Exhibit R** at p. 1), and as approved "for 45/60 minute applications without hose stream in accordance with Section 104.11" (**Exhibit S** at p. 1).  OKI advertises that it has sold SuperLite 1-XL with a 45 or 60 minute fire rating in almost every state in the U.S. from 2004 to 2006 (**Exhibit R** Appendix B).

131.   Only one side of SuperLite 1-XL can pass the fire test, even without the hose stream test, for 45 or 60 minutes.  The other side of that product cannot pass the fire test for 45 minutes.

132.   IBC (2003 and 2006) Chapter 7 implicitly, and in one section explicitly, requires ratings for fire rated glass based in accordance with the shortest duration obtained from testing both sides.  IBC (2003 and 2006) Section 715.5.2 explicitly provides that for certain uses, such as uses in "fire partitions," glass windows must be tested on both sides and rated in accordance with "the shortest duration obtained from the two tests conducted in compliance with NFPA 257."  True copies of CBC 2007 Section 715.5.2 and IBC Section 715.5.2 (2003 and 2006) are attached hereto as **Exhibits K, L and M**.

133.   OKI markets SuperLite 1-XL for uses that include use in fire partitions covered by IBC Section 715.5.2.

134.   OKI does not rate SuperLite 1-XL in accordance with the shortest duration obtained from testing both sides.  It rates it in accordance with the highest duration obtainable from testing the two sides.

135.   An actual controversy exists between the parties over whether SuperLite 1-XL is over-rated due to its failure to comply with the "shortest duration" rating requirement of IBC Chapter 7, and in particular IBC Section 715.5.2.  OKI refers to this dispute in its Counterclaim in this action at paragraph 12(a) and Exhibit C ("TGP has misrepresented the following …: (a)

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1    SuperLite 1-XL is hazardous or somehow otherwise deficient for its standard accepted uses because

2    it is 'directional,' meaning that the reflective coating is applied to only one side of the two exposed

3    glass surfaces, and thus 'if a fire breaks out on the non-coated side of the glass there is a high

4    probability that the glass will collapse, providing no protection at all …'"). **Exhibit U** hereto is a

5    true copy of two TGP documents, titled SuperLite 1-XL Informational Bulletin and SuperLite 1-XL

6    Alert, that OKI attached as Exhibit C to its counterclaim as evidence of this controversy between the

7    parties.

8        136.    TGP seeks a declaration that, for uses in accordance with IBC Chapter 7 and in

9    particular Code Section 715.5.2, SuperLite 1-XL must be assigned a fire protection rating in

10   accordance with "the shortest duration obtained from the two tests conducted in compliance with

11   NFPA 257," which is less than a 45 or 60 minute rating.

12       137.    TGP seeks an injunction pursuant to the Lanham Act, 15 U.S.C. §§ 1116(a) and

13   1125(a), as well as California Bus. & Prof. Codes §§ 17203 and 17535, enjoining OKI from further

14   advertising SuperLite 1-XL as having a fire protection rating in excess of 20 minutes for uses

15   covered by IBC Chapter 7, including specifically Section 715.5.2.

16                                          **Prayer**

17       WHEREFORE, TGP prays for entry of Judgment for TGP and against Plaintiff O'Keeffe's:

18           A.    Dismissing Plaintiff's claims against TGP with prejudice;

19           B.    On TGP's First, Second and Third Counterclaims, declaring that the '906

20               Patent is not infringed by TGP, is invalid and is unenforceable in light of 35

21               U.S.C. §§ 101, 102, 103, and 112;

22           C.    On TGP's Fourth and Fifth Counterclaims, for O'Keeffe's willful

23               infringement of TGP's registered FIREFRAMES mark and Lanham Act

24               violations, awarding TGP treble damages it has suffered and will suffer

25               therefore, all profits wrongfully derived thereby, and prejudgment interest

26               pursuant to 15 U.S.C. §§ 1114 and 1117, and California law, and permanently

27               enjoining O'Keeffe's, its agents, servants, employees, and attorneys, and all

28

1    other persons in active concert or participation with them, from using the

2    SAFTIFIRE FRAMES mark and any variant thereof that is confusingly

3    similar to TGP's registered FIREFRAMES mark pursuant to 15 U.S.C. § 1116

4    and California law;

5    D.    On TGP's Sixth Counterclaim, for O'Keeffe's false advertising in violation of

6    15 U.S.C. § 1125(a)(1)(B), as well as its false advertising in violation of Cal.

7    Bus. & Prof. Code § 17500 et seq., and its unfair competition in violation of

8    Cal. Bus. & Prof. Code § 17200 et seq., awarding TGP treble damages it has

9    suffered and will suffer therefore, all profits wrongfully derived thereby,

10    exemplary damages, and prejudgment interest pursuant to 15 U.S.C. §§ 1114

11    and 1117, and permanently enjoining O'Keeffe's, its agents, servants,

12    employees, and attorneys, and all other persons in active concert or

13    participation with them, from mislabeling products to give the impression they

14    satisfy fire and safety requirements when they do not, pursuant to 15 U.S.C. §

15    1116 and California Business & Professions Code §§ 17203 and 17535;

16    E.    On TGP's Seventh Counterclaim, declaring that local building officials lack

17    authority to waive the hose stream test under Section 104.11 of the IBC (2006

18    and 2003) as adopted by the 36 states alleged above, and enjoining OKI

19    pursuant to the Lanham Act, 15 U.S.C. §§ 1116(a) and 1125(a), and

20    California Bus. & Prof. Code §§ 17203 and 17535, from inducing local

21    building officials in those states to waive the hose stream test for SuperLite 1-

22    XL, from telling customers that it may be so waived, and from selling

23    SuperLite 1-XL for use in building locations where it knows that state code

24    requires glass that passes the hose stream test;

25    F.    On TGP's Eighth Counterclaim, declaring that, for uses covered by IBC

26    Chapter 7 and including specifically those referenced in Code Section 715.5.2,

27    SuperLite 1-XL must be assigned a fire protection rating in accordance with

28

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF

1  "the shortest duration obtained from the two tests conducted in compliance
2  with NFPA 257," which is not more than 20 minutes, and not a 45 or 60
3  minute rating, and enjoining OKI pursuant to the Lanham Act, 15 U.S.C.
4  §§ 1116(a) and 1125(a) and 1125(a), and California Bus. & Prof. Code §§
5  17203 and 17535, from further advertising SuperLite 1-XL as having a fire
6  protection rating in excess of 20 minutes;

7  G.  Awarding TGP its costs and reasonable attorneys' fees incurred herein under
8  15 U.S.C. § 1117 and California Business & Professions Code §§ 17202 and
9  17534;

10  H.  Awarding TGP its costs and reasonable attorneys' fees incurred herein under
11  35 U.S.C. § 285 because this is an exceptional case; and

12  I.  For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Technical Glass Products requests a jury trial on all issues triable by right to a jury.

Dated this 4th day of April, 2008

By: _s/Jeffrey S. Love_____
Jeffrey S. Love
jeffrey.love@klarquist.com
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204-2988
Telephone: (503) 595-5300
Facsimile: (503) 595-5301

Eric L. Wesenberg
ewesenberg@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Attrneys for Defendant Technical Glass Products

-24-

SUPPLEMENTAL COUNTERCLAIMS OF
DEFENDANT TGP-- Case No.: 07-3535 JF