# EXHIBIT C

Jeffrey S. Love (State Bar No. 195068)
jeffrey.love@klarquist.com
Todd M. Siegel (*Pro Hac Vice*)
todd.siegel@klarquist.com
Kelly L. Dunham (*Pro Hac Vice*)
kelly.dunham@klarquist.com
Robert F. Scotti (*Pro Hac Vice*)
robert.scotti@klarquist.com
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204-2988
Telephone: (503) 595-5300
Facsimile: (503) 595-5301

Eric L. Wesenberg (State Bar No. 139696)
ewesenberg@orrick.com
Gabriel M. Ramsey (State Bar No. 209218)
gramsey@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Attorneys for Defendant Technical Glass Products

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| O'KEEFFE'S, INC., | Case No.: 07-3535 JF |
| Plaintiff, | |
| v. | **DEFENDANT TECHNICAL GLASS PRODUCTS' RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-14)** |
| TECHNICAL GLASS PRODUCTS, ANEMOSTAT AND PILKINGTON PLC, | |
| Defendants. | |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure Defendant Technical Glass Products ("TGP") objects and responds as follows to Plaintiff O'Keeffe's, Inc.'s ("OKI") First Set of Interrogatories to TGP.

## GENERAL RESPONSES

TGP's responses to OKI's interrogatories are based on information currently known and available to TGP as of the date of these responses. TGP provides these responses without prejudice to its right to amend or supplement any or all of the matters contained in these responses as additional facts are ascertained, analyses are made, research is completed, and contentions are made. By making these responses, TGP does not concede that the information given is properly discoverable or admissible, and TGP reserves its right to object to the introduction of these responses into evidence for any purpose.

## GENERAL OBJECTIONS

TGP makes the following General Objections, whether or not separately set forth in response to each interrogatory, definition, or instruction. The failure to refer specifically to a General Objection should not be construed as a waiver of that General Objection.

1.    TGP objects to each interrogatory and to OKI's definitions and instructions to the extent they attempt to impose an obligation on TGP different from or greater than that required by the Federal Rules of Civil Procedure or any of the local rules of the Northern District of California.

2.    TGP objects to these interrogatories to the extent that they request the disclosure of information protected by the attorney-client privilege, the work-product doctrine, or any other privilege or immunity.

3.    TGP objects to these interrogatories to the extent they seek disclosure of information that is otherwise protected from discovery pursuant to the Federal Rules of Civil Procedure and federal common law.

4.    TGP objects to these interrogatories and the definitions and instructions therein to the extent they seek information protected from disclosure by third party confidentiality agreements as well as orders entered by the courts or local rules.

Case No.:  C-007-3535 JF

TGP'S RESPONSE TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1-14)          -1-

5.    To the extent these interrogatories seek discovery of information within the scope of Federal Rule of Civil Procedure 26(b)(4), TGP objects to these interrogatories as premature and improper discovery of expert opinion. Such information will be disclosed within the time frame outlined in a case management order to be entered by the Court in this action.

6.    TGP objects to these interrogatories to the extent that they purport to impose upon TGP the burden of furnishing information that is not available, not in TGP's possession or control, that is equally or more readily available to OKI.

7.    TGP objects to these interrogatories to the extent that they seek confidential, proprietary, or trade secret information. Subject to this and their other objections, TGP will provide such information (if responsive to otherwise non-objectionable discovery requests) after the entry of a suitable protective order, which limits access and dissemination of such information in a manner so as to preserve and protect TGP's confidential, proprietary, or trade secret information.

8.    TGP objects to each interrogatory to the extent it is duplicative or redundant of other discovery requests propounded by OKI.

9.    TGP objects to each interrogatory to the extent it consists of multiple discrete subparts and should be counted as multiple interrogatories.

10.    TGP objects to each interrogatory to the extent it exceeds the number of interrogatories permitted under Rule 33 of the Federal Rules of Civil Procedure.

11.    TGP objects to these requests as vague, ambiguous, unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. TGP is seeking a stay of discovery while the parties and the Court work towards narrowing the issues in this case. Thus, objects to any discovery unless that stay motion is denied; any production is conditioned on the Court denying the stay. TGP reserves the right to amend and supplement these objections and responses.

