# EXHIBIT E

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5728
ksritchey@jonesday.com

April 2, 2008

VIA U.S. MAIL & ELECTRONIC MAIL

Jeffrey S. Love, Esq.
jeffrey.love@klarquist.com
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204-2988

Eric L. Wesenberg, Esq.
ewesenberg@orrick.com
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015

Dear Jeff and Eric,

In anticipation of a meet and confer meeting later this week, I wanted to outline O'Keeffe's concerns with TGP's discovery responses. While I hope to be fairly inclusive, nothing in this letter is intended to waive any issue not presented. Moreover, because the issues presented by TGP's responses are repeated throughout the responses, each issue may not be addressed in the discussion of each response.

General Issues

I have reviewed the draft protective order that you provided on February 13. The Court's form of protective order routinely is used in litigation involving sensitive information, and is designed to provide reasonable protections and to eliminate unnecessary disputes between the parties. Absent something unique to this case that makes the Court's form inadequate, I see no reason to modify it. If the Court's form is acceptable to you, I am prepared to sign it today to facilitate the parties' prompt production of documents. If it is not, please explain why the Court's form does not adequately protect the parties' sensitive information.

TGP made a privilege objection in response to virtually every interrogatory and document request, yet failed to produce a log documenting any assertion of privilege. While I do not intend to discuss each questionable assertion of privilege in this letter, some of the assertions of privilege plainly are insupportable. For example, TGP asserts privilege in response to interrogatories asking for a list of building projects (Interrogatories 4-9), and document requests asking for communications with third parties (Document Request 6 -- asking for communications with the California State Fire Marshall). The overbroad assertion of privilege calls into question TGP's use of objections generally. Further, as you know, privilege objections may be waived

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

SFI-581076v2

Jeffrey S. Love, Esq.
Eric L. Wesenberg, Esq.
April 2, 2008
Page 2

**JONES DAY**

absent the timely production of a log. *Burlington Northern & Santa Fe Railway Company v. United States*, 408 F.3d 1142, 1149 (9th Cir. 2005) (failure to timely provide an adequate privilege log may result in waiver of asserted privileges). To the extent TGP intends to argue that its privilege objections have any effect, please produce a log by the close of business on Friday so that O'Keeffe's can at least evaluate the assertions.

TGP repeatedly asserts that O'Keeffe's has exceeded the number of interrogatories, notwithstanding the fact that O'Keeffe's interrogatories generally track TGP's. Based upon TGP's logic, it likewise has far surpassed the number of interrogatories actually numbered in its set. The majority of the questions to which this objection appears to apply merely provide detail with respect to what it means to "identify" a project. Several of TGP's interrogatories ask O'Keeffe's to "identify" building projects and then provide certain other data relating to those projects. Please advise if TGP actually intends to maintain this objection as a basis for not responding to later interrogatories so that we can likewise count TGP's compound interrogatories. By my count, TGP has used at least 16 of its interrogatories.

TGP's relevance, ambiguity, overbreadth and burden objections are not well taken, and are not substantiated. In fact, TGP uses virtually identical language to object to each of O'Keeffe's 29 requests for production, which raises serious doubts about whether the objections were specifically tailored to the requests as required by the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 33(b)(4) & 34(b)(2)(B) & (C); *see also Chartered Semiconductor Mfg. v. Integrated Semiconductor Serv.*, 2007 WL 1674593 (N.D.Cal. June 8, 2007) at *2. TGP issued many requests similar to those propounded by O'Keeffe's, which also calls into question the sincerity of its objections (I assume TGP would not have knowingly issued irrelevant, vague, overbroad or burdensome objections). The subject matter of the false advertising/unfair competition claims asserted by O'Keeffe's relates to, among other things, the manner in which TGP markets its products, and whether its marketing accurately reflects its products' performance. Accordingly, interrogatories and document requests designed to gather information and documents regarding both the statements made by TGP and the actual performance of its products plainly are within the scope of discovery. While I am unpersuaded by TGP's boilerplate objections, if there is a particular interrogatory or document request that you believe is overly inclusive, I would be happy to discuss those requests with you.

It appears that TGP has specifically asserted objections to particular discovery requests, rather than solely relying upon its general objections. As you know, general objections are disfavored. *Burlington Northern*, 408 F.3d at 1149; *IO Group, Inc. v. Veoh Networks, Inc.* 2007 WL 1113800 (N.D. Cal. April 13, 2007) at *1 (overruling general objections because their use "obscures the extent to which [defendant] is withholding information and does not satisfy the requirements for specificity under Fed.R.Civ.P. 34(b)."). If TGP is withholding information or documents based upon any of its general objections, please let me know. If not, please withdraw the general objections.

SFI-581076v2

Jeffrey S. Love, Esq.
Eric L. Wesenberg, Esq.
April 2, 2008
Page 3

**JONES DAY**

Interrogatories

    Nos. 4, 6, 7 & 11: The objections do not provide any detail to support the ambiguity, overbreadth, burden or relevance objections. In light of the fact that TGP served similar interrogatories, these objections are especially unclear. It seems unlikely that TGP cannot identify any projects in which its various products were sold. At a minimum, TGP needs to provide responsive information regarding those responsive projects that it can identify, and state why it cannot identify any remaining projects.

