# EXHIBIT F

| | | |
|---|---|---|
| **Katherine S Ritchey/JonesDay** <br> Extension 3-5728 <br> 04/08/2008 04:54 PM | To | adam.wichman@klarquist.com, gramsey@orrick.com |
| | cc | |
| | bcc | katesteel@mindspring.com; wfo@okeeffes.com; bernhard@freelandlaw.com; Jennifer Seraphine/JonesDay@JonesDay; schickman@freelandlaw.com |
| | Subject | Follow up to our meet and confer |

Adam and Gabe,
I just wanted to make a clear record of our telephone conversations yesterday, which took place in two calls lasting more almost four hours.

You indicated that you did not have a record that O'Keeffe's had served initial disclosures. Attached please find the initial disclosures we served on November 9, 2007.

You also took the position both initially and after conferring with Mr. Love that all discovery is stayed except the currently outstanding requests for production. You refused to even meet and confer on the interrogatories. As I promised, we have obtained the transcript of the proceeding, which confirms that there was no stay of anything other than deposition discovery. I also told you that I believe TGP's refusal to discuss the interrogatories was dilatory and obstructionist. Below is Judge Fogel's statement in response to Mr. Love's question (which Wesenberg also heard):

> MR. LOVE: Your Honor,... when we come before Judge Trumbull, if I make this representation if this is consistent with what you are doing here, then we can tell Judge Trumbull that the court left it in her hands as to how to limit discovery.

> THE COURT: Absolutely. That's her job. She's the magistrate who is handling this and I'm not telling her what to do. All I'm saying is I'm not going to interfere with discovery that's already been propounded. It's out there; you gotta deal with it. And I will do this: The one limitation I'm putting in is unless and until she orders otherwise or you agree otherwise, no depositions.

We discussed the protective order yesterday. We agreed to use the Northern District form with two exceptions. You still seek to modify sections 2.4 and 7.3. Regarding section 2.4, I told you that I read the changes as using different words, but conveying the same concept as the Northern District form. If you are unsatisfied with the Court's language, I asked you to explain how you believe your proposed language modifies the parties' obligations under the protective order. You could not explain any way that TGP is intending to change the basic obligations of the protective order. I think unnecessary changes will make the parties' obligations less clear rather than more clear. Accordingly, because the Northern District form tracks the requirements of the law, and there likely is voluminous case law interpreting it, I did not see any reason to add ambiguity or the potential for disputes.

With respect to your changes to section 7.3, TGP seeks to exclude Mr. Schickman from attorneys' eyes only communications. This is a remarkable request. Mr. Schickman is *not* an in-house counsel. Rather, he is retained, outside counsel who is lead trial counsel in this case. While he may have worked with O'Keeffe's for a long time, he works for other clients and is no different than any other outside counsel. Klarquist touts itself as "preferred legal counsel" for a number of clients, including Microsoft; surely you would not agree that this makes Klarquist lawyers "in-house" counsel such that they should be excluded from reviewing confidential information when representing Microsoft in litigation matters. Mr. O'Keeffe, not TGP, gets to select who will represent him. At the time of our call, you did not have any factual basis to suggest that Mr. Schickman (an officer of the Court) will violate the Court's protective order, nor could you provide any legal authority supporting your request to exclude lead outside counsel from seeing all the evidence in this case. You suggested an "interim" protective order in which Mr. Schickman will be excluded from seeing attorneys' eyes only documents pending a ruling from the Court. As I told you on the telephone, such an order deprives Mr. O'Keeffe of his right to be advised by the counsel of his choice, results in inefficiency and disrupts the ability of our team to evaluate strategy in a systematic manner. I

told you I was not inclined to agree, but that I would consider the issue over night. After further reflection and consultations, I do not believe the marginal benefits of this path outweigh the costs (including, but not limited to, those described above). TGP's request is patently unreasonable, and we will not agree to it even on an interim basis. I believe this is a further example of TGP's dilatory and obstructionist behavior.

There are a number of issues that permeate all of TGP's responses. First, TGP's blanket assertion of privilege. I invited you on numerous occasions to substantiate TGP's privilege and burden objections. As I explained, TGP has asserted privilege in response to *every* request, and has not produced a log. Accordingly, I have no basis to evaluate the privilege objections, other than to the extent I can ascertain from particular requests that there is no *conceivable* way a request could implicate privilege. We discussed RFP 6 as an example. This RFP seeks communications with a third party -- UL. Yet, you continued to argue in our meet and confer that the privilege objection was proper because it states "to the extent." Your statement concedes the privilege objection is boilerplate. I asked you to identify *any* privileged documents responsive to the requests so that we could discuss it. You could not do so. Likewise, in both my letter and on our calls, I asked you to provide any information that would support a burden objection (such as the volume of documents, the number of man-hours required to search for documents, etc.). You could not. Our discussion centered entirely on over-breadth and relevance concerns by TGP. Please let me know if you recall providing me with any details supporting any objection other than over-breadth and relevance for disputing production.

