Mark I. Schickman (State Bar No. 62653)
schickman@freelandlaw.com
Daniel T. Bernhard (State Bar No. 104229)
bernhard@freelandlaw.com
FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
San Francisco, California 94105
Telephone:     (415) 541-0200
Facsimile:      (415) 495-4332

Jason McDonell (State Bar No. 115084)
jmcdonell@jonesday.com
Katherine S. Ritchey (State Bar No. 178409)
ksritchey@jonesday.com
Jennifer Seraphine (State Bar No. 245463)
jseraphine@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, California 94104
Telephone:     (415) 626-3939
Facsimile:      (415) 875-5700

Attorneys for Plaintiff, Counterdefendant and
Counterclaimant O'KEEFFE'S, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| O'KEEFFE'S, INC., <br><br> Plaintiff, <br><br> v. <br><br> TECHNICAL GLASS PRODUCTS, ANEMOSTAT, and PILKINGTON PLC, <br><br> Defendants. <br><br>───────────────── <br> AND RELATED COUNTERCLAIMS. | CASE NO.:  C 07-cv-03535 JF PVT <br><br> **PLAINTIFF O'KEEFFE'S, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SEVENTH AND EIGHTH COUNTERCLAIMS OF DEFENDANT TECHNICAL GLASS PRODUCTS' SUPPLEMENTAL AND AMENDED COUNTERCLAIMS** <br><br> Date: July 18, 2008 <br> Time: 9:00 a.m. <br> Before the Honorable Jeremy Fogel |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................ 2

RELIEF REQUESTED .............................................................................................. 2

ISSUES PRESENTED ............................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 3

I.    INTRODUCTION ....................................................................................... 3

II.   RELEVANT FACTS .................................................................................. 4

III.  ARGUMENT .............................................................................................. 7

    A.    This Court Lacks Jurisdiction Over TGP's Declaratory Judgment Claims ........... 7

        1.    There Is No "Actual Controversy" Between The Present Parties.............. 8

        2.    TGP's Claim Seeks An Improper Advisory Opinion ............................... 10

    B.    The Court Should Exercise Its Substantial Discretion And Decline To Decide TGP's Declaratory Judgment Claims ...................................................... 13

        1.    Interpretation Of The State Building Codes And Authority Of Local Building Code Officials Is Better Left To The States.............................. 14

        2.    TGP's Counterclaims Are A Procedural Maneuver That Will Not Resolve Any Pending Issues ..................................................................... 16

IV.   CONCLUSION ......................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

Cases

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth
  300 U.S. 227 (1937)............................................................................ 7, 8, 11

Allstate Ins. Co. v. Seelye
  198 F.Supp.2d 629 (W.D. Pa. 2002) ...................................................... 14

American Nat'l Red Cross v. Shotmeyer Bros., Inc.
  175 A.2d 646 (N.J. Super. Ct. App. Div. 1961)...................................... 16

Atlantic Mut. Ins. Co. v. Gula
  84 Fed.Appx. 173 (3d Cir. 2003)...................................................... 14, 15

Berkeley Ctr. for Indep. Living v. Coyle
  50 Cal. Rptr. 2d 39 (Cal. Ct. App. 1996) ............................................. 15

Blackstone Park Improv. Assoc. v. State of Rhode Island
  448 A.2d 1233 (R.I. 1982) .................................................................... 16

Brillhart v. Excess Ins. Co. of America
  316 U.S. 491 (1942)............................................................................... 14

Cass County v. U.S.
  570 F.2d 737 (8th Cir. 1978)........................................................... 12, 13

Cedar Shake and Shingle Bureau v. City of Los Angeles
  997 F.2d 620 (9th Cir. 1993)............................................................ 4, 15

City of Springfield v. Washington Public Power Supply Sys.
  752 F.2d 1423 (9th Cir. 1985), cert. denied, 474 U.S. 1055 (1986) ...................... 9, 10

Coalition for a Healthy Cal. v. FCC
  87 F.3d 383 (9th Cir. 1996).................................................................... 9

Golden Eagle Ins. Co. v. Travelers Cos.
  103 F.3d 750 (9th Cir. 1996), overruled on other grounds by Govt Emp. Ins. Co. v. Dizol,
  133 F.3d. 1220 (9th Cir. 1998).............................................................. 15

Govt Emp. Ins. Co. v. Dizol
  133 F.3d 1220 (9th Cir. 1998).................................................... 14, 15,16

Huth v. Hartford Ins. Co. of the Midwest
  298 F.3d 800 (9th Cir. 2002)........................................................... 14, 15

Iowa City of New Hampton v. Blayne-Martin Corp.
  594 N.W.2d 40 (Iowa 1999) .................................................................. 15

Knutson v. Barbour
  879 P.2d 696 (Mont. 1994) ................................................................... 16

Lamar Outdoor Adver. Inc. v. City of Dayton
  No. 20158, 2004 Ohio App. LEXIS 4337 (Ohio Ct. App. Sep. 10, 2004) ............... 16

Maryland Cas. Co. v. Pac. Coal & Oil Co.
  312 U.S. 270 (1941)................................................................................ 8

MedImmune, Inc. v. Genentech, Inc.
  127 S. Ct. 764 (2007) remanded to 219 Fed. Appx. 986 (Fed. Cir. 2007),
  remanded to 535 F.Supp.2d 1000 (C.D. Cal. 2008)............................ 8, 9

# TABLE OF AUTHORITIES
### (continued)

Page

Minnetonka v. Jones Assoc. Inc.
  236 N.W.2d 163 (Minn. 1975)................................................................................. 15

Pacific Bell Tel. Co. v. City of Walnut Creek
  428 F.Supp.2d 1037 (N.D. Cal. 2006) ..................................................................... 16

