## EXHIBIT 1 – SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** All documents, communications, and things that refer or relate to any transaction, sale, or installation of TGP's FireLite products in the state of California since January 1, 2003, including but not limited to all such provided to or from any design professional or Authority Having Jurisdiction (AHJ) for the purpose of approving or rejecting the use of FireLite products in applications requiring a fire rating in excess of 45-minutes under the California Building Code.

**RESPONSE TO REQUEST NO. 1:** TGP incorporates its general objections as its objections to this request. Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably. TGP does not market or encourage use of FireLite in applications for which FireLite is not properly rated.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**
Without waiving any of the foregoing the objections, and subject to them, TGP provides as follows. TGP objects to the Request as overbroad in calling for information not relevant to a claim or defense as provided by Rule 26(b)(1). The counterclaims do not allege, and notwithstanding TGP's request, counsel for O'Keeffe's has not identified: 1) any particular false or misleading statement by TGP concerning any use of FireLite; nor 2) any code provision that prohibited any such "use" of FireLite that was the subject of any such statement by TGP.

O'Keeffe's conclusory allegations that TGP markets FireLite for "uses" that are "not authorized" or "not permitted" by "standard codes" fails to put TGP on notice of any cognizable theory under Rule 8, fails to state a claim under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, or California common law, and, in short, fails to frame the allegations in a manner that

allows meaningful discovery under Rule 26(b)(1) in anything short of a fishing expedition by O'Keeffe's.

Subject to the foregoing, and to the extent TGP understands O'Keeffe's claims and discovery requests, TGP will produce non-privileged responsive documents to the extent they can be located after a reasonable search for communications with the public, design professionals, or AHJs, since January 1, 2003, concerning the applicability of radiant heat requirements of Chapter 7 of the California Building Code to using FireLite in these applications:

- as a "fire-protection-rated glazing in 60-90 minute door sidelights and transoms;"
- in "fire-rated 60-90 minute doors in panels of more than 100 square inches;" and
- in "vision panels of more than 100 square inches in stairwell exit enclosure doors."

Additionally, based on current information, and to the extent TGP understands the Request, TGP is unaware of any request to approve its FireLite product as an alternate material.

**A Further Response Should Be Compelled:**  Request No. 1 seeks documents that will show the specific sales of TGP's products in California so that O'Keeffe's can evaluate the circumstances in which TGP's products are installed.  Evidence showing that TGP's products are sold and installed in unsafe applications, for example, is relevant to O'Keeffe's allegations. Likewise, documentation showing that TGP does, in fact, misrepresent or omit critical information in the sales process is relevant to O'Keeffe's claims.  In light of O'Keeffe's allegations of widespread marketing abuses, this request is reasonable.  It is limited to a single product line (FireLite) and to documents relating to sales in California since January 1, 2003. Moreover, O'Keeffe's specifically provided examples of misleading statements/omissions on TGP's website during the meet and confer process, so TGP's objections that the discovery is not tied to any claim or defense is meritless.  *See* Ritchey Decl. Ex. H.

Contrary to TGP's assertions, O'Keeffe's allegations in its counter-claims more than support this discovery designed to clarify and define false advertising and unfair business practices claims.  *See* Section III.A.

Even for those applications referenced in the counterclaim (for which TGP purports to allow discovery), TGP's responses to Request No. 1 unilaterally cuts out many categories of responsive documents. The request seeks documents referring or relating to any transaction, sale or installation of FireLite products since 2003. While this would certainly include communications with design professionals and AHJs (which TGP agrees to produce in limited circumstances), as discussed in the meet and confer, among the additional relevant documents would be estimates, invoices and other sales communications.[1] These additional documents are relevant to O'Keeffe's allegations that TGP puts its products in the marketplace in a manner that is likely to and does cause confusion and misuse of the products. Because O'Keeffe's allegations often relate to the failure of TGP to disclose relevant information, full production is relevant to show that the limitations on TGP's products are not disclosed anywhere in the sales process. But, TGP's response limits the documents that will be produced to a small category of responsive documents – namely communications concerning the radiant heat requirements of one section of the California Building Code.

