## EXHIBIT 2 – SPECIFIC INTERROGATORIES

**INTERROGATORY NO. 4:** Since January 1, 2003, identify each building project for which TGP's FireLite products have been sold where a 60-or 90-minute fire rated product has been requested. For each installation identified, please state:

(a) The date of the sale;
(b) The address of the installation;
(c) The identity of the architects, contractor(s), building owners, and authority having jurisdiction personnel that approved such application;
(d) The identity of all documents provided to any of the persons identified in response to subpart (c) above; and
(e) The identity of any documents relating, referring to or comprising an approval by the authority having jurisdiction

**ANSWER TO INTERROGATORY NO. 4:** TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP objects to this interrogatory as vague and ambiguous. TGP further objects to this interrogatory in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, with each of its subparts forming a distinct interrogatory.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.

**A Supplemental Response Should Be Compelled:** This interrogatory seeks basic information regarding specific sales of TGP's FireLite products that O'Keeffe's believes are regularly installed in dangerous applications based on TGP's false and misleading advertising. In fact, even under TGP's strained view of relevance (*see* Section III.A), this interrogatory is relevant because it relates to the 60 and 90 minute products that TGP has conceded were put at issue in O'Keeffe's Counterclaim at paragraphs 15 and 16. It may also provide information on documents and witnesses relevant to O'Keeffe's defenses because installation of 60 and 90 minute FireLite windows would require approval of an AHJ in many instances, but TGP's claims

against O'Keeffe suggest TGP believes limitations on the ability of an AHJ to approve alternate materials exists. The response to this interrogatory will allow O'Keeffe's to identify witnesses and documents relevant to its claims and defenses. TGP's assertion that it cannot identify every project that may be responsive does not relieve it of its obligation to provide the information that it can, and state why it cannot provide the remaining information.

The parties have agreed to withdraw objections based upon subparts forming more than one interrogatory with respect to the discovery served in January. This interrogatory again illustrates the problem with TGP's privilege objection (as does each interrogatory referenced herein). Identifying projects and the identity of witnesses and documents does not implicated privilege. TGP has never offered an explanation for why it cannot provide at least part of the requested information, nor responded in any detail to O'Keeffe's meet and confer efforts (*see* Ritchey Decl. Ex. E). In fact, TGP served a similar interrogatory on O'Keeffe. *See* Exhibit 3. The interrogatory is limited in time and by product line. It is relevant and a complete, verified response should be compelled.

**INTERROGATORY NO. 5:** Since January 1, 2003, identify each building project for which TGP's Pyrodur products have been sold; and state on a year-by-year basis the total revenue and profits realized by TGP from such sales.

**ANSWER TO INTERROGATORY NO. 5:** TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, with each of its subparts forming a distinct interrogatory.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.

**A Supplemental Response Should Be Compelled:** This interrogatory seeks information regarding specific sales of TGP's Pyrodur product. O'Keeffe's is informed and believes that this product is marketed as providing certain radiant heat protection, although it does not meet the full criteria required by industry standards to be a barrier to radiant heat. Information on this product is relevant to O'Keeffe's defense because TGP's website specifically markets this product for applications greater than 20 minutes with AHJ approval – exactly what TGP claims O'Keeffe's cannot do in TGP's counterclaim. TGP's counterclaim against O'Keeffe suggests that it is false advertising and an unfair business practice to market O'Keeffe's SuperLite I-XL as providing certain radiant heat protection when it does not meet the full criteria required by industry standards to be a barrier to radiant heat. O'Keeffe's believes that TGP sells this product in applications where a 45-minute rating with hose stream is required, and requires AHJ approval. TGP's sales of this product are relevant. A complete response to this interrogatory will provide information that will lead to discoverable information on O'Keeffe's defense, as well as damages regarding O'Keeffe's affirmative claims. TGP's assertion that it cannot identify every project that may be responsive does not relieve it of its obligation to provide the information that it can and state why it cannot provide the remaining information.

The parties have agreed to withdraw objections based upon subparts forming more than one interrogatory with respect to the discovery served in January. TGP has never offered an explanation for why it cannot provide at least part of the requested information, nor responded in any detail to O'Keeffe's meet and confer efforts (*see* Ritchey Decl. Ex. E). TGP served a similar interrogatory. *See* Exhibit 3. The interrogatory is limited in time by product line. It is relevant and a complete, verified response should be compelled.

**INTERROGATORY NO. 6:** Since January 1, 2003, identify each building project for which TGP's FireGlass 20 products have been sold for use in the U.S. by the following:

    (a) The date of the sale;
    (b) The address of the installation;
    (c) The identity of the architects, contractor(s), building owners, and authority having jurisdiction personnel that approved such application;
    (d) The description of all documents provided to any of the persons identified in response to subpart (c) above; and
    (e) The description of any documents relating, referring to or comprising an approval by the authority having jurisdiction.

**ANSWER TO INTERROGATORY NO. 6:** TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, with each of its subparts forming a distinct interrogatory.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.

**A Supplemental Response Should Be Compelled:** Like interrogatory No. 4, this interrogatory seeks basic information regarding specific sales of TGP's products – in this case the FireGlass 20 product. O'Keeffe's is informed and believes that the sizes ordered of FireGlass 20 will show that TGP is selling this product in sidelights and borrowed lights (and not in 20-minute door vision lights) — which TGP maintains O'Keeffe's cannot do with SuperLite I-XL. Therefore, the sales information is relevant to TGP's counterclaim against O'Keeffe's. The response to this interrogatory will allow O'Keeffe's to identify witnesses and documents relevant to its claims and defenses. TGP's assertion that it cannot identify every project that may be responsive does not relieve it of its obligation to provide the information that it can and state why it cannot provide the remaining information.

