# EXHIBIT 2

1    Jeffrey S. Love (State Bar No. 195068)
jeffrey.love@klarquist.com

2    Todd M. Siegel (*Pro Hac Vice*)
todd.siegel@klarquist.com

3    Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600

4    Portland, OR 97204-2988

5    Telephone: (503) 595-5300
Facsimile: (503) 595-5301

6

7    Eric L. Wesenberg (State Bar No. 139696)
ewesenberg@orrick.com

8    Gabriel M. Ramsey (State Bar No. 209218)
gramsey@orrick.com

9    Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road

10   Menlo Park, CA 94025-1015

11   Telephone: (650) 614-7400
Facsimile: (650) 614-7401

12

13   Attorneys for Defendant Technical Glass Products

14          **UNITED STATES DISTRICT COURT**

15        **NORTHERN DISTRICT OF CALIFORNIA**

16            **SAN JOSE DIVISION**

17   O'KEEFFE'S, INC.,                Case No.: 07-3535 JF

18

19       Plaintiff,              **DEFENDANT TECHNICAL GLASS**

20       v.                   **PRODUCTS' 1ST SUPPLEMENTAL
RESPONSE TO PLAINTIFF'S FIRST**

21   TECHNICAL GLASS PRODUCTS,      **SET OF INTERROGATORIES (NOS. 1-
14)**

22   ANEMOSTAT AND PILKINGTON PLC,

23       Defendants.

24

25

26

27

28   TGP'S 1ST SUPPLEMENTAL RESPONSE TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1-14)

1    Pursuant to Rule 33 of the Federal Rules of Civil Procedure Defendant Technical Glass

2  Products ("TGP") objects and responds as follows to Plaintiff O'Keeffe's, Inc.'s ("OKI") First Set of

3  Interrogatories to TGP.

### GENERAL RESPONSES

5    TGP's responses to OKI's interrogatories are based on information currently known and

6  available to TGP as of the date of these responses.  TGP provides these responses without prejudice

7  to its right to amend or supplement any or all of the matters contained in these responses as

8  additional facts are ascertained, analyses are made, research is completed, and contentions are made.

9  By making these responses, TGP does not concede that the information given is properly

10  discoverable or admissible, and TGP reserves its right to object to the introduction of these responses

11  into evidence for any purpose.

### GENERAL OBJECTIONS

13    TGP makes the following General Objections, whether or not separately set forth in response

14  to each interrogatory, definition, or instruction.  The failure to refer specifically to a General

15  Objection should not be construed as a waiver of that General Objection.

16    1.    TGP objects to each interrogatory and to OKI's definitions and instructions to the

17  extent they attempt to impose an obligation on TGP different from or greater than that required by

18  the Federal Rules of Civil Procedure or any of the local rules of the Northern District of California.

19    2.    TGP objects to these interrogatories to the extent that they request the disclosure of

20  information protected by the attorney-client privilege, the work-product doctrine, or any other

21  privilege or immunity.

22    3.    TGP objects to these interrogatories to the extent they seek disclosure of information

23  that is otherwise protected from discovery pursuant to the Federal Rules of Civil Procedure and

24  federal common law.

25    4.    TGP objects to these interrogatories and the definitions and instructions therein to the

26  extent they seek information protected from disclosure by third party confidentiality agreements as

27  well as orders entered by the courts or local rules.

28

5.     To the extent these interrogatories seek discovery of information within the scope of Federal Rule of Civil Procedure 26(b)(4), TGP objects to these interrogatories as premature and improper discovery of expert opinion. Such information will be disclosed within the time frame outlined in a case management order to be entered by the Court in this action.

6.     TGP objects to these interrogatories to the extent that they purport to impose upon TGP the burden of furnishing information that is not available, not in TGP's possession or control, that is equally or more readily available to OKI.

7.     TGP objects to these interrogatories to the extent that they seek confidential, proprietary, or trade secret information. Subject to this and their other objections, TGP will provide such information (if responsive to otherwise non-objectionable discovery requests) after the entry of a suitable protective order, which limits access and dissemination of such information in a manner so as to preserve and protect TGP's confidential, proprietary, or trade secret information.

