1 | Mark I. Schickman (State Bar No. 62653)
schickman@freelandlaw.com
2 | Daniel T. Bernhard (State Bar No. 104229)
bernhard@freelandlaw.com
3 | FREELAND COOPER & FOREMAN LLP
150 Spear Street, Suite 1800
4 | San Francisco, California 94105
Telephone:    (415) 541-0200
5 | Facsimile:    (415) 495-4332

6 | Jason McDonell (State Bar No. 115084)
jmcdonell@jonesday.com
7 | Katherine S. Ritchey (State Bar No. 178409)
ksritchey@jonesday.com
8 | Jennifer Seraphine (State Bar No. 245463)
jseraphine@jonesday.com
9 | JONES DAY
555 California Street, 26th Floor
10 | San Francisco, California 94104
Telephone:    (415) 626-3939
11 | Facsimile:    (415) 875-5700

12 | Attorneys for Plaintiff, Counterdefendant and
Counterclaimant O'KEEFFE'S, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| O'KEEFFE'S, INC., | CASE NO.:  C 07-cv-03535 JF PVT |
| Plaintiff, | **PLAINTIFF O'KEEFFE'S, INC.'S REPLY TO TGP'S OPPOSITION TO MOTION TO COMPEL** |
| v. | |
| TECHNICAL GLASS PRODUCTS, ANEMOSTAT, and PILKINGTON PLC, | Date: June 3, 2008
Time: 10:00 a.m.
Before the Honorable Patricia V. Trumbull |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. SELECTED ALLEGATIONS AND INFORMATION SUPPORTING DISCOVERY ............................................................................................................... 2

III. THE RELEVANCE OF TGP's PRODUCTS ..................................................................... 4

IV. LEGAL ISSUES .................................................................................................................. 7

    A. TGP Is Objecting To Discovery Indistinguishable From What It Served ............... 7

    B. TGP's Interpretation of Relevance Is Not Supported By Its Own Cases ............... 8

    C. TGP Has Not Established A Burden Sufficient to Deny Discovery ...................... 8

    D. TGP's Other Objections Are Waived .................................................................. 10

V. TGP's SUPPLEMENTAL RESPONSES AND ARGUMENT ON SPECIFIC REQUESTS DO NOT PROVIDE A BASIS TO DENY THE MOTION ....................... 10

VI. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

Cases

*Jackson v. Montgomery Ward & Co.*
   173 F.R.D. 524 (D. Nev. 1997) ................................................................................................ 9

*Thompson v. HUD*
   199 F.R.D. 168 (D. Md. 2001) ............................................................................................ 2, 9

Statutes

Federal Rule of Civil Procedure
   26 ........................................................................................................................................ 2, 9
   26(b)(1) .................................................................................................................................. 9

## I. INTRODUCTION.

O'Keeffe's counterclaims for false advertising, unfair business practices and trade libel allege that TGP puts products in the marketplace in a manner likely to cause confusion and misuse. As further evidence of the matters put at issue in its allegations (which independently are sufficient to support the requested discovery), O'Keeffe has identified false and/or misleading statements on TGP's website relating to multiple products. TGP's opposition asserts that O'Keeffe's must produce an example of a statement to a specific customer in order to obtain discovery. While O'Keeffe's disagrees, it located a written statement by a TGP sales manager that advocates for using FireLite in a job that specified insulated glass (which provides radiant heat protection that FireLite does not), and contorts applicable standards to argue this use is permissible. *See* Supplemental Ritchey Decl. Ex. 1. There is more than a sufficient basis to support basic written discovery.

TGP continues to press its unduly narrow view that relevance is limited to issues explicitly referenced in the pleadings. The main authority it relies upon holds otherwise: "While the pleadings will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer." *Thompson v. HUD*, 199 F.R.D. 168, 172 (D. Md. 2001). Neither logic nor case law support TGP's strained view that Rule 26's requirement that discovery must be "relevant to any party's claim or defense" means that discovery may not go beyond the language used in the serving party's pleading and should ignore issues relevant to the serving party's defense of claims against it.

