1  Mark I. Schickman (State Bar No. 62653)
   schickman@freelandlaw.com
2  Daniel T. Bernhard (State Bar No. 104229)
   bernhard@freelandlaw.com
3  FREELAND COOPER & FOREMAN LLP
   150 Spear Street, Suite 1800
4  San Francisco, California 94105
   Telephone:    (415) 541-0200
5  Facsimile:    (415) 495-4332

6  Jason McDonell (State Bar No. 115084)
   jmcdonell@jonesday.com
7  Katherine S. Ritchey (State Bar No. 178409)
   ksritchey@jonesday.com
8  Jennifer Seraphine (State Bar No. 245463)
   jseraphine@jonesday.com
9  JONES DAY
   555 California Street, 26th Floor
10 San Francisco, California 94104
   Telephone:    (415) 626-3939
11 Facsimile:    (415) 875-5700

12 Attorneys for Plaintiff, Counterdefendant and
   Counterclaimant O'KEEFFE'S, INC.
13

14                     UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16                            SAN JOSE DIVISION

| | |
|---|---|
| O'KEEFFE'S, INC., | CASE NO.: C 07-cv-03535 JF PVT |
| Plaintiff, | **SUPPLEMENTAL DECLARATION OF KATHERINE S. RITCHEY IN SUPPORT OF PLAINTIFF O'KEEFFE'S, INC.'S MOTION TO COMPEL** |
| v. | |
| TECHNICAL GLASS PRODUCTS, ANEMOSTAT, and PILKINGTON PLC, | Date: June 3, 2008<br>Time: 10:00 a.m.<br>Before the Honorable Patricia V. Trumbull |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

SFI-584111v1

Supp. Decl. of Ritchey re: O'Keeffe's Motion
to Compel; Case No. 07 cv-03535 JF PVT

I, KATHERINE S. RITCHEY, declare as follows:

1. I am a partner at the law firm Jones Day, 555 California Street, 26th Floor, San Francisco, California 94104. I am one of the attorneys representing O'Keeffe's, Inc. ("Plaintiff") in the above-captioned litigation. I submit this declaration in support of Plaintiff O'Keeffe's, Inc.'s Notice of Motion and Motion to Compel. I have been responsible for discovery issues and the meet and confer process regarding Technical Glass Products' responses to O'Keeffe's, Inc.'s discovery. Accordingly, I have personal knowledge of the facts contained in this declaration. If called to testify about them, I could do so competently. In certain exhibits attached hereto, I have bracketed relevant portion of the document to assist the Court in identifying what O'Keeffe's believes is the relevant portion(s) of the document.

2. Attached hereto as Exhibit 1 is a true and correct copy of a letter dated July 12, 2004 from Davin Bowman of TGP to Lacross Glass Co. Inc.

3. Attached hereto as Exhibit 2 are portions of TGP's website relating to FireLite and FireLite NT that was accessed and printed at my direction on March 14, 2008.

4. Attached hereto as Exhibit 3 is a true and correct copy of a portion of TGP's website relating to WireLite that was accessed and printed at my direction on March 14, 2008. Also attached within Exhibit 3 is an article that I printed from TGP's website on May 19, 2008 entitled "An Introduction to Fire-Rated Glass," which states it was written by Jerry Razwick.

5. Attached hereto as Exhibit 4 is a true and correct copy of a portion of TGP's website relating to Pyrodur that was accessed and printed at my direction on March 14, 2008.

6. Attached hereto as Exhibit 5 is a true and correct copy of a portion of TGP's website relating to Pyrodur as it existed on January 27, 2006 that I accessed and printed on May 16, 2008 on web.archive.org.

7. Attached hereto as Exhibit 6 is a true and correct copy of the webpage http://www.pilkington.com/Applications/products/the+americas/usa/english/bybenefit/fire+protection/products/pilkington+pyrodur/default.htm, which I accessed and printed on May 16, 2008.

8. Attached hereto as Exhibit 7 is a true and correct copy of a portion of TGP's website relating to FireGlass 20 as it existed on January 27, 2006 that I accessed and printed on

1 | May 19, 2008 on web.archive.org.

2 |     9.    Attached hereto as Exhibit 8 is a true and correct copy of an email dated May 9, 2008 that I sent to Todd Siegel, counsel for TGP. Thereafter, Mr. Siegel and I discussed making voluminous sales files available inspection, and I told Mr. Siegel that O'Keeffe's would make its voluminous sales files available for inspection. Mr. Siegel told me that he would consider making TGP's files available for inspection, but would not commit to doing so because TGP may choose not to make its files available. In discussing the burden of producing sales information, I asked Mr. Siegel how many employees' files were at issue. He told me that sales communications are conducted by six Territory Managers.

    10.    On multiple occasions during the meet and confer process, lawyers for TGP told me that TGP does not routinely identify in its sales documents that a window assembly was being manufactured for a particular purpose (*e.g.* transom, sidelite, etc.).

    11.    On multiple occasions throughout the meet and confer, I invited Mr. Siegel to provide information that would allow us to have a meaningful dialogue on limitations on O'Keeffe's discovery to the extent that any were necessary. At TGP's request, I limited the time frame for many requests for production to documents since 2000. Mr. Siegel generally elected not to provide information regarding how TGP documents are maintained (including most of the information in Mr. Razwick's declaration), and he did not provide information on any search terms being used by TGP or other information that could help guide the parties' discussions. Rather, he generally only provided conclusions regarding what TGP could not do. Attached hereto as Exhibit 9 is a true and correct copy of an email I sent to Mr. Siegel dated May 6, 2008.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of May, 2008.

                                      By:  /s/ - Katherine S. Ritchey
                                                 Katherine S. Ritchey