Without waiving the foregoing objections and incorporating said objections into each specific response below, TGP responds to Plaintiffs' First Set of Interrogatories (Nos. 1-14) as follows:

## SPECIFIC OBJECTIONS AND RESPONSES

INTERROGATORY NO. 1

State whether and under what circumstances TGP contends that compliance with the temperature rise limits (as defined above) is not required for fire-rated glazing to receive rating higher than 45 minutes for use in fire window assemblies in the United States.

ANSWER TO INTERROGATORY NO. 1

NFPA 251 (1999) sets forth, among many other things, "conditions of acceptance" for fire tests of bearing and nonbearing walls and partitions, in Chapters 5 and 6. These include the condition that: "Transmission of heat through the wall or partition during the fire endurance test shall not be sufficient to raise the temperature on the unexposed surface more than 250 degrees F ... above the assembly's initial temperature." ASTM E 119 – 00a Sections 16 and 18 provides for a substantially similar condition of acceptance for fire tests of walls and partitions.

NFPA 80 (2007) section 3.3.59 defines "Fire Protection Rating" as "the designation indicating the duration of the fire test exposure to which a fire door assembly or fire window assembly was exposed and for which it successfully met all acceptance criteria as determined in accordance with NFPA 252, *Standard Methods of Fire Tests of Door Assemblies*, or NFPA 257, *Standard on Fire Test for Window and Glass Block Assemblies*, respectively."

Compliance with the temperature rise condition of acceptance in NFPA 251 (1999) Chapters 5 and 6 or ASTM E 119 – 00a Sections 16 and 18, which generally cover tests for "walls," is not required for fire rated glazing in "fire window assemblies" to receive a fire protection rating higher than 45 minutes as determined in accordance with NFPA 257, which generally covers "windows."

In short, the acceptance conditions establishing the duration of the fire test for walls under NFPA 251 includes a heat transmission condition; the acceptance conditions establishing the duration of the fire test for windows under NFPA 257 does not.

Most states have adopted (with some amendments) the International Building Code ("IBC") (2003 or 2006). IBC Section 715 provides minimum code requirements regarding the use of fire-rated glazing for use in window assemblies. In general, Section 703, and the references throughout

Case No.: C-007-3535 JF

Chapter 7 to it and to ASTM E 119, govern temperature rise limits. In general, Section 715 governs fire-rated glazing for use in fire window assemblies. Section 715 does refer to Section 703 or ASTM E 119 in a few places, such as IBC (2006) Section 715.2, but generally it does not refer to them. Generally, fire-rated glazing for use in fire window assemblies governed by Section 715 is not required by the IBC (2003 or 2006) to meet temperature rise limits. Table 715.5 (IBC 2006) identifies some situations where a fire window assembly is not permitted, except as specified in Section 715.2, and Section 715.2 does generally require compliance with the temperature rise limits for fire-resistance-rated wall assemblies in accordance with ASTM E 119.

Beyond that, TGP objects to this interrogatory as overbroad, vague, and having inconsistent and overbroad definitions. TGP incorporates its general objections as its objections to this interrogatory.

Consistent with its general objections, TGP further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP objects to this interrogatory to the extent it calls for a legal conclusion. TGP objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence.

INTERROGATORY NO. 2

State whether and under what circumstances TGP contends that compliance with the temperature rise limits (as defined above) is not required for fire-rated glazing to receive rating higher than 45 minutes for use in doors, transoms or sidelight door assemblies requiring a fire rating in excess of 45 minutes in the United States.

ANSWER TO INTERROGATORY NO. 2

NFPA 251 (1999) sets forth, among many other things, "conditions of acceptance" for fire tests of bearing and nonbearing walls and partitions, in Chapters 5 and 6. These include the condition that: "Transmission of heat through the wall or partition during the fire endurance test shall not be sufficient to raise the temperature on the unexposed surface more than 250 degrees F ...

above the assembly's initial temperature." ASTM E 119 – 00a Sections 16 and 18 provides for a substantially similar condition of acceptance for fire tests of walls and partitions.