    Nos. 5 & 8: These requests seek for TGP to identify projects in which certain specified products were used, and then to state revenue and profits based on those sales. Again, TGP requested similar information from O'Keeffe's, so overbreadth, burden and relevance objections are particularly hard to understand. Please provide the requested information.

    No. 9: It is unclear why TGP cannot understand this request, because it is virtually identical to TGP's Interrogatory No. 4 to O'Keeffe's. In light of the objections and the caveat "to the extent TGP understands the request," the response is evasive. Is TGP aware of any project that rejected any FireLite product for failing to meet building and safety codes or regulations or not? If so, please provide the reasons and evidence provided by the code official.

    No. 10: As I understand the response, TGP is aware of only one performance test performed by any person for any purpose on SuperLite I-XL. If this is not the case, please supplement the response.

    No. 12: As I understand the response, TGP is not aware of any performance test performed by any person for any purpose on SuperLite I. If this is not the case, please supplement the response.

    No. 14: TGP indicated that it was responding by producing documents, but has not done so. Also, based upon the response, it appears that TGP has no information responsive to the interrogatory other than documentary evidence. If this is not the case, please supplement the response.

Requests for Production

    Nos. 1 & 2: These requests track TGP's first request to O'Keeffe's. Accordingly, TGP's overbreadth, burden, relevance and ambiguity objections are not well taken, and in any event are not substantiated. Certainly TGP has documentation of its sales of FireLite products. While we appreciate TGP's admission that it does not market or encourage the use of its FireLite products in applications requiring a fire-rating in excess of 45 minutes because it would not be properly rated, this request seeks the documents that will allow us to evaluate TGP's conclusory statement. Please provide the requested documents.

SFI-581076v2

Jeffrey S. Love, Esq.
Eric L. Wesenberg, Esq.
April 2, 2008
Page 4

**JONES DAY**

    No. 3: Again, this request tracks a similar request by TGP, so TGP's overbreadth, burden, relevance and ambiguity objections are not well taken. TGP's response appears to be attempting to explain its practice, rather than providing responsive documents. Rule 34 makes no allowance for this type of response. The request seeks documents, communications and things providing information to AHJs and design professionals regarding radiant heat transmission performance of FireLite products, and O'Keeffe's requires the production of the requested documents. Also, whereas in certain instances, TGP may disclose the radiant heat characteristics of its products, we are interested in understanding if this practice is uniformly adhered to throughout the sales process. As you know, O'Keeffe's believes TGP's products are routinely installed in improper applications, so a thorough production is necessary to determine whether, and to what extent, TGP's communications play a role in the improper selection of materials.

    No. 4: TGP's response is non-responsive. The request was not limited to documents showing a project in which FireLite was found to be non-compliant with a building or safety regulation. The request asks for documents that refer to whether FireLite products comply with the stated codes. Certainly TGP has some documents showing what codes its products comply with and what codes they do not comply with. We would like to understand the range of such statements made by TGP and others. Again, TGP asked a similar request, so its objections are not well taken.

    No. 5: Surely TGP is not asserting that it does not understand a request relating to the testing of its FireLite products for basic metrics applicable to fire and safety glass. Its other objections are equally misplaced in light of a similar request to O'Keeffe's. Whether TGP is accurately disclosing the performance of its products is at issue, so please provide the requested test results.

    No. 6: While I do not intend to discuss each of TGP's questionable privilege assertion, this request highlights the problems with TGP's privilege objections. The request seeks TGP's communications with a third party -- Underwriter's Laboratories. No privilege could possibly attach. Moreover, because O'Keeffe's alleges that TGP improperly capitalizes on inaccurate listings from UL, communications with UL are directly relevant. Again, TGP asked a similar document request to O'Keeffe's. Please provide all responsive documents.

    No. 7: TGP's assertion of privilege with respect to communications with the California Fire Marshall likewise is bordering on frivolous. TGP asked a similar request of O'Keeffe's, so its other objections are not well taken. It is unlikely that TGP has such a voluminous body of communications with the State Fire Marshall that a burden objection could be implicated and, in any event, TGP has not substantiated this objection. Please provide responsive documents.

    No. 8: TGP has agreed to produce responsive documents. As stated above, because the request seeks documents sent to or received from the State Fire Marshall, there can not be any privileged documents. We look forward to a complete production.

- 4 -

Jeffrey S. Love, Esq.  **JONES DAY**
Eric L. Wesenberg, Esq.
April 2, 2008
Page 5

      No. 9: O'Keeffe's claims against TGP include allegations that TGP is improperly maligning O'Keeffe's products. This request is directly relevant and targeted to those claims. Other than communications with its counsel, there is no basis for TGP not to produce the requested documents.