The second issue that permeates nearly all, if not all, of TGP's responses is TGP's assertion that it need not respond to discovery on claims or defenses that it does not deem valid. While, we only discussed a handful of the document requests in detail, this issue -- the scope of discovery -- was the major issue that recurred throughout the discussion. TGP initially claimed that it did not understand the pleadings and discovery requests sufficiently to even begin searching for responsive documents. As I also pointed out, your references to paragraphs 15 and 16 of O'Keeffe's counterclaims at the start of our discussion, as well as statements in TGP's own responses (for example, the response to RFP 2) make abundantly clear that TGP understands the claims, and certainly understands them well enough to start the search for documents and to produce a portion of the responsive documents. The real issue, as explained in your letter of April 3, is that TGP believes that it is not required to respond to discovery on claims and defenses that it unilaterally determines are not "valid." This belief is not supported by the law.

The third global issue is TGP's unreasonably restrictive view of its discovery obligations. During our meet and confer, you repeatedly asserted that TGP has no obligation to provide *any* information on any product not specifically referenced in the pleadings. Your position is that a claim or defense *only* exists in a manner that can support discovery if the *exact* problem is described in the pleading. Specifically, TGP only is willing to search for products specifically referenced in the pleading, which you claim is FireLite products carrying a 60 or 90 minute rating, and FireLite products used in transoms and sidelites. This goes against the principles of permissible notice pleading in Federal Court. As I also explained to you, O'Keeffe's claims are much broader, and include claims for false advertising, trade libel and unfair business practices. O'Keeffe's has alleged (at paragraphs 15 and 16) that "TGP omits critical and essential performance limitations and shortcomings of its ceramic products from the marketing and sales of FireLite" and "TGP has consistently and affirmatively misrepresented the code applicability and standards of FireLite." These allegations more than satisfy notice pleading, and the specific examples cited in no way serve to limit the claims O'Keeffe's has asserted. We believe TGP's conduct is pervasive throughout TGP's products, so discovery crossing products is relevant to the direct claims, and also is relevant to willfulness. TGP's FireLite products as well as its other safety and fire rated products -- not some limited subset specifically referenced in the complaint -- are at issue. In order to dispel any doubts that TGP's misconduct is not limited to FireLite products, I explained that the advertising of WireLite on TGP's website inaccurately reflects the impact performance of its products.

In any event, TGP has asserted false advertising and unfair business practice claims against O'Keeffe's. It is well within the scope of discovery (you acknowledged that relevance for purposes of discovery is broader than at trial) for O'Keeffe's to understand whether TGP is engaging in conduct similar to that alleged against O'Keeffe's. As one example we discussed, TGP takes the position that an AHJ cannot approve an alternate material that does not pass the hose stream. Questions directed to whether TGP

has ever gotten AHJ approval for an alternate material for *any* of its products would materially undermine TGP's claims, and is within the scope of discovery.

We also discussed that O'Keeffe's has pled that TGP capitalizes on misleading listings from UL in its unfair advertising. Accordingly, TGP's testing and communications with UL are within the scope of discovery. TGP has asserted claims relating to the listings O'Keeffe's received from WHI. A significant part of this case relates to each parties' allegations regarding how the other's products perform and whether their listings result in confusion in the marketplace. I cannot understand why you believe the parties' interactions with both listing agencies are outside the scope of the parties' claims and defenses. As we discussed, listing issues relating to hose stream, radiant heat, temperature rise and impact are all within the scope of the pleadings.

Rather than continuing to discuss each particular request, which was my preference, you agreed to supplement TGP's responses to the requests for production by today. As I indicated, my preference was to continue to discuss each request because I believe that TGP is taking an unduly narrow interpretation of relevance/over-breadth. I expressed my concern that this was yet another manner in which TGP was going to delay proper responses because I would just need to explain the relevance of the requests at a later time in response to the supplemental responses. I specifically requested that TGP make clear what categories of documents, if any, that it is excluding from the responses. While I am agreeable to narrowing requests that truly are capturing documents that are not relevant to the case, because TGP has not even begun its search for documents, it could not identify any categories of documents it believes should be excluded. Rather, you just hypothesized that categories of documents beyond those TGP would even search for may exist that were outside the scope of discovery.

I asked TGP to commit to a date for providing documents, which you could not do.

We have a discovery hearing set before Judge Trumbull on May 20, which makes our deadline to file motions early next week absent some other arrangement. Continuing to defer issues and having inadequate information and/or authority to resolve them is impairing our ability to informally resolve issues and to present any unresolved issues to Judge Trumbull.

I look forward to talking with you Thursday morning, and resolving any open issues. Please understand, I only have two hours to devote to meeting and conferring on that date.



0901_001.pdf

Katherine S. Ritchey
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone (415) 875-5728
Facsimile (415) 875-5700

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========