Parker Bldg. v. Lightsey
  925 So. 2d 927 (Ala. 2005)...................................................................................... 15

Passnault v. Bd. of Admin. Appeals
  525 A.2d 222 (Md. 1987).......................................................................................... 15

Public Service Com. v. Wycoff Co.
  344 U.S. 237 (1952)............................................................................................ 8, 13

Rhoades v. Avon Prods., Inc.
  504 F.3d 1151 (9th Cir. 2007).................................................................................. 13

Seventeen Hundred Peoria Inc., v. City of Tulsa
  422 P.2d 840 (Okla.1966) ........................................................................................ 16

Spectronics Corp. v. H.B. Fuller Co.
  940 F.2d 631 (Fed. Cir. 1991), abrogated on other grounds by Liquid Dynamics Corp. v.
  Vaughan Co., 355 F.3d 1361 (Fed. Cir. 2004)..................................................... 8, 13

State Auto Inc. Cos. v. Summy
  234 F.3d 131 (3d Cir. 2000)................................................................................ 14, 15

State ex. rel. Graham v. San Juan County
  686 P.2d 1073 (Wash. 1984)..................................................................................... 16

Stephenson v. Stephenson
  249 F.2d 203 (7th Cir. 1957)...................................................................................... 8

Taylor v. F.D.R. Sullivan
  No. 04-22024-CV-ALTONAGA, 04-22024-CV-BANDSTRA, 2004 WL 3142552
  (S.D. Fla. Dec. 14, 2004) ................................................................................. 3, 9, 13

U.S. v. Fruehauf
  365 U.S. 146 (1961)........................................................................................... 11, 12

Vorbeck v. Schnicker
  660 F.2d 1260 (8th Cir. 1981), cert. denied, 455 U.S. 921 (1981) ............................ 9

Whitehead v. Ramada Inns, Inc.
  529 S.W.2d 366 (Ky. Ct. App. 1975) ...................................................................... 15

Wilton v. Seven Falls Co.
  515 U.S. 277 (1995)......................................................................................... 13, 14

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

Statutes and Codes

4

Declaratory Judgment Act
  28 U.S.C. § 2201 ...................................................................................................... passim

5

International Building Code
  Section 104.11 ................................................................................................................. 4

6

International Building Code
  Section 715.3 .............................................................................................................. 4, 5

7

International Building Code
  Section 715.5.2 ................................................................................................................ 5

8

9

Rules

10

Federal Rule of Civil Procedure
  12(b)(1) ................................................................................................................... passim

11

Federal Rule of Civil Procedure
  20 ................................................................................................................................... 10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O'Keeffe's, Inc.'s Motion to Dismiss
Case No. 07 cv-03535 JF PVT

1

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on July 18, 2008 at 9:00 a.m. in the Courtroom of the Honorable Jeremy Fogel, located at 280 South 1st Street, San Jose, Plaintiff O'Keeffe's Inc. ("O'Keeffe's") will, and hereby does, move this Court for an order dismissing the Seventh and Eighth Counterclaims of Technical Glass Products' ("TGP") Supplemental and Amended Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1). This motion will be based on the Notice of Motion and Motion and the Memorandum of Points and Authorities incorporated herein.

## RELIEF REQUESTED

O'Keeffe's seeks an order dismissing the Seventh and Eighth Counterclaims of TGP's Supplemental and Amended Counterclaims pursuant to Federal Rule of Civil procedure 12(b)(1).

## ISSUES PRESENTED

1.    Whether the Court has jurisdiction over TGP's Seventh and Eighth Counterclaims for declaratory judgment?

2.    Whether the Court should exercise its discretion and decline to decide TGP's Seventh and Eighth Counterclaims for declaratory judgment?

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Defendant TGP has amended its counterclaims to add two claims for declaratory

4  judgment.  Both claims ask this Court to interpret certain provisions of the building codes of

5  various states and to limit, by way of declaration, the authority of local building code officials

6  under those provisions.  Specifically, TGP seeks a declaration that, as a matter of law, the current

7  practices of local building code officials in thirty-seven (37) states are not authorized by, or are in

8  conflict with, the building codes of those states. The parties to this case are TGP and Plaintiff

9  O'Keeffe's,[1] who are competitors in the fire and safety glass industry.  The local building code

10  officials, whose practices are the subject of TGP's claims, are not parties to this litigation.

11      TGP's declaratory judgment claims are properly dismissed pursuant to Federal Rule of

12  Civil Procedure 12(b)(1) for two reasons:  first, because this Court lacks subject matter

13  jurisdiction over TGP's claims; and second, because, even if jurisdiction exists, the Court should

14  exercise its substantial discretion and decline to hear TGP's claims.

15      This Court lacks jurisdiction over TGP's declaratory judgment claims because there is no

16  actual controversy between the litigants here, and because TGP seeks an advisory opinion from

17  the Court.  While TGP has filed its claims against O'Keeffe's, TGP's real grievance is with the

18  local building code officials.  The mere fact that TGP takes a different view of the building codes

19  than O'Keeffe's does not create a controversy sufficient to invoke jurisdiction under the

20  Declaratory Judgment Act, 28 U.S.C. § 2201, for a "difference of opinion about the state of the

21  law does not create an actual legal controversy that the court can adjudicate."  Taylor v. F.D.R.

22  Sullivan, 2004 WL 3142552, at *3 (S.D. Fla. Dec. 14, 2004).  O'Keeffe's should not be called

23  upon to defend the interests of these non-parties to the case.

24      The Court should also decline to exercise its discretionary jurisdiction over TGP's

25  declaratory judgment counterclaims because the relief sought – the interpretation of the building

26  codes of each of the thirty-seven (37) states – is best left to the individual states themselves.  "The

27

28      ───────────────────
[1] O'Keeffe's has also sued defendants Anemostat and Pilkington for patent infringement; those claims have been stayed pending the outcome of reexamination proceedings before the U. S. Patent and Trademark Office.