The lack of any basis not to respond to this request is evidenced by the fact that TGP served a similar request on O'Keeffe. *See* Exhibit 3. Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth. Its other objections should be overruled. *See* Section III.B. There is no basis to limit the production of responsive documents.

**REQUEST FOR PRODUCTION NO. 2:  All documents, communications, and things that refer or relate to any transaction, sale, or installation of TGP's FireLite products since January 1, 2003, including but not limited to all such provided to or from any design professional or Authority Having Jurisdiction (AHJ) for the purpose of approving or rejecting the use of FireLite products in applications requiring a fire rating in excess of 45-minutes.**

**RESPONSE TO REQUEST NO. 2:** TGP incorporates its general objections as its objections to this request. Consistent with its general objections, TGP objects to this request to

---

[1] Importantly, while O'Keeffe can give examples of documents that should be produced, it does not have sufficient knowledge to be charged with specifically identifying each category that should be produced. All responsive documents should be produced.

the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably. TGP does not market or encourage use of FireLite in applications for which FireLite is not properly rated.

### FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Without waiving any of the foregoing objections, and subject to them, TGP provides as follows. TGP objects to the Request as overbroad in calling for information not relevant to a claim or defense as provided by Rule 26(b)(1). The counterclaims do not allege, and notwithstanding TGP's request, counsel for O'Keeffe's has not identified:  1) any particular false or misleading statement by TGP concerning any use of FireLite; nor 2) any code provision that prohibited any such "use" of FireLite that was the subject of any such statement by TGP.

O'Keeffe's conclusory allegations that TGP markets FireLite for "uses" that are "not authorized" or "not permitted" by "standard codes" fails to put TGP on notice of any cognizable theory under Rule 8, fails to state a claim under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, or California common law, and, in short, fails to frame the allegations in a manner that allows meaningful discovery under Rule 26(b)(1) in anything short of a fishing expedition by O'Keeffe's.

Subject to the foregoing objections and to the extent TGP understands O'Keeffe's claims and discovery requests and claims, TGP will produce non-privileged responsive documents to the extent they can be located after a reasonable search for communications with the public, design professionals, or AHJs, since January 1, 2003, concerning the applicability of radiant heat

requirements of Chapter 7 of the International Building Code to using FireLite in these applications:

- as a "fire-protection-rated glazing in 60-90 minute door sidelights and transoms;"
- in "fire-rated 60-90 minute doors in panels of more than 100 square inches;" and
- in "vision panels of more than 100 square inches in stairwell exit enclosure doors."

Additionally, based on current information, and to the extent TGP understands the Request, TGP is unaware of any request to approve its FireLite product as an alternate material.

**A Further Response Should Be Compelled:** Request No. 2 is similar to Request No. 1, with the exception that it seeks information on sales and installations of FireLite products outside of California. TGP markets and sells its products nationally. O'Keeffe's counterclaim is not limited to California sales. The request is limited by product line and by time. For each reason stated for compelling further production in response to Request No. 1, a complete response to this request should be compelled.

**REQUEST FOR PRODUCTION NO. 3:** All documents, communications, and things that refer to providing design professionals or AHJs with information regarding the radiant heat transmission performance of TGP's FireLite products for the purpose of either specifying or approving them for use in fire door or window assemblies requiring greater than a 45-minute rating.

**RESPONSE TO REQUEST NO. 3:** TGP incorporates its general objections as its objections to this request. Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably. TGP further objects to the phrase "radiant heat" as vague and ambiguous. To the extent TGP understands what Plaintiff is referring to in its use of "radiant

heat," TGP publicly discloses in its FireLite marketing literature that FireLite "is not a barrier to radiant heat" and further notes that if a particular "jurisdiction requires a 'barrier to heat' product, please contact Technical Glass Products regarding Pilkington Pyrostop.'"

### FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Without waiving any of the foregoing objections, and subject to them, TGP provides as follows. TGP objects to the Request as overbroad in calling for information not relevant to a claim or defense as provided by Rule 26(b)(1). The counterclaims do not allege, and notwithstanding TGP's request, counsel for O'Keeffe's has not identified: 1) any particular false or misleading statement by TGP concerning any use of FireLite; nor 2) any code provision that prohibited any such "use" of FireLite that was the subject of any such statement by TGP.