The parties have agreed to withdraw objections based upon subparts forming more than one interrogatory with respect to the discovery served in January. TGP has never offered an explanation for why it cannot provide at least part of the requested information, nor responded in any detail to O'Keeffe's meet and confer efforts (*see* Ritchey Decl. Ex. E). In fact, TGP served a similar interrogatory. *See* Exhibit 3. The interrogatory is limited in time by product line. It is relevant and a complete, verified response should be compelled.

**INTERROGATORY NO. 7:** Since January 1, 2003, describe each building project for which TGP's Pyrodur products have been sold for use in sidelights and/or transoms in the United States by the following:

(a) The date of the sale;
(b) The address of the installation;
(c) The identity of the architects, contractor(s), building owners, and authority having jurisdiction personnel that approved such application;
(d) The identity of all documents provided to any of the persons identified in response to subpart (c) above; and
(e) The identity of any documents relating, referring to or comprising an approval by the authority having jurisdiction.

**ANSWER TO INTERROGATORY NO. 7:** TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, with each of its subparts forming a distinct interrogatory.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.

**A Supplemental Response Should Be Compelled:** Like interrogatory No. 5, this interrogatory seeks information regarding specific sales of TGP's Pyrodur product. For the reasons stated with respect to interrogatory No. 5, the requested identifying information should

be provided. It is reasonably calculated to lead to the discovery of admissible evidence. TGP's assertion that it cannot identify every project that may be responsive does not relieve it of its obligation to provide the information that it can and state why it cannot provide the remaining information.

The parties have agreed to withdraw objections based upon subparts forming more than one interrogatory with respect to the discovery served in January. TGP has never offered an explanation for why it cannot provide at least part of the requested information, nor responded in any detail to O'Keeffe's meet and confer efforts (*see* Ritchey Decl. Ex. E). In fact, TGP served a similar interrogatory. *See* Exhibit 3. The interrogatory is limited in time by product line. It is relevant and a complete, verified response should be compelled.

**INTERROGATORY NO. 8:** **Since January 1, 2003, identify each building project for which TGP's FireLite products have been sold, and state on a year-by-year basis, the total revenue and profits realized by TGP for such sales.**

**ANSWER TO INTERROGATORY NO. 8:** TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, comprising distinct interrogatories. TGP further objects to this interrogatory as improper by exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.

**A Supplemental Response Should Be Compelled:** As with interrogatory No. 4, this interrogatory seeks information regarding specific sales of TGP's FireLite product, which is directly at issue in this litigation. The interrogatory seeks identifying information that will allow O'Keeffe's to evaluate damages, and also to identify large volume sales that may be more

appropriately the subject of further discovery including depositions and subpoenas. A complete response to this interrogatory will provide information that will lead to discoverable information on O'Keeffe's claims and defenses, as well as damages. TGP's assertion that it cannot identify every project that may be responsive does not relieve it of its obligation to provide the information that it can and state why it cannot provide the remaining information.

The parties have agreed to withdraw objections based upon subparts forming more than one interrogatory with respect to the discovery served in January. TGP has never offered an explanation for why it cannot provide at least part of the requested information, nor responded in any detail to O'Keeffe's meet and confer efforts (*see* Ritchey Decl. Ex. E). In fact, TGP served a similar interrogatory. *See* Exhibit 3. The interrogatory is limited in time by product line. It is relevant and a complete, verified response should be compelled.

**INTERROGATORY NO. 9: Identify each building project that rejected TGP's FireLite products for failing to meet building and safety codes or regulations, including the reasons and evidence provided by the code official for rejecting FireLite products.**

**ANSWER TO INTERROGATORY NO. 9:** TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory as improper by exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure. Based on current information, and to the extent TGP understands the request, TGP is unaware of any building project in which a FireLite product was found not compliant with a building or safety code or regulation.

**A Supplemental Response Should Be Compelled:** O'Keeffe's claims related directly to the marketing of FireLite products in a manner that is likely to cause confusion and misapplication of the products. Any information suggesting that the products were inappropriately installed leading to the project failing to meet building and safety codes is relevant to O'Keeffe's claims. This request is virtually identical to TGP's Interrogatory No. 4 to O'Keeffe's. O'Keeffe's offered to clarify the request, and asked TGP to respond without

excessive qualifiers that made the response ambiguous. Specifically, while purporting to answer the question, TGP's response states "Based on current information, and to the extent TGP understands the request ..." TGP neither sought clarification, nor amended its response.

The parties have agreed to withdraw objections based upon subparts forming more than one interrogatory with respect to the discovery served in January. TGP has never offered an explanation for why it cannot provide at least part of the requested information, nor responded in any detail to O'Keeffe's meet and confer efforts (*see* Ritchey Decl. Ex. E). The interrogatory is limited in time, by product line and by subject matter. It is relevant and a complete (unqualified), verified response should be compelled.

**INTERROGATORY NO. 11:** **Since January 1, 2003, identify each building project for which TGP's standard or polished FireLite (not FireLite Plus or FireLite NT) product has been sold for use in fire doors in the United States.**

**ANSWER TO INTERROGATORY NO. 11:** TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP further objects to this interrogatory in that it is overly broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as improper by exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.

**A Supplemental Response Should Be Compelled:** O'Keeffe's claims related directly to the marketing of FireLite products in a manner that is likely to cause confusion and misapplication of the products, and this request targets a specific example of the problem.

The parties have agreed to withdraw objections based upon subparts forming more than one interrogatory with respect to the discovery served in January. TGP has never offered an explanation for why it cannot provide at least part of the requested information, nor responded in any detail to O'Keeffe's meet and confer efforts (*see* Ritchey Decl. Ex. E). The interrogatory is limited in time, by product line and by subject matter. It is relevant and a complete, verified response should be compelled.

SFI-582722v2