8.     TGP objects to each interrogatory to the extent it is duplicative or redundant of other discovery requests propounded by OKI.

9.     TGP objects to each interrogatory to the extent it consists of multiple discrete subparts and should be counted as multiple interrogatories.

10.     TGP objects to each interrogatory to the extent it exceeds the number of interrogatories permitted under Rule 33 of the Federal Rules of Civil Procedure.

11.     TGP objects to these requests as vague, ambiguous, unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence. TGP is seeking a stay of discovery while the parties and the Court work towards narrowing the issues in this case. Thus, objects to any discovery unless that stay motion is denied; any production is conditioned on the Court denying the stay. TGP reserves the right to amend and supplement these objections and responses.

Without waiving the foregoing objections and incorporating said objections into each specific response below, TGP responds to Plaintiffs' First Set of Interrogatories (Nos. 1-14) as follows:

1    **SPECIFIC OBJECTIONS AND RESPONSES**

2    INTERROGATORY NO. 1

3        State whether and under what circumstances TGP contends that compliance with the

4    temperature rise limits (as defined above) is not required for fire-rated glazing to receive rating

5    higher than 45 minutes for use in fire window assemblies in the United States.

6    ANSWER TO INTERROGATORY NO. 1

7        NFPA 251 (1999) sets forth, among many other things, "conditions of acceptance" for fire

8    tests of bearing and nonbearing walls and partitions, in Chapters 5 and 6.  These include the

9    condition that: "Transmission of heat through the wall or partition during the fire endurance test

10   shall not be sufficient to raise the temperature on the unexposed surface more than 250 degrees F …

11   above the assembly's initial temperature."  ASTM E 119 – 00a Sections 16 and 18 provides for a

12   substantially similar condition of acceptance for fire tests of walls and partitions.

13       NFPA 80 (2007) section 3.3.59 defines "Fire Protection Rating" as "the designation

14   indicating the duration of the fire test exposure to which a fire door assembly or fire window

15   assembly was exposed and for which it successfully met all acceptance criteria as determined in

16   accordance with NFPA 252, *Standard Methods of Fire Tests of Door Assemblies*, or NFPA 257,

17   *Standard on Fire Test for Window and Glass Block Assemblies*, respectively."

18       Compliance with the temperature rise condition of acceptance in NFPA 251 (1999) Chapters

19   5 and 6 or ASTM E 119 – 00a Sections 16 and 18, which generally cover tests for "walls," is not

20   required for fire rated glazing in "fire window assemblies" to receive a fire protection rating higher

21   than 45 minutes as determined in accordance with NFPA 257, which generally covers "windows."

22       In short, the acceptance conditions establishing the duration of the fire test for walls under

23   NFPA 251 includes a heat transmission condition; the acceptance conditions establishing the

24   duration of the fire test for windows under NFPA 257 does not.

25       Most states have adopted (with some amendments) the International Building Code ("IBC")

26   (2003 or 2006).  IBC Section 715 provides minimum code requirements regarding the use of fire-

27   rated glazing for use in window assemblies.  In general, Section 703, and the references throughout

28

1  Chapter 7 to it and to ASTM E 119, govern temperature rise limits.  In general, Section 715 governs

2  fire-rated glazing for use in fire window assemblies.  Section 715 does refer to Section 703 or ASTM

3  E 119 in a few places, such as IBC (2006) Section 715.2, but generally it does not refer to them.

4  Generally, fire-rated glazing for use in fire window assemblies governed by Section 715 is not

5  required by the IBC (2003 or 2006) to meet temperature rise limits.  Table 715.5 (IBC 2006)

6  identifies some situations where a fire window assembly is not permitted, except as specified in

7  Section 715.2, and Section 715.2 does generally require compliance with the temperature rise limits

8  for fire-resistance-rated wall assemblies in accordance with ASTM E 119.

9        Beyond that, TGP objects to this interrogatory as overbroad, vague, and having inconsistent

10  and overbroad definitions.  TGP incorporates its general objections as its objections to this

11  interrogatory.