TGP couples its narrow interpretation of relevance with an alarmist view of burden. Other than discovery targeted to defending TGP's claims, O'Keeffe's discovery parallels its allegations regarding TGP's widespread misstatements and omissions in the marketing and sales of its products. While TGP has attempted to create a picture of substantial burden, only six Territory Managers are responsible for sales communications. Moreover, while TGP's hard copy sales files may be voluminous (approximately 100 boxes), O'Keeffe's has offered that TGP merely needs to makes its boxes available for inspection, and O'Keeffe's will bear the cost of copying. TGP's self-proclaimed "reasonable" responses and production are not an attempt to respond to

the actual requests in a manner calculated to provide all or most of the requested information. Rather, TGP finds a burden with anything outside its limited view of relevance. Jeff Razwick's self-serving statements that documents or information "are not easily accessible or duplicated" and collecting them "would take an extremely long time" are not sufficient. Discovery should be compelled.

## II. SELECTED ALLEGATIONS AND INFORMATION SUPPORTING DISCOVERY.

Although TGP would like to create the impression that O'Keeffe's claims against it are limited to circumstances in which a code has been violated – or even more narrowly to circumstances in which a code has been violated with TGP's knowledge – O'Keeffe's claims are not so limited. Rather, O'Keeffe's has alleged widespread misstatements and omissions in the marketing and sales of TGP's products in support of its claims for false advertising, unfair business practices and trade libel. A select sample of O'Keeffe's allegations from its counter claim (Docket 28) include:

- "TGP typically omits critical and essential performance limitations and shortcomings of its ceramic products from the marketing and sales of FireLite." (¶ 15)
- "TGP has consistently and affirmatively misrepresented the code applicability and standards for FireLite." (Examples are provided) (¶ 16)
- "TGP has positioned FireLite to compete directly with O'Keeffe's SuperLite II-XL product, although FireLite is not an equivalent product, and is widely used in applications for which it is not intended, permitted or safe." (¶ 18)
- "TGP has obtained from UL certain ratings, certifications and listings for Fire-Lite, which ratings, either expressly or impliedly, represent that it not only meets the specific standards referenced in the listing, but that it also is acceptable for listed uses, including, without limitation, applications in, and adjacent to, doors. . . . Absent the UL listing and related certifications, TGP's FireLite would not enjoy the acceptance it now has in the marketplace. In fact, without such listing and certifications, FireLite would be not useable in many of the applications that it is now used in, despite its clear unsuitability for those

1 applications." (¶ 22)

2 - "UL has been advised that its listings of FireLite in 60 and 90 minute applications is
3 confusing to authorities having jurisdiction and to the public, and has resulted in the
4 misapplication of these products in location where radiant heat is a danger." (¶ 25)

5 - "Among other things, TGP: a. falsely represented that [its] competing products, including
6 FireLite, have a fire rating that permits the use of FireLite in doors, windows and other
7 applications, when such applications are not, in fact, permitted, and are, in fact, unsafe and
8 dangerous." (¶ 34)

9 - "TGP has also created an environment of misrepresentations, falsity and confusion about
10 the permitted and safe uses of TGP's FireLite." (¶ 46)

11 - "TGP has also worked, in concert and collaboration with UL and with its assistance, to
12 create markets and sales opportunities for other TPG products [than FireLite], by misusing
13 the UL label, and falsely representing the qualities and limitations of those products."
14 (Paragraph specifically references Pyroshield NT and WireLite). (¶ 47)

15 - Unlawful business practices by TGP include: "falsely and misleadingly advertis[ing]
16 TGP's products as safe and permitted" and "misrepresenting the qualities of TGP's
17 products in misleading advertisements and related representations." (¶ 49)

18 O'Keeffe's also has identified in the meet and confer process statements and omissions on
19 TGP's website that support its allegations. *See* Supp. Ritchey Decl. Ex. 2 (TGP's website for
20 FireLite and FireLite NT showing 60 and 90 minute listings without adequate disclosures). In
21 addition to extended telephonic discussion about the website, O'Keeffe's has explained in
22 writing:

23 - "In order to dispel any doubts that TGP's misconduct is not limited to FireLite products, I
24 explained that the advertising of WireLite on TGP's website inaccurately reflects the
25 impact performance of its products." Ritchey Decl. (Docket 102) Ex. F.