NFPA 80 (2007) section 3.3.59 defines "Fire Protection Rating" as "the designation indicating the duration of the fire test exposure to which a fire door assembly or fire window assembly was exposed and for which it successfully met all acceptance criteria as determined in accordance with NFPA 252, *Standard Methods of Fire Tests of Door Assemblies*, or NFPA 257, *Standard on Fire Test for Window and Glass Block Assemblies*, respectively."

Compliance with temperature rise condition of acceptance in NFPA 251 (1999) Chapters 5 and 6 or ASTM E 119 – 00a Sections 16 and 18, which generally cover tests for "walls," is not required for fire rated glazing in "fire window assemblies," which may include transoms or sidelight door assemblies, to receive a fire protection rating higher than 45 minutes as determined in accordance with NFPA 257, which generally covers "windows." Nor is it required for fire rated glazing in doors to receive a fire protection rating higher than 45 minutes as determined in accordance with NFPA 252, which generally covers "doors."

In short, the acceptance conditions establishing the duration of the fire test for walls under NFPA 251 includes a heat transmission condition; the acceptance conditions establishing the duration of the fire test for windows under NFPA 257 and doors under NFPA 252 do not (though NFPA 252 (2008) Section 4.3 does require that "Temperatures of the unexposed surface of the fire door shall be recorded during the first 30 minutes of the fire test," the temperatures recorded are not among the "performance criteria" in NFPA 252 Chapter 7 that establish the rating).

Most states have adopted (with some amendments) the International Building Code ("IBC") (2003 or 2006). IBC Section 715 provides minimum code requirements regarding the use of fire-rated glazing for use in doors, transoms or sidelight door assemblies. In general, Section 703, and the references throughout Chapter 7 to it and to ASTM E 119, govern temperature rise limits. In general, Section 715 governs fire-rated glazing for use in fire window assemblies. Section 715 does refer to Section 703 or ASTM E 119 in a few places, such as IBC (2006) Section 715.2, but generally it does not refer to them. Generally, fire-rated glazing for use in fire window assemblies

governed by Section 715 is not required by the IBC (2003 or 2006) to meet temperature rise limits. Table 715.5 (IBC 2006) identifies some situations where a fire window assembly is not permitted, except as specified in Section 715.2, and Section 715.2 does generally require compliance with the temperature rise limits for fire-resistance-rated wall assemblies in accordance with ASTM E 119. The IBC also has some specific references to specific temperature rise criteria, such as the criteria set forth in IBC Section 715.4.4 and 715.4.4.1 for glazing in doors, but that does not affect the fire protection rating under NFPA 252 or 257.

Beyond that, TGP objects to this interrogatory as overbroad, vague, and having inconsistent and overbroad definitions. TGP incorporates its general objections as its objections to this interrogatory.

Consistent with its general objections, TGP further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP objects to this interrogatory to the extent it calls for a legal conclusion. TGP objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence.

INTERROGATORY NO. 3

State whether and under what circumstances TGP contends that compliance with the temperature rise limits (as defined above) is not required for fire-rated glazing to receive 90-minute rating for use in sizes in excess of 100 sq. inches in fire doors requiring a rating of 90-minutes in the United States.

ANSWER TO INTERROGATORY NO. 3

TGP incorporates herein its response to Interrogatory No. 2 above, which addresses doors.

Beyond that, TGP objects to this interrogatory as overbroad, vague, and having inconsistent and overbroad definitions. TGP incorporates its general objections as its objections to this interrogatory.

Consistent with its general objections, TGP further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP objects to this interrogatory to the extent it calls for a legal conclusion. TGP objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence.

INTERROGATORY NO. 4

Since January 1, 2003, identify each building project for which TGP's FireLite products have been sold where a 60-or 90-minute fire rated product has been requested. For each installation identified, please state:

(a) The date of the sale;

(b) The address of the installation;

(c) The identity of the architects, contractor(s), building owners, and authority having jurisdiction personnel that approved such application;

(d) The identity of all documents provided to any of the persons identified in response to subpart (c) above; and

(e) The identity of any documents relating, referring to or comprising an approval by the authority having jurisdiction

ANSWER TO INTERROGATORY NO. 4

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP objects to this interrogatory as vague and ambiguous. TGP further objects to this interrogatory in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, with each of its subparts forming a distinct interrogatory.