      No. 11: TGP's objections are not well taken for the reasons discussed repeatedly in this letter. As I understand TGP's response, it has no documents that refer or relate to requests for any FireLite product to be approved as an alternate material for 60 or 90 minute fire applications. If this is not correct, please let me know.

      No. 12: Again, as this request seeks documents sent to a third party -- a building code official -- TGP's privilege objection is improper. This request is similar to a TGP request for production, so TGP's other objections are likewise not well taken. Please provide responsive documents.

      No. 13: For the reasons discussed elsewhere in this letter, TGP's objections are not well-taken. This request is well within the scope of O'Keeffe's false advertising claims against TGP. In light of TGP's claims elsewhere in its responses that it never has requested approval for FireLite as an alternate material, this request is neither burdensome nor overbroad. Please provide any documents relating to AHJ approval of FireLite products, including in the applications depicted in the attachment.

      No. 14: Likewise, communications relating to the depicted projects are within the scope of the pleadings. Please provide the requested documents.

      No. 15: As I understand TGP's response, it is not aware of any instance in which a FireLite product contributed to the failure of a building inspection or was not approved for use in a project and, therefore, it has no responsive documents. If this is not correct, please provide the responsive documents.

      No. 16: This request is straightforward -- it seeks documents relating to instances, claims, lawsuits or allegations that TGP's FireLite products contributed to an injury to person or property. It is well within the scope of discovery in this case because O'Keeffe's alleges that TGP's products are used in applications in which they are unsafe. Please provide responsive documents.

      No. 17: As I understand the response, TGP is not aware of any documents relating to any request that FireLite products be approved in 60 or 90 minute applications requiring radiant heat protection pursuant to ASTM E119/NFPA 251. If TGP intended to limit this response by its use of the phrase "reasonably responsive documents," please explain what documents were excluded from the response.

      No. 18: TGP indicates in its response that it will produce a fire test report, which has not been produced. Please advise if TGP is withholding other responsive documents based upon its objections so that we can discuss those objections.

SFI-581076v2

Jeffrey S. Love, Esq.  
Eric L. Wesenberg, Esq.  
April 2, 2008  
Page 6

**JONES DAY**

  Nos. 19 & 20: These requests each seek documents relating to a single statement publicized by TGP that relate to the issues in this lawsuit. TGP's objections are not well-taken. There is nothing unclear or burdensome about the requests. TGP's refusal to respond to request no. 20 is especially troubling because TGP plans to seek summary judgment against O'Keeffe on the basis that similar statements by O'Keeffe are unlawful, unfair and misleading.

  No. 21: TGP is prosecuting claims against O'Keeffe's based upon its interpretation of the code requirements for the hose stream test. Accordingly, it is unclear how it can assert this request is not relevant. TGP has not substantiated that there is a burdensome quantity of responsive documents. TGP's other objections likewise are not well taken. Please provide responsive documents.

  Nos. 22, 23 & 27: TGP has indicated that it will produce certain documents "reasonably responsive" to the request, but has excluded production of any documents relating to O'Keeffe's products other than SuperLite I-XL. In light of TGP's criticisms of certain of O'Keeffe's WHI listings, we are entitled to evaluate TGP's communications with WHI and UL more generally to understand how certain communications compare with others. Again, it seems unlikely that the volume of communications is burdensome, and TGP has not substantiated this objection.

  Nos. 24 & 26: TGP indicates that it will provide "reasonably responsive" documents. Please advise if any documents are being withheld so that we can evaluate TGP's objections.

  No. 25: Again, TGP's objections are not well-taken. The request seeks documents reflecting communications with certain identified individuals regarding proposals to change code provisions submitted by O'Keeffe's on specified topics at issue in the litigation. There is no basis not to respond.

  No. 28: In light of O'Keeffe's allegations that TGP capitalizes on inaccurate UL listings, TGP's communications with UL about its products' listings, performance or characteristics are directly relevant. There is nothing about the request that is unclear, and TGP has not substantiated that the volume of responsive documents makes this request burdensome. Please produce responsive documents.

  No. 29: Again, in light of the parties' allegations relating to the propriety of listings, this request is directly relevant. The other objections are likewise not well taken. Please produce responsive documents.

  As you know, we have a discovery hearing set for May 20 (resulting in a deadline to file motions on April 15), which means we have very little time to informally resolve disputes. There is a significant amount of information that TGP has agreed to produce, but has not yet done so. There is no reason to delay providing these documents and information, and I request that you do so by Friday. With respect to the remaining discovery requests, I am hopeful that TGP will voluntarily change its position on at least some of the requests. For those requests that

- 6 -

SFI-581076v2

Jeffrey S. Love, Esq.  
Eric L. Wesenberg, Esq.  
April 2, 2008  
Page 7

**JONES DAY**

TGP continues to decline to make a full production, I would like to arrange a time to discuss TGP's objections with you some time this week. I can be available Thursday until 2:30 and all day Friday. Please advise regarding your preference.

Very truly yours,

Katherine S. Ritchey

- 7 -

SFI-581076v2