1    interpretation of building codes, especially those related to fire safety, is an area of especial local

2    concern into which federal intrusion is highly undesirable." Cedar Shake and Shingle Bureau v.

3    City of Los Angeles, 997 F.2d 620, 622 (9th Cir. 1993). TGP's amendment is nothing more than

4    an ill-conceived and poorly executed procedural maneuver designed to salvage, after the fact, its

5    baseless claims for false advertising and unfair business practices against O'Keeffe's. TGP has

6    further indicated that it intends to file an early summary judgment on its declaratory judgment

7    claims – to what end is unclear, as this would resolve none of the issues pending in the case. For

8    these reasons, as set forth herein, TGP's counterclaims are properly dismissed.

9    **II.    RELEVANT FACTS**

10        TGP filed its Supplemental and Amended Counterclaims ("Amended Counterclaims") on

11    April 4, 2008. Docket Entry No. 98. TGP's Seventh and Eighth Counterclaims relate to Code

12    Section 104.11 of the International Building Code ("IBC"), 2003 and 2006 Editions, either

13    independently or as referenced in Section 715.3 of the IBC (2006), and Code Section 715.5.2 of

14    the IBC (2003 and 2006). Specifically, these claims relate to the rights of local building code

15    officials to approve "alternative materials" under Code Section 104.11, which provides that:

16    
> **104.11 Alternative materials, design and methods of**
17    > **construction and equipment.** The provisions of this code are not
> intended to prevent the installation of any material or to prohibit
18    > any design or method of construction not specifically prescribed by
> this code, provided that any such alternative has been approved.
19    > An *alternative material*, design or method of construction *shall be*
> *approved* where the building official finds that the proposed design
20    > is satisfactory and complies with the intent of the provisions of this
> code, and that the material, method or work offered is, for the
21    > purpose intended, at least the equivalent of that prescribed in this
> code in quality, strength, effectiveness, fire resistance, durability
> and safety.
22    

23    See Amended Counterclaims, Ex. L, p. 8 (emphasis supplied). Code Section 715.3 of the IBC,

24    governing "opening protectives" (such as window or door assemblies), provides that:

25    
> **715.3 Alternative methods for determining fire protection**
26    > **r**atings. The application of any of the alternative methods listed in
> this section shall be based on the fire exposure and acceptance
> criteria specified in NFPA 252 or NFPA 257. The required fire
27    > resistance of an opening protective shall be permitted to be
> established by any of the following methods or procedures:
28

1     1.  Designs documented in approved sources.

2     2.  Calculations performed in an approved manner.

     3.  Engineering analysis based on a comparison of opening protective designs having fire-protection ratings as determined by the test procedures set forth in NFPA 252 or NFPA 257.

     4.  Alternative protection methods as allowed by Section 104.11.

Id. at Ex. L, p. 106.  And Code Section 715.5.2 of the IBC, governing "nonsymmetrical glazing systems" (such as glazing makeups that are different on each side), provides that:

> **715.5.2  Nonsymmetrical glazing systems.**  Nonsymmetrical fire-protection-rated glazing systems in fire partitions, fire barriers or in exterior walls with a fire separation distance of 5 feet (1524 mm) or less pursuant to Section 704 shall be tested with both faces exposed to the furnace, and the assigned fire protection rating shall be the shortest duration obtained from the two tests conducted in compliance with NFPA 257.

Id. at Ex. L, p. 109.

Code Sections 715.3 and 715.5.2 both refer to "NFPA 257," a testing standard set by the National Fire Protection Association ("NFPA") and applicable to window and glass block assemblies.  Relevant here, NFPA 257, Chapter 6, describes a "Fire Test," which is, generally speaking, where the window assembly is exposed on one side to a fire of certain heat intensity(s), and a "Hose Stream Test," which is where the fire-exposed side of the fire window assembly is subjected to the impact, erosion and cooling effects of a standard hose stream (i.e., a fire hose). Amended Counterclaims, at Ex. N ¶¶ 6.1 and 6.2.  As alleged by TGP, "NFPA 257 prescribes standardized fire test and hose stream test procedures that apply to the evaluation of fire window assemblies to retard the spread of fire through openings in fire resistance-rated walls."  Id. ¶ 107. Code Section 715.3 also refers to NFPA 252.  Like NFPA 257, NFPA 252 describes a "Fire Test" and a "Hose Stream" test, in this case applicable to door assemblies.  Id. at Ex. O.  As alleged by TGP, "NFPA 252 prescribes standardized fire test and hose stream test procedures that apply to fire door assemblies, including windows in such door assemblies, intended to be used to retard the spread of fire through door openings in fire resistive walls."  Id. ¶ 108.

TGP alleges that nineteen (19) states, including Alabama, California, Georgia, Hawaii, Iowa, Kentucky, Louisiana, Maryland, Minnesota, Montana, New Hampshire, New Jersey, Ohio,

1    Oklahoma, Pennsylvania, Rhode Island, Tennessee, Utah and Washington, "have reportedly

2    adopted Chapters 1 and 7 of the IBC 2006, including Code Sections 104.11 and 715.3."