O'Keeffe's conclusory allegations that TGP markets FireLite for "uses" that are "not authorized" or "not permitted" by "standard codes" fails to put TGP on notice of any cognizable theory under Rule 8, fails to state a claim under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, or California common law, and, in short, fails to frame the allegations in a manner that allows meaningful discovery under Rule 26(b)(1) in anything short of a fishing expedition by O'Keeffe's.

Subject to the foregoing objections and to the extent TGP understands O'Keeffe's claims and discovery requests and claims, TGP will produce non-privileged responsive documents to the extent they can be located after a reasonable search for communications with the public, design professionals, or AHJs, concerning the applicability of radiant heat requirements of Chapter 7 of the International Building Code to using FireLite in these applications:

- as a "fire-protection-rated glazing in 60-90 minute door sidelights and transoms;"
- in "fire-rated 60-90 minute doors in panels of more than 100 square inches;" and
- in "vision panels of more than 100 square inches in stairwell exit enclosure doors."

Additionally, based on current information, and to the extent TGP understands the Request, TGP is unaware of any request to approve its FireLite product as an alternate material.

**A Further Response Should Be Compelled:** This request seeks documents and communications with a specific category of people for the purpose of causing them to advance TGP's products in an unsafe manner alleged by O'Keeffe in its pleadings. Design professionals (such as architects) often select or specify products, and AHJs (Authorities Having Jurisdiction – a term of art referring to those officials who must approve aspects of construction, such as building code officials or fire marshals) approve their use in particular applications. O'Keeffe alleges and has reason to believe that FireLite products are routinely used in applications where a product limiting temperature rise and radiant heat transmission is required — and those applications are not limited to the uses cited by TGP in its response. O'Keeffe further is informed and believes that TGP's non-safety rated FireLite product is being sold in doors and other applications requiring safety rated glazing in violation of code. Whether TGP is pushing its products (either to be specified or approved), and what is disclosed in those communications, is relevant to O'Keeffe's claim that TGP is putting its products in the marketplace in a manner that results in confusion and misuse.

Moreover, TGP's claims against O'Keeffe's on their face relate to the code requirements (including hose stream) applicable to fire and impact rated windows and doors. *See, e.g.* TGP counterclaim at ¶ 84. Because TGP's counterclaim against O'Keeffe is premised on TGP's belief that a product that does not meet each component of the standards applicable to fire rated windows cannot be specified or approved as an alternate material pursuant to the California Building Code, Request no. 3 (seeking instances in which TGP's product was specified or approved as an alternate) is relevant to O'Keeffe's defense.

TGP's response again inappropriately limits its production based upon its insupportable view of relevance as limited to only specific applications referenced in the pleadings. *See* Section III.A. It ignores relevance based upon O'Keeffe's defense. It also inappropriately cuts out categories of responsive documents, including documents provided to design professionals and documents relating to the performance of FireLite products irrespective of whether TGP did so in the context of discussing the applicability of any rule.

TGP asked a similar request of O'Keeffe's so its objections are particularly misplaced. *See* Exhibit 3. Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth. Its other objections should be overruled. *See* Section III.B. This request is limited to a particular product line, and to documents referencing communications with a specific category of people for a specific purpose. It is narrowly tailored to obtain specific, relevant information. A complete production should be compelled.