12        Consistent with its general objections, TGP further objects to this interrogatory to the extent

13  that it seeks information protected from discovery by the attorney-client privilege, work product

14  immunity, and/or any other applicable privilege and/or immunity.  TGP objects to this interrogatory

15  to the extent it calls for a legal conclusion.  TGP objects to this interrogatory as vague, ambiguous,

16  overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of

17  admissible evidence.

18  <u>INTERROGATORY NO. 2</u>

19        State whether and under what circumstances TGP contends that compliance with the

20  temperature rise limits (as defined above) is not required for fire-rated glazing to receive rating

21  higher than 45 minutes for use in doors, transoms or sidelight door assemblies requiring a fire rating

22  in excess of 45 minutes in the United States.

23  <u>ANSWER TO INTERROGATORY NO. 2</u>

24        NFPA 251 (1999) sets forth, among many other things, "conditions of acceptance" for fire

25  tests of bearing and nonbearing walls and partitions, in Chapters 5 and 6.  These include the

26  condition that: "Transmission of heat through the wall or partition during the fire endurance test

27  shall not be sufficient to raise the temperature on the unexposed surface more than 250 degrees F …

28

Case No.:  C-07-3535 JF PVT

1    above the assembly's initial temperature." ASTM E 119 – 00a Sections 16 and 18 provides for a

2    substantially similar condition of acceptance for fire tests of walls and partitions.

3        NFPA 80 (2007) section 3.3.59 defines "Fire Protection Rating" as "the designation

4    indicating the duration of the fire test exposure to which a fire door assembly or fire window

5    assembly was exposed and for which it successfully met all acceptance criteria as determined in

6    accordance with NFPA 252, *Standard Methods of Fire Tests of Door Assemblies*, or NFPA 257,

7    *Standard on Fire Test for Window and Glass Block Assemblies*, respectively."

8        Compliance with temperature rise condition of acceptance in NFPA 251 (1999) Chapters 5

9    and 6 or ASTM E 119 – 00a Sections 16 and 18, which generally cover tests for "walls," is not

10   required for fire rated glazing in "fire window assemblies," which may include transoms or sidelight

11   door assemblies, to receive a fire protection rating higher than 45 minutes as determined in

12   accordance with NFPA 257, which generally covers "windows." Nor is it required for fire rated

13   glazing in doors to receive a fire protection rating higher than 45 minutes as determined in

14   accordance with NFPA 252, which generally covers "doors."

15       In short, the acceptance conditions establishing the duration of the fire test for walls under

16   NFPA 251 includes a heat transmission condition; the acceptance conditions establishing the

17   duration of the fire test for windows under NFPA 257 and doors under NFPA 252 do not (though

18   NFPA 252 (2008) Section 4.3 does require that "Temperatures of the unexposed surface of the fire

19   door shall be recorded during the first 30 minutes of the fire test," the temperatures recorded are not

20   among the "performance criteria" in NFPA 252 Chapter 7 that establish the rating).

21       Most states have adopted (with some amendments) the International Building Code ("IBC")

22   (2003 or 2006). IBC Section 715 provides minimum code requirements regarding the use of fire-

23   rated glazing for use in doors, transoms or sidelight door assemblies. In general, Section 703, and

24   the references throughout Chapter 7 to it and to ASTM E 119, govern temperature rise limits. In

25   general, Section 715 governs fire-rated glazing for use in fire window assemblies. Section 715 does

26   refer to Section 703 or ASTM E 119 in a few places, such as IBC (2006) Section 715.2, but

27   generally it does not refer to them. Generally, fire-rated glazing for use in fire window assemblies

28

TGP'S 1ˢᵗ SUPPLEMENTAL RESPONSE TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1-14)            -5-

1  governed by Section 715 is not required by the IBC (2003 or 2006) to meet temperature rise limits.

2  Table 715.5 (IBC 2006) identifies some situations where a fire window assembly is not permitted,

3  except as specified in Section 715.2, and Section 715.2 does generally require compliance with the

4  temperature rise limits for fire-resistance-rated wall assemblies in accordance with ASTM E 119.