26 - "Historically within the industry, a 60 minute rating conveyed that a product was fire-
27 resistant (blocks radiant heat, as well as smoke, fumes, etc.), where as 45 and lesser
28 ratings were generally associated with fire protective products (only block smoke, fumes,

SFI-583944v1

- 4 -

O'Keeffe's Reply re: Motion to Compel
Case No. 07 cv-03535 JF PVT

etc.). To this day there are still only limited applications for a 60/90 minute fire protective product -- it is functionally the same as 45 minute products with respect to where it can go. Nonetheless, TGP puts its 60 minute products in the marketplace and represents that they are listed and/or fully code compliant, without disclosing that this is true only in 45 minute applications." Ritchey Decl. (Docket 102) Ex. H.

- "Even in applications in which a 45 minute fire protective product can be used, TGP does not disclose significant limitations. For example, a 45 minute window (such as FireLite products) can be used as a borrowed lite in a 60 minute fire partition wall only if it does not exceed 25% of the surface area." *Id.*

- "TGP's website states that WireLite complies with ANSI Z97.1, which relates to impact ratings that WireLite does not have." *Id.*

And now, because TGP (incorrectly) insisted that a specific example of a misstatement to a specific customer is necessary, O'Keeffe's is providing one. Exhibit 1 to the Supplemental Ritchey Declaration is a communication from TGP to a potential customer advocating for the use of FireLite notwithstanding the fact that the specified product was an insulated glass unit. Insulated glass provides a barrier to radiant heat; FireLite does not. Through technical gibberish, TGP attempts to convince the customer to buy FireLite. For purposes of this motion, however, it is unnecessary for the Court to accept that the technical explanations are incorrect and/or misleading (although they are). It is indisputable that TGP is promoting its product in a circumstance in which a greater degree of fire protection was specified without disclosing any limitations on that product's performance. This document supports O'Keeffe's claims. When coupled with false and misleading statements/omissions on the website, this document more than supports that O'Keeffe's is not on a "fishing expedition." O'Keeffe's is entitled to discovery so that the trier of fact can fairly adjudicate O'Keeffe's claims.

**III.    THE RELEVANCE OF TGP's PRODUCTS.**

O'Keeffe's explained the relevance of particular TGP products in its statements regarding why further documents and information should be compelled. *See* O'Keeffe's Revised Notice of Motion and Motion to Compel (Docket 109) ("Motion") Exs. 1 & 2. Because TGP repeatedly

1  asserts there is no explanation for discovery regarding most of its products, and for other products
2  there is no basis for anything other than limited discovery, O'Keeffe's summarizes the relevance
3  of various products:
4      **FireLite**: O'Keeffe's counterclaim has pages of allegations about FireLite.  These
5  allegations relate to: 1) the statements and omissions by TGP regarding the performance and/or
6  limitations of FireLite (¶¶ 15, 34, 46), 2) how TGP positions this product to compete with
7  O'Keeffe's products(¶ 18), 3) TGP's use (or misuse) of UL listings to induce customers to install
8  FireLite in unsafe applications (¶¶ 22, 25), and 4) TGP's misrepresentations regarding the codes
9  and standards applicable to FireLite (¶¶ 16, 34, 46).  O'Keeffe's claims are *not* limited to
10 misrepresentations about codes.
11     TGP's allegations against O'Keeffe's assert, among other things,  that O'Keeffe's does
12 not adequately disclose the radiant heat protection offered by O'Keeffe's SuperLite I-XL product.
13 TGP counterclaim (Docket 98) ¶ 85.  Accordingly, TGP's promotion of FireLite in a manner
14 likely to induce its misuse in applications requiring radiant heat protection (like in the document
15 attached as Supp. Ritchey Decl. Ex. 1) is relevant to O'Keeffe's defense of TGP's claims.
16     Documents regarding how FireLite is marketed, its performance on testing (not just the
17 testing it passes that results in a UL listing), TGP's communications with UL, and the specific
18 sales of FireLite are relevant to the claims and defenses.
19     **All Products Other than FireLite (WireLite, Pyrodur, FireGlass, Pyroshield NT)**:
20     O'Keeffe's has alleged that TGP misuses UL listings to promote its products.  O'Keeffe's
21 Counterclaim (Docket 28) ¶ 47.  Moreover, O'Keeffe's has alleged that TGP falsely represents
22 the qualities and limitations of its products other than FireLite.  *Id.*  In light of numerous
23 specifically identified instances of misleading statements and omissions that cross product lines
24 (*see* Section II, above), O'Keeffe's is entitled to discovery regarding how TGP's products
25 perform, communications with UL, how TGP markets its products (both in mass marketing and
26 specific sales communications) and where they are installed.  O'Keeffe's has alleged willful,
27 fraudulent, oppressive and malicious conduct by TGP entitling it to punitive damages.
28 O'Keeffe's Counterclaim (Docket 28) ¶ 61.  These allegations also support O'Keeffe's discovery,

especially in the context of an apparent widespread practice of misleading customers.