Case No.:  C-007-3535 JF

Subject to and without waiving the foregoing objections. TGP does not track each building project that may be associated with any given product sale.

INTERROGATORY NO. 5

Since January 1, 2003, identify each building project for which TGP's Pyrodur products have been sold; and state on a year-by-year basis the total revenue and profits realized by TGP from such sales.

ANSWER TO INTERROGATORY NO. 5

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections. TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, with each of its subparts forming a distinct interrogatory.

Subject to and without waiving the foregoing objections. TGP does not track each building project that may be associated with any given product sale.

INTERROGATORY NO. 6

Since January 1, 2003, identify each building project for which TGP's FireGlass 20 products have been sold for use in the U.S. by the following:

   (a) The date of the sale;

   (b) The address of the installation;

   (c) The identity of the architects, contractor(s), building owners, and authority having
       jurisdiction personnel that approved such application;

   (d) The description of all documents provided to any of the persons identified in response
       to subpart (c) above; and

   (e) The description of any documents relating, referring to or comprising an approval by

Case No.: C-007-3535 JF

TGP'S RESPONSE TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1-14)        -8-

the authority having jurisdiction.

ANSWER TO INTERROGATORY NO. 6

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, with each of its subparts forming a distinct interrogatory.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.

INTERROGATORY NO. 7

Since January 1, 2003, describe each building project for which TGP's Pyrodur products have been sold for use in sidelights and/or transoms in the United States by the following:

    (a) The date of the sale;

    (b) The address of the installation;

    (c) The identity of the architects, contractor(s), building owners, and authority having jurisdiction personnel that approved such application;

    (d) The identity of all documents provided to any of the persons identified in response to subpart (c) above; and

    (e) The identity of any documents relating, referring to or comprising an approval by the authority having jurisdiction.

ANSWER TO INTERROGATORY NO. 7

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other

applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly

broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of

admissible evidence. TGP further objects to this interrogatory as compound and improper, with each

of its subparts forming a distinct interrogatory.

Subject to and without waiving the foregoing objections, TGP does not track each building

project that may be associated with any given product sale.


INTERROGATORY NO. 8

Since January 1, 2003, identify each building project for which TGP's FireLite products have

been sold, and state on a year-by-year basis, the total revenue and profits realized by TGP for such

sales.

ANSWER TO INTERROGATORY NO. 8

TGP incorporates its general objections as its objections to this interrogatory. Consistent

with its general objections, TGP objects to this interrogatory to the extent that it seeks information

protected from discovery by the attorney-client privilege, work product immunity, and/or any other

applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly

broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of

admissible evidence. TGP further objects to this interrogatory as compound and improper,

comprising distinct interrogatories. TGP further objects to this interrogatory as improper by

exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, TGP does not track each building

project that may be associated with any given product sale.

INTERROGATORY NO. 9

Identify each building project that rejected TGP's FireLite products for failing to meet building and safety codes or regulations, including the reasons and evidence provided by the code official for rejecting FireLite products.

ANSWER TO INTERROGATORY NO. 9

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory as improper by exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure. Based on current information, and to the extent TGP understands the request, TGP is unaware of any building project in which a FireLite product was found not compliant with a building or safety code or regulation.

INTERROGATORY NO. 10

Identify performance test (including, without limitation any fire endurance, hose stream, thermal shock, sprinkler endurance test), performed by any person for any purpose (i.e., certification, research, marketing, etc.) on SuperLite I-XL, including the date of the test, the person performing the test, the person requesting the test, the test standards or test protocol/methodology used, and all documents referring to the test.

ANSWER TO INTERROGATORY NO. 10

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory as improper by exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, in May, 2007, Mike White and Howard Stacy of Western Fire Center, Inc. tested the fire endurance characteristics of SuperLite I-XL, among other products, pursuant to the NFPA 257 testing protocol. Western Fire Center, Inc. prepared Report #07035, which describes the test and results.


INTERROGATORY NO. 11

Since January 1, 2003, identify each building project for which TGP's standard or polished FireLite (not FireLite Plus or FireLite NT) product has been sold for use in fire doors in the United States.