3    Amended Counterclaims, ¶ 104.  However, the devil is in the details.  TGP admits, for example,

4    that the California Building Code (2007), Title 24, Part 2, California Code of Regulations, does

5    "not independently adopt section 104.11 of the IBC, but does include it in Appendix Chapter 1 to

6    the CBC."  Id. ¶ 102.  It is also unclear from TGP's pleading whether each of the states identified

7    has adopted the relevant code provisions of the IBC with or without amendments.  Compare, for

8    example, ¶¶ 102 and 103 of the Amended Counterclaims, referencing California and

9    Washington's adoption of Code Section 715.3 "without amendments," and ¶ 104, referencing

10   seventeen (17) other states adoption of this same Code Section "with amendments."  TGP also

11   alleges that eighteen (18) other states have adopted earlier (2003) Code provisions, specifically,

12   that states, including Alaska, Connecticut, Florida, Idaho, Kansas, Maine, Massachusetts,

13   Michigan, Nevada, New Mexico, New York, North Carolina, Oregon, South Carolina, Texas,

14   Vermont, Virginia and West Virginia, "have reportedly adopted Code Section 104.11 and Chapter

15   7 of IBC 2003 in material part."  Id. ¶ 105.  What "material part" is unclear.  What was

16   "reportedly adopted" is also not so clear as TGP initially suggests:  for example, TGP later

17   acknowledges that the 2003 Edition of the IBC did not include the current Code Section 715.3 of

18   the IBC.  Id.  While the question of whether that section can be read into the earlier Code adopted

19   by many of the states cited in TGP's pleading is potentially an important one, it need not be

20   answered for purposes of this motion.

21        Despite the variations in the state and local building codes, TGP's Seventh and Eighth

22   Counterclaims seek declarations regarding the authority of local building code officials in all of

23   these thirty-seven (37) states.  Specifically, TGP's Seventh Counterclaim requests a declaration

24   "that the hose stream test is a mandatory test under state building codes that cannot be waived by

25   local building officials" (Amended Counterclaims, ¶ 124), and that "local building officials lack

26   authority to waive the hose stream test under Section 104.11 of the IBC (2006 and 2003) as

27   adopted by the 36 [sic] states" (Id. p. 23, ¶ E).  TGP's Eighth Counterclaim requests that this

28   Court declare "that for uses covered by IBC Chapter 7 and including specifically those referenced

1   in Code Section 715.5.2, SuperLite 1-XL must be assigned [by local building code officials] a fire

2   protection rating in accordance with 'the shortest duration obtained from the two tests conducted

3   in compliance with NFPA 257….'" Id. pp. 23-24.  (SuperLite 1-XL is O'Keeffe's product.)

4          The real effect of the declarations sought by TGP would be to change the current practice

5   of local building code officials who regularly approve alternative materials, including alternative

6   materials that do not pass the hose stream test.  TGP does not (and cannot) dispute that building

7   code officials regularly approve products (including, but not limited to, products offered by

8   O'Keeffe's) that do not pass the hose stream test as "alternative materials" under the cited

9   building code provisions.  See, e.g., Amended Counterclaims, Ex. R, p. 13 (letter approving a

10  product that does not pass the hose stream test as alternative material).  TGP nevertheless seeks to

11  enjoin O'Keeffe's from future representations regarding the Code, and presumably, from

12  representations that might be made following entry of the declaration TGP seeks in its Amended

13  Counterclaims:

14          TGP seeks an injunction … enjoining OKI from further inducing
            local building officials to waive the hose stream test ….
15

16          TGP seeks an injunction … enjoining OKI from further advertising
            SuperLite 1-XL as having a fire protection rating … for uses
            covered by IBC Chapter 7, including specifically Section 715.5.2.
17

18  Amended Counterclaims, ¶¶ 125, 137 (emphasis added).  There is, however, no basis for such

19  relief.

20  **III.    ARGUMENT**

21      **A.    This Court Lacks Jurisdiction Over TGP's Declaratory Judgment Claims**

22          This Court lacks jurisdiction over TGP's declaratory judgment claims because there is no

23  "actual controversy" within the meaning of the Declaratory Judgment Act ("the Act").  The Act

24  authorizes federal courts to "declare the rights and other legal relations" of the litigants in "a case

25  of actual controversy within its jurisdiction."  28 U.S.C. § 2201 (emphasis added).  The "actual

26  controversy" requirement is analyzed in the same manner as the "case or controversy" standard

27  under Article III of the United States Constitution.  See Aetna Life Ins. Co. of Hartford, Conn. v.

28  Haworth, 300 U.S. 227, 239-40 (1937).  Where, as here, there is no actual controversy, the Court

1    has no jurisdiction and no discretion to decide the case.  See Public Service Com. v. Wycoff Co.,

2    344 U.S. 237, 242 (1952) ("This Act was adjudged constitutional only by interpreting it to

3    confine the declaratory remedy within conventional 'case or controversy' limits"); Spectronics

4    Corp. v. H.B. Fuller Co., 940 F.2d 631, 634 (Fed. Cir. 1991) ("The existence of an actual

5    controversy is an absolute predicate for declaratory judgment jurisdiction"), abrogated on other

6    grounds by Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1370 (Fed. Cir. 2004).  TGP,

7    as the party requesting a declaratory judgment, bears the burden of proof.  See MedImmune, Inc.

8    v. Genentech, Inc., 127 S. Ct. 764, 771 (2007), remanded to 219 Fed. Appx. 986 (Fed. Cir. 2007),

9    remanded to 535 F.Supp.2d 1000 (C.D. Cal. 2008) ("[i]n the trial court, of course, a party seeking

10   a declaratory judgment has the burden of establishing the existence of an actual case or

11   controversy") (citations omitted).

12        The controversy "must be a real and substantial controversy admitting of specific relief

13   through a decree of conclusive character, as distinguished from an opinion advising what the law

14   would be upon a hypothetical state of facts."  Aetna Life, 300 U.S. at 241.  "Basically, the

15   question in each case is whether the facts alleged, under all the circumstances, show that there is a

16   substantial controversy, between parties having adverse legal interests, of sufficient immediacy

17   and reality to warrant the issuance of a declaratory judgment."  Maryland Cas. Co. v. Pac. Coal &

18   Oil Co., 312 U.S. 270, 273 (1941).  TGP's counterclaims do not present an "actual controversy"

19   sufficient to support a finding of jurisdiction under the Declaratory Judgment Act because: (1)

20   there is no actual controversy between the present parties to the case; and (2) TGP seeks an

21   improper advisory opinion as to the interpretation of the building codes and authority of local

22   building code officials.