**REQUEST FOR PRODUCTION NO. 4:  All documents and things that refer to whether TGP's FireLite products comply with any building code, regulation, or standard, including but not limited to the California Building Code, Uniform Building Code ("UBC"), National Fire Protection Association ("NFPA"), Standard Methods of Fire Tests of Door Assemblies, American Society for Testing and Materials ("ASTM"), American National Standards Institute ("ANSI"), Underwriters Laboratories, Inc. ("UL"), or International Building Code ("IBC").**

**RESPONSE TO REQUEST NO. 4:** TGP incorporates its general objections as its objections to this request. Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably. Based on current information, and to the extent TGP understands the request, TGP is unaware of any building project in which a FireLite product was found not compliant with a building or safety code or regulation.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Without waiving any of the foregoing objections, and subject to them, TGP provides as follows. TGP objects to the Request as overbroad in calling for information not relevant to a claim or defense as provided by Rule 26(b)(1). The counterclaims do not allege, and notwithstanding TGP's request, counsel for O'Keeffe's has not identified:  1) any particular false or misleading

statement by TGP concerning any use of FireLite; nor 2) any code provision that prohibited any such "use" of FireLite that was the subject of any such statement by TGP.

O'Keeffe's conclusory allegations that TGP markets FireLite for "uses" that are "not authorized" or "not permitted" by "standard codes" fails to put TGP on notice of any cognizable theory under Rule 8, fails to state a claim under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, or California common law, and, in short, fails to frame the allegations in a manner that allows meaningful discovery under Rule 26(b)(1) in anything short of a fishing expedition by O'Keeffe's.

Having failed to identify code provisions that it contends prohibit as-yet-unspecified uses of FireLite, O'Keeffe's Request calls for the production of documents far beyond anything relevant to a cognizable claim or defense. The Request is thus overbroad and unduly burdensome, both in calling for irrelevant documents and in the scope of that irrelevant production. Subject to the foregoing objections, TGP will produce FireLite product information sheets and UL listings for its FireLite products.

**A Further Response Should Be Compelled:** At the heart of both parties' claims against the other is whether each parties' products comply with particular code provisions and whether their marketing materials accurately reflect their products' performance. Accordingly, documents showing compliance (or lack thereof) with the relevant codes and standards is directly relevant to both O'Keeffe's claims and defenses. The universe of codes and standards applicable to FireLite products is self limiting, and TGP is well aware of the standards applicable to fire-rated window and door assemblies. *See* TGP's amended counterclaims (Docket No. 98). Nonetheless, in response to TGP's repeated claims that it could not identify the standards applicable to FireLite or distinguish them from the code provisions applicable to "green" roofs, for example, O'Keeffe specifically referred TGP to those codes and standards referenced in the Declaration of Kate Steel filed in this matter. Ritchey Decl. Ex. H. There is no basis for TGP to not respond.

TGP's limitation that it "will produce FireLite product information sheets and UL listings for its FireLite products," misses the call of the question because those documents do not show

whether FireLite products comply with various standards (as would, for example, testing of

FireLite products), nor do they completely show the representations (or omissions) TGP makes

about whether FireLite complies with codes and standards, and under what circumstances.

TGP asked a similar request of O'Keeffe's so, again, its own refusal to produce

responsive documents is inexcusable. *See* Exhibit 3. Despite repeated requests, TGP did not

even attempt to substantiate any objection other than relevance and over breadth. Its other

objections should be overruled. *See* Section III.B. The request is limited to a particular product

line, and a particular category of documents (those referring to code compliance) that is well

within the scope of the litigation. Full production should be compelled.

**REQUEST FOR PRODUCTION NO. 5: All documents and things that refer or relate to
testing TGP's FireLite products including but not limited to: Hose stream testing, radiant
heat flux measurements, temperature rise limits, human impact safety, or any testing
related to UL standards.**

**RESPONSE TO REQUEST NO. 5:** TGP incorporates its general objections as its

objections to this request. Consistent with its general objections, TGP objects to this request to

the extent that it seeks information protected from discovery by the attorney-client privilege,

work product immunity, and/or any other applicable privilege and/or immunity. TGP further

objects to this request in that it is overly broad, unduly burdensome, and not reasonably

calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably

limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and

confer with OKI's counsel to discuss these discovery requests and OKI's allegations against

TGP in an effort to better understand the allegations and requests so that discovery can proceed

meaningfully and reasonably.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Without waiving any of the foregoing objections, and subject to them, TGP provides as follows.