5  The IBC also has some specific references to specific temperature rise criteria, such as the criteria

6  set forth in IBC Section 715.4.4 and 715.4.4.1 for glazing in doors, but that does not affect the fire

7  protection rating under NFPA 252 or 257.

8       Beyond that, TGP objects to this interrogatory as overbroad, vague, and having inconsistent

9  and overbroad definitions.  TGP incorporates its general objections as its objections to this

10  interrogatory.

11      Consistent with its general objections, TGP further objects to this interrogatory to the extent

12  that it seeks information protected from discovery by the attorney-client privilege, work product

13  immunity, and/or any other applicable privilege and/or immunity.  TGP objects to this interrogatory

14  to the extent it calls for a legal conclusion.  TGP objects to this interrogatory as vague, ambiguous,

15  overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of

16  admissible evidence.

17  INTERROGATORY NO. 3

18      State whether and under what circumstances TGP contends that compliance with the

19  temperature rise limits (as defined above) is not required for fire-rated glazing to receive 90-minute

20  rating for use in sizes in excess of 100 sq. inches in fire doors requiring a rating of 90-minutes in the

21  United States.

22  ANSWER TO INTERROGATORY NO. 3

23      TGP incorporates herein its response to Interrogatory No. 2 above, which addresses doors.

24      Beyond that, TGP objects to this interrogatory as overbroad, vague, and having inconsistent

25  and overbroad definitions.  TGP incorporates its general objections as its objections to this

26  interrogatory.

27

28

TGP'S 1st SUPPLEMENTAL RESPONSE TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1-14)          -6-

Consistent with its general objections, TGP further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP objects to this interrogatory to the extent it calls for a legal conclusion. TGP objects to this interrogatory as vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence.

INTERROGATORY NO. 4

Since January 1, 2003, identify each building project for which TGP's FireLite products have been sold where a 60-or 90-minute fire rated product has been requested. For each installation identified, please state:

(a) The date of the sale;

(b) The address of the installation;

(c) The identity of the architects, contractor(s), building owners, and authority having jurisdiction personnel that approved such application;

(d) The identity of all documents provided to any of the persons identified in response to subpart (c ) above; and

(e) The identity of any documents relating, referring to or comprising an approval by the authority having jurisdiction

ANSWER TO INTERROGATORY NO. 4

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other applicable privilege and/or immunity. TGP objects to this interrogatory as vague and ambiguous. TGP further objects to this interrogatory in that it is overly broad, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence. TGP further objects to this interrogatory as compound and improper, with each of its subparts forming a distinct interrogatory.

Subject to and without waiving the foregoing objections, TGP does not track each building project that may be associated with any given product sale.

FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4

TGP further objects and responds to Interrogatory No. 4 as follows: TGP sells and markets its products to glass distributors, glazing contractors, and architects; it does not install its products in building projects, nor does it generally maintain records correlating the sale of its products with specific building projects where it might be installed. TGP objects to producing and identifying all documents, communications, quote requests, quotes, orders, confirmations, invoices, packing slips and the like related to the use of FireLite products in 60-90 minute applications. To the extent TGP has responsive information, it does not maintain it in a central location. Producing such information for each building project involving TGP's FireLite products would require the collection, review, and production of at least tens of thousands of documents and the information would be largely redundant. Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 33(d), TGP has performed a reasonable search, and has produced or will produce documents and communications discovered in that search sent to or received from design professionals or AHJs that relate to the radiant heat, heat barrier, barrier to heat, or temperature rise (temp rise) performance of TGP's FireLite products, and that relate to using, or not using, FireLite as transoms, sidelights (sidelites), borrowed lights (lites), in fire doors, and in panels exceeding 100 sq. inches from which responsive information can be derived.

INTERROGATORY NO. 5

Since January 1, 2003, identify each building project for which TGP's Pyrodur products have been sold; and state on a year-by-year basis the total revenue and profits realized by TGP from such sales.