**WireLite**: O'Keeffe's has alleged that TGP misuses UL listings to promote this product and that TGP falsely represents the qualities and limitations of its products, including WireLite (¶ 47). When asked for further substantiation of these claims during the meet and confer, O'Keeffe's specifically referenced portions of TGP's website that state that WireLite provides impact resistance that it does not. Jerry Razwick has submitted a declaration that states: "TGP does not market WireLite as an impact product that complies with ANSI Z97.1." Razwick Decl. ¶ 11.[1] This is false. Attached to the Supplemental Ritchey Declaration as Exhibit 3 is both a portion of the TGP websites stating that WireLite complies with ANSI Z97.1, as well as an article published by Mr. Razwick stating that wired glass products (such as WireLite) comply with ANSI Z97.1. WireLite is relevant.

**Pyrodur**: TGP's counterclaims allege that products that do not pass the hose stream test (specifically, O'Keeffe's SuperLite I-XL) cannot be used in locations requiring greater than 20 minute protection, even with approval of an Authority Having Jurisdiction ("AHJ"). TGP counterclaim (Docket 98) ¶ 91, 101. TGP, however, marketed this non-hose stream tested product for applications exceeding 20 minutes with approval of an AHJ. *See* Supp. Ritchey Decl. Ex. 4 (March 14, 2008 website), Ex. 5 (January 27, 2006 website). Mr. Razwick attaches information from TGP's current (*i.e.* May, 2008) website to his declaration. Razwick Decl. Ex. D. While O'Keeffe's does not dispute that TGP changed its website *last month* (April, 2008) after this issue was brought to its attention in the meet and confer, a litigation about-face does not make discovery impermissible. Information on how TGP marketed Pyrodur and where it was installed is directly relevant to O'Keeffe's defense.

Moreover, TGP has sued O'Keeffe's for its marketing of SuperLite I-XL on the ground that it does not provide complete radiant heat protection. TGP counterclaim (Docket 98) ¶ 85. But, TGP markets Pyrodur as providing significant radiant heat protection notwithstanding the fact that Pyrodur, like O'Keeffe's SuperLite I-XL, does not provide complete protection. *See*

---

[1] Mr. Razwick's declaration shows he is not familiar with the way his company markets its products, and should be afforded no weight. *See also* discussion of Pyrodur.

1  Supp. Ritchey Decl. Ex. 6 ("Pilkington Pyrodur™ holds back flames, smoke and hot gases. Its
2  great advantage compared to the majority of other glasses in its class is that it also offers a bonus
3  in terms of better thermal protection (90% of radiant heat).") Mr. Razwick's statement to the
4  contrary is not representative of the entirety of the information TGP puts in the marketplace, and
5  is no basis to deny discovery. Razwick Decl. ¶ 12 ("TGP clearly discloses that Pyrodur is not a
6  barrier to radiant heat"). Pyrodur is relevant to O'Keeffe's defense.

7  **FireGlass 20**: Like Pyrodur, this non-hose stream tested product has been marketed for
8  applications that require AHJ approval. *See* Supp. Ritchey Decl. Ex. 7 (TGP website referring
9  potential clients for AHJ approval for "any location other than a 20 minute door"). TGP has sued
10 O'Keeffe's claiming that it is illegal for O'Keeffe's to market and sell SuperLite I-XL with AHJ
11 approval because it is not a hose-stream tested product. FireGlass 20 is not hose-stream tested
12 either. FireGlass products are directly relevant to O'Keeffe's defense of TGP's claims that
13 O'Keeffe's non-hose stream product (SuperLite I-XL) cannot be sold even with AHJ approval.