ANSWER TO INTERROGATORY NO. 11

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as improper by exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.


INTERROGATORY NO. 12

Identify and describe each fire endurance, hose stream test, thermal shock test, sprinkler endurance test, or any other performance test that has been performed by any person for any purpose (i.e., certification, research, marketing, etc.) on SuperLite I, including without limitation, the date of the

test, the person performing the test, the person requesting the test, the test standards or test
protocol/methodology used, the identity of all documents relating or referring to the test.

ANSWER TO INTERROGATORY NO. 12

TGP incorporates its general objections as its objections to this interrogatory. Consistent
with its general objections, TGP objects to this interrogatory to the extent that it seeks information
protected from discovery by the attorney-client privilege, work product immunity, and/or any other
applicable privilege and/or immunity. TGP further objects to this interrogatory as improper by
exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

Subject to these objections, TGP has not been involved with any SuperLite I testing.


INTERROGATORY NO. 13

Identify all persons to whom TGP provided any of the documents shown in Exhibit 1 attached
to O'Keeffe's First Set of Requests for Production of Documents and Things.

ANSWER TO INTERROGATORY NO. 13

TGP incorporates its general objections as its objections to this interrogatory. Consistent
with its general objections, TGP objects to this interrogatory to the extent that it seeks information
protected from discovery by the attorney-client privilege, work product immunity, and/or any other
applicable privilege and/or immunity. TGP further objects to this interrogatory as improper by
exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

Subject to these objections, TGP provided documents shown in Exhibit 1 to various trade
publications, including Architect - July 2007; Architectural Products - May, July, Aug 2007;
Building Design and Construction - July, Sept 2007; Architectural Record - Sept 2007, Jan 2008;
Glass Magazine - July - Oct 2007, Jan - Feb 2008; USGlass - July - Dec 2007, Jan - Feb 2008;
NFPA Journal - May, June 2007; Building Safety Journal - June, Aug 2007; Building Safety Bulletin
- July, Sept 2007; and Healthcare Building Ideas - June, July 2007.

INTERROGATORY NO. 14

Identify all facts, instances of failures, and documents relating or referring to the statement referred to in Exhibit 6 attached O'Keeffe's First Set of Requests for Production of Documents and Things, that "When heated by a fire, those products cannot withstand the thermal stress of even a small amount of cool water. Sprinklers could cause them to fall out of the opening, breaching the barrier to smoke and flames."

ANSWER TO INTERROGATORY NO. 14

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP also objects to this interrogatory as vague and ambiguous in that no Exhibit 6 was attached to O'Keeffe's First Set of Requests for Production of Documents and Things. TGP further objects to this interrogatory as improper by exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

Subject to and without waiving these objections, pursuant to Fed. R. Civ. P. 33(d), TGP will produce non-privileged documents, if any, from which information reasonably responsive to this interrogatory can be derived.

Dated this 20th day of February, 2008

By: _____
Jeffrey S. Love
jeffrey.love@klarquist.com
Todd M. Siegel
todd.siegel@klarquist.com
Kelly J. Dunham
kelly.dunham@klarquist.com

Case No.: C-007-3535 JF

TGP'S RESPONSE TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1-14)    -14-

Robert F. Scoti
robert.scoti@klarquist.com
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204-2988
Telephone: (503) 595-5300
Facsimile: (503) 595-5301

Eric L. Wesenberg
ewesenberg@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614-7400
Facsimile: (650) 614-7401

Attorneys for Defendant Technical Glass Products

## PROOF OF SERVICE

The undersigned hereby certifies that on February 20, 2008, the foregoing DEFENDANT

TECHNICAL PRODUCTS' RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

(NOS. 1-14) was served by electronic mail to the following:

Mark I. Schickman
mis@freelandlaw.com
Daniel T. Bernhard
bernhard@freelandlaw.com
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, CA 94105
Telephone: 415-541-0200
Facsimile: 415-495-4332

Jason S. McDonell
jmcdonell@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104-1500
P: 415-626-3939
F: 415-875-5700

Attorneys for Plaintiff O'Keefe's, Inc.


*[signature]*