23        1.    There Is No Actual Controversy Between The Present Parties

24        There is no actual controversy between the present parties.  An actual controversy

25   justifying a declaratory judgment exists "where one side makes a claim of a present, specific right

26   and the other side makes an equally definite claim to the contrary …."  Stephenson v. Stephenson,

27   249 F.2d 203, 208 (7th Cir. 1957).  This Court has no authority to issue judgment unless a claim

28   involves actual controversy between adverse parties in adversary proceedings; no exception is

made for declaratory judgments.  See Vorbeck v. Schnicker, 660 F.2d 1260, 1265 (8th Cir. 1981), cert. denied, 455 U.S. 921 (1981); see also MedImmune, 127 S.Ct. at 771 (holding that to invoke the Court's jurisdiction, a question must be "'definite and concrete, touching the legal relations of parties having adverse legal interests ….'") (citations omitted); Coalition for a Healthy Cal. v. FCC, 87 F.3d 383, 386 (9th Cir. 1996) (finding no jurisdiction to issue declaratory order where there was no actual controversy between adverse parties, and holding that "[w]hile the  FCC might properly issue such a general declaration which does not settle an actual controversy between adverse parties, this court cannot").

While O'Keeffe's does not agree with TGP's interpretation of the building codes at issue, this not a sufficient controversy to invoke jurisdiction under the Act.  As stated above, "a mere difference of opinion about the state of the law does not create an actual legal controversy that the court can adjudicate." Taylor, 2004 WL 3142552, at *3.  In Taylor, the federal district court declined to declare Florida's marriage laws unconstitutional because there was no "actual controversy" between the parties.  Plaintiffs included various persons and entities authorized to perform wedding ceremonies (including a court clerk, various churches and a notary public) and other individuals who opposed gay marriage.  Defendants were a same sex couple denied a marriage license under Florida's Defense of Marriage Act.  Plaintiffs sought a declaration that Florida's law was constitutional, alleging that defendants had placed the validity of the law at issue by filing a (separate) lawsuit against the State seeking a declaration that the law was unconstitutional.  The district court found that Plaintiffs had not sufficiently alleged a claim that would create federal jurisdiction because there was "no actual controversy *between the present parties*." Id. (emphasis added).  The court explained:  "Plaintiffs may have a conflict, perhaps, with the State of Florida, but not with Defendants." Id.

Likewise here, TGP may, perhaps, have a conflict with the local building code officials.  However, there is no controversy between the present parties.  The Ninth Circuit addressed a similar issue in City of Springfield v. Washington Public Power Supply Sys., 752 F.2d 1423 (9th Cir. 1985), cert. denied, 474 U.S. 1055 (1986).  Therein, the court found that Plaintiff had alleged an actual controversy sufficient to support jurisdiction where all parties to a disputed agreement

1    were joined in the lawsuit.  Id. at 1426-7.  However, the court explained the basis of its decision:

2    "there is an actual controversy as to the City of Springfield's authority to enter the agreement by

3    virtue of the position asserted by the intervenors challenging that authority," and the fact that all

4    parties would be affected by the invalidity of the agreement "makes the joinder of all signatories

5    desirable even if not indispensable," as the court can "properly issue a judgment binding on

6    [them] all."  Id. (citing Fed.R.Civ.P. 20).  Again, TGP's real grievance is with the local building

7    code officials that it believes are incorrect in their approval of alternative materials under the

8    building code.  These local building code officials are not parties to this lawsuit, nor should

9    O'Keeffe's be called upon to expend the resources to defend their interests here.

10                   2.    TGP's Claim Seeks An Improper Advisory Opinion

11           TGP seeks a declaratory judgment of the local building officials' authority under the

12   building codes in the abstract, completely divorced from any factual context.[2]  The building code

13   leaves the decision of whether to approve an alternative material squarely within the discretion of

14   the local building code officials.  See Code Section 104.11 (stating that "[a]n alternative material,

15   design or method of construction shall be approved where the building code official finds that the

16   proposed design is satisfactory and complies with the intent of the provisions of this code…").

17   Local building code officials may make this determination based on many factors, including, as

18   only a few examples, the jurisdiction, the floor plan of the project, the presence and details of a

19   sprinkler system, the size of the window, the location and placement of the window, the

20   length/width of the corridor in which the window is present, the occupancy load, the tested fire

21   performance of the window and the radiant heat performance of the window.

22           Nonetheless, TGP seeks a blanket declaration – regardless of the surrounding facts and

23   circumstances – as to the authority of local building code officials (or more accurately stated, the

24   alleged lack thereof) to approve alternative materials.  Again, TGP asks the Court to find, as a

25   matter of law, that "local building officials lack authority to waive the hose stream test under

26   Section 104.11 of the IBC (2006 and 2003) as adopted by the 36 [sic] states" (Amended

27   _____

28   [2] This is exacerbated by TGP's proposed intended early summary judgment on its claims, discussed infra pp. 16-17.

1   Counterclaims p. 23 ¶ E), and that "the hose stream test is a mandatory test under state building

2   codes that cannot be waived by local building officials" (id. ¶ 124).  TGP asks this Court to

3   render such a broad declaratory statement without considering any of the factors that local

4   building code officials regularly consider.

5         TGP's Seventh Counterclaim is additionally unlimited by any reference to a particular

6   product, and instead asks the Court to enter a declaratory judgment that would apply to any

7   number of different products and any number of glass manufacturers, suppliers and distributors.