TGP objects to the Request as overbroad in calling for information not relevant to a claim or

defense as provided by Rule 26(b)(1). The counterclaims do not allege, and notwithstanding

TGP's request, counsel for O'Keeffe's has not identified: 1) any particular false or misleading

statement by TGP concerning any use of FireLite; nor 2) any code provision that prohibited any such "use" of FireLite that was the subject of any such statement by TGP.

O'Keeffe's conclusory allegations that TGP markets FireLite for "uses" that are "not authorized" or "not permitted" by "standard codes" fails to put TGP on notice of any cognizable theory under Rule 8, fails to state a claim under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, or California common law, and, in short, fails to frame the allegations in a manner that allows meaningful discovery under Rule 26(b)(1) in anything short of a fishing expedition by O'Keeffe's.

Subject to the foregoing objections, TGP will produce UL listing documents relating to FireLite compliance with window and door assembly provisions in IBC §§ 715.4 and 715.5, with supporting test documents.

**A Further Response Should Be Compelled:** This request seeks information regarding basic metrics applicable to fire and safety glass. Again, O'Keeffe's claims assert that TGP does not adequately disclose its products' performance and limitations. Understanding exactly how a product does perform is relevant to O'Keeffe's claims against TGP. This request also is relevant to O'Keeffe's defense of TGP's claims, which raise the performance of O'Keeffe's products against certain of these metrics. TGP's response that limits its production to certain listing documents is not adequate. The actual test results (including both passed tests and failed tests) of all tests (not just those *supporting* listings), as well as communications about test results are plainly relevant. The request is limited to a single product line, and a category of documents that directly bears upon the O'Keeffe's claims and defenses.

Again, TGP asked a similar request of O'Keeffe. *See* Ex. 3. Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth. Its other objections should be overruled. *See* Section III.B.

**REQUEST FOR PRODUCTION NO. 6:**  All documents and communications sent between UL and TGP that show or relate to any TGP product passing or failing to pass any UL testing.

     **RESPONSE TO REQUEST NO. 6:**  TGP incorporates its general objections as its objections to this request.  Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity.  TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope.  TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably.

     **FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Without waiving any of the foregoing objections, and subject to them, TGP provides as follows. TGP objects to the Request as overbroad in calling for information not relevant to a claim or defense as provided by Rule 26(b)(1).  The counterclaims do not allege, and notwithstanding TGP's request, counsel for O'Keeffe's has not identified:  1) any particular false or misleading statement by TGP concerning any use of FireLite; nor 2) any code provision that prohibited any such "use" of FireLite that was the subject of any such statement by TGP.

     O'Keeffe's conclusory allegations that TGP markets FireLite for "uses" that are "not authorized" or "not permitted" by "standard codes" fails to put TGP on notice of any cognizable theory under Rule 8, fails to state a claim under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, or California common law, and, in short, fails to frame the allegations in a manner that allows meaningful discovery under Rule 26(b)(1) in anything short of a fishing expedition by O'Keeffe's.

     Subject to the foregoing objections, TGP will produce UL testing documents for FireLite, FireGlass20, Pyroshield NT, and WireLite.

**A Further Response Should Be Compelled:**  The request seeks TGP's communications with a listing agency (Underwriters Laboratories, or UL) regarding product performance. O'Keeffe has alleged that TGP capitalizes on UL listings to market its products in a misleading fashion.  Moreover, TGP's claims against O'Keeffe relate to the use of ratings obtained from listing agencies to mislead consumers.  *See, e.g.* TGP counterclaim at ¶ 86.  Accordingly, communications with UL, not just the actual testing, are relevant to claims and defenses.  The communications would include (but not be limited to) videos sent to UL, instructions from UL on what to send, correspondence, packing slips showing when and what were sent, etc.  The list of products in TGP's supplemental responses does not include the full line of TGP products.  For example, TGP excludes Pyrodur, which TGP markets as blocking the majority of radiant heat (an issue relevant to O'Keeffe's claims and defenses).

TGP asked a similar request of O'Keeffe.  *See* Exhibit 3.  Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth.  Its other objections should be overruled.  *See* Section III.B.  This is especially problematic in the case of privilege objections that appear to be facially invalid, of which this request is a good example.  The request seeks communications with a third party, yet TGP asserted a privilege objections, and did not withdraw it upon request.  This request is limited to communications with a single entity that are limited to a specific topic relevant to the litigation.  All responsive documents should be produced.