ANSWER TO INTERROGATORY NO. 5

TGP incorporates its general objections as its objections to this interrogatory. Consistent with its general objections, TGP objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege, work product immunity, and/or any other

1  applicable privilege and/or immunity.  TGP further objects to this interrogatory in that it is overly

2  broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of

3  admissible evidence.  TGP further objects to this interrogatory as compound and improper, with each

4  of its subparts forming a distinct interrogatory.

5    Subject to and without waiving the foregoing objections, TGP does not track each building

6  project that may be associated with any given product sale.

7  FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5

8    TGP further objects and responds to Interrogatory No. 5 as follows:  TGP sells and markets

9  its products to glass distributors, glazing contractors, and architects; it does not install its products in

10  building projects, nor does it generally maintain records correlating its products with specific

11  building projects where it might be installed.  TGP further objects to this Interrogatory because it is

12  unclear what allegation O'Keeffe's is making against Pyrodur.  For example, Pyrodur is not

13  mentioned in O'Keeffe's pleadings, and therefore this request is not relevant to a claim or defense as

14  provided by Rule 26(b)(1).

15  INTERROGATORY NO. 6

16    Since January 1, 2003, identify each building project for which TGP's FireGlass 20 products

17  have been sold for use in the U.S. by the following:

18    (a) The date of the sale;

19    (b) The address of the installation;

20    (c) The identity of the architects, contractor(s), building owners, and authority having

21       jurisdiction personnel that approved such application;

22    (d) The description of all documents provided to any of the persons identified in

23       response to subpart (c) above; and

24    (e) The description of any documents relating, referring to or comprising an approval by

25       the authority having jurisdiction.

26

27

28

1  ANSWER TO INTERROGATORY NO. 6

2         TGP incorporates its general objections as its objections to this interrogatory.  Consistent

3  with its general objections, TGP objects to this interrogatory to the extent that it seeks information

4  protected from discovery by the attorney-client privilege, work product immunity, and/or any other

5  applicable privilege and/or immunity.  TGP further objects to this interrogatory in that it is overly

6  broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of

7  admissible evidence.  TGP further objects to this interrogatory as compound and improper, with each

8  of its subparts forming a distinct interrogatory.

9         Subject to and without waiving the foregoing objections, TGP does not track each building

10 project that may be associated with any given product sale.

11 FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6

12        TGP further objects and responds to Interrogatory No. 6 as follows:  TGP sells and markets

13 its products to glass distributors, glazing contractors, and architects; it does not install its products in

14 building projects, nor does it generally maintain records correlating its products with specific

15 building projects where it might be installed.  TGP objects to producing and identifying all

16 documents, communications, quote requests, quotes, orders, confirmations, invoices, packing slips

17 and the like related to the use of FireGlass20.  To the extent TGP has responsive information, it does

18 not maintain it in a central location.  Producing such information for each building project involving

19 TGP's FireGlass20 product would require the collection, review, and production of at least tens of

20 thousands of documents and the information would be largely redundant.  TGP further objects to

21 producing the requested information regarding FireGlass20 because TGP understands O'Keeffe's

22 allegations regarding FireGlass20 relates to a typographical error made by Underwriter Laboratories,

23 which has been corrected.

24 INTERROGATORY NO. 7

25        Since January 1, 2003, describe each building project for which TGP's Pyrodur products

26 have been sold for use in sidelights and/or transoms in the United States by the following:

27        (a) The date of the sale;

28

1       (b) The address of the installation;

2       (c) The identity of the architects, contractor(s), building owners, and authority having

3            jurisdiction personnel that approved such application;

4       (d) The identity of all documents provided to any of the persons identified in response to

5            subpart (c ) above; and

6       (e) The identity of any documents relating, referring to or comprising an approval by the

7            authority having jurisdiction.

8 ANSWER TO INTERROGATORY NO. 7

9     TGP incorporates its general objections as its objections to this interrogatory.  Consistent

10 with its general objections, TGP objects to this interrogatory to the extent that it seeks information

11 protected from discovery by the attorney-client privilege, work product immunity, and/or any other

12 applicable privilege and/or immunity.  TGP further objects to this interrogatory in that it is overly

13 broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of

14 admissible evidence.  TGP further objects to this interrogatory as compound and improper, with each

15 of its subparts forming a distinct interrogatory.