14 **Pyroshield NT**: O'Keeffe's alleged that TGP sells this product without a listing, although
15 a listing is required. ¶ 47.

16 **IV.    LEGAL ISSUES.**

17      **A.    TGP Is Objecting To Discovery Indistinguishable From What It Served.**

18  While TGP dismisses the similarity between the discovery it served and the discovery
19 O'Keeffe's served a few days later (*see* Opposition (Docket 110) at 6), it is inescapable that they
20 are nearly identical. In fact, 13 of the 14 discovery requests still at issue (Request for Production
21 Nos. 1-4, 6, 12 and Interrogatory Nos. 4-9, 11) were first served by TGP. *See* Motion Ex. 3
22 (Docket 109-4). For example, although TGP specifically complains about a discovery seeking
23 communications with UL regarding all of TGP's products (Opposition (Docket 110) at 8 & 16,
24 complaining about O'Keeffe's Request for Production 6), TGP's Request for Production No. 5
25 sought "All documents and communications sent to WHI [a testing body similar to UL] by
26 O'Keeffe's or sent by WHI to O'Keeffe's that show describe, or relate to *any O'Keeffe product*
27 *failing to pass WHI testing* . . ." (italics added). Of course, unlike O'Keeffe's allegations of
28 widespread marketing abuse by TGP, TGP's allegations relate to only one O'Keeffe's product –

SFI-583944v1

- 8 -

O'Keeffe's Reply re: Motion to Compel
Case No. 07 cv-03535 JF PVT

SuperLite I-XL – making TGP's request much farther afield from the claims and defenses of the parties than O'Keeffe's. *See generally* TGP counterclaim (Docket 98).

### B. TGP's Interpretation of Relevance Is Not Supported By Its Own Cases.

The parties agree that discovery must be relevant to a claim or defense in this case. *See* Fed. R. Civ. P. 26(b)(1). They disagree, however, regarding what constitutes a claim or defense, and whether the amendments to Rule 26 have ended liberal discovery in federal court.

The main case cited by TGP repeatedly throughout its brief is all that is necessary to reject TGP's argument and grant O'Keeffe's motion.

> Thus, counsel should be forewarned against taking an overly rigid view of the narrowed scope of discovery. While the pleadings will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer. Such a restrictive approach would run counter to the underlying purpose of the rule changes, as explained by the commentary, run afoul of Fed. R. Civ. P. 1, and undoubtedly do disservice to the requirement of notice pleading in Rule 8, as parties would be encouraged to plead evidentiary facts, unnecessary to a "short and plain statement of the claim showing that the pleader is entitled to relief", Rule 8(a)(2), simply to increase the likelihood of getting broader discovery.

*Thompson v. HUD*, 199 F.R.D. 168, 172 (D. Md. 2001); *see also* Motion (Docket 109) at 4-5.

### C. TGP Has Not Established A Burden Sufficient to Deny Discovery.

TGP does not dispute O'Keeffe's legal authority holding that it must substantiate an undue burden with "specific facts." *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D. Nev. 1997). Nor does it dispute that "just because complying with a discovery request will involve expense or may be time consuming, does not make it unduly burdensome." *Id.* Mr. Razwick's declaration falls short of establishing the type of burden necessary to limit discovery.

With respect to sales order information, O'Keeffe's does not doubt that each order may result in multiple documents. Razwick Decl. ¶ 6. According to Mr. Razwick, sales documents are maintained in hard copy, which are stored in approximately 100 boxes. *Id.* ¶ 6. On May 9 (four days before TGP filed its opposition claiming substantial burden), O'Keeffe's invited TGP to make these available for inspection to avoid the burden of production. TGP declined the invitation (Supp. Ritchey Decl. ¶ 9, Ex. 8), presumably so it could claim burden where none exists in reality. To the extent that sales documents are maintained electronically, those

1  documents would be generated and maintained by six Territory Managers. Razwick Decl. ¶ 9;
2  Supp. Ritchey Decl. ¶ 9. It simply is not an undue burden to force six employees to search their
3  electronic files. Importantly, Mr. Razwick does not claim that it is. Razwick Decl. ¶ 9.