8   Id.  Current practice of local building code officials is to approve alternative materials, including

9   alternative materials without the hose stream test, of various products – not just O'Keeffe's.  But

10  none of these other manufacturers, suppliers and distributors are represented here; nor should

11  O'Keeffe's be required to defend their interests (in addition to the interests of thirty-seven states

12  and the local building code officials in each).[3]

13        A declaration by this Court – entered without any reference to any of the above facts and

14  circumstances that might in any given case contribute to local building code officials'

15  determination as to whether an alternative material should be approved under their specific

16  building codes and without reference to the characteristics of the product under consideration –

17  can be construed as nothing but an improper advisory opinion.  Indeed, this is exactly the type of

18  advisory opinion prohibited under the Declaratory Judgment Act.

19        As stated, there "must be a real and substantial controversy admitting of specific relief

20  through a decree of conclusive character, as distinguished from an opinion advising what the law

21  would be upon a hypothetical state of facts."  Aetna Life, 300 U.S. at 241.  In U.S. v. Fruehauf,

22  the Supreme Court considered whether a loan to a union official by a corporation violated the

23  provisions of the Labor Management Relations Act.  365 U.S. 146 (1961).  The Court noted that

24  the question on appeal appeared to have become "whether a loan of money, every loan of money,

25  as such comes within the statute's prohibitions."  Id. at 157 (internal quotations omitted).  The

26  Court then declined to exercise declaratory judgment jurisdiction, explaining:

27        _____
      [3] TGP's Eighth Counterclaim, while it does reference O'Keeffe's SuperLite 1-XL product specifically, still
28  fails for the other reasons set forth herein – i.e., there is no actual controversy between the present parties, it seeks an
      advisory opinion from the Court.

1
2
3
4
5
6
7

> We do not reach that question on this appeal. For we cannot help but regard it – abstracted as it has become, in the course of these proceedings, from the immediate considerations which should determine the disposition of appellees' motions to dismiss an indictment incontestably valid on its face – as other than a request for an advisory opinion. Such opinions, such advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every multi-faced situation embracing conflicting and demanding interests, we have consistently refused to give.

8   Id. Likewise here, TGP seeks an open-ended declaration as to the interpretation of the building

9   codes, and the authority of local building code officials under those codes – open-ended because

10  it is devoid of any of the concrete facts that local building code officials may consider each time

11  they exercise their authority under the building code.

12      In Cass County v. U.S., the court considered a declaratory judgment claim seeking a

13  determination of whether a county had rights in certain Indian land parcels pursuant to federal

14  statutes. 570 F.2d 737 (8th Cir. 1978). The court found that no jurisdiction existed under the Act

15  because the question presented was "abstract and hypothetical," and thus, the requested

16  declaration would amount to no more than an advisory opinion, as an exercise of the county's

17  authority over the land "requires an examination of congressional statutes *in light of the*

18  *particular activity involved*." Id. at 741 (emphasis added). The court, noting with approval the

19  district court's recognition that there might be "different results for differing situations," affirmed

20  the lower court's finding of no jurisdiction. Id. It follows that no jurisdiction exists here because

21  whether a local building code official may or may not approve an alternative material depends on

22  the particular facts of a particular situation, and there may, as in Cass, be different results based

23  on different circumstances. Id. As a result, TGP's counterclaims are nothing more than

24  hypothetical questions seeking an advisory opinion from the Court.

25      Furthermore, TGP's argument, presumably, is that once – or more accurately stated, *if* –

26  this Court enters the requested declaration that local building code officials do not have authority

27  to approve alternative materials that do not pass the hose stream test, then O'Keeffe's will no

28  longer be able to make statements to the contrary. But, as discussed in Taylor, the "remote

1    possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy'

2    requirement for declaratory judgments."  Id. at *3 (citations omitted).  One reason for avoiding

3    claims that, like TGP's, are not yet sufficiently focused is the unwillingness to render a decision

4    with ramifications for other fact situations that are yet unclear:

5              Such differences of opinion or conflicts of interest must be 'ripe
               for determination' as controversies over legal rights.  The
6              disagreement must not be nebulous or contingent but must have
               taken on fixed and final shape so that a court can see what legal
7              issues it is deciding, what effect its decision will have on the
               adversaries, and some useful purpose to be achieved in deciding
8              them.

9    Cass, 570 F.2d at 741 (citing Public Service Comm'n, 344 U.S. at 243-44).  TGP's claims, to the

10   extent they seek to resolve future claims against O'Keeffe's, are not properly before the Court.

11          The Ninth Circuit has cautioned that "when presented with a claim for declaratory

12   judgment … federal courts must take care to ensure the presence of an actual case or controversy,

13   such that the judgment does not become an unconstitutional advisory opinion."  Rhoades v. Avon

14   Prods., Inc., 504 F.3d 1151, 1157 (9th Cir. 2007).  This Court should heed this advice and dismiss

15   TGP's Seventh and Eighth Counterclaims for lack of jurisdiction pursuant to Federal Rule

16   12(b)(1).

17          **B.      The Court Should Exercise Its Substantial Discretion And Decline To Decide
                      TGP's Declaratory Judgment Claims**
18

19          Even if the Court finds that there is an actual controversy between the parties, it should

20   exercise its substantial discretion and decline to decide TGP's declaratory judgment

21   counterclaims.  See Spectronics Corp., 940 F.2d at 634 ("When there is no actual controversy, the

22   court has no discretion to decide the case.  When there is an actual controversy and thus

23   jurisdiction, the exercise of that jurisdiction is discretionary.").  The Declaratory Judgment Act

24   provides that a court "*may* declare the rights and other legal relations of any interested party

25   seeking such declaration …."  28 U.S.C. § 2201 (emphasis added).  The Act "confer[s] on federal

26   courts unique and substantial discretion in deciding whether to declare the rights of litigants."