**REQUEST FOR PRODUCTION NO. 10:  All documents, communications, and things sent between TGP and any person, including building code officials, manufacturers, distributors, architects, specifiers, code consultants or glazing contractors, relating to the use of FireLite in any building project.**

**RESPONSE TO REQUEST NO. 10:**  TGP incorporates its general objections as its objections to this request.  Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity.  TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably

calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably.

### FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.

**10:** Without waiving any of the foregoing, and subject to it, TGP provides as follows. TGP objects to the Request as overbroad in calling for information not relevant to a claim or defense as provided by Rule 26(b)(1). FireLite has many uses, which have nothing to do with any allegation in O'Keeffe's counterclaims. The counterclaims do not allege, and notwithstanding TGP's request, counsel for O'Keeffe's has not identified: 1) any particular false or misleading statement by TGP concerning any use of FireLite; nor 2) any code provision that prohibited any such "use" of FireLite that was the subject of any such statement by TGP.

O'Keeffe's conclusory allegations that TGP markets FireLite for "uses" that are "not authorized" or "not permitted" by "standard codes" fails to put TGP on notice of any cognizable theory under Rule 8, fails to state a claim under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, or California common law, and, in short, fails to frame the allegations in a manner that allows meaningful discovery under Rule 26(b)(1) in anything short of a fishing expedition by O'Keeffe's.

Subject to the foregoing objections and to the extent TGP understands O'Keeffe's claims and discovery requests and claims, TGP will produce non-privileged responsive documents to the extent they can be located after a reasonable search for communications with the public, design professionals, or AHJs, concerning the applicability of radiant heat requirements of Chapter 7 of the International Building Code to using FireLite in these applications:

- as a "fire-protection-rated glazing in 60-90 minute door sidelights and transoms;"
- in "fire-rated 60-90 minute doors in panels of more than 100 square inches;" and
- in "vision panels of more than 100 square inches in stairwell exit enclosure doors."

Additionally, based on current information, and to the extent TGP understands the Request, TGP is unaware of any request to approve its FireLite product as an alternate material.

**A Further Response Should Be Compelled:**  This request seeks documents and communications with people who specify and approve window applications regarding a product at issue in O'Keeffe's counterclaims.  Whether TGP is pushing its products (either to be specified or approved), and what is disclosed in those communications, is relevant to O'Keeffe's claim that TGP is putting its products in the marketplace in a manner that results in confusion and misuse.

TGP's response again inappropriately limits its production based upon its insupportable view of relevance as limited to only specific applications referenced in the pleadings.  *See* Section III.A.  It also inappropriately cuts out categories of responsive documents, including documents provided to design professionals and documents relating to the performance of FireLite products irrespective of whether TGP did so in the context of discussing the applicability of any rule.

Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth.  Its other objections should be overruled.  *See* Section III.B.

**REQUEST FOR PRODUCTION NO. 12:**  **All documents, communications, and things sent between TGP and any building code official relating to any request that any FireLite product be approved for use in any building project.**

**RESPONSE TO REQUEST NO. 12:**  TGP incorporates its general objections as its objections to this request.  Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity.  TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.**

**12:**  Without waiving any of the foregoing, and subject to it, TGP provides as follows.  TGP

objects to the Request as overbroad in calling for information not relevant to a claim or defense

as provided by Rule 26(b)(1).  The counterclaims do not allege, and notwithstanding TGP's

request, counsel for O'Keeffe's has not identified: 1) any particular false or misleading statement

by TGP concerning any use of FireLite; nor 2) any code provision that prohibited any such "use"

of FireLite that was the subject of any such statement by TGP.

O'Keeffe's conclusory allegations that TGP markets FireLite for "uses" that are "not

authorized" or "not permitted" by "standard codes" fails to put TGP on notice of any cognizable

theory under Rule 8, fails to state a claim under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code §

17200, or California common law, and, in short, fails to frame the allegations in a manner that

allows meaningful discovery under Rule 26(b)(1) in anything short of a fishing expedition by

O'Keeffe's.