16     Subject to and without waiving the foregoing objections, TGP does not track each building

17 project that may be associated with any given product sale.

18 FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7

19     TGP further objects and responds to Interrogatory No. 7 as follows:  TGP sells and markets

20 its products to glass distributors, glazing contractors, and architects; it does not install its products in

21 building projects, nor does it generally maintain records correlating its products with specific

22 building projects where it might be installed.  TGP objects to producing and identifying all

23 documents, communications, quote requests, quotes, orders, confirmations, invoices, packing slips

24 and the like related to the use of Pyrodur.  To the extent TGP has responsive information, it does not

25 maintain it in a central location.  Producing such information for each building project involving

26 TGP's Pryodur product would require the collection, review, and production of at least tens of

27 thousands of documents and the information would be largely redundant.  TGP further objects to this

28

1    Interrogatory because it is unclear what allegation O'Keeffe's is making against Pyrodur.  For

2    example, Pyrodur is not mentioned in O'Keeffe's pleadings, and therefore this request is not relevant

3    to a claim or defense as provided by Rule 26(b)(1).

4    INTERROGATORY NO. 8

5          Since January 1, 2003, identify each building project for which TGP's FireLite products have

6    been sold, and state on a year-by-year basis, the total revenue and profits realized by TGP for such

7    sales.

8    ANSWER TO INTERROGATORY NO. 8

9          TGP incorporates its general objections as its objections to this interrogatory.  Consistent

10   with its general objections, TGP objects to this interrogatory to the extent that it seeks information

11   protected from discovery by the attorney-client privilege, work product immunity, and/or any other

12   applicable privilege and/or immunity.  TGP further objects to this interrogatory in that it is overly

13   broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of

14   admissible evidence.  TGP further objects to this interrogatory as compound and improper,

15   comprising distinct interrogatories.  TGP further objects to this interrogatory as improper by

16   exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

17         Subject to and without waiving the foregoing objections, TGP does not track each building

18   project that may be associated with any given product sale.

19   FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8

20         In addition to the foregoing objections and responses, as well as TGP's objections and

21   responses to Interrogatory No. 4, TGP will provide responsive revenue and profits information

22   related to sales of FireLite for which O'Keeffe's can show that FireLite was actually used in a

23   project in a manner contrary to the building code governing that project.

24   INTERROGATORY NO. 9

25         Identify each building project that rejected TGP's FireLite products for failing to meet

26   building and safety codes or regulations, including the reasons and evidence provided by the code

27   official for rejecting FireLite products.

28

1  ANSWER TO INTERROGATORY NO. 9

2     TGP incorporates its general objections as its objections to this interrogatory. Consistent

3  with its general objections, TGP objects to this interrogatory to the extent that it seeks information

4  protected from discovery by the attorney-client privilege, work product immunity, and/or any other

5  applicable privilege and/or immunity. TGP further objects to this interrogatory as improper by

6  exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

7  Based on current information, and to the extent TGP understands the request, TGP is unaware of any

8  building project in which a FireLite product was found not compliant with a building or safety code

9  or regulation.

10  FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9

11     Subject to and without waiving its objections, pursuant to Fed. R. Civ. P. 33(d), TGP has

12  performed a reasonable search, and has produced or will produce documents and communications

13  discovered in that search sent to or received from design professionals or AHJs that relate to the

14  radiant heat, heat barrier, barrier to heat, or temperature rise (temp rise) performance of TGP's

15  FireLite products, and that relate to using, or not using, FireLite as transoms, sidelights (sidelites),

16  borrowed lights (lites), in fire doors, and in panels exceeding 100 sq. inches from which responsive

17  information can be derived.

18  INTERROGATORY NO. 10

19     Identify performance test (including, without limitation any fire endurance, hose stream,

20  thermal shock, sprinkler endurance test), performed by any person for any purpose (i.e., certification,

21  research, marketing, etc.) on SuperLite I-XL, including the date of the test, the person performing

22  the test, the person requesting the test, the test standards or test protocol/methodology used, and all

23  documents referring to the test.