4  Much of TGP's burden seems to stem from semantics surrounding the word "project." By
5  stating that it does not organize its business by "projects," TGP can proclaim it cannot possibly
6  respond to the discovery requests. *See* Razwick Decl. ¶¶ 5, 6. But Mr. Razwick makes clear that
7  TGP does organize its documents by "sales order," and that sales orders seem remarkably similar
8  to what O'Keeffe's requested. *Compare e.g.* Ritchey Decl. (Docket 102) Ex. B, Request for
9  Production No. 1 (seeking all documents that refer or relate to any transaction, sale or installation
10 of TGP's FireLite) *with* Razwick Decl. ¶ 6 (sales orders contain a customer quote request, TGP
11 quote, customer purchase order, TGP order confirmation, packing slip, shipping confirmation,
12 and invoice).

13 Responsive documents apparently also are available in TGP's accounting system in the
14 form of "quote requests, purchase orders, and invoices going back to 2004." Razwick Decl. ¶ 7.
15 To substantiate such an unlikely circumstance as TGP being unable to access these documents in
16 *any way* other than a manual document by document search, Mr. Razwick needs to have done
17 more than state that the documents "are not easily accessible," accessing them "would take an
18 extremely long time" and "would be very disruptive." *Id.* These are conclusions, not facts.
19 Likewise, in the absence of some meaningful explanation, Mr. Razwick's self-serving statement
20 that incoming quote requests and outgoing quotes maintained on TGP's customer resource
21 management software[2] are "not easily accessible or duplicated" is insufficient.

22 Mr. Razwick does not even attempt to describe any burden other than producing sales
23 orders and obtaining information from TGP's accounting and customer resource management
24 software. As discussed above, there is no basis to limit production for these documents. Any
25 other claims of burden regarding other categories of documents (*e.g.* testing documents,
26 marketing documents, communications with UL, etc.) are entirely unsubstantiated.

27
28  [2] The mere fact that TGP has what it describes as "customer resource management software" calls into serious question its claims that its responsive information is not readily accessible.

Importantly, O'Keeffe's repeatedly has invited a dialogue that could lead to reasonable limitations, only to be met with statements of what TGP cannot do and a reluctance to provide information. Supp. Ritchey Decl. ¶ 11 and Ex. 9. TGP has not given either O'Keeffe's or this Court enough information to reasonably determine whether and what limitations may be appropriate. Rather, TGP's responses and explanations to date are evasive and internally inconsistent.

### D. TGP's Other Objections Are Waived.

TGP did not dispute O'Keeffe's statement that its general objections, and vagueness/ambiguity objections are waived. The Court should overrule them. To date, TGP still has not substantiated any privilege objection.

## V. TGP's SUPPLEMENTAL RESPONSES AND ARGUMENT ON SPECIFIC REQUESTS DO NOT PROVIDE A BASIS TO DENY THE MOTION.

TGP's Second Supplemental Responses to Request for Production Nos. 5,[3] 18, 19, 21 and 25 state that TGP will produce responsive documents, so those requests no longer are in dispute.

In general, with respect to the remaining requests for production and interrogatories, TGP's supplemental responses do nothing more than state additional objections and reiterate the reasons TGP's opposition papers claim further production should not be required. In addition to the substantive reasons why these rationales should be rejected (discussed above), they are procedurally improper when first offered months after objections were served, and well after the meet and confer process concluded.

While TGP's opposition and the Razwick Declaration purport to make clear that TGP has limited ability to search and identify responsive documents/information, its supplemental responses claim that it will search for and produce very specific categories of documents. The two positions cannot be reconciled. For example, if TGP cannot search for responsive documents by product (Razwick Decl. ¶ 8 (TGP's sales files "are not stored by product or project name")), how can it limit most of its responses solely to documents relating to FireLite (*see generally*

---

[3] Although TGP's opposition appears to contest a further response, it second supplemental response states that responsive documents will be produced.

1  Siegel Decl Ex. 1.)?  If TGP does not know how its products are used (Razwick Decl. ¶ 5 ("TGP

2  often is not made aware of what location or end use is made of its products")), how can it limit its

3  production to transoms, sidelites, borrowed lites and fire doors (*see generally* Siegel Decl Ex. 1.)?