27   Wilton v. Seven Falls Co., 515 U.S. 277, 286-88 (1995) (noting that the Act "created an

28   opportunity, rather than a duty, to grant a new form of relief to qualifying litigants").  Even if the

1    Court has subject matter jurisdiction, it retains discretion pursuant to the Act to decline

2    declaratory judgment jurisdiction.  Id. at 282 ("district courts possess discretion in determining

3    whether and when to entertain an action under the Declaratory Judgment Act, even when the suit

4    otherwise satisfies subject matter jurisdictional prerequisites").  Because the jurisdiction

5    conferred by the Act is discretionary, district courts are under no compulsion to exercise it.  See

6    Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942); Huth v. Hartford Ins. Co. of

7    the Midwest, 298 F.3d 800, 802 (9th Cir. 2002) ("[T]he decision whether to exercise jurisdiction

8    over a declaratory action lies in the sound discretion of the district court.").[4]

9         Among the relevant factors that weigh against this court's exercise of declaratory

10   judgment jurisdiction here are:  the avoidance of needless determination of state law issues, the

11   question of whether the declaratory action is being sought merely for the purposes of procedural

12   fencing or to obtain a res judicata advantage, and the question of whether the declaratory action

13   will settle all aspects of the controversy.  See Govt Emp. Ins. Co. v. Dizol, 133 F.3d 1220, 1225

14   (9th Cir. 1998); see also Huth, 298 F.3d at 803.

15              1.    Interpretation Of The State Building Codes And Authority Of Local
                     Building Code Officials Is Better Left To The States
16

17        There are no federal questions presented by TGP's declaratory judgment claims, and there

18   is no federal interest in the issues presented.  This weighs heavily against exercising jurisdiction

19   over TGP's claims.  Allstate Ins. Co. v. Seelye, 198 F.Supp.2d 629, 631 (W.D. Pa. 2002); see also

20   Atlantic Mut. Ins. Co. v. Gula, 84 Fed.Appx. 173, 174 (3d Cir. 2003) ("federal courts should

21   hesitate to entertain a declaratory judgment where the action is restricted to issues of state law").

22   Moreover, it is common practice for local building code officials to approve alternative materials,

23   including alternative materials without the hose stream test.  See discussion supra p. 7 (citing

24   Amended Counterclaims, Ex R, p. 13, a letter approving an alternative material without the hose

25   stream test).  Where the state law is well established, there is even less reason for a federal court

26   _____

27        [4] A district court's discretion to decline jurisdiction over declaratory judgment claims is limited only in very
     specific instances, none of which is present here.  See State Auto Inc. Cos. v. Summy, 234 F.3d 131, 134 (3d Cir.
28   2000) (identifying three instances when the court's discretion is limited, including (1) federal statutory interpretation,
     (2) the government's choice of federal forum and (3) inadequacy of the state proceeding).

1    to exercise jurisdiction over a declaratory judgment action, and thus, district courts should rarely

2    do so.  Atlantic Mut., 84 Fed.Appx. at 175.

3        The fact that there is no pending state court case here is not determinative of the Court's

4    decision to retain or decline jurisdiction.  See Huth, 298 F.3d at 830; Golden Eagle Ins. Co. v.

5    Travelers Cos., 103 F.3d 750, 754 (9th Cir. 1996) (explaining that "nothing in the Declaratory

6    Judgment Act requires a parallel state proceeding in order for the district court to exercise its

7    discretion to decline to entertain the action"), overruled on other grounds by Govt. Emp., 133

8    F.3d. 1220.

9        TGP seeks a declaration regarding the building code and authority of local building code

10    officials in thirty-seven (37) different states.  But as stated above, "[t]he interpretation of building

11    codes, especially those related to fire safety, is an area of especial local concern into which

12    federal intrusion is highly undesirable."  Cedar Shake, 997 F.2d at 622 (considering the issue in

13    the context of the Pullman abstention doctrine).  As also discussed above, while TGP attempts to

14    gloss over the differences in the building codes of these states, it is forced to qualify its initially

15    broad allegations that all of the thirty-seven (37) states have adopted the IBC with numerous

16    caveats; for example, while some states have adopted the Code, others (including California)

17    merely reference it; while some states have adopted the Code with amendments, others have

18    adopted it without amendments; while some have adopted the 2003 Code, others have adopted the

19    2006 version; and sometimes, the adoption has been only "in material part," the meaning of

20    which is unclear.  See supra p. 6.  If this Court were to exercise its discretion to hear TGP's

21    claims, the variations on the building codes of the thirty-seven states may indeed become

22    paramount.  Further, these individual states' interest "in resolving [their] own law must not be

23    given short shrift simply because one party or, indeed, both parties, perceive some advantage in

24    the federal forum."  Summy, 234 F.3d at 136.  It is common for state courts to address such

25    issues.[5]

26        [5] See e.g., Parker Bldg. v. Lightsey, 925 So. 2d 927, 932 (Ala. 2005) (construing Alabama building code);
     Berkeley Ctr. for Indep. Living v. Coyle, 50 Cal. Rptr. 2d 39, 45 (Cal. Ct. App. 1996) (interpreting California

27    building code); Iowa City of New Hampton v. Blayne-Martin Corp., 594 N.W.2d 40, *45 (Iowa 1999) (reviewing
     Iowa building code); Whitehead v. Ramada Inns, Inc., 529 S.W.2d 366, 367 (Ky. Ct. App. 1975) (reviewing

28    Kentucky building code); Passnault v. Bd. of Admin. Appeals, 525 A.2d 222, **232 (Md. 1987) (interpreting
     Maryland building code); Minnetonka v. Jones Assoc. Inc., 236 N.W.2d 163, 168-169 (Minn. 1975) (interpreting