Subject to the foregoing objections and to the extent TGP understands O'Keeffe's claims

and discovery requests and claims, TGP will produce non-privileged responsive documents to

the extent they can be located after a reasonable search for communications with the public,

design professionals, or AHJs, concerning the applicability of radiant heat requirements of

Chapter 7 of the International Building Code to using FireLite in these applications:

- as a "fire-protection-rated glazing in 60-90 minute door sidelights and transoms;"
- in "fire-rated 60-90 minute doors in panels of more than 100 square inches;" and
- in "vision panels of more than 100 square inches in stairwell exit enclosure doors."

Additionally, based on current information, and to the extent TGP understands the

Request, TGP is unaware of any request to approve its FireLite product as an alternate material.

**A Further Response Should Be Compelled:**  This request seeks documents and

communications sent to a specifically defined category of people (building code officials)

relating to a specific topic (requests to approve FireLite in a building project).  It is limited to

only one product line.  O'Keeffe's claims relate to TGP's role in dangerous installations of its

products. Misstatements and omissions regarding product performance to building code officials is relevant to the claims. Moreover, TGP's claims against O'Keeffe's question the ability of building code officials to approve products in building projects, so the request also goes to O'Keeffe's defense.

TGP's response again inappropriately limits its production based upon its insupportable view of relevance as limited to only specific applications referenced in the pleadings. *See* Section III.A. It also inappropriately cuts out categories of responsive documents.

TGP served a similar request on O'Keeffe. *See* Exhibit 3. Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth. Its other objections should be overruled. *See* Section III.B. A full production should be compelled.

**REQUEST FOR PRODUCTION NO. 18:** **All documents supporting, relating or referring to the statements in Exhibit 3 attached hereto, that "If the fire occurs on the non-coated side of the glass, there is a high probability that the glass will collapse from the frame in a matter of minutes, thus providing no fire protection at all. The collapse of glass from the frame can be accelerated if water from a sprinkler hits the hot glass."**

**RESPONSE TO REQUEST NO. 18:** TGP incorporates its general objections as its objections to this request. Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably. Subject to and without waiving these objections, TGP will produce a fire test report responsive to this request.

**A Further Response Should Be Compelled:** TGP has unilaterally limited its response to Request No. 18 without explanation, and did not supplement based on the parties' meet and

confer. This request seeks documents relating to specific statements TGP makes about O'Keeffe's products. O'Keeffe has a trade libel claim, and O'Keeffe's is entitled to evidence of statements TGP is making publicly about its products. O'Keeffe's false advertising and unfair business practice claims also make TGP's statements about O'Keeffe's products relevant. Moreover, TGP's claims against O'Keeffe relate to the limitations on the protection offered by O'Keeffe's SuperLite I-XL product, which is the subject of the referenced statement. TGP Counterclaim at ¶ 85. Yet, TGP inappropriately narrows the request in its response. In response to Request 18, TGP limits its response to production of a single test. TGP also excludes other categories of documents, such as communications, from its response to Request 18. There is no basis for the limitations. TGP's objections that the request is ambiguous illustrates the lack of merit and/or individual analysis evidenced by the objections. All the requests asks for is documents relating to a statement TGP publishes – what is confusing about that? The request concerns topics at issue, and is narrowly tailored. A complete production is necessary.

TGP likewise issued requests for production calling for documents that relate to a specific statement. *See* Exhibit 3. Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth. Its other objections should be overruled. *See* Section III.B. A full production should be compelled.

**REQUEST FOR PRODUCTION NO. 19:** **All documents that relate or refer to the statement in Exhibit 3 attached hereto, that "FireLite is the # 1 alternative to traditional wired glass."**

**RESPONSE TO REQUEST NO. 19:** TGP incorporates its general objections as its objections to this request. Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and

confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 19:** Without waiving any of the foregoing objections, and subject to them, TGP will produce non-privileged responsive marketing information related to FireLite.