24  ANSWER TO INTERROGATORY NO. 10

25     TGP incorporates its general objections as its objections to this interrogatory. Consistent

26  with its general objections, TGP objects to this interrogatory to the extent that it seeks information

27  protected from discovery by the attorney-client privilege, work product immunity, and/or any other

28

1 applicable privilege and/or immunity.  TGP further objects to this interrogatory as improper by
2 exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

3      Subject to and without waiving the foregoing objections, in May, 2007, Mike White and
4 Howard Stacy of Western Fire Center, Inc. tested the fire endurance characteristics of SuperLite I-
5 XL, among other products, pursuant to the NFPA 257 testing protocol.  Western Fire Center, Inc.
6 prepared Report #07035, which describes the test and results.

7 INTERROGATORY NO. 11

8      Since January 1, 2003, identify each building project for which TGP's standard or polished
9 FireLite (not FireLite Plus or FireLite NT) product has been sold for use in fire doors in the United
10 States.

11 ANSWER TO INTERROGATORY NO. 11

12      TGP incorporates its general objections as its objections to this interrogatory.  Consistent
13 with its general objections, TGP objects to this interrogatory to the extent that it seeks information
14 protected from discovery by the attorney-client privilege, work product immunity, and/or any other
15 applicable privilege and/or immunity.  TGP further objects to this interrogatory in that it is overly
16 broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of
17 admissible evidence.  TGP further objects to this interrogatory in that it is overly broad, unduly
18 burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence.  TGP
19 further objects to this interrogatory as improper by exceeding the number of interrogatories
20 authorized under the Federal Rules of Civil Procedure.

21      Subject to and without waiving the foregoing objections, TGP does not track each building
22 project that may be associated with any given product sale.

23 FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11

24      In addition to the foregoing objections and responses, as well as TGP's objections and
25 responses to Interrogatory No. 4, TGP will provide responsive revenue and profits information
26 related to sales of FireLite for which O'Keeffe's can show that FireLite was actually used in a
27 project in a manner contrary to the building code governing that project.

28

Case No.: C-07-3535 JF PVT

TGP'S 1st SUPPLEMENTAL RESPONSE TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1-14)          -14-

1  INTERROGATORY NO. 12

2      Identify and describe each fire endurance, hose stream test, thermal shock test, sprinkler

3  endurance test, or any other performance test that has been performed by any person for any purpose

4  (i.e., certification, research, marketing, etc.) on SuperLite I, including without limitation, the date of

5  the test, the person performing the test, the person requesting the test, the test standards or test

6  protocol/methodology used, the identity of all documents relating or referring to the test.

7  ANSWER TO INTERROGATORY NO. 12

8      TGP incorporates its general objections as its objections to this interrogatory. Consistent

9  with its general objections, TGP objects to this interrogatory to the extent that it seeks information

10  protected from discovery by the attorney-client privilege, work product immunity, and/or any other

11  applicable privilege and/or immunity. TGP further objects to this interrogatory as improper by

12  exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

13      Subject to these objections, TGP has not been involved with any SuperLite I testing.

14  INTERROGATORY NO. 13

15      Identify all persons to whom TGP provided any of the documents shown in Exhibit 1

16  attached to O'Keeffe's First Set of Requests for Production of Documents and Things.

17  ANSWER TO INTERROGATORY NO. 13

18      TGP incorporates its general objections as its objections to this interrogatory. Consistent

19  with its general objections, TGP objects to this interrogatory to the extent that it seeks information

20  protected from discovery by the attorney-client privilege, work product immunity, and/or any other

21  applicable privilege and/or immunity. TGP further objects to this interrogatory as improper by

22  exceeding the number of interrogatories authorized under the Federal Rules of Civil Procedure.

23      Subject to these objections, TGP provided documents shown in Exhibit 1 to various trade

24  publications, including Architect - July 2007; Architectural Products - May, July, Aug 2007;

25  Building Design and Construction - July, Sept 2007; Architectural Record - Sept 2007, Jan 2008;

26  Glass Magazine - July - Oct 2007, Jan - Feb 2008; USGlass - July - Dec 2007, Jan - Feb 2008;

27

28

1  NFPA Journal - May, June 2007; Building Safety Journal - June, Aug 2007; Building Safety Bulletin

2  - July, Sept 2007; and Healthcare Building Ideas - June, July 2007.