4  If TGP generally only interacts with glass distributors, glazing contractors and architects

5  (Razwick Decl. ¶ 5), how can it search for documents sent or received from design professionals

6  or AHJs (*see generally* Siegel Decl Ex. 1.)?  Are the communications TGP is searching

7  maintained separately from the documents and communications that are "not maintain[ed] in a

8  central location" (*see, e.g.* Siegel Decl. Ex. 1, Second Supplemental Response Nos. 1-3)?  While

9  O'Keeffe's doubts the limitations of TGP's search capabilities, taken at its word, TGP cannot

10  conduct a reasonable and diligent search for what it claims it will produce.  A complete

11  production should be required.

12  TGP's Second Supplemental Response to Request for Production Nos. 1-3, 10 and 12 are

13  identical.  Siegel Decl. Ex. 1.  Interestingly, the Second Supplemental response actually *narrows*

14  the category of documents TGP agrees to provide by cutting out "communications with the

15  public."  As discussed above, TGP's own statements suggest that it cannot comply with its

16  purported narrowing of production, even if it were ordered.  For the reasons stated in O'Keeffe's

17  moving papers, a complete production (as opposed to either the limited production described in

18  either the First or Second Supplemental Response) should be required.

19  Another tactic utilized by TGP is to misstate certain requests in order to try to limit

20  production.  For example, TGP argues that "O'Keeffe's RFP No. 4 requests all documents related

21  to whether TGP's FireLite products comply with any building code, regulation or standard" and

22  then goes on to discuss why this is unreasonable.  But the actual request is substantially narrower

23  – it seeks only documents that *refer* to whether FireLite complies with various codes.  O'Keeffe's

24  claims directly relate to TGP's representations regarding code compliance.  O'Keeffe's

25  counterclaim (Docket 28) ¶¶ 16, 34, 46.  If TGP does not refer to codes in its communications,

26  then no production is required.  "Refer" is substantially narrower than "relate."  TGP's slight of

27  hand should not be a basis to limit production.

28  TGP's supplemental responses to the interrogatories also are not well taken.  For example,

SFI-583944v1

- 12 -

O'Keeffe's Reply re: Motion to Compel
Case No. 07 cv-03535 JF PVT

1  without referencing the explanations of why products such as FireGlass 20 and Pyrodur are
2  relevant (*see* Motion (Docket 109) Ex. 2), TGP claims it is unnecessary to respond to
3  Interrogatory Nos. 5, 6 and 7 because these products are not referenced in the pleadings.  The
4  absence of references in O'Keeffe's counterclaim, however, makes sense because these products
5  are relevant to O'Keeffe's defense, as stated above.  *See* Section III.  Simply ignoring the
6  relevance of discovery is unavailing.

7       TGP's supplemental responses to Interrogatory Nos. 4 and 9 have the same issues as its
8  supplemental responses to many requests for production – how can TGP perform a reasonable
9  and diligent search for documents relating to a single product in very specific circumstances
10 given its limitations on searching?  Having submitted evidence establishing the inadequacy of its
11 own proposal (*see* Razwick Decl. ¶¶ 5, 8), and in the absence of a basis to limit discovery, a
12 complete response should be compelled.

13      TGP's supplemental responses to Interrogatory Nos. 8 and 11 are instructive.  Both seek
14 revenue information regarding sales of FireLite.  Siegel Decl. Ex. 2.  In its supplemental response
15 to No. 8, TGP states it cannot identify particular sales associated with particular projects.  *Id.*
16 Notwithstanding its inability to identify its own projects, in response to No. 11, TGP claims it
17 will produce responsive information only if *O'Keeffe's* identifies TGP's projects at issue.  *Id.*
18 TGP is asking O'Keeffe's to do what it cannot do itself.  This type of cat-and-mouse response
19 makes clear that TGP has no intention of reasonably responding, and should be ordered to
20 produce the basic information requested in this and other discovery requests.

21 **VI.   CONCLUSION.**

22      For the reasons stated in O'Keeffe's moving papers and this reply, TGP should be ordered
23 to produce all responsive documents and supplement its responses to interrogatories within 14
24 days of the hearing.

25 Dated:  May 20, 2008.                                         JONES DAY

26                                            By:   /s/ - Katherine S. Ritchey
27                                                  Katherine S. Ritchey
                                                 Attorneys for Plaintiff and Counterclaimant
28                                                  O'Keeffe's, Inc.