1    Instructive on the issue is this Court's decision in <u>Pacific Bell Tel. Co. v. City of Walnut</u>

2    <u>Creek</u>, 428 F.Supp.2d 1037 (N.D. Cal. 2006).  Therein plaintiff sought a declaratory judgment

3    regarding the application of § 7901 of the California Public Utilities Code, specifically, whether

4    that code granted telephone companies the right to provide video programming services.  <u>Id</u>. at

5    1047.  The Court, declining to exercise jurisdiction over the plaintiff's claim and finding that the

6    issue of interpretation of this Code was better left to the state court, held that "comity suggests

7    that the issues should be resolved in the first instance by a state court, and, given the early stage

8    of the litigation, considerations based on economy, convenience and fairness do not weigh in

9    favor of retaining jurisdiction."  <u>Id</u>. at 1049.  While the <u>Pacific Bell</u> Court considered the issue

10   under 28 U.S.C. § 1637, there are "significant commonalities" between the exercise of

11   supplemental jurisdiction and the election to hear a suit for declaratory relief.  <u>See</u> <u>Govt. Emp.</u>,

12   133 F.3d at 1224.  Likewise here, interpretation of the state building codes and authority of local

13   building code officials is better left to the states to decide.

14                    2.    <u>TGP's Counterclaims Are A Procedural Maneuver That Will Not Resolve</u>
                            <u>Any Pending Issues</u>
15

16   The Court should also decline jurisdiction because TGP's request for declaratory relief is

17   nothing more than procedural fencing.  <u>See</u> <u>Govt. Emp.</u>, 133 F.3d at 1225, n. 5.  TGP has

18   indicated to the Court (and to O'Keeffe's) that it intends to seek early summary judgment on its

19   declaratory judgment claims as soon as O'Keeffe's answers those claims.  But even if TGP were

20   able to prevail on such motion, summary judgment would not resolve any of the issues pending

21   before the Court.  This case commenced with Plaintiff O'Keeffe's filing of a complaint for patent

22   infringement against TGP, among other defendants.  TGP then counterclaimed for trademark

23   infringement, false advertising and unfair competition under federal and state law.  O'Keeffe's

24   ────────────────────────────────

25   Minnesota state building code); <u>Knutson v. Barbour</u>, 879 P.2d 696, 700 (Mont. 1994) (interpreting Montana's
     uniform building code); <u>American Nat'l Red Cross v. Shotmeyer Bros., Inc.</u>, 175 A.2d 646, 753-754 (N.J. Super. Ct.
26   App. Div. 1961) (construing meaning of various terms in New Jersey's building codes); <u>Lamar Outdoor Adver. Inc.</u>
     <u>v. City of Dayton</u>, No. 20158, 2004 Ohio App. LEXIS 4337,**5-6 (Ohio Ct. App. Sep. 10, 2004) (interpreting
27   Ohio's building code); <u>Seventeen Hundred Peoria Inc., v. City of Tulsa</u>, 422 P.2d 840, 843 (Okla.1966) (interpreting
     Oklahoma's building code ordinances); <u>Blackstone Park Improv. Assoc. v. State of Rhode Island</u>, 448 A.2d 1233,
28   1236 (R.I. 1982) (defining application of Rhode Island's building code); and <u>State ex. rel. Graham v. San Juan</u>
     <u>County</u>, 686 P.2d 1073, **1079 (Wash. 1984) (affirming lower court's interpretation of state building code).

O'Keeffe's, Inc.'s Motion to Dismiss
Case No. 07 cv-03535 JF PVT

1  responded to TGP's counterclaims with its own false advertising and unfair competition claims

2  against TGP.  The declaration sought by TGP will resolve *none* of those pending issues.

3        Indeed, this is nothing more than an after the fact attempt by TGP to justify its false

4  advertising claims, because the fact of the matter is that O'Keeffe's never told a lie – local

5  building code officials do approve alternative materials that do not meet the hose stream test

6  under the Code provisions cited by TGP.  O'Keeffe's anticipates that TGP will assert that a

7  declaration by this Court that the relevant building codes do not permit local building code

8  officials to approve O'Keeffe's products as an alternative material will clarify that O'Keeffe's

9  statements to the contrary were false.  However, such a determination by this Court will not have

10  the effect of retroactively rendering false statements that were true at the time they were made.

11        In sum, because the interpretation of the state building codes and authority of the local

12  building code officials is better left to the states, and because TGP's request for declaratory relief

13  is an ill advised procedural tactic, this Court should properly exercise its discretion and decline to

14  decide TGP's Seventh and Eight Counterclaims.

15  **IV.**    **CONCLUSION**

16        For the foregoing reasons, O'Keeffe's requests that TGP's Seventh and Eighth

17  Counterclaims be dismissed pursuant to Federal Rule 12(b)(1).

18

19

20

21

22

23

24

25

26

27

28

1    Dated: April 24, 2008                    FREELAND COOPER & FOREMAN LLP

2
                                              Mark I. Schickman
3                                             Daniel T. Bernhard
                                              150 Spear Street, 18th Floor
4                                             San Francisco, CA  94105
                                              Telephone:     (415) 541-0200
5                                             Facsimile:     (415) 495-4332

6                                             JONES DAY

7

8                                     By:     /s/ - Jennifer Seraphine
9                                             Jason McDonell
                                              Katherine S. Ritchey
10                                            Jennifer Seraphine
                                              555 California Street, 26th Floor
11                                            San Francisco, CA  94104
                                              Telephone:     (415) 626-3939
12                                            Facsimile:     (415) 875-5700

13                                            Attorneys for Plaintiff, Counterdefendant and
                                              Counterclaimant O'KEEFFE'S, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28