**A Further Response Should Be Compelled:** Again, TGP has unilaterally limited its response to a request seeking evidence relating to a specific statement that TGP publicizes about its product. TGP agrees to produce only "non-privileged responsive marketing materials" in response to request 19. Putting aside the fact that TGP apparently is taking the position that certain of its marketing materials are privileged, this response, in essence, states that TGP will explain its marketing statements with its marketing materials. Presumably, TGP has some factual foundation other than marketing to support the statement. Communications and other documents also would be relevant and responsive. A complete production is necessary. The request is relevant and narrowly tailored.

Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth. Its other objections should be overruled. *See* Section III.B.

**REQUEST FOR PRODUCTION NO. 21: All documents that refer or relate to any communications with William Koffel regarding any code change proposal relating to the hose stream test of fire rated glazing products.**

**RESPONSE TO REQUEST NO. 21:** TGP incorporates its general objections as its objections to this request. Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and

confer with OKI's counsel to discuss these discovery requests and OKI's allegations against
TGP in an effort to better understand the allegations and requests so that discovery can proceed
meaningfully and reasonably.

### FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO.

**21:** Without waiving any of the foregoing and subject to them, TGP will produce responsive
documents that it can locate after a reasonable search, which specifically refer to the hose stream
test.

**A Further Response Should Be Compelled:** The request seeks a communications with
a single individual on a single topic. Mr. Koffel is a code consultant who regularly testifies at
code hearings about, among other topics, the hose stream test. TGP has claims against O'Keeffe
relating directly to code provisions that it contends are applicable to the hose stream test. It is
hard to imagine a document request more poignant to the case. TGP unduly narrows the requests
to documents that "specifically refer to the hose stream test." But, these exact words need not be
part of the communications to be responsive. By way of example without limitation, TGP's
marketing appears to equate the hose stream test with thermal shock and sprinklers. Responsive
communications referencing these topics relate to the hose stream test, even if they do not refer
to it, and should be produced. Also relevant are communications regarding opposing the code
change requests, lobbying code officials/ICC committee members, discussion of tests, efforts to
solicit opposition and sales of non-hose stream tested products abroad (and the lack of failures).
In short, there is no reason to limit production to a narrower category of documents than
requested.

Despite repeated requests, TGP did not even attempt to substantiate any objection other than
relevance and over breadth. Its other objections should be overruled. *See* Section III.B.

**REQUEST FOR PRODUCTION NO. 25:** **All documents that refer or relate to any
communication with any person, including William Koffel, Thomas Zaremba, Thomas
Mewbourne, GICC representatives, code officials or enforcers, ICC members, ICC staff,
ICC Fire Safety Committee representatives, UL representatives, etc., regarding any IBC or
NFPA code change proposal submitted on behalf of O'Keeffe's (SAFTI First) relating to
hose stream test of fire rated glazing products.**

**RESPONSE TO REQUEST NO. 25:** TGP incorporates its general objections as its objections to this request. Consistent with its general objections, TGP objects to this request to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this request in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence to the extent it is not reasonably limited in scope. TGP objects to this request as vague and ambiguous and requests a meet and confer with OKI's counsel to discuss these discovery requests and OKI's allegations against TGP in an effort to better understand the allegations and requests so that discovery can proceed meaningfully and reasonably.

**FIRST SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 25:** Without waiving any of the foregoing and subject to them, TGP will produce non-privileged responsive documents located after a reasonable search that specifically refer to the hose stream test.

**A Further Response Should Be Compelled:** Like Request 21, this request seeks communications between TGP and third parties relating to the hose stream test that TGP put at issue. While the group of people whose communications are requested goes beyond Mr. Koffel, the topic is limited to communications regarding code change proposals by O'Keeffe relating to the hose stream test. TGP again unduly narrows the request to documents that "specifically refer to the hose stream test." Again, these exact words need not be part of the communications to be responsive for the reasons stated with respect to Request No. 21.

Despite repeated requests, TGP did not even attempt to substantiate any objection other than relevance and over breadth. Its other objections should be overruled. *See* Section III.B.

SFI-582721v2