3  <u>INTERROGATORY NO. 14</u>

4      Identify all facts, instances of failures, and documents relating or referring to the statement

5  referred to in Exhibit 6 attached O'Keeffe's First Set of Requests for Production of Documents and

6  Things, that "When heated by a fire, those products cannot withstand the thermal stress of even a

7  small amount of cool water.  Sprinklers could cause them to fall out of the opening, breaching the

8  barrier to smoke and flames."

9  <u>ANSWER TO INTERROGATORY NO. 14</u>

10     TGP incorporates its general objections as its objections to this interrogatory.  Consistent

11 with its general objections, TGP objects to this interrogatory to the extent that it seeks information

12 protected from discovery by the attorney-client privilege, work product immunity, and/or any other

13 applicable privilege and/or immunity.  TGP further objects to this interrogatory in that it is overly

14 broad in scope, unduly burdensome, and not reasonably calculated to the lead to the discovery of

15 admissible evidence.  TGP also objects to this interrogatory as vague and ambiguous in that no

16 Exhibit 6 was attached to O'Keeffe's First Set of Requests for Production of Documents and Things.

17 TGP further objects to this interrogatory as improper by exceeding the number of interrogatories

18 authorized under the Federal Rules of Civil Procedure.

19     Subject to and without waiving these objections, pursuant to Fed. R. Civ. P. 33(d), TGP will

20 produce non-privileged documents, if any, from which information reasonably responsive to this

21 interrogatory can be derived.

22

23 Dated this 13th day of May, 2008

24

25                             By: _Todd M Siegel_

26                                 Jeffrey S. Love (State Bar No. 195068)
                                    jeffrey.love@klarquist.com
                                    Todd M. Siegel (*Pro Hac Vice*)

27                                 todd.siegel@klarquist.com

28
                                                     Case No.:  C-07-3535 JF PVT
TGP'S 1st SUPPLEMENTAL RESPONSE TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1-14)          -16-

1

Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600

2

Portland, OR  97204-2988
Telephone:  (503) 595-5300

3

Facsimile:  (503) 595-5301

4

Eric L. Wesenberg

5

ewesenberg@orrick.com
Orrick, Herrington & Sutcliffe LLP

6

1000 Marsh Road
Menlo Park, CA 94025-1015

7

Telephone: (650) 614-7400
Facsimile: (650) 614-7401

8

9

Attorneys for Defendant Technical Glass Products

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2      The undersigned hereby certifies that on May 13, 2008, the foregoing DEFENDANT

3  TECHNICAL GLASS PRODUCTS' 1ST SUPPLEMENTAL RESPONSE TO PLAINTIFF'S

4  FIRST SET OF INTERROGATORIES (NOS. 1-14) was served by electronic mail and First Class

5  Mail to the following:

6
     Mark I. Schickman
7    mis@freelandlaw.com
     Daniel T. Bernhard
8    bernhard@freelandlaw.com
     FREELAND COOPER & FOREMAN LLP
9    150 Spear Street, Suite 1800
     San Francisco, CA  94105
10   Telephone: 415-541-0200
     Facsimile: 415-495-4332
11

12   Jason S. McDonell
     jmcdonell@jonesday.com
13   Katherine S. Ritchey
     ksritchey@jonesday.com
14   JONES DAY
15   555 California Street, 26th Floor
     San Francisco, CA  94104-1500
16   P:  415-626-3939
     F:  415-875-5700
17

18   Attorneys for Plaintiff O'Keeffe's, Inc.

19

20

21

22   Todd M. Siegel

23

24

25

26

27

28
                                                    Case No.:  C-07-3535 JF PVT
     TGP'S 1st SUPPLEMENTAL RESPONSE TO PLAINTIFF'S
     FIRST SET OF INTERROGATORIES (NOS. 